## Missouri Department of SOCIAL SERVICES
*Your Potential. Our Support.*

Filed
4/30/2018
09:22 AM
Ripley County
Circuit Court

ERIC R. GREITENS, GOVERNOR • STEVE CORSI, DIRECTOR
CHILDREN'S DIVISION
DEBRA MCCOIN, CIRCUIT MANAGER
BUTLER COUNTY, 1903 NORTHWOOD DRIVE • PO BOX 8 • POPLAR BLUFF, MO 63902 • 573-840-9200 • 573-840-9234 FAX
RIPLEY COUNTY, ROUTE 2 BOX 1143, DONIPHAN, MO 63935 • 573-996-2175 • 573-996-2238 FAX
WWW.DSS.MO.GOV

April 25, 2018

**Children:** M.H.    17RI-JU00011
S.H.    17RI-JU00012

**Date of Custody:** 02-03-17

**Parents:**
Cynthia Haynes, Mother
*(Safe at Home Address)*
015251 PO Box 1409
Jefferson City, MO 65102
(573) 996-6401

Charles Haynes, Father to M.H. and S.H.
RR 1 Box 2312
Doniphan, MO 63935
(573) 996-6260

**Placement:** THP – Cynthia Haynes, natural mother

Dear Judge Shock:
Please consider this an update for the hearing that is set for May 11, 2018.

**Reason for custody:** Children came into care during a custody modification hearing when Judge Shock ordered the girls in emergency custody. GAL, Jennifer Williams, had concerns of educational neglect by mother.

In February 2017
- M.H. was hospitalized for about one week for mental health concerns: self-injuring and depression. There were no concerns with visits between the girls and Cindy and Rideout's asked if visits with mother could be extended as they are able to supervise more than four hours per week (this was approved).
- The family was seeing Cindy Moses for counseling and the team (Chuck, Berniece, JO) wanted them to see someone different to have "fresh eyes" on the case. Cindy Moses' recommendation was the girls not to be allowed around their father and mom is not a risk to the girls.
- Both girls admit they are fearful of father; S.H. made comments to the Rideout's that dad was mean to M.H. and M.H. did not sleep well at paternal grandmother's because she "never knew when dad would come in".
- Counseling with Scott Foster began



**EXHIBIT 32**

RELAY MISSOURI
FOR HEARING AND SPEECH IMPAIRED
1-800-735-2466 VOICE • 1-800-735-2966 TEXT PHONE
*An Equal Opportunity Employer, services provided on a nondiscriminatory basis.*

March
- Visits increased to 8 hours per week – Cindy brings food to visits, is appropriate with the girls and continues to follow the rules.
- M.H. was hospitalized for three days regarding mental health with superficial cuts and anxiety. In the hospital she expressed fear and resentment toward her dad.
- Girls still do not want contact with grandmother or father
- M.H. suspended for possession of marijuana – she was "finding a better way of coping without cutting" due to stress of not being with mother. Marijuana use was addressed with counselor, Scott Foster.

April
- Scott Foster has not identified any serious concerns with the family in therapy.
- Both girls had a forensic interview, but nothing disclosed outside of not feeling comfortable at paternal grandmothers or around father.
- M.H. wrote a disturbing letter with comments like, "fuck me, fuck my pussy daddy" that resulting in requesting an additional forensic interview; however, it was decided the best option was to have Scott Foster address this in therapy and make a CA/N report.
- The GAL and JO have concerns that CD does not share. Theresa Whaley sent an email from her notes from the last FSTM and what was discussed
- M.H. requested a new GAL. GAL agreed to talk with M.H., but said that it wouldn't change her mind about anything. CD is concerned the GAL isn't going to listen to the child and put the child's concerns into any of her recommendations.
- Since GAL would not represent M.H. for the Juvenile Summons regarding marijuana on school property, Cindy hired M.H. an attorney.

May
- M.H.'s hair follicle was negative (no UA because became physically ill with stress from the drug screen)
- Cindy agreed to complete parenting classes through CAC even though she feels like things are being asked of her that are not relevant to the case.
- S.H. has all A's and loves going to school
- M.H. attending summer school in order to advance to 8th grade from being suspended for marijuana
- Psychological evaluation scheduled for M.H.
- Psychological evaluation requested for Cindy

June
- M.H. is only twelve and is one year ahead of her peers in school
- S.H. is learning more independence and has learned to ride a bike and tie her own shoes
- M.H. reported having "no intentions of sharing what happened between me and my dad, even if it means being forced to have visits with him"
- Rideout's state they can tell counseling with Scott is helping
- Visits with mother are still supervised because team is not unanimous in agreement to change it; however, there is another increase in visits. Rideout's supervise 4-6 hours per week and OFRA was approved to supervise 4-6 hours per week in the mother's home.
- Both girls continue to say they don't want anything to do with father or paternal grandmother and they want to be home with mother – that is where they feel most safe.
- M.H. feels that nobody listens to her and becomes agitated when she thinks about it.
- Scott Foster recommends the girls be placed back with mother ASAP. There are no concerns with her or in her home and there hasn't been proof of any since the beginning of the case.
- Psychological evaluation scheduled for Cindy in July.

July
- JO attorney requested a counselor (Scott Foster) change for the girls because he wanted someone with a different perspective.
- Scott Foster recused himself because he didn't think he could be effective if the team is not going to take his recommendations seriously.
- THP begin immediately
- GAL and JO attorney only agree to Cindy having a psychological evaluation completed with Dr. Kennedy or Dr. Driver (two psychologists she has used in the past) – Cindy chose Dr. Kennedy.
- M.H. has a coping plan so she does not cut when she is stressed; she can swim, read, walk and talk to someone when she is stressed or depressed.
- Dr. Bost took M.H. off Remeron 15mg to see how she does and she has slept well so far. Remeron is used to treat depression, but the family says the doctor who prescribed it was using it as a sleeping aid. Since Remeron would have been helping with depression and she is no longer taking it
- S.H. is happy to be home. She is nervous about having to see her dad and feels like he will watch them from the river again. S.H. feels safe with her mom.
- Dr. Bost, pediatrician, wrote a statement stating it is not wise for the girls to have visits with dad or paternal grandmother until the criminal case is resolved.
- Cindy has been in contact with Jerry Marks in Washington MO, for the girls to do individual therapy.

August
- M.H. had psychological evaluation with Dr. Fuge with recommendations to continue seeing a counselor and to have eye exam to check for a visual processing disorder.
- Family is seeing Jerry Marks for counseling
- No safety concerns in the home with mother

September
- Psychological evaluation scheduled for Cindy with Dr. Kennedy
- PPRT: CD concerned the case will continue even with services complete. JO wants to see counseling reports on M.H. and S.H., but not looking for anything specific.
    - CD/JO have no safety concerns in the home.
    - Girls are doing great in school. A/B honor roll and no behavior issues.
- and M.H. still want no contact with father or paternal grandmother, yet GAL is suggesting therapeutic visits.
- No safety concerns in the home

October
- JO will drop charges with drugs if Dr. Marks addresses substance abuse and coping mechanism with M.H. (this is in addition to what Scott Foster previously addressed).
- Girls still want no contact with father or paternal grandmother and stressed about the idea of being forced to see them in a therapeutic setting.
- No safety concerns in the home

November
- Dr. Kennedy canceled the psychological evaluation for Cindy and both CD and Cindy cannot make contact with his office to reschedule.
- Cindy sent letters to GAL requesting she withdraw and drop fees – GAL did not.
- No safety concerns in the home
- Dr. Jerry Marks sent letter recommending the case be closed.

December
- JO wants **M.H.** to have a psychological evaluation completed by a different provider (she had one in August) this stresses **M.H.** and she wants to be done talking about her history.
- Cindy upset about GAL/JO requesting evaluations especially since the case was opened with alleged Educational neglect.
- CD has no safety concerns in the home
- JO/GAL do frequent visits to the school to visit **S.H.** and **M.H.**. GAL rarely goes to home to see family as a unit on THP
- Fax sent to Dr. Kennedy for Charles Haynes to have psychological evaluation completed with his contact information for scheduling – Charles never had the evaluation completed.
- Dr. Kennedy refused to reschedule/complete the evaluation for Cindy Haynes because the case is so complex.

January 2018
- JO dropped delinquency case on **M.H.** after receiving report from Dr. Jerry Marks addressing substance abuse.
- Dr. Jerry Marks gave second recommendation (verbal during PPRT) that the case be closed.
- No safety concerns in the home

February
- No safety concerns in the home

March
- CD sent team an email with update on unsuccessful attempts to schedule a psychological evaluation for Cindy and the number of attempts with a request for suggestions/recommendations. No response.
- No safety concerns in the home
- Team agreed **M.H.** did not need additional psychological evaluation once previous provider verified mother was not in the room during testing.
- Dr. Jerry Marks sent third recommendation that the case be closed.

April
- No safety concerns in the home


Attempts to schedule psychological evaluation for Cindy Haynes:
JO attorney had THP reflect Cindy could only use Dr. Kennedy or Dr. Driver for her psychloical evaluation and Cindy chose Dr. Kennedy.
- Dr. Kennedy
    - 09-08-17 CD made referral
    - 09-11-17 referral accepted and CTS approval sent
    - 09-21-17 CD left a voicemail attempting to schedule appointment for evaluation. Call returned and Cindy's contact information given to schedule through her.
    - Psychological evaluation scheduled for 10-24-18
    - 11-22-17 CD discovered Dr. Kennedy canceled evaluation and did not reschedule. Cindy called and left voicemail for rescheduling.
    - 12-12-17 CD left voicemail requesting date of scheduled psychological evaluation
    - 12-15-17 CD sent re-authorized CTS to Dr. Kennedy
    - 12-28-17 CD called requesting verification of dates for Cindy's psych eval.
    - 12-28-17 Dr. Kennedy's office called and said Cindy's case is so complex they do not want to do CTS funding and Dr. Kennedy will not do the psychological evaluation.

- Dr. Driver
  - 01-03-18 CD left a message for Dr. Driver requesting he complete an updated psychological evaluation on Cynthia Haynes. Dr. Driver returned call 01-03-18 and left a message stating he would be willing to work with mother and wanted to discuss payment. CD called 01-04-18 and let him know it would be through CTS funds. CD discovered Dr. Driver's CTS contract is expired and cannot do payments.

- Dr. Judy Tindall
  - 01-29-18 CD left a message asking about a psychological evaluation – referred by Dr. Jerry Marks- and received returned call stating they do not accept CTS funds.

- Dr. Bradley Robinson
  - 01-29-18 CD called Dr. Robison's office to ask about a psychological evaluation for Cindy Haynes – Dr. Robison does not have a contract for CTS funds.

- Dr. Georgette Johnson
  - 01-29-18 CD called Georgette Johnson to ask about a psychological evaluation for Cindy Haynes. Dr. Johnson is not currently scheduling because they are too far behind to be timely.

- Dr. Ann Duncan-Hively
  - 01-29-18 CD left a message for Dr. Duncan-Hively asking about CTS funds for a psychological evaluation. They returned call and said they were not accepting new patients at this time.

- Dr. David Van Pelt
  - 01-29-18 CD called for Cindy to have a psychological evaluation and they are not contracted for CTS funds

- Dr. Mark Bradford
  - 02-27-18 CD left a message asking if he accepted CTS funds for Cindy's evaluation. I did not hear back and called again 03-05-18. He does accept CTS and asked me to make a referral online at www.drbradford.org. Made referral online 03-05-18.
  - 03-08-18 left a message for Dr. Bradford stating I made a referral for Cindy to have a psychological and asked for the coding for CTS authorization/verification. No reply. Called again and left messages on 03-13-18, 03-19-18, 03-21-18. No reply.

- Dr. Lisa Emmenegger
  - 03-09-18 CD left a message asking if Dr. Emmenegger accepts CTS funds. Dr. Emmenagger returned call and said she does take CTS, however, she only takes cases from St. Louis County.

- Dr. James Powers
  - 03-12-18 CD asked Dr. Powers about a psychological evaluation for Cindy - He is retired and only works in residential facilities.

- Dr. Daniel Levin
  - 04-20-18 CD left a message asking for a psychological evaluation on Cindy through CTS funds. No reply.

** CD sent team an email 04-01-18 with listed efforts on making an appointment for a psychological evaluation ⁿ Cindy and there was no response from team members with any further recommendations on possible ₒviders.

The Full Frame Initiative's Five Domains of Wellbeing are the universal, interdependent and non-hierarchical essential needs we all have. This consists of:
1) <u>Social connectedness</u>: feeling we belong to a group and are being connected to people we depend on and who depend on us for emotional support, information and other help.
2) <u>Safety</u>: not having to hide important parts of who we really are so that we can be physically, mentally or emotionally safe.
3) <u>Meaningful access to relevant resources</u>: Getting the basic things we need like food, shelter, schools and health care without shame, danger or great difficulty.
4) <u>Stability</u>: having things we can count on to be the same from day-to-day or week-to-week, and knowing that a small bump won't set off a domino-effect of crises.
5) <u>Mastery</u>: Feeling that we can influence our fate and what happens around us, and having the skills to navigate and negotiate life.

The family is thriving in all of these areas.

Social Connectedness
- The family has built a strong support group and surrounded themselves with positive, encouraging people. They regularly see Dr. Jerry Marks in Washington, MO for counseling, M.H. and S.H. love going to school and have a good relationship with their teacher and principal, former foster parents – John and Cassie Rideout – still have contact with the family and spend time with M.H. and S.H. and the family has extended family support.

Safety
- CD and JO have been in the home with the family every month since July 2017 and have had no reported concerns regarding safety. Cindy has followed through in keeping Charles Haynes away from the home and the children, multiple counselors –Cindy Moses, Scott Foster and Jerry Marks- have reported they have no safety concerns with the emotional, physical or mental stability of Cindy having custody of M.H. and S.H..
- M.H. has not had episodes of self-harm: cutting or hospitalization for mental instability since March 2017, nor has she had any further incidents with having marijuana.

Meaningful access to relevant resources
- Cindy is able to meet the needs of the family. They travel to Washington, MO monthly for counseling with Dr. Jerry Marks, the family sees Dr. Bost, PCP, as needed, M.H. had a psychological evaluation completed, there is a surplus of food in the home and the family owns their home with no intentions of moving. When M.H. needed an attorney for the Juvenile Summons mother hired one.

Stability
- The family is not nomadic; they own their home – utilities are on and bills are paid, M.H. and S.H. have regular attendance at school, they attend monthly counseling session, extended friends and family are available for support (when the family is not home there are people who watch the home for safety), M.H. was on medication for depression and sleep and no longer requires them because she uses coping mechanisms learned through counseling. The relationship between mother and children is consistent and there were no concerns report during visits or THP.

Mastery
- Cindy has shown self-efficacy in her ability to success in accomplishing specific tasks even when she does not see the relevance to the case (i.e. parenting classes). M.H. has been using coping skills of talking to supports, walking and reading to prevent further time in psychiatric hospitals or having the urge to cut/smoke marijuana. Sara and M.H. are academically ahead of peers their age.

**Children's Division Assessment / Recommendation:**
Children's Division believes it is in the best interest of M.H. and S.H. to remain in the physical custody of Cindy Haynes and return to the legal custody of Cindy Haynes on May 11, 2018.

Sincerely,

*Roxann Ward*  
Roxann Ward, BSE  
Children's Service Worker III

*Keri Morrow*  
Keri Morrow, BSW  
Children's Service Supervisor