# JERRY MARKS, Ph.D, LCSW, PC
## 207 Creekside Drive
## Wentzville, MO 63385
## Telephone: 636-887-0914  Fax: 636-206-2522

Honorable Gary A. Kamp
100 Courthouse Square, Ste. 3
Doniphan, MO 63935

      Re:    Haynes v Haynes (Randolph), Case. No. 13RI-CV00554, Ripley County Court

Your Honor,

My name is Jerry L. Marks. I have a Doctorate in Social Work from the Catholic University of America and completed a fellowship in child and family studies at Walter Reed Army Medical Center in Washington DC. I am a Licensed Clinical Social Worker in the State of Missouri. I am writing regarding my involvement in the above Court case.

Cynthia Randolph (Haynes), CYNTHIA, was referred to the office by a practicing attorney in the St. Charles Community. I have done extensive work in the Family Court and had developed a reputation of being fair and honest in my recommendations to the Court. At the time of her first appointment, September 8, 2017, both M.H. and S.H. were in there third foster placement by the Division of Children's Services, DIVISION. The description of the Court process was not only disturbing but led me to wonder what was occurring with these minor children.

After meeting with CYNTHIA and the girls, I was able to gain understanding what had happened to CYNTHIA and the girls. The DIVISION had been pressured to remove the minor children under the compliant of "educational neglect." Both of the girls were in school at the time which raised more concerns in my mind. The girls were excelling academically. The first Court Order placed both girls with the paternal grandmother who was required to limit the biological father's access to the girls while he was being tried for the molestation of CYNTHIA'S daughter, M.S.H. . After a review of the transcript of M.S.H. 's testimony, I was convinced that she was in fact the victim of sexual abuse and that placement of the girls with the paternal grandmother was professionally irresponsible and contraindicated based on the well-established research of sexually abusive families.

The DIVISION at some point realized the misstep and placed the girls in a second foster placement that was not going very well. Both girls were unable to see their mother which resulted in acute distress for both girls. It was the hardest for Sara as she missed her mother terribly. The girls were moved to a third placement with visitation from the mother. CYNTHIA exercised the opportunity to see the girls and some sense of stability and trust was established.

It should be noted that during this process, the Court allowed for the replacement of the DIVISION staff who disagreed with the Court and several local professionals either were ignored or recused themselves from further involvement in the Court process. The replacement of the key professionals raised a red flag that something was wrong in the Court and on what grounds were professionals allowed to recuse themselves in the case? I was glad when the DIVISION allowed me to enter into the case with nothing more than a phone interview and a copy of my resume. Both girls were allowed to see me in the office on a monthly basis transported to the appointments by their mother, CYNTHIA, who complied with the DIVISION'S recommendations and was devoted to helping her daughters to heal during these difficult

**EXHIBIT 45**

times. I agreed to write quarterly reports to the DIVISION. (The original office was located in Washington, MO, but I have sense moved to a new office in Wentzville).

Mr. Haynes had unlimited access to M.H. while the girls were placed with his mother, Bernice Haynes. Both girls told me that they saw a lot of their father when they were at grandmother's home. Both girls knew that he was not supposed to be there but could not do anything. At that point, CYNTHIA had no legal or physical custody of the girls and she had no say in this situation. The girls did not receive any support nor protection from the DIVISION. I have recommended that Mr. Haynes have **NO contact** with either child during the time that I have been engaged in the process. I have never recommended that Mr. Haynes have visitation with his daughter S.H.. In fact, the literature projects that perpetrators will have a preferred victim type and that potential victims need to be protected during their minor years to help avoid further offensive and illegal behavior by the perpetrator. I have specifically instructed anyone involved with S.H., that S.H. have no contact with Mr. Haynes, his mother, Bernice Haynes, his sister Karen, or anyone from the father's side of the family until S.H. is an adult and she can make her own decisions. My recommendation is for S.H. not have any contact with her father and his side of the family. S.H. is currently entering Mr. Haynes preferred victim profile now and should not have any contact with her father now.

The GAL's role in the outcome of this case is very telling about the Court's inability to provide for the best interests of the minor children during the process. It is my understanding that M.H. disclosed to her last foster mother that she was sexually abused by her father during the time that she was at her paternal grandmother's home. This disclosure occurred during the time that the DIVISION had full custody of the minor children. The foster mother is an employee of the DIVISION but her disclosure to her employer did not trigger even an investigation. The DIVISION'S sole responsibility is the protection and prevention of harm to children especially the ones who are in their care and custody. The GAL had a responsibility to report this disclosure to the Court and support the investigation of the placement and the care of M.H. There is nothing in the record that I have seen that any of these protections were ever executed. This is a clear violation of RSMo. 210.115 by the DIVISION and the GAL in this case. The law required them to report and investigate sexual abuse of M.H. . If the DIVISION and the GAL done their job, M.H. could have been with us today. Their conduct in this case has been very alarming.

M.H. told me that she never wanted to be the subject of what her sister, M.S.H. , was going through with the Court and she felt that her GAL was seeing her more often once M.H. was returned into physical custody of CYNTHIA. Surprisingly, GAL showed no interest in protecting M.H. when she was in her paternal grandmother's custody or cared about M.H.'s well-being when she was in foster care. I wrote in a report to the DIVISION that I felt the GAL was out of bounds and her conduct have risen to the level of witness tampering. The GAL threatened M.H. that if she said anything bad about her father to anyone, then GAL would put M.H. in foster care. The relationship between Mr. Haynes and the GAL in this case is very disconcerting and raises a lot of questions in my mind. When I learned that the GAL had been a character witness for Mr. Haynes asking for him to be placed on probation, I knew that she was not helping M.H. . The GAL was clearly acting outside of the scope of her GAL duties in advocating for M.H. 's father and not for M.H. as she was ordered do by the Court and required by Missouri laws that protect minors. I believe the additional pressure placed on M.H. by the GAL was the major factor leading to her death by suicide. M.H. could have been protected and her life could have been saved but for the actions of the GAL and other professionals who failed M.H. in this case.

CYNTHIA'S care and protection of the girls never raised any concerns in my mind. The girls were overachieving at school leading me to wonder how the DIVISION ever took custody of the girls in the first place. There have been so many politically motivated decisions made in this case, that made me wonder many times that the best interests of the children were not protected, but plainly thwarted. These children were exposed to danger which led to tragedy. I am disturbed that officers of the Court, including attorneys, and several agencies of the Court were used to further their agenda in protecting a child

molester, and disregarded the felonious nature of childhood sexual abuse which took place in this family and in this case.

**I would not support the appointment of another GAL for S.H. as the Court and the GAL had demonstrated that any of their actions are not in the best interests of children and not in the best interests of S.H..**

It is my understanding that a GAL should only be appointed if there is a current allegation of abuse. In a divorce or custody proceeding, where child abuse or neglect are alleged, the court shall appoint a GAL under RSMo 452.423. RSMo 210.110.1 defines **"abuse"** as any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for the child's care, custody, and control, except that discipline including spanking, administered in a reasonable manner, shall not be construed to be abuse. The definition for **"neglect"** is "failure to provide by those responsible for the care, custody and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical or any other care necessary for the child's well-being. RSMo. 210.110.5.

As long as Mr. Haynes is incarcerated Sara is not in danger of abuse or neglect. Currently S.H. is doing very well in her mother's care. She is excelling in school, being on an A Honor Roll for all four quarters during 2018-2021. She is engaged in various after school activities where she is very successful. She has friends in school and outside the school. She enjoys spending time with her mother, her sister, and her maternal grandmother. Appointing another GAL in this case is not required. S.H. is loved and well-cared for by her family. If, however, a GAL recommended by Mr. Haynes is appointed, S.H. will again be exposed to the political aspects of the Court process and will create a sense of distrust in the legal proceedings. She may regress in her healing process and will be exposed to Mr. Haynes' grooming. It is my recommendation to this Court to award CYNTHIA sole legal and physical custody of S.H. so that CYNTHIA and her daughters can finally start healing.

I appreciate the opportunity to provide some input into the case. Your Honor, please contact me if you have any follow up questions.

Respectfully submitted,


Jerry L. Marks

STATE OF MISSOURI   )
                    ) SS
ST. LOUIS COUNTY    )

Jerry L. Marks, of lawful age, being duly sworn upon his oath, state that I am the witness in the case herein, and that the facts stated here are true.

*/s/ J.C. Marks*
Jerry L. Marks, Ph.D., LCSW

SUBSCRIBED AND SWORN to before me, a Notary Public, this 27 day of July 2021.

*/s/ Danae N. Dillow*
Danae Dillow, Notary Public
State of Missouri
Lincoln County
Commission number 20158184    Expires 06/10/2024

DANAE DILLOW
Notary Public, Notary Seal
State of Missouri
Lincoln County
Commission # 20158184
My Commission Expires 06-10-2024