IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA K. HAYNES (a/k/a Cynthia K. Randolph), individually and under the Missouri Wrongful Death Statute,<br><br>Plaintiff,<br><br>vs.<br><br>JENNIFER WILLIAMS, individually, et al.<br><br>Defendants. | Case No: 1:21-CV-00160-ACL |

**WILLIAMS DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I-IV OF PLAINTIFF'S AMENDED COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and Local Rule 4.01, Defendants Jennifer Williams and Jennifer Williams, d/b/a Williams Law, herby submit their Memorandum of Law in Support of their Motion to Dismiss Counts I through IV of Plaintiff's Amended Complaint.

**INTRODUCTION[1]**

This action arises out of a state-court divorce and child custody case. Before the divorce and custody matters were resolved, Plaintiff's minor daughter, M.H., committed suicide. Plaintiff brings her Amended Complaint for Damages ("Amended Complaint") individually, and as a class member under Missouri's Wrongful Death Statute, against Defendants Jennifer Williams, individually, and Jennifer Williams d/b/a Williams Law (collectively hereinafter, "Williams"),

---

[1] The facts in this Introduction section Haynes's are taken directly from the Amended Complaint (and are more fully set out in Williams' Defendants Motion to Dismiss). Further, Williams requests that the Court take judicial notice of the Haynes's divorce, criminal and juvenile cases. *Truax v. Frawley*, No. 4:20-CV-391-SEP, 2020 WL 3489363, at *2 (E.D. Mo. June 26, 2020)(noting that this Court may take judicial notice of facts in a child custody matter)(*citing Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)(explaining that a district court may take judicial notice of public state records); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005)(same).

1

Williams; former employer, Spain Miller Galloway & Lee, LLC ("Spain, Miller"), Bernice Haynes, and Charles Haynes. At all times relevant herein, Williams served as statutorily mandated court appointed guardian ad litem ("GAL"). The Amended Complaint contains seven counts, four of which are directed against Williams: Count I is entitled "Wrongful Death – Acting Outside the Scope of GAL Duties;" Count II is entitled "Wrongful Death – Legal Malpractice;" Count III is entitled "Wrongful Death – Breach of Fiduciary Duties" and Count IV is entitled "Personal Claim of Plaintiff – Acting Outside Scope of GAL Duties."

Counts I through IV of Plaintiff's Amended Complaint should be dismissed with prejudice because Williams is entitled to "quasi-judicial immunity" as the allegations supporting the claims concern conduct that fell within the scope of her GAL duties. Additionally, Counts II and III of the Amended Complaint also fail to state a claim for which relief can be granted because Plaintiff has not sufficiently alleged that Williams had a duty to foresee or prevent M.H.'s suicide. Finally, Count IV of the Amended Complaint also fails to state a claim because Plaintiff has not sufficiently alleged that Williams owed a duty of care to Plaintiff as M.H.'s mother.

## ARGUMENT

**I.      Counts I through IV should be dismissed because Williams is entitled to quasi-judicial immunity.**

     **A.      *A GAL appointed by a Missouri court pursuant to Sections §§ 452.423 and 210.160 R.S.Mo is entitled to quasi-judicial immunity.***

"Missouri has long recognized the doctrine of judicial immunity which gives judges absolute immunity for their discretionary judicial acts or omissions.."[2] *State ex rel. Raack v. Kohn*, 720 S.W.2d 941, 944 (Mo. 1986); *Howe v. Brouse*, 427 S.W.2d 467, 468 (Mo. 1968). In 1993, the Missouri Court of Appeals extended judicial immunity to GAL's, holding that in child custody

---

[2] A United States District Court sitting in diversity jurisdiction applies the substantive law of the forum state, in this case, Missouri. *Martin v. Wal-Mart Stores, Inc.*, 183 F.3d 770, 772 (8th Cir. 1999).

2

proceedings, statutorily mandated guardians ad litem function in a "quasi-judicial" capacity as agents of the court, and are absolutely immune from liability for conduct within the scope of their duties. *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376 (Mo. Ct. App. 1993). Later, quasi-judicial immunity for GALs was reaffirmed in *Duesenberg v. Duesenberg*, 592 S.W.3d 374 (Mo. Ct. App. 2019). And just recently, on December 28, 2021, the Missouri Court of Appeals affirmed a trial court's dismissal of an action involving a parent's claim against a GAL on the basis of quasi-judicial immunity in *Tolu v. Reid*, 2021 WL 6122562, at *1 (Mo. Ct. App. 2021).[3]

Quasi-judicial immunity is premised on the GAL's function as an agent of the court. *State ex rel. Bird v. Weinstock* 864 S.W.2d at 385-86. The role of a Missouri GAL in a custody case is to investigate and present its perspective to the court as to what constitutes the "best interests of the child." *Id.* at 385. Unlike a court-appointed attorney, a court-appointed GAL in a Missouri custody case has no duty to strictly advocate for a child's preferences if the GAL finds that the child's preferences are not in the child's "best interests." *Id.* at 385–86. Thus, while the "best interests of the child" are always "paramount" in a custody matter, the GAL's "principal allegiance" is owed to the family court judge. *Id.* at 385. Accordingly, in *Bird* the court held that it was compelled to extend the doctrine of "quasi-judicial immunity" to statutorily mandated GALs in child custody proceedings.[4]  *Id.* at 385 –86.

The determination of whether the doctrine of quasi-judicial immunity supports dismissal is a question of law. *Tolu,* WL 6122562, at *17 (*citing* 48A C.J.S. section 215). In the instant case, each and every allegation against Williams in the Amended Complaint involves conduct that falls

---

[3] The appellant in *Tolu v. Reid* represents Plaintiff in this case.
[4] In extending the doctrine of quasi-judicial immunity to Missouri GALs, the *Bird* court cited public policy reasons as a basis for its decision, noting that "… [A] guardian's judgment must remain impartial, unaltered by the intimidating wrath and litigious penchant of disgruntled parents.  Fear of liability to one of the parents can warp judgment that is crucial to vigilant loyalty for what is best for the child; the guardian's focus must not be diverted to appeasement of antagonistic parents." *Bird*, 864 S.W.2d at 386 (citation omitted).

3

within the scope of Williams' duties as court-appointed GAL. *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 385-86 (Mo. Ct. App. 1993). Therefore, this court should apply the defense of quasi-judicial immunity and dismiss Counts I through IV of the Amended Complaint.

> **B.    Each allegation of Williams' misconduct fall within the scope of her duties as GAL and must therefore be dismissed.**

Plaintiff, both individually and as the mother of M.H. under the wrongful death statute, seeks actual and punitive damages against Williams for her alleged acts and omissions as a GAL in the Haynes's Divorce and in M.H.'s Juvenile case. (Amended Complaint, see, Counts I – IV, "Prayer for Relief"). In support of her claims, Plaintiff offers a recitation of Williams' purported misconduct while acting as GAL  (*Id.* at ¶195 subparagraphs (a) – (q); ¶ 227 subparagraphs (a) – (n)). Williams' alleged misconduct includes:

- failing to protect M.H. from abuse and failing to ensure that M.H. received adequate mental health care (*Id.* at ¶ 195 subparagraphs (h), (i), (o); ¶ 227 subparagraph (i));

- advocating for the father during his criminal prosecution by threatening to place M.H. in foster care and other undesirable custodial arrangements/visitation if members of the Haynes family testified against Charles during his criminal prosecution (*Id.* at ¶ 195 subparagraphs (a) – (d); ¶ 227 subparagraphs (c) – (f), (l)); and,

- promoting false allegations that Plaintiff "educationally neglected" the Haynes children (*Id.* at ¶ 195 subparagraph (p); ¶ 227 subparagraph (a)).

But assuming all of the allegations are true (which Williams adamantly denies), the conduct at issue clearly falls within the scope of Williams' duties as a GAL. *Bird* 864 S.W.2d at 385 –86.

In *Bird*, plaintiffs made allegations against the GAL that were strikingly similar allegations to Plaintiff's allegations. *Id.* at 376 –86. The father in *Bird* alleged that the GAL failed to protect his minor children in a custody dispute. *Id.* at 379 –80. He alleged that the GAL did not adequately investigate or respond to claims that the children were sexually abused by their stepfather. *Id.* And the father alleged that the GAL placed the interests of the children's stepfather before the

interests of the children by advocating for their mother and stepfather to have custody rights, and by assisting with the stepfather's defense against criminal charges related to his abuse. *Id.* All of these allegations were found to relate to the GAL's statutory duty and function and therefore protected by immunity. *Id.* at 385–86.

Here, just like the father in *Bird*, Plaintiff alleges that Williams failed to protect M.H. from sexual abuse while serving as the GAL in a custody proceeding. (Amended Complaint, ¶ 195 subparagraphs (h) (i), (o); ¶ 227 subparagraph (i)).  Further, like the father in *Bird*, Plaintiff alleges that Williams placed the interests of M.H.'s abuser before M.H.'s interests by advocating for Charles and Grandmother Haynes to have custody rights, and by assisting Charles in defending against criminal charges that related to his abuse. (*Id.* at ¶ 195 subparagraphs (a) – (f), (k) - (l); ¶ 227 subparagraphs (c) – (f), (h), (l)).  Accordingly, under the *Bird* analysis and its holding, Williams is entitled to "quasi-judicial immunity" for her alleged conduct because it "falls squarely within the scope" of her discretionary duties as a court-appointed GAL. *Bird*, 864 S.W.2d at 386.[5]

In addition, Williams' alleged improper motives and wrongful conduct while serving as GAL does not eliminate Williams' right to quasi-judicial immunity. *Tolu*, 2021 WL  6122562 at *9; *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967) (holding that judicial immunity applies even the judicial officer is accused of acting "maliciously or corruptly").  Plaintiff alleges that Williams

---

[5] Missouri courts are required to appoint GALs in dissolution cases that involve custody disputes and in any judicial proceeding that involves allegations of child abuse and neglect. Section §§ 452.423 and 210.160 R.S.Mo. Accordingly, the Missouri Supreme Court has promulgated standards outlining the "General Duties and Responsibilities" of a GAL in custody cases. (*See* Amended Complaint, Exhibit 3, p. 1 - 15)(hereinafter "The Missouri Supreme Court GAL Standards").  Some of the GAL's duties include: "diligently advocat[ing] for the best interests of the child,"; "filing petitions, motions, parenting plans, responses, or objections,"; "maintaining confidentiality of all the information" received as a GAL; reviewing the progress of a child's case with the Court; developing, negotiating, and monitoring the implementation of service plans, parenting plans, court orders and staffing; and, making recommendations to the court consistent with the "best interests of the child." (Amended Complaint, Exhibit 3, p. 4 – 15).

5

threatened M.H. that, if M.H. (or members of her family) testified against Charles or, if M.H. disclosed the substance of her conversations with Williams to Plaintiff, M.H. would be placed in foster care or another undesirable custodial arrangements.[6]  (Amended Complaint, ¶ 195 subparagraphs (a) – (d); ¶ 204 subparagraphs (a) – (d); ¶ 215 subparagraph (e); ¶ 227 subparagraphs (c) – (f)).  Plaintiff also alleges that Williams is not entitled to quasi-judicial immunity because Williams' actions were wrongful.  Even assuming these allegations are true (which they are not), the subject matter of the purported threats directly relate to the Williams' role as GAL— assisting the court with making a custodial determination that was in M.H.'s "best interests." *Bird*, 864 S.W.2d at 385-86.  Thus, even if Williams' alleged threats were wrongful or unlawful, Williams' right to quasi-judicial immunity would not be extinguished. *See Martin v. Hendren*, 127 F.3d 720, 722 (8th Cir. 1997) ("Absolute quasi-judicial immunity would afford only illusory protection if it were lost the moment an officer acted improperly."); *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Tr.*, 744 F.3d 623, 630 (10th Cir. 2014)(affirming dismissal of civil claims against GAL based on allegations of illegal wiretapping because quasi-judicial immunity protects conduct that is "wrongful, even unlawful").

Similarly, Plaintiff's allegations that Williams violated the Missouri Rules of Professional Conduct ("MRPC"), or Missouri Supreme Court Standards for GALs are also entitled to immunity.

---

[6] The Amended Complaint repeatedly references Williams' testimony at Charles's sentencing hearing, claiming that this testimony "caused or contributed to cause" M.H.'s suicide. (Amended Complaint, ¶ 195, subparagraphs (e) – (f), ¶215, subparagraph (d)).  M.H. committed suicide on November 24, 2018. (*Id.* at ¶ 170).  Williams, who was subpoenaed to testify at the sentencing hearing, did not testify until December 12, 2018.  (*Id.* at ¶ 172; Plaintiff's Exhibit 42 to the Amended Complaint).  Thus, while this Court need not reach the issue to assess the application of quasi-judicial immunity to Plaintiff's claims, dismissal of the claims would also be proper because the Amended Complaint does not sufficiently allege facts to support the element of "causation" with respect to Williams being subpoenaed to testify at the sentencing hearing. *Graham v. Ozark Mountain Sightseeing, Inc.*, 181 F.3d 924 (8th Cir. 1999)(noting that to recover for wrongful death in Missouri, plaintiffs must prove that defendants' actions were the direct cause of decedent's, and"[t]his requires, at a minimum, a showing of 'but-for causation,' that is, causation in fact.")(citation omitted).

(*e.g.,* Amended Complaint, ¶¶ 63, 103, 191, 192, 193, 194, 215 subparagraph (i)).  In *Tolu,* the mother (Tolu) alleged that a GAL breached a fiduciary duty owed to mother by improperly releasing a medical report during a custody dispute. 2021 WL 6122562, at *8.  The mother claimed that the GAL's actions violated multiple court orders that limited the release of the medical information.  *Id.*  According to the mother, the GALs release of the medical report amounted to violations of the MRPC, the Health Insurance Portability and Accountability Act ("HIPPA"), and Missouri Supreme Court Standards for GAL's. *Id*.  The court found that though the GAL's release of the medical report may have may have violated court orders, <u>the conduct fell within the scope of her official GAL duties</u>.  *Id.*[7]  The court also found that the GAL's alleged violation of the MRPC, HIPPA, and the Missouri Supreme Court Standards for GALs did not negate her right to immunity:

> The Rules of Professional Conduct, and other statutory or regulatory provisions applicable to [the guardian ad litem's] performance of her duties as a court appointed guardian ad litem, serve as "mechanisms in place to prevent abuse and misconduct," diffusing the concern that quasi-judicial immunity leaves non-judicial officers unaccountable for purported misconduct.  However, violations of rules, statutes or regulations applicable to conduct within the scope of duties subject to the immunity does not negate the immunity. An immunity is a freedom from suit or liability. The underlying premise of all immunities is that 'though the defendant might be a wrongdoer, social values of great importance require[d] that the defendant escape liability.'

*Id.* at *9 – 10. (internal citations omitted).

Accordingly, even if Williams' violated certain ethical rules or regulations while serving as a GAL (which Williams adamantly denies), a close review of the allegations in the Amended Complaint makes clear that her conduct fell squarely within the scope of her GAL duties because

---

[7] The *Tolu* court acknowledged that while quasi-judicial immunity prevented the mother from pursuing a civil lawsuit against the GAL because the conduct at issue was in the scope of the GAL's court-order judicial functions, the family court had the "exclusive responsibility and authority to supervise and remove guardians ad litem [as] contemplated by 452.423 and 210.159.3." *Tolu*, 2021 WL 6122562, at *8 (*citing Bird*, 864 S.W.2d at 386).

7

her actions concerned matters at the heart of her GAL role *e.g.*, determining and making recommendation as to a custodial arrangement that would best serve M.H. and S.H.[8]

### C. Plaintiff's allegations that Williams served as M.H.'s personal attorney rather than a GAL are unavailing, incorrect, and barred by quasi-judicial immunity.

Plaintiff alleges that Williams is not entitled to "quasi-judicial immunity" because Williams because served as M.H.'s "personal attorney" during the Haynes' divorce, and directs this court to the divorce court's Order from January 30, 2017 to support this allegation. (Amended Complaint at ¶¶ 202, 211; Exhibit 2)("January 30, 2017 Order"). Plaintiff alleges that because the January 30, 2017 Order stated that Williams would serve as the "legal representative" of M.H. and noted an "attorney-client relationship," Williams served as the "personal attorney" of M.H.

The *Bird* court rejected the same argument. *Id.* at 385-386. The *Bird* court held that the "balance" of Missouri statutory and common law authority that establishes that a court-appointed GAL functions in a "quasi-judicial capacity" as an arm of the court. *Id.* at 385. The court noted: "Although the best interests of the child are always paramount, the guardian's relationship to the child is not strictly that of attorney and client." *Id.* Thus, while the *Bird* court acknowledged that the statutory authority's use of the term "legal representative" to refer to a GAL is "ambiguous," the term itself is not "incompatible" with the fact that a "[GAL] functions in a quasi-judicial capacity as an agent of the court." *Id.* at 386.

---

[8] The Amended Complaint implies that Williams voluntarily testified voluntarily at Charles' sentencing hearing, but this is demonstrably false.  Williams respectfully requests the Court to take judicial notice of the Subpoena-Order to Appear/Produce Documents/Give Depositions ("Subpoena") issued and directed to Williams in the matter of the *State of Missouri v. Charles Hayes*, Cause No. 13RI-CR00907-01, attached hereto as Williams' Exhibit A.  Exhibit A makes clear that Charles's criminal defense lawyer requested the subpoena to compel Williams to attend and testify as at Charles's sentencing hearing. Additionally, Williams respectfully asks the Court to consider the full and complete transcript from Charles's sentencing hearing, which makes clear that Williams presence as a witness was not voluntarily, that she testified in her capacity as "court appointed GAL," and that Williams did not recommend that Charles be placed on probation in connection with his criminal conviction. (*See* Amended Complaint, Exhibit 41).

8

This case is no different than *Bird*. Under *Bird*, Williams was not appointed to function (and could not function) as the personal attorney for M.H. In this case, the January 30, 2017 Order states that Williams is being appointed GAL pursuant to Section 452.423 and 452.490 R.S.Mo. (Amended Complaint, Exhibit 2). The January 30, 2017 Order does <u>not state</u> (or even imply) that Williams was required to strictly advocate for M.H. as her personal lawyer. (*Id.*) Accordingly, this Court must hold that Plaintiff's claims that the divorce court appointed Williams to serve as "personal attorney" for M.H. are not plausible and must be dismissed because they do not overcome William's immunity for acts taken within the scope of her GAL role. *Bird*, 864 S.W.2d at 385.

Multiple courts in other jurisdictions have also rejected parents' attempts to blur the lines between a GAL and child's personal attorney based on the language in appointment orders in order to overcome immunity. *See Sarkisian v. Benjamin*, 62 Mass. App. Ct. 741 (2005)(holding that "the mere fact" an appointment order designated GAL as "child's attorney" was insufficient to establish that GAL owed the child the same duty that "a privately retained attorney would owe to his or her client"); *Paige K.B. by Peterson v. Molepske*, 219 Wis. 2d 418, 432, (1998)("[T]he purpose in appointing a GAL in custody proceedings is not strictly to provide legal counsel to the child."); *Fleming v. Asbill*, 326 S.C. 49 (1997)(finding that a GAL in a custody proceeding "functions as a representative of the court that appoints her "but does not 'specifically advocate the pecuniary interests of the [minor child]'").

And, as *Bird* and *Tolu* hold, permitting suits against GALs would be incompatible with the Missouri family court's exclusive power to remove GALs. *Tolu*, 2021 WL 6122562, at *8 (*citing Bird*, 864 S.W.2d at 381). If suits like this one could be filed during a pending custody dispute, they would immediately generate a conflict between the GAL and the child the GAL represents

9

forcing the GAL to withdraw. *Bird*, 864 S.W.2d at 381. But pursuant to §§ 452.423.3 and 210.160.3 R.S.Mo., the Missouri legislature has vested family court judges with the sole power to remove a GAL during a custody matter. Thus, while Plaintiff may opine that it is "unfair" that Williams be granted immunity in this matter, civil suits are not one of the "mechanisms" that can be used to remedy the purported misconduct. Tolu, 2021 WL 6122562, at *9-10.

Accordingly, because Williams is entitled to immunity from Counts I through IV must be dismissed with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**II.    Counts II and III should also be dismissed because Plaintiff has not sufficiently alleged that Williams owed a duty of care to foresee or prevent M.H.'s suicide.**

Even if Williams had an attorney-client relationship with M.H. (which Williams disputes) Counts II and III of the Amended Complaint should be dismissed because Plaintiff has not sufficiently alleged that Williams owed a duty of care to foresee or prevent M.H.'s suicide. The issue of whether a defendant had a duty of care to protect a decedent from injury under the circumstances of a given case is "purely a question of law" to be decided by a court. *Berliner v. Milwaukee Electric Tool Corp.*, 501 S.W.3d 59, 64 (Mo. Ct. App. 2016); *Burrell ex rel. Schatz v. O'Reilly Automotive, Inc.*, 175 S.W.3d 642, 656 (Mo. Ct. App. 2005). The scope of a defendant's duty to another is also a question of law to be decided by a court. *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 654 (Mo. banc 2019). In considering whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on defendant. *Hoffman v. Union Elec. Co.*, 176 S.W.3d 706 (Mo. 2005).

While Missouri appellate courts have not had occasion to consider this issue, multiple federal and state courts have concluded that an attorney does not have a duty to foresee and prevent a client's suicide. *See e.g., Cleveland v. Rotman*, 297 F.3d 569 (7th Cir. 2002) (finding "no

10

justification" for imposing a duty on attorneys to foresee and avoid a client's suicide since doing so could "expose attorneys to an unreasonable risk of liability, which would ultimately deprive visibly depressed people of competent legal advice"); *Snyder v. Baumecker*, 708 F. Supp. 1451 (D.N.J. 1989) (holding that "as a matter of law, an attorney's duty to represent his client vigorously does not include the duty foresee and prevent the client's suicide"); *Worsham v. Nix*, 2004 OK CIV APP 2, 83 P.3d 879 (June 3, 2003)(determining that attorney was not liable for client's suicide where the only "reasonable conclusion" from the facts was that suicide was not foreseeable to his attorney); *McPeake v. William T. Cannon, Esquire, P.C.*, 553 A.2d 439 (Pa. Super. Ct. 1989) (refusing to find that a negligent attorney could held liable for a client's suicide "[b]ecause an attorney does not possess the ability either to perceive that a client is likely to commit suicide, or to prevent the suicide"); *McLaughlin v. Sullivan,* 461 A.2d 123 (N.H. 1983) (determining that a client's suicide is not a "hazard against which a lawyer can be fairly said to have the duty to guard").  In determining whether an attorney has a duty to foresee a client's suicide, courts have focused on two things: foreseeability and causation.  *See e.g.*, *Cleveland*, 297 F.3d 569 at 573-74; *Snyder*, 708 F. Supp. at 1463-46; *Worsham*, 83 P.3d at 884-87; *McPeake,* 553 A.2d at 441-43; *McLaughlin,* 461 A.2d at 124-27.

Counts II and III fail to plausibly allege that M.H.'s suicide was "foreseeable" to Williams.  Plaintiff does not allege that Williams (her alleged "personal attorney") had or should have had the expertise or professional skills needed to foresee that M.H. would commit suicide.  *Cleveland,* 297 F.3d at 573; *Snyder* at 708 F. Supp. 1451 at 1463.  In *Cleveland*, the Seventh Circuit upheld the 12(b)(6) dismissal of a legal malpractice action on the basis that the attorney had no duty to prevent or avoid a client's suicide.  *Cleveland*, 297 F.3d 569 at 571.  A widow alleged that the attorney's negligence caused the decedent's suicide.  *Id.*  The decedent had been involved in a

11

lengthy dispute with the IRS, and the attorney was retained to assist in the matter. *Id.* According to the widow, the attorney gave erroneous tax advice to the decedent, which "triggered" additional problems with the IRS, which in turn "triggered" the decedent's suicide. *Id.* at 572. To determine whether the attorney had a duty to prevent the suicide, the court considered the likelihood that the attorney's conduct caused the suicide. *Id.* at 573. The court noted that even before the attorney was retained, the decedent had been in a dispute with the IRS for years and had been suffering mental health issues. *Id.* Moreover, the decedent was suffering from mental health issues before the attorney's negligence. *Id.* Thus, "in the context of the series of events" arising from the IRS dispute, the court determined that the attorney's conduct was "not more likely than any of the other events" in the decedent's life to have caused his suicide. *Id.*

The allegations here are like those in *Cleveland* in that Plaintiff has not sufficiently alleged that Williams conduct caused her suicide. The Amended Complaint recounts, in painstaking detail, the traumatic experiences M.H. allegedly endured throughout her lifetime, including Charles's verbal emotional, physical, sexual abuse of M.H. and her family, her parents' divorce, bullying at school, placement in foster care multiple times, her father's criminal prosecution for sexual abuse of M.H.'s sister, and his plea of guilty for statutory sodomy. (Amended Complaint, ¶¶ 23 – 24, 27, 32, 35, 36, 37, 42, 76 – 79, 167). Even if Williams served M.H.'s "personal attorney" (which Williams did not) and engaged in the conduct alleged, Williams' misconduct cannot be said to be "more likely than any of the other events" to have caused M.H.'s suicide. *Cleveland*, 297 F.3d at 573.

Further, placing the burden on an attorney to foresee a suicide is "very great." *Id.* As other courts have recognized, imposing liability on attorney for a client's suicide could deter attorneys from taking on clients with mental health issues and lead to "unexpected and unfair liability." *Id.*;

12

*see also Snyder,* 708 F. Supp. 1451 at 1464; *McPeake,* 553 A.2d at 443; *McLaughlin* 461 A.2d at 127 –28). Accordingly, because Williams did not owe a duty to foresee and prevent M.H.'s suicide, Counts II and III should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**III.    Count IV fails as a matter of law because Williams owed no duty of care to Plaintiff even if she acted outside the scope of her GAL duties.**

Count IV is styled as the "personal claim" of Plaintiff Cynthia Haynes. Haynes alleges she was injured by Williams conduct which occurred "outside the scope of GAL duties." (Amended Petition at ¶222(a) – (n)). But even if Williams did act "outside the scope" of her GAL duties, Plaintiff has not sufficiently alleged facts to establish that Williams owed Plaintiff a legal duty of care. "A legal duty owed by one to another may arise from at least three sources: (1) it may be prescribed by the legislative branch; (2) it may arise because the law imposes a duty based on the relationship between the parties or because under a particular set of circumstances an actor must exercise due care to avoid foreseeable injury; or (3) it may arise because a party has assumed a duty by contract or agreement whether written or oral." *Cupp v. National R.R. Passenger Corp.* 138 S.W.3d 766, 771 (Mo. Ct. App. 2004)(citing *Lumbermens Mut. Cas. Co.* 92 S.W.3d at 263). "While the issue of whether a duty exists is a question for the court, conclusions about the particular facts of the case are an issue for the jury." *Lumbermens Mut. Cas. Co.*, 92 S.W.3d at 267.

To support Plaintiff's contention that Williams owed Plaintiff a duty of care, the Amended Complaint cites to *In re Krigel*, 480 S.W.3d 294, 299 (Mo. 2016). But *In Re Krigel,* (a disciplinary opinion that arose from an action filed by Missouri's Chief Office of Disciplinary Counsel), is not a civil action for damages. The case does not involve a GAL, a wrongful death claim, or any other factual circumstances similar to those here. Critically, In re *Krigel* certainly  not state that a GAL

13

owes a duty of care to the parent of a minor in a custody case.[9]  *In re Krigel*, 480 S.W.3d at 294-95.  Similarly, Plaintiff's citations to *Donahue v. Shughart, Thomson & Kiroy, PC*, 900 S.W.2d 624, 629 (Mo. banc 1995), *Kennedy v. Kennedy*, 819 S.W.2d 406, 410 (Mo. App. E.D. 1991), and *Deutsch v. Wolf*, 994 S.W.2d 561, 571 (Mo. 1999) are unavailing and of no moment.  *Donahue* held "the question of legal duty of attorneys to non-clients will be determined by weighing factors in a balancing test," including whether the facts established "the existence of a *specific intent* by the client that the purpose of the attorney's services were to benefit the plaintiffs." *Id.* (emphasis added).

As set forth above, Plaintiff does not sufficiently allege facts to support the conclusion that M.H. was Williams' client, but even accepting this conclusion as true, the Amended Complaint does not allege facts that establish M.H. hired Williams with the specific intent to perform legal services for *Plaintiff*.  Accordingly, because Williams did not a duty of care to Plaintiff, Count IV should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

Plaintiff's claims in Counts I - IV, both individually and on behalf of M.H., fail to state a claim pursuant to Rule 12(b)(6) as they are barred by quasi-judicial immunity because each act of alleged misconduct by Williams relates to and is within the scope of her duties as GAL.  Counts II and III, which are premised on the faulty notation that Williams was personal attorney for M.H., also fail as a matter of law because a lawyer has no duty to foresee or prevent a client's suicide.

---

[9] Plaintiff implies that this Court should find that William's "duty" as a GAL to adhere to the MRPC and the Missouri Supreme Court GAL Standards is tantamount to owing a third-party a legal "duty" of care. Missouri courts have declined to entertain that theory, recently stating "[W]e question whether an alleged violation of the Missouri Rules of Professional Conduct, HIPPA, or Guardian ad Litem Regulations would support a private right of action for damages against guardian ad litem, even in the absence of quasi-judicial immunity." *Tolu*, 2021 WL 6122562, at *8.

Finally, Count IV also fails as a matter of law because Williams owed no duty to Plaintiff individually or as a third party.

                Respectfully submitted,

                ROBERTS PERRYMAN, P.C.

By:   */s/ Susan M. Dimond*
       Richard C. Wuestling, #30773MO
       Susan M. Dimond, #57434MO
       Dustin L. Goldberger, #70080MO
       1034 S. Brentwood, Suite 2100
       St. Louis, Missouri 63117
       Phone: (314) 421-1850
       Fax: (314) 421-4346
       rwuestling@robertsperryman.com
       sdimond@robertsperryman.com
       dgoldberger@robertsperryman.com

***Attorneys for Defendants Jennifer Williams and Jennifer Williams d/b/a Williams Law***

### CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2022, the foregoing was electronically filed with the Clerk of the Court using CM/ECF electronic filing system which will send notification of such filing to the following and email to all counsel of record.

Laurence D. Mass laurencedmass@att.net
Evita Tolu evitatolu@outlook.com
***Attorneys for Plaintiff***

Thomas W. Collins, III tcollins@blantonlaw.com
***Attorney for Defendant Spain Miller Galloway & Lee, LLC***

John C. Steffens jsteffens@lumbaughlaw.com
***Attorney for Defendant Bernice Haynes***

                */s/ /s/ Susan M. Dimond*