IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA K. HAYNES (a/k/a Cynthia K. Randolph), individually and under the Missouri Wrongful Death Statute<br><br>Plaintiff,<br><br>vs.<br><br>JENNIFER WILLIAMS, individually, et al.<br><br>Defendants. | Case No: 1:21-CV-00160-ACL |

**DEFENDANT SPAIN, MILLER, GALLOWAY AND LEE, LLC'S
MEMORDANDUM IN SUPPORT OF MOTION TO DISMISS
COUNTS I-V OF THE AMENDED COMPLAINT**

Defendant Spain, Miller, Galloway and Lee, LLC, by and through undersigned counsel, and for its Memorandum in Support of Motion to Dismiss Counts I-V of the Amended Complaint, state as follows:

**Introduction**

Defendant Spain, Miller, Galloway and Lee, LLC ("Spain Law Firm") is a law firm in Poplar Bluff, Missouri. Co-defendant Jennifer Williams ("Williams") is a licensed attorney who was previously employed by the Spain Law Firm. While employed at the Spain Law Firm, Williams was appointed guardian ad litem for the minor children of Plaintiff Cynthia Haynes and Defendant Charles Haynes following allegations of neglect in their divorce in Ripley County, Missouri. Plaintiff's claims against Williams and the Spain Law Firm arise out of the actions and omissions of Williams in the divorce proceedings and related juvenile proceedings.

Specifically, Williams' communications with the minor child M.H., her investigation into various allegations concerning the minor children, her actions or omissions in performing her

investigation, her communications with the court, her testimony in court and ultimately her recommendations to the court. Plaintiff alleges that because of the actions or omissions of Williams, M.H. committed suicide on November 24, 2018. Plaintiff has alleged multiple causes of action arising out of the same operative facts including wrongful death, legal malpractice and breach of fiduciary duty on behalf of herself and as a member of the class of individuals authorized to bring suit under the Missouri Wrongful Death Statute (Counts I through IV). Plaintiff has alleged an additional cause of action against the Spain Law Firm for negligent supervision of Williams. Of note, Plaintiff has also sued M.H.'s grandmother, Bernice Haynes, for wrongful death (Count VI) and M.H.'s father, Charles Haynes, for sexual assault and battery (Count VII).

Plaintiff's claims against Williams and the Spain Law Firm must fail as Williams and her employer have absolute immunity against suit for any and all causes of action arising out of her performance of her duties as guardian ad litem.

## Legal Standard

The Spain Law Firm moves to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. R. 12(b)(6) challenging the legal sufficiency of Plaintiff's allegations. Fed. R. Civ. P. R. 12(b)(6) authorizes the Court to dismiss a claim based on a dispositive issue of law. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). This procedure streamlines litigation by dispensing with needless discovery and factfinding. *Id*.

To survive said motion, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's claim for relief "must include sufficient factual information to provide the 'grounds' on

which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 & n.3). The law requires Plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

For purposes of this Motion, the Court accepts as true all of the factual allegations contained in Plaintiff's Complaint, even if "actual proof of those facts is improbable." *Id.* At 555-56. However, the Court is not required to accept Plaintiff's legal conclusions. *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Determining whether Plaintiff's Complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common senses." *Id.* at 679.

## Argument

Federal jurisdiction in this matter is based upon diversity of citizenship under § 28 U.S.C. 1332. *See* ¶ 1 of Amended Complaint for Damages (Document No. 6). Typically, in matters of diversity jurisdiction, state law controls. In this circumstance, Missouri law arises out of the federal common law and both state and federal law clearly provide that Williams and the Spain Law Firm have absolute immunity from suit.

The doctrine of judicial immunity is firmly established at common law and was adopted by the United States Supreme Court in *Bradley v. Fisher*, 80 U.S. 335 (1971). A judicial officer shall be free to act upon his or her own convictions "without apprehension of personal consequences." *Id.* at 347. Allowing suits by those aggrieved by judges would destroy their independence. *Id.* Therefore judges are exempt from liability and civil actions and, in fact, exempt from suit. *Id.*

3

This judicial immunity not only protects judges but also protects those exercising judicial functions. *Westfall v. Irwin,* 484 US 282, 296 (1988). Judicial immunity attaches to the function, not the office, and the federal courts have extended judicial immunity to various individuals involved in the judicial process including guardians ad litem. *Briscoe v. LaHue*, 460 US 325 (1983); *Butz v. Economou* 438 US 467, 512-514 (1978*); Imbler v. Pachtman*, 424 US 409 (1976); *Dornheim v. Sholes*, 430F.3d 1919-1925 (8th Cir. 2005); *McCuen v. Polk Cty., Iowa,* 893 F.2d at 172, 174 (8th Cir. 1990).

Missouri expressly adopted the federal approach in *State ex rel. Bird v. Weinstock,* 864 S.W.2d 376, ( Mo. Ap. E.D. 1993). In *Bird*, the Missouri Court of Appeals specifically extended the doctrine of judicial immunity to guardians ad litem. "We hold the same policies that led the Missouri Supreme Court to recognize judicial immunity in *State ex rel. Raack v. Kohn* compel the extension of quasi-judicial immunity to statutorily mandated guardians ad litem in child custody proceedings." *Bird*, 864 S.W.2d at 385-86. Among the rationale for extending quasi-judicial immunity to guardian ad litem is to protect their impartiality so that they remain "unaltered by the intimidating wrath and litigious penchant of disgruntled parents." *Id.* at 386 (quoting *Short by Ooosterhous v. Short*, 730 F. Supp. at 1039). Only immunity will preserve for the trial court "the exclusive responsibility and authority to supervise and remove guardian ad litem contemplated by" R.S.Mo. 452.423.3. *Id.*

The Missouri Court of Appeals recently confirmed on December 28, 2021, that guardians ad litem are "absolutely immune" from civil liability based on the common law doctrine of quasi-judicial immunity. *Tolu v. Reid*, ED109721 (Mo. App. E.D. 2021), slip op. p. 21 *citing Bird*, 864 S.W.2d at 382. The determination of whether quasi-judicial immunity exists is a question of law. *Id.* at p. 17.

4

The only plausible theory of liability against guardian ad litem under both federal and Missouri law is to establish that the guardian ad litem acted outside the scope of the judicial functions assigned. In Missouri, the scope of guardian ad litem duties is broad. Pursuant to statute, the guardian ad litem shall act as the "legal representative of the child" and may examine, cross examine or subpoena witnesses and offer his or her own testimony. R.S.Mo. 452.423.3(1).

While guardian ad litem such as Williams are appointed to serve as legal representatives to a child, it is not strictly an attorney client relationship. *Tolu v. Reid*, p. 18.

> Thus, although guardian ad litems in custody matters are technically appointed to serve as legal representatives to a child (*See* § 452.423.3), in fact, 'Missouri Courts have consistently adhered to the traditional view that the Guardian's principal allegiance is to the Court. Although the best interests of the child are always paramount, the Guardian's relationship to the child is not strictly that of attorney client.'

*Id.* (citing *Byrd,* 864 S.W.2d at 385).

The guiding principle for guardian ad litem is the best interest of the child. The guardian ad litem is to gather information so that the court may determine what is in the best interest of the child. The guardian ad litem is to bring all of the necessary information bearing on the question to the attention of the Court "untainted by the parochial interest of the parents." *Byrd* at 384. As the Court is prevented from conducting its own investigation, the guardian ad litem must investigate the facts essentially functioning as the Court's investigative agent bearing in mind the standard best interest of the child. *Id.*

The guardian ad litem is to conduct all necessary interviews in order to "ascertain the child's wishes, feelings, attachments and attitudes." RSMo 425.423.3(2). This includes interviewing the child when appropriate. "The guardian ad litem should conduct regular face-to-face meetings with the child, to the extent appropriate, to observe the child's physical, mental, social, educational, and familial well-being and to form opinions concerning the child's best

interests. *See* Standards with Comments for Guardians ad Litem in Juvenile and Family Court Division Matters, comment to STANDARD 4.0.

The guardian ad litem enjoys absolute immunity in fulfilling the broad role as the court's investigative agent governed by the guiding principle of determining what is in the best interest of the child. A thorough review of the allegations in the Amended Complaint, clearly establishes that all allegations against Williams fall firmly within the scope of her duties as guardian ad litem.

Plaintiff has delineated her claims against Williams and the Spain Law Firm into five counts. Plaintiff describes Count I as "Wrongful Death – Acting Outside the Scope of GAL Duties (Defendants Williams and Spain, Miller)." See Amended Complaint, p. 49 (Doc. #6). The relevant allegations are set forth in Paragraph 195 where Plaintiff alleges that Williams "acted outside the scope of her duties as GAL in the Haynes divorce in one or more of the following respects:

    a.    Threatening M.H. that if her mother, her stepsister, and/or M.H. testified against Charles in his pending sexual abuse criminal case, M.H. and S.H. would be returned to foster care;

    b.    Threatening to cut M.H. and S.H.'s visitation time with Plaintiff, if M.H., Mellissa, or Plaintiff testified against Charles in his criminal case;

    c.    Threatening M.H. that if her mother, stepsister, and/or M.H. testified against Charles at his sentencing, M.H. and S.H. would be returned to foster care;

    d.    Placing M.H. in a double bind by threatening that if she, her stepsister and/or her mother testified against Charles at his criminal trial, M.H. would be placed in foster care, but if she did not testify against her father, and her father was released or placed on probation as Williams advocated, that M.H. would be placed in her father's custody or required to spend time with her father, who had sexually abused M.H.;

    e.    Testifying at Charles' sentencing favorably to Charles seeking to have Charles placed on probation;

| | | |
|---|---|---|
| f. | Testifying at Charles' sentencing hearing that Charles was not at fault because M.H. and S.H. were "highly sexualized;" |
| g. | Failing to realize that her perception that S.H. and M.H. were "highly sexualized" was the direct result of sexual abuse by their father; |
| h. | Failing to protect M.H. from sexual abuse at Grandmother Haynes' house; |
| i. | Failing to report to the Divorce and Juvenile Courts that M.H. was sexually, physically, and emotionally abused by Charles; |
| j. | Failing to hotline sexual, physical, and emotional abuse M.H. suffered in the custody of Grandmother Haynes as was required by R.S. Mo. §210.115; |
| k. | Willfully insisting on M.H.'s interaction with her father and Grandmother Haynes knowing that both of them abused or allowed the abuse of M.H. sexually, emotionally, and/or physically; |
| l. | Advocating for M.H.'s reunification with her sexual abuser; |
| m. | Threatening M.H. that if she did not reunify with Charles, M.H. would be placed back in foster care or, worse, in the custody of Charles, her sexual abuser; |
| n. | Not reporting to the Divorce and Juvenile Courts M.H.'s physical and mental condition; |
| o. | Failing to seek appropriate healthcare personnel to help M.H. combat depression, PTSD, and sexual abuse trauma; |
| p. | Promoting false allegations of "educational neglect even while M.H. and S.H. were excelling at school;" and |
| q. | Failing to protect M.H. from false allegations of educational neglect, *Taylor v. Taylor*, 60 S.W.3d 652 (Mo. App. E.D. 2001)." |

Plaintiff makes similar alleges on her own behalf in Count IV.

The allegations in subparagraphs a., b., c., d., h., l., and m. relate directly to Williams' recommendations regarding custody and visitation – a central responsibility of the guardian ad litem and squarely within her scope of duties.

The allegations in subparagraphs i., j., n. o., p., and q. related directly to Williams' investigation into various allegations made by the parties or that came to light during the case, as

7

well as her response or lack of response to the same. Again, investigation of such allegations and issues, as well as how best to address those issues through the court is squarely within the duties of the guardian ad litem.

The remaining allegations relate to Williams' testimony at the sentencing of Charles Haynes. First of all, the reason Williams was subpoenaed to testify was because of the knowledge she had accumulated as the guardian ad litem in the Haynes divorce. Second, no fair reading of the transcript of her testimony can conclude that she advocated or testified favorably for Charles Haynes – she simply answered the questions proffered by counsel. *See* Transcipt (Doc. #1-41). Finally, witnesses are immune from suit for testimony given in court. *Briscoe v. LaHue*, 460 U.S. 325, 334 ("witnesses are entitled to absolute immunity from civil suit for testimony given in judicial proceedings"). Again, Plaintiff's allegations fail to establish that Williams acted outside the scope of her duties as guardian ad litem and Count I and IV of Plaintiff's Amended Complaint must be dismissed.

Plaintiff's Counts II, III, & V, make no attempt to take the allegations outside the scope of Williams' duties as guardian ad litem. Rather Plaintiff alleges that Williams was acting in a separate role as M.H.'s personal attorney. This is simply not true. Plaintiff's reliance on the January 30, 2017 Order for Appointment of Guardian Ad Litem (*See* Doc. #1-2) as the basis that Williams served separately as personal counsel for M.H. and as Guardian Ad Litem is misguided. The January 30, 2017 Order for Appointment of Guardian Ad Litem served as a supplement to the previous docket entry of May 6, 2016, and did not change the role of Williams as guardian ad litem.

The role envisioned for the guardian ad litem in Missouri is a hybrid of the traditional and attorney-client roles, although closer to the traditional role than the strict attorney-client advocate

role. *Bird*, 864 S.W.2d at 385. The guardian ad litem's principle allegiance is to the court. *Id.* Further, "there is no direction that the Guardian advocates its [the child's] wishes and feelings even if the Guardian concludes that the child's desires are not in its best interest." *Id.* In all aspects of the case, including the juvenile proceedings, Williams was operating as guardian ad litem – the hybrid role described by Missouri courts and as outlined in the January 30, 2017 Order for Appointment of Guardian Ad Litem (*See* Doc. #1-2). Therefore, Counts II, III, and V of Plaintiff's Amended Complaint must be dismissed.

Further in regard to Plaintiff's Count V alleging negligent supervision, The Spain Law Firm, as the employer of Williams, is protected by the same quasi-judicial immunity which protects Williams. *See Tolu v. Reid* (upholding dismissal with prejudice against employer and law firm of guardian ad litem as well as other employer of other defendants protected by quasi-judicial immunity).

WHEREFORE, Defendant Spain, Miller, Gallowy & Lee, LLC requests that the Court dismiss with prejudice Count I through V on the basis of quasi-judical immunity and grant Defendant such other and further relief as the Court deems just and reasonable.

**Respectfully submitted,**

BLANTON, NICKELL, COLLINS,
DOUGLAS & HANSCHEN, L.L.C.
219 South Kingshighway
Post Office Box 805
Sikeston, Missouri  63801
PHONE (573) 471-1000      FAX (573) 471-1012
EMAIL: tcollins@blantonlaw.com

By: _____
Thomas W. Collins, III            46295MO

*Attorneys for Spain, Miller, Galloway & Lee, LLC*

9

**CERTIFICATE OF SERVICE**

I, Thomas W. Collins, III, an attorney, hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of the United States District Court for the Eastern District of Missouri – Southern Division, this 18th day of January, 2021, using the CM/ECF system. I further certify that I signed the original of this document and will keep said original for a period of not less than the maximum allowable time to complete the appellate process.

/s/ Thomas W. Collins, III
Thomas W. Collins, III