**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| CYNTHIA K. HAYNES (a/k/a Cynthia K. Randolph), | ) | |
| individually and under the Missouri Wrongful Death | ) | |
| Statute | ) | |
| | ) | |
| Plaintiffs | ) | |
| v. | ) | Cause No. 1:21-CV-00160-SNL |
| | ) | |
| JENNIFER WILLIAMS, individually, | ) | JURY TRIAL DEMANDED |
| JENNIFER WILLIAMS, d/b/a WILLIAMS LAW, | ) | |
| SPAIN, MILLER, GALLOWAY & LEE, LLC, | ) | |
| a Missouri limited liability company, | ) | |
| BERNICE HAYNES, individually and | ) | |
| CHARLES HAYNES, individually | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO**
**DEFENDANT BERNICE HAYNES' MOTION TO DISMISS**

**INTRODUCTION**[1]

Plaintiff adopts the Standard for Review a Motion to Dismiss stated in Plaintiff's

Memorandum in Opposition to the Motions to Dismiss filed by Williams and Spain-Miller.

Plaintiff adopts her Statement of Facts from her Memorandum in Response to Defendants

Williams' and Spain-Miller's Motions to Dismiss.  Plaintiff does not contest Bernice Haynes'

Statement of Facts, including facts gathered from the pleadings in the divorce case except for one

instance.  Bernice Haynes states that in July 2018 M.H. was placed in the custody of Plaintiff

after having been in foster case since February 2017 and cites ¶166.[2]  In ¶148 Plaintiff alleges

that on July 27, 2017 the Juvenile Court returned M.H. and S.H. to Plaintiff's physical custody

after DFS determined there was no educational neglect on Plaintiff's part, but that the two

Juvenile Court cases concerning M.H. and S.H. remained open.  DFS remained legal custodian of

M.H. and S.H.  (See also Exh. 30, the Juvenile Court Order of July 27, 2017.)  In ¶166, Plaintiff

alleges that Juvenile Court jurisdiction over M.H. and S.H. was terminated and that both physical

and legal custody of M.H. and S.H. were awarded to Plaintiff.  DFS at that time concluded that

the best interests fo M.H. and S.H. would be served by them remaining in Plaintiff's physical

custody and having legal custody returned to her.  (See Exh. 39, the June 27, 2018 Juvenile Court

Order accomplishing the transfer of legal custody and continuing physical custody of M.H. and

S.H. with Plaintiff.)

---

[1] Plaintiff suggests that this Court review her Memorandum In Opposition to Defendants Williams' and Spain-Miller's Motions to Dismiss before reviewing this Memorandum.

[2] All paragraph citations are to a paragraph in the Amended Complaint, Document 6.

**ARGUMENT**

Unlike the Williams and Spain-Miller Defendants, Bernice Haynes, in her Memorandum, correctly identifies Kivland vs. Columbia Orthopaedic Group, LLP, 331 S.W.3d 299 (Mo. 2011) as the Missouri Supreme Court decision which sets the parameters for causation in Missouri for a wrongful death case based upon suicide. As Kivland states, a plaintiff need provide evidence that a defendant's negligence directly caused or directly contributed to cause a decedent's suicide. In making that evaluation, the trier of fact evaluates whether the suicide was the "natural and probable consequence" of the injuries suffered as a result of what the defendant did. Making that causal connection may require expert testimony. Kivland, 331 S.W.3d at 309-310. (See Haynes' Memorandum at pg. 7.)

Bernice Haynes is also correct that the traditional proximate cause rules apply in cases in which death results from suicide as established by Kivland, *supra*, which bases that ruling on Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 865 (Mo. 1993). Missouri case law does not require that a defendant has to have foreseen a victim's suicide as opposed to having had to foresee that defendant's action could cause injury to the victim, the decedent. It is for the jury to decide if those injuries naturally and probably led the victim to commit suicide. For example, in Kivland, the defendant orthopaedist could reasonably have foreseen that if he negligently performed surgery that he would have caused harm to plaintiff Kivland. But the surgeon would not necessarily have foreseen that the harm he caused would have led to paralysis and to debilitating, constant pain in plaintiff Kivland's lower extremities that was not relieved through medication. The defendant orthopedist in Kivland was not charged with reasonably foreseeing the full extent of the decedent's injuries and the consequences flowing therefrom. Neither is Bernice Haynes. See also, Riley v. Willo Prods. Co., 2013 U.S. Dist. LEXIS 13887 (E.D. Mo.

2013) in which Judge Weber applied the ruling in Kivland, *supra*, to deny a motion to dismiss in a wrongful death action based upon injuries from a defective product causing a decedent's suicide.

Bernice Haynes tries to minimize her role in what occurred to M.H. by stating that she allowed Charles Haynes' unsupervised visits with M.H. for "a very short period."  During that forty day plus period, there was sufficient time for Charles Haynes to have sexually molested his daughter, M.H., multiple times.  He was visiting Bernice Haynes' home unsupervised daily. (¶85.)  The Court specifically ordered that any visits Charles Haynes had with M.H. to be "supervised." (¶¶67-68.)  Bernice Haynes acknowledged that she had failed to supervise Charles Haynes' time with M.H. and S.H. in the past and that she now (after December 7, 2016) had the responsibility to supervise Charles Haynes and that if she did not, she would be on the hook for what occurred.  (¶¶55-56.)

Unless Bernice Haynes wishes to concede that had she supervised Charles Haynes in his encounters with M.H., that she would have stood by while he sexually molested her, then her failure to supervise Charles Haynes would be a significant contributing cause to the agony M.H. suffered as a result of Charles Haynes' molestation of M.H..  It was at the end of that "very short period" during which M.H. principally lived at Bernice Haynes' home, that M.H. first harmed herself which led to her commitment to the psychiatric ward at DePaul Hospital.  (¶¶94-99.)[3]

Bernice Haynes also cites other allegations that M.H. suffered emotional consequences from what occurred to her.  (Bernice Haynes Memorandum at 8-9.)  Many of the facts that Bernice Haynes cites are part of the continuum of the emotionally destructive effect that M.H.

---

[3] Paragraphs 50-100 give a more complete review of the circumstances of M.H. and S.H. being ordered to live with Bernice Haynes and what transpired thereafter.

suffered as the result of her father's abuse.  For example, M.H. having been sent for medical

and/or psychiatric help twice after cutting herself resulted from her father's abuse.  M.H.'s

statement to the psychiatrist at DePaul that she wanted her father in jail occurred during M.H.'s

first hospitalization after having lived with Bernice Haynes.  The effect of the threats that

Williams made to M.H. not only concerned Charles Haynes' abuse of M.S.H., but compounded

the trauma and suffering M.H. endured from her father's sexual abuse of her.

Most importantly, the consequences of Charles Haynes' sexual abuse of M.H. is also a

direct result of Bernice Haynes' failure to supervise Charles Haynes when he came to her house,

in the middle of the night and went into M.H.'s bedroom.  The connection between Bernice

Haynes' negligence and M.H.'s eventual suicide is no more remote than the connection between

Charles Haynes' abuse of M.H. and her suicide.  Bernice Haynes concedes the causal connection

between Charles Haynes' abuse and M.H.'s suicide.  (Bernice Haynes' Memorandum at 8.)

Bernice Haynes' characterization of M.H. having been in foster care for approximately seventeen

months after living with Bernice Haynes is factually incorrect.  As stated in ¶148, M.H. returned

to live with Plaintiff twelve months earlier, in July 2017, than Bernice Haynes acknowledges.

What Bernice Haynes' fails to acknowledge is that the MAI on wrongful death directs

that a defendant, Bernice Haynes in this case, can be accountable if her actions directly caused or

directly <u>contributed</u> to cause the death of the decedent.  As noted in <u>Kivland</u>, *supra*, there was no

reason under its holding to change these jury instructions.  331 S.W.3d at 308-310.  Bernice

Haynes had an obligation to supervise Charles Haynes' visitations with M.H., not only as a result

of the orders entered by the custody court, but also by her own acknowledgment of what her duty

was.  However, that duty is also articulated generally in case law.  For example, in <u>A.R.H. v.</u>

<u>W.H.S.</u>, 876 S.W.2d 687 (Mo. App. E.D. 1994) the court held that a grandmother had a duty to

Page 4 of  8

supervise a step-grandfather to prevent his sexually abusing a granddaughter.

That duty in the A.R.H. case is tempered by the holding that the grandmother did not

have to do something that would jeopardize her marriage.  That caution is not applicable in the

instant case.  In A.R.H. the duty to supervise was also tempered by the caution that unless the

grandmother had reason to know that the step-grandfather was inclined to or was likely to

sexually abuse the granddaughter, the grandmother did not have a duty to prevent any abuse.  But

once the grandfather had abused that granddaughter, the grandmother had a duty to prevent

further abuse.  The facts of this case put Bernice Haynes on notice to have prevented any abuse

by Charles Haynes of M.H. by doing as she had ordered, supervise any visits that Charles Haynes

had with M.H.  She certainly had an obligation to prevent Charles Haynes' middle of the night

incursions into M.H.'s bedroom.  See also, O.L. v. R.L., 62 S.W.3d 469 (Mo. App. W.D. 2001)

which reiterates the basic principles of the need for the grandmother to supervise the

grandfather's contact with their grandchildren.

Plaintiff has appropriately pled causation against Bernice Haynes.  In order to plead

causation, Plaintiff needs to have alleged facts which establish causation in fact, "but for"

causation.  Once that is established, Plaintiff's pleading need establish that it was   reasonably

foreseeable that as a result of Bernice Haynes' negligence that M.H. would be harmed; that the

natural and probable consequence of Bernice Haynes' negligence is that harm would come to

M.H.  Plaintiff's pleading adequately fulfills these requirements.  See Callahan v. Cardinal

Glennon Hosp., *supra*.  As the court in Callahan explains, where there are multiple torts and

more than one cause, the "but for" causation test is used to determine that a defendant's actions

are in fact a cause of injuries suffered by, in this case, M.H.  Callahan, *supra*, 863 S.W.2d at 860-

863.

The "but for" causation test is applied separately to each defendant. Its application to a particular defendant is of no consequence to establishing causation by any other defendant. Callahan, 863 S.W.2d at 862. As the Callahan court states, discussions concerning the "semantics of causation" are not important in Missouri although they might be in other States. Under the MAI, Missouri only uses the terms "directly caused" or "directly contributed to cause" a plaintiff's injury. It is for a court to determine whether after a jury verdict or, in this case, when considering a Motion to Dismiss, there is any evidence pled that might support causation. It is not for the court to determine that the amount of evidence is sufficient. It only determines whether there is any viable evidence that supports causation. 863 S.W.2d at 863. Plaintiff has done that.

As the court in Callahan, *supra*, also explains, the "but for" causation test only excludes acts that are not causal in fact. In order to base liability on causes that are not "too far removed from the ultimate injury or damage" one has to look beyond the "but for" causation test and consider foreseeability. However, in Missouri, the test of foreseeability is that the injury is "a reasonable and probable consequence" of the negligence of the defendant. Callahan, 863 S.W.2d at 864. In making that evaluation, the plaintiff only need to have evidence that it was foreseeable that a person would be injured as the result of a defendant's negligence. The plaintiff need not prove that it was foreseeable that a specific injury would occur. As was necessary in Callahan, expert testimony may be required to connect the negligent act with the ultimate injury complained of. 863 S.W.2d at 865. In Callahan, it was foreseeable that when a doctor or a nurse is negligent that a patient may be injured. It was similarly foreseeable in this case that if Bernice Haynes did not supervise Charles Haynes, as she was required to do at all times, that M.H. (or even S.H.) could be harmed by Charles Haynes. He had admitted to sexually abusing M.H.'s

older stepsister in a recorded statement Plaintiff obtained in May 2014, even if he had not yet pled guilty to doing so.  To prevent harm to M.H. and S.H. was the very purpose of Charles Haynes having only supervised visits.

The same principals of causation and how they apply in Missouri were articulately reaffirmed in Wagner v. Bondex Int'l. Inc., 368 S.W.3d 340, 347-351, 353-354 (Mo. App. W.D. 2012).  As the court in Wagner, *supra*, explains, when there are multiple defendants, the plaintiff need only show that a specific defendant's negligence was a cause of the injury or a contributing cause.  The plaintiff need not show that any specific defendant was the sole cause of the injuries the decedent suffered.  368 S.W.3d at 350.  Plaintiff's pleadings establish that Bernice Haynes' negligence was a cause in fact and was not too remote a cause of M.H.'s suicide.  Given Charles Haynes' history of abuse, given the custody court's order for supervised visitation, and given Bernice Haynes' acknowledgment of the importance of Charles Haynes having supervised visits, among all of the factors alleged, Plaintiff has properly pled causation against Bernice Haynes. Her Motion to Dismiss should be denied.

## CONCLUSION

For all of the above stated reasons Defendant Bernice Haynes' Motion to Dismiss should be denied.

Respectfully submitted,

| | |
|---|---|
| /s/  Laurence D. Mass | /s/  Evita Tolu |
| Laurence D. Mass    #30977 | Evita Tolu                #49878 |
| 230 South Bemiston, Suite 1200 | Immigration Law Group, LLC |
| St. Louis, Missouri  63105 | 9378 Olive Blvd., Suite 307 |
| Phn:   (314) 862-3333, Ext. 20 | St. Louis, MO 63132 |
| Fax:   (314) 862-0605 | Phn:  314-323-6022 |
| laurencedmass@att.net | Fax:  314-207-0086 |
| | Email:  evitatolu@yahoo.com |

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

It is hereby certified that on this __15th__ day of February 2022, a copy of the foregoing was filed electronically with the Clerk of the Court to be served to all counsel by operation of the Court's electronic filing system.


/s/  Laurence D. Mass