IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA K. HAYNES (a/k/a Cynthia K. Randolph), individually and under the Missouri Wrongful Death Statute<br><br>Plaintiff,<br><br>vs.<br><br>JENNIFER WILLIAMS, individually, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No: 1:21-CV-00160-ACL<br>)<br>)<br>)<br>) |

**WILLIAMS DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I-IV OF PLAINTIFF'S AMENDED COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and Local Rule 4.01, Defendants Jennifer Williams and Jennifer Williams, d/b/a Williams Law, respectfully submit their Reply Memorandum of Law in Support of their Motion to Dismiss Counts I through IV of Plaintiff's Amended Complaint, and state as follows:

**INTRODUCTION**

This action arises out of state-court divorce and child custody proceedings ("Divorce Case"). While Divorce Case was pending, Plaintiff's minor daughter, M.H., committed suicide. Defendant Jennifer Williams was the court-appointed guardian ad litem ("GAL") in the Divorce Case. Williams filed a motion to dismiss ("Motion") Counts I through IV of the Amended Complaint, seeking dismissal of these claims with prejudice.

The Motion argues that dismissal of these claims is proper because the conduct at issue fell within the scope of Williams' GAL duties. Nearly (30) years ago in *State ex rel. Bird v. Weinstock*, the Missouri appellate court extended the common law to provide GAL's with quasi-judicial immunity for claims that concern conduct within the scope of their duties. 864 S.W.2d 376 (Mo

1

Ct. App. 1993). In fact, in *Tolu v. Reid*, a case in which Plaintiff's counsel was the named plaintiff, the Missouri Eastern District Court of Appeals affirmed that a GAL's right to quasi-judicial immunity is alive and well. 2021 WL 6122562 (Mo. Ct. App. Dec. 28, 2021), reh'g and/or transfer denied (Jan. 31, 2022), transfer denied (Mar. 1, 2022). The Missouri Supreme Court recently denied the *Tolu* plaintiff's request to transfer the case to that court for further review, and it is now controlling Missouri law. Williams' Motion further argues that dismissal of Counts II, III, and IV of the Amended Complaint is proper because Plaintiff failed to state a claim for relief, to wit: Plaintiff failed to sufficiently allege that Williams had a duty of care to foresee or prevent M.H.'s suicide and failed to sufficiently allege that Williams owed a duty of care to Plaintiff, M.H.'s mother.

Plaintiff's "Memorandum in Response" to Williams' Motion to Dismiss ("Response") implores the Court to adopt a standard for GAL liability that is directly at odds with Missouri's common law. The Response resorts to emotional appeals, "cherry-picked" language from various inapplicable court opinions, and an illogical interpretation of facts from the Divorce Case. But these tactics do not cure Plaintiff's legally deficient claims. Accordingly, Williams submits the instant Reply to the Response and respectfully requests a dismissal of all claims.

## ARGUMENT

**I.    Counts I – IV of the Amended Complaint should be dismissed because Williams is entitled to quasi-judicial immunity from civil liability even for "criminal" conduct**

Plaintiff suggests that Williams is not entitled to quasi-judicial immunity because Williams engaged in "criminal" activity by threatening Plaintiff and M.H. while serving as the court-appointed GAL in the Divorce and Juvenile cases. (Doc. 44, p. 12). But this argument ignores the underlying premise of quasi-judicial immunity (and judicial immunity, more generally). A judicial actor is immune from civil liability for all conduct performed during the scope of her

2

duties, even if such conduct was "wrongful" or "illegal" because "[the] underlying premise of all immunities is that 'though the defendant might be a wrongdoer, social values of great importance require[d] that the defendant escape liability.'" *See e.g.*, *Tolu*, 2021 WL 6122562 at *9 (citing *Murphy v. A.A. Mathews, a Div. of CRS Group Eng'rs, Inc.*, 841 S.W.2d 671, 674 (Mo. banc 1992)(quoting Prosser and Keeton on Torts 1032 (5th ed. 1984)); *see also Brictson v. Woodrough,* 164 F.2d 107, 109 (8th Cir. 1947)(noting that "[i]t is a general rule that, where a judge has jurisdiction over the subject matter and the person, he is not liable civilly for acts done in the exercise of his judicial function, **even though he acts erroneously, illegally, or irregularly, or even corruptly."**)(emphasis added)).

Plaintiff notes that Williams relies "heavily upon" *State ex rel. Bird v. Weinstock* to show that Williams's is entitled to quasi-judicial immunity in this case. (Doc. 44 p. 12)(*citing* 864 S.W.2d 376 (Mo Ct. App. 1993). This is true as both the facts and the law of *Bird* are directly applicable here. For instance, the father in *Bird* alleged that the GAL engaged in the following conduct:

> ….**Subverting and undermining the criminal prosecutions of defendant** [Stepfather]; **by aiding and assisting defendant [Stepfather] in defending sodomy charges brought against him arising out of the aforesaid sexual abuse of plaintiffs**; and by abandoning his representation of the interests of the plaintiffs in the Custody Proceedings in favor of **aiding, abetting and assisting [Mother and Stepfather] in the furtherance of their interest**s, and by advocating the same; and by abandoning plaintiffs and assuring that they had no effective legal representation in the Custody Proceedings and no access to legal counsel.

*Bird*, 864 S.W.2d at 379-80 (emphasis added). Here, Plaintiff asserts that "[b]y threatening to punish M.H. and S.H. should Plaintiff, M.S.H., or M.H. testify against Charles, Williams was not acting in the best interests of S.H. or M.H., but to benefit Charles in his criminal case through her illegal acts." (Doc 44, p. 14). Plaintiff's allegations as to Williams' malfeasance as GAL are not just *similar* to the allegations that were made against the GAL in *Bird*; they are essentially

3

identical. Nevertheless, Plaintiff implies that *Bird* is distinguishable from this case because the Amended Complaint alleges more details about Williams's malfeasance than were alleged in *Bird*. (Doc. 44, p. 12). But the Amended Complaint's level of detail is irrelevant to the issues at hand. The *Bird* court did not find that the GAL was entitled to quasi-judicial immunity because the father failed to sufficiently describe the GAL's misconduct. Rather, the *Bird* court found that the GAL was entitled to quasi-judicial immunity because his alleged misconduct fell in the scope of his GAL's duties. *Bird*, 864 S.W.2d at 379-86. Likewise, Williams' alleged "criminal" conduct fell directly in the scope of her GAL duties in the Divorce and Juvenile Cases.

Plaintiff contends that the circumstances in this case are similar to those in *State v. McLaughlin*, 988 S.W.2d 542 (Mo. Ct. App. 1999), a criminal case involving witness tampering. (Doc. 44, pp. 8-9). But it is unclear what value *McLaughlin* has here as *McLaughlin* is a criminal case which does not involve a GAL or immunity.[1]

Plaintiff also directs the Court to *Edwards v. Gerstein*, 237 S.W.3d 580 (Mo. banc. 2007), stating that this case "set limits on the scope of a GAL's duties." (Doc. 44 p. 13). But *Edwards* did no such thing. Rather, *Edwards* involved an extremely narrow legal question: whether the Missouri legislature modified quasi-judicial immunity through language in a statute. *Edwards*, 237 S.W.3d at 582. The *Edwards* court determined that members of the Missouri Board of Chiropractic Examiners were not entitled to quasi-judicial immunity from a civil lawsuit that alleged they had acted with "gross negligence." *Id.* at 581-82. The court reached this determination based on language in Section § 331.100.5 R.S.Mo. that explicitly stated the Board members' were not entitled to full immunity for their "gross negligence." *Id.* at 582. The *Edwards* court found similarity in *State ex rel. Golden v. Crawford,* a prior case where the court found that a defendant's

---

[1] Williams has not been charged with witness tampering. To be clear, Williams denies all allegations that she tampered with any witnesses.

4

right to official immunity was superseded by Section § 190.307 R.S.Mo, which stated that the defendant was not entitled to immunity for civil claims alleging "willful and wanton misconduct or gross negligence." *Id.* at 582.

Unlike *Edwards*, which involved a statute that set limits on  members of the Board of Chiropractic Educators Examiners' right to immunity, Missouri does not have a statute that sets limits on a GAL's right to immunity.  But the Response submits that *Edwards* has broad implications.  According to Plaintiff, the Missouri Supreme Court concluded that there is no difference between quasi-judicial and official immunity.  (Doc. 44, p. 9).  That contention is demonstrably false, as the Missouri Supreme Court continues to recognize that official immunity and judicial immunity are different immunities with different frameworks and applications.  *See State ex rel. Helms v. Rathert*, 624 S.W.3d 159, 163 (Mo. banc. 2021)("Official immunity protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts)(internal quotations omitted)(citations omitted); *Allsberry v. Flynn*, 628 S.W.3d 392, 398 (Mo. banc. 2021)(noting that "absolute judicial immunity attaches to particular judicial functions…")(citations omitted).

Accordingly, Plaintiff's citation to cases that analyze the application of official or sovereign immunity*, State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443 (Mo. banc. 1986)(finding that official immunity barred plaintiff's claims against superintendent of state-run mental health facility); and *Jungerman v. City of Raytown*, 925 S.W.2d 202 (Mo. banc. 1996), *abrogated by Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. banc. 2008)(discussing sovereign immunity and noting that municipalities have discretionary immunity for actions that are a part of its discretionary duties) are of no moment and do nothing to modify the foundation for GAL

immunity set forth in *Bird* which has been a part of Missouri's common law for almost thirty (30) years.

Plaintiff's Response fails to meaningfully engage with *Tolu v. Reid*. In *Tolu*, the court held that a GAL was entitled to quasi-judicial immunity for alleged misconduct, including the violation of certain statutes. (Doc. 44, p. 11). The Response gives short shrift to the decision, implying the decision was unfair and noting it was not yet "final." (*Id.*). However, on March 1, 2022 the Missouri Supreme Court declined plaintiff's application to transfer the case to that court, and *Tolu* is now settled Missouri law. Therefore, under *Tolu*, a GAL's immunity is not limited by the "wrongfulness" of her conduct. Despite Plaintiff's contentions, this Court need not find Williams' conduct to be "positive," "neutral," or "negative" to resolve the determine whether she is entitled to immunity. Nor is this Court charged with being prosecutor, judge or jury with respect to Williams' alleged criminal acts. Rather, for purposes of quasi-judicial immunity, the sole issue is whether William's conduct fell within the scope of her GAL duties. *Bird*, 864 S.W.2d at 376 (Mo. Ct. App. E.D. 1993); *Tolu*, 2021 WL 6122562, at *8. And all the alleged conduct described in the First Amended Complaint fell within the scope Williams' GAL duties.

For example, the Response contends that Williams ignored evidence that Charles' molested his daughter. (Doc 44, p. 10). But evaluating evidence so in order to assist the Court in reaching a custody determination that would be in M.H.'s best interests fell squarely within the scope of Williams' GAL duties. (Amended Complaint, Exhibit No. 3 – Missouri Supreme Court GAL Standard No. 13 Comment)("To make recommendations to the court that serves the child's best interests, the guardian ad litem should have knowledge of the child's circumstances from all sources, which may include, but are not limited to, the parents, caseworker, deputy juvenile, officers, teachers, treatment providers, and court appointed special advocate volunteers."). Plaintiff

evidently takes issue with the weight Williams' purportedly gave to certain evidence as GAL.  But quasi-judicial is specifically designed to prevent Plaintiff from using civil litigation as a means of punishing Williams for decisions that she made as a GAL.  *Bird*, 864 S.W.2d 376 at 386 (Mo. Ct. App. 1993)("The guardian's judgment must remain impartial, unaltered by the intimidating wrath and litigious penchant of disgruntled parents.")(citation omitted).

Similarly, the Response asserts that Williams "threatened" Plaintiff and her children by warning them of potential consequences for testifying against Charles in his criminal case, or, if M.H. brought additional charges against Charles for abuse.  (Doc. 44, pgs. 8, 9, 16, 17, 18, 21, 25).  But assuming for the purposes of this motion that such was true,  Williams had a duty as GAL to advise that testifying against Charles' sexual abuse in a criminal proceeding could have an impact on the outcome of the custody dispute.  (Amended Complaint, Exhibit No. 3 - Missouri Supreme Court GAL Standard No. 9 Comment)("The guardian ad litem should make a diligent effort to ensure that the child understands the nature of the proceedings, the placement or services that may result, and the possibility of future modifications in placements or services.").

Plaintiff suggests that if the Court recognizes that Williams is entitled to quasi-judicial immunity, it would be tantamount to a declaration that GALs are "above the law."  (Doc. 44, p. 10).  But this argument disregards a key aspect of quasi-judicial immunity— it offers a defendant immunity from civil liability— *not criminal liability*.  *See Dennis v. Sparks,* 449 U.S. 24, 31 (1980)(noting that "Judicial immunity was not designed to insulate the judiciary from all aspects of accountability… [Judges] are subject to criminal prosecutions as are other citizens. ").  And even with respect to civil liability, courts recognize that there are limits to the protection offered by quasi-judicial immunity in that the doctrine does not shield a judicial actor from liability for administrative acts, or, for actions taken in clear absence of the court's jurisdiction.  *See Allsberry*

7

*v. Flynn*, 628 S.W.3d 392, 398 (Mo. 2021)(holding that judicial immunity would not apply to judge's order suspending clerk's employment"); *Stump v. Sparkman*, 435 U.S. 349 (1978)(noting that judicial immunity would not apply in the event a judge acts without subject-matter jurisdiction, such as if a probate judge conducted a criminal trial); *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993)(finding that judge was not entitled to immunity in action stemming from a road rage incident where judge pursued a motorist in his vehicle and later issued criminal charges against the motorist).

Plaintiff cites *Fox v. Willis*, 890 A.2d 726 (Md. App. 2006), a Maryland state court decision, as an example of a case where a court found that the GAL was not entitled to immunity. (Doc. 16 – 17). But the *Fox* court expressly distinguishes Maryland law from the law of Missouri (and the law of multiple other jurisdictions) as Maryland "has no statute or rule…which would support a conclusion that a GAL was" act[ing] mainly as an arm of the court and performing judicial functions." *Fox*, 890 A.2d at 733. Plaintiff also claims that *Falk v. Sadler*, 341 S.C. 281 (S.C. App. 2000) is instructive because it involved similar allegations to those against Williams. But the allegations in that South Carolina state court case are not at all similar to those here. The *Falk* GAL allegedly interfered in spousal support negotiations during a divorce on behalf of the mother and interfered with service of process in a federal action to stay the departure of the minor child from the United States jurisdiction. *Id.* at 289. And *Chambers v. Stern* 994 S.W.2d 463 (Ark. 1999) is similarly inapposite, as that Arkansas state court case involved a court-appointed psychologist, not a GAL. In fact, the *Chambers* court did not find that a court-appointed psychologist was not entitled to judicial immunity. Rather, the court reversed and remanded the case to allow the trial court to make "specific, written findings" that support its judgment that judicial immunity was appropriate. *Id.* at 338-39.

Accordingly, Counts I – IV of the Amended Complaint should be dismissed in its entirety for failure to state a claim because Williams is entitled to quasi-judicial immunity from civil liability as her allegedly conduct fell within the scope of her duties as court-appointed GAL. *Bird*, 864 S.W.2d at 385-86.

**II.     Counts II and III of the Amended Complaint should be dismissed because they fail to allege sufficient facts to establish that Williams owed M.H. "duty"**

The Response maintains that Plaintiff "properly alleged causation for damages in her wrongful death claims." (Doc. 44 p. 14). But it is unclear what purpose this pronouncement serves: the Amended Complaint does not fail to state a wrongful death claim because Plaintiff does not properly allege facts as to "*causation*."[2] Rather, the Amended Complaint fails to state a wrongful death claim because Plaintiff does not properly allege facts that establish Williams owed a "*duty of care*" to prevent or foresee her suicide. While there is overlap between the two elements, "causation" and "duty of care" are distinct elements in a wrongful death case. *Scales v. Whitaker*, 615 S.W.3d 425, 429 (Mo. Ct. App. 2020)(setting forth the elements of a wrongful death claim, including duty, breach, causation, and damages). And, unlike causation, the issue of "whether a defendant had a duty of care to protect a decedent from injury under the circumstances of a given case is 'purely a question of law' to be decided by a court." *Id.* at 431.

Plaintiff contends that "Williams should have been able to foresee injury to M.H." based on her conduct during the Haynes' Divorce and Juvenile proceedings. (Doc. 44, p. 19). This is a conclusion without factual support. Regardless, "foreseeability" is only one factor among many that a court must analyze in conducting a "duty of care" analysis in a wrongful death claim:

> [W]hether a duty exists in a particular case depends on several public policy considerations including the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing that burden on defendant.

---

[2] Williams vehemently disputes she caused or contributed to cause M.H.'s suicide.

9

> Another public policy consideration is whether a defendant has some right or obligation to control the activity that presents the danger of injury.

*Scales*, 615 S.W.3d at 436 (internal citations omitted).  The Response repeatedly insists that M.H.'s suicide should have been "foreseeable" to Williams, but Plaintiff fails to address <u>any</u> of the other factors that must be considered when determining whether Williams had a duty of care to prevent or foresee M.H.'s suicide, i.e., the likelihood of M.H.'s suicide, the magnitude of placing the burden on Williams to prevent or foresee M.H.'s suicide, the consequences of that burden, or whether Williams had the right or obligation to control M.H. at the time of her suicide.  *Id.*  The weighing of these factors is especially critical in this case as Plaintiff pled M.H. had a history of mental health issues, and records show that she cited Charles' molestation of her sister and her foster care placement in 2014 as subjects of stress (but not Williams' threats).  (Doc. 6, p. 24-25).

The Response claims that Williams' Motion ignores *Kivland v. Columbia Orthopaedic Group, LLP*, 331 S.W.3d 299 (Mo. 2011) which establishes that Plaintiff's wrongful death claims against Williams are viable. (Doc. 44, pp. 14-17*).*  But Williams' Motion does not ignore *Kivland*.  *Kivland* simply has no application to the facts or law at issue here.  In *Kivland*, the plaintiff alleged that a surgeon botched her husband's medical procedure, and that her husband committed suicide because of the resulting complications.  *Id.* at 303.  The Missouri Supreme Court held that the trial court erred in granting summary judgment, finding that a psychiatrist's testimony created an issue of fact as to whether the suicide was the direct result of the surgeon's medical malpractice. The issue in *Kivland* was concerned <u>causation</u>, and the court found there was a question of fact on that issue based on expert testimony. *Id.* at 313-14. But the question for this Motion to Dismiss is whether the Amended Complaint alleges sufficient facts to establish that Williams, as an alleged attorney to M.H., owed M.H. a <u>duty of care</u> to foresee or prevent suicide as a *matter of law*.  *Scales*, 615 S.W.3d 429.  And Plaintiff has not alleged such facts.

10

The Response argues that "[at] the very least, it was easy to foresee that such illegal threats would cause M.H. and Plaintiff to suffer significant emotional harm as [alleged]." (Doc. 44, p. 19). Again, the Response's sole focus on the purported "foreseeability" of Williams' actions insufficient to establish a "duty of care" as a matter of law. Further, "significant emotional harm" is not an element of a wrongful death claim. Even if Plaintiff had styled her claims against Williams for "negligent infliction of emotional distress," Plaintiff would still have the burden to prove that Williams, "had a legal to duty to protect [M.H.] from injury." *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001)(discussing the elements of a claim for negligent infliction for emotional distress); *see also Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 (Mo. 1990)("In any action for negligence, the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty and, that plaintiff's injury was proximately caused by defendant's failure.").

Accordingly, because Williams did not owe a duty to foresee and prevent M.H.'s suicide, Counts II and III should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**III.    Counts II and III of the Amended Complaint should be dismissed because they fail to sufficiently allege that Williams was appointed as M.H.'s personal attorney**

Plaintiff claims that Williams was simultaneously appointed as GAL and the "personal attorney" for M.H. in the Divorce Case. (Doc. 44). Thus, Plaintiff asserts that Williams can be liable for damages in this case both as GAL and as M.H.'s "personal attorney." But when evaluating a motion to dismiss, "determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 732 (8th Cir. 2015). Further, when analyzing the Plaintiff's claims this Court is not limited to the Amended Complaint itself but

11

also may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint"). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)(5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1357 at 299 (1990).

To the support the argument that Williams' was the court-appointed "personal attorney" for M.H., the Response focuses solely on language from court orders issued in the Divorce Case: an order from January 30 2017; and an Order from September 17, 2021. (Doc. 44, pp. 23-24). Plaintiff notes that the January 30, 2017 Order appointing Williams as GAL in the Divorce Case "explicitly states that Williams shall have 'an attorney-client relationship with the minor children, and all communications *between the GAL* and the minor children shall be privileged….' (*Id.* at 23)(emphasis added). The September 17, 2021 Order uses the terms "attorney-client privilege" and refers to Williams as the children's "duly-appointed counsel." (*Id.*). According to Plaintiff, the inclusion of these terms in the Orders establishes that the Court appointed Williams to be "something more" than a GAL. But this contention fails for two reasons. (*Id.*).

First, the Missouri Court of Appeals rejected essentially the same argument in *Bird*. *Bird*, 864 S.W.2d 376, 384-85. There, the father argued that that GAL functioned as his children's attorney, rather than as an arm of the court. *Id.* at 384. The father noted that Missouri's GAL statute, Sections 452.423 refers to a GAL as the child's "legal representative," and states that a GAL is "required to ascertain the child's wishes, feelings, attachments and attitudes." *Id.* at 384-85. The court found this argument to be unpersuasive:

> Viewed in isolation, the use of the term "legal representative," the authorization to subpoena and examine witnesses and offer testimony, and the requirement that the guardian ascertain the child's wishes, feelings, attachments and attitudes could be viewed as indicative of a legislative intent that the is to function as attorney for the child. On the other hand, none of these features of the statute are inherently inconsistent or incompatible with the traditional view of the guardian ad litem's role. ….Although the guardian ad litem

> is required to *ascertain* the child's wishes, feelings, attachments and attitudes, there is no direction that the guardian *advocate* such wishes and feelings even if the guardian concludes that the child's desires are not in its best interest.

*Id.* at 385 (emphasis added). Thus, the Court recognized that the GAL was not the children's attorney because while the children's principal interests were "paramount," the GAL's "principal allegiance" was to the Court. *Id.*

Like in *Bird*, Plaintiff argues that Williams was appointed serve as M.H.'s personal attorney because the Orders use the term "attorney-client relationship" and "duly appointed counsel" to refer to Williams. (Doc. 44, p. 23). But like the Court found in *Bird*, this Court should recognize that these terms cannot be "viewed in isolation." *Bird*, 864 S.W.2d at 385. And, when viewing the Orders in concert with Missouri's GAL statutes, Missouri case law, the Missouri Supreme Court Standards for Guardians ad Litem, and the complete record from the Divorce and Juvenile Cases, Williams was never appointed to *advocate* for M.H.'s "wishes, feelings, attachments and attitudes." *Id.* Rather, the only plausible inference is that while Williams was required to ascertain those things, her "principal allegiance" was to the Divorce Court. *Id.*[3]

Second, Plaintiff mistakenly relies on the Orders' mention of "confidentiality" to establish that Williams was M.H.'s personal attorney. (Doc. 44, p. 23 – 24). According to the Response, the fact that the Orders bestowed upon Williams the duty to maintain confidentiality during the Divorce Case "transformed" her appointment as GAL into her appointment as M.H.'s personal attorney. (*Id.*). But this argument is directly undercut by the Amended Complaint itself, which states: "[As] a GAL Williams was obligated to ensure compliance with all applicable laws,

---

[3] Despite the overwhelming evidence from the Divorce and Juvenile Cases establishing that the contrary is true, Plaintiff (and M.H.) may believe that Williams was appointed as the minor children's personal attorney. But under Missouri law, this belief does not save Plaintiff's claims against Williams. *State ex rel. Thompson v. Dueker*, 346 S.W.3d 390, 394 (Mo. Ct. App. 2011)("[B]elief in an attorney-client relationship is insufficient to create such a relationship.")(*quoting Mid–Continent v. Daniel Clampett Powell,* 196 S.W.3d 595, 598 (Mo. Ct. App. 2006)).

13

regulations, Missouri Rules of Professional Responsibility (MRPR) and the Missouri Supreme Court GAL Standards. (A copy of the GAL Standards is attached as Exhibit 3)." (Doc. 6, p. ¶13). And Standard No. 7 of the Missouri Supreme Court GAL Standards (Exhibit 3 to the Amended Complaint) states:

> A guardian ad litem shall comply with all statutes, rules, and regulations relating to the receipt of confidential or privileged information received as guardian ad litem.  A guardian ad litem shall not redisclose any confidential or privileged information without valid court order or as required by law except as permitted by Rule 4-1.6.

(Doc. #1-3, "Standard No. 7", p. 7). Clearly, the Divorce Court Orders' reference to this "confidentiality" mandate did not impose any additional duties on Williams beyond that of a GAL. In fact, an Order recently entered by the Divorce Court leaves no question that Williams' duties (including those related to maintaining confidentiality) were those that were exclusively set forth in the "applicable laws, regulations, Missouri Rules of Professional Responsibility and the Missouri Supreme Court GAL Standards."  (Exhibit B to the Reply, Order of the Divorce Court – January 25, 2022).

Accordingly, because Plaintiff has not sufficiently alleged that M.H. was her "personal attorney," Counts II and III must be dismissed with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**IV.     Count IV of the Amended Complaint should also be dismissed because its fails to sufficiently allege that Williams owed a duty of care to Plaintiff.**

In Count IV, Plaintiff argues that Williams owed a duty of care to her, as M.H.'s mother, while serving as GAL in the Divorce Case. Count IV alleges that Plaintiff was individually injured when Williams acted outside of her GAL duties.  As noted above, Williams has immunity for all acts which were within the scope of her role as GAL.  But, even if Williams acted outside the role

14

as GAL (which she denies), the cases cited by Plaintiff do not establish that Williams owed Plaintiff Cynthia Haynes any duty as a third party.

Plaintiff claims that *Kennedy v. Kennedy* 819 S.W.2d 406, 410 (Mo. Ct. App. 1991) is instructive and provides support for the proposition that an attorney can owe a duty of care to third parties. (*Id.* at 24). *Kennedy* involves a land deal and an attorney accused of tortious interference with business relationship and slander of title. The *Kennedy* court held that the plaintiff stated a claim as to each theory of liability while noting an attorney may be liable "where the attorney has been guilty of fraud or collusion, or of a malicious or tortious act." *Id.* at 410 (quotations omitted). Similarly, Plaintiff's reliance on *Deutsch v. Wolf*, 994 S.W.2d 561, 571 (Mo. 1999), which holds that "an accountant for a trust was liable to the beneficiaries of the trust for negligent accounting work that resulted in beneficiaries losing considerable sums of money" falls short in that the Amended Complaint does not allege that Williams was an accountant who mismanaged a trust to which Plaintiff was a designated beneficiary. (*Id.*)

For instance, *In Re Krigel,* a disciplinary opinion initiated by the Missouri's Chief Office of Disciplinary Counsel, involves the application of Missouri Supreme Court Rule 4 in the context of an attorney's professional responsibilities, *not* civil liability. *Krigel* does not involve a GAL, a wrongful death claim, or any other factual circumstances like those here. Moreover, Missouri courts have consistently held that the Rules of Professional Conduct may not serve as the basis for a civil action. *See e.g. Greening v. Klamen*, 652 S.W.2d 730, 734 (Mo. Ct. App. 1983). In sum, Plaintiff does not sufficiently allege facts to support the conclusion that M.H. was Williams' client, but even accepting this conclusion as true, the Amended Complaint does not allege facts that establish M.H. hired Williams with the specific intent to perform legal services *for Plaintiff*. *See Donahue v. Shughart, Thomson & Kiroy, PC*, 900 S.W.2d 624, 629 (Mo. banc 1995). Accordingly,

because Williams did not a duty of care to Plaintiff, Count IV should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

Plaintiff's claims in Counts I - IV, both individually and on behalf of M.H., fail to state a claim pursuant to Rule 12(b)(6) as they are barred by quasi-judicial immunity because each act of alleged misconduct by Williams relates to and is within the scope of her duties as GAL.  Counts II and III, which are premised on the faulty notion that Williams was personal attorney for M.H., also fail as a matter of law because a lawyer has no duty to foresee or prevent a client's suicide. Finally, Count IV also fails as a matter of law because Williams owed no duty to Plaintiff individually or as a third party.  The Williams Defendants therefore respectfully request that the Court dismiss this action with prejudice.

Respectfully submitted,

ROBERTS PERRYMAN, P.C.

By:     */s/ Susan M. Dimond*
Richard C. Wuestling, #30773MO
Susan M. Dimond, #57434MO
Dustin L. Goldberger, #70080MO
1034 S. Brentwood, Suite 2100
St. Louis, Missouri 63117
Phone: (314) 421-1850
Fax: (314) 421-4346
rwuestling@robertsperryman.com
sdimond@robertsperryman.com
dgoldberger@robertsperryman.com

*Attorneys for Defendants Jennifer Williams and Jennifer Williams d/b/a Williams Law*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on March 3, 2022, the foregoing was electronically filed with the Clerk of the Court using CM/ECF electronic filing system which will send notification of such filing to the following and email to all counsel of record.

Laurence D. Mass laurencedmass@att.net
Evita Tolu evitatolu@outlook.com
*Attorneys for Plaintiff*

Thomas W. Collins, III tcollins@blantonlaw.com
*Attorney for Defendant Spain Miller Galloway & Lee, LLC*

John C. Steffens jsteffens@lumbaughlaw.com
*Attorney for Defendant Bernice Haynes*

                                         */s/ /s/ Susan M. Dimond*