UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA K. HAYNES (a/k/a Cynthia K. Randolph), individually and under the Missouri Wrongful Death Statute<br><br>    Plaintiffs<br><br>        v.<br><br>JENNIFER WILLIAMS, individually,<br>JENNIFER WILLIAMS, d/b/a WILLIAMS LAW,<br>SPAIN, MILLER, GALLOWAY & LEE, LLC,<br>    a Missouri limited liability company,<br>BERNICE HAYNES, individually and<br>CHARLES HAYNES, individually<br><br>    Defendants. | Cause No. 1:21-CV-00160-SNL<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S SURREPLY TO DEFENDANTS WILLIAMS' AND SPAIN, MILLER'S REPLY MEMORANDA IN SUPPORT OF THEIR MOTIONS TO DISMISS**[1]

Submitted by:

/s/ Laurence D. Mass
Laurence D. Mass    #30977
230 South Bemiston, Suite 1200
St. Louis, Missouri  63105
Phn:    (314) 862-3333, Ext. 20
Fax:    (314) 862-0605
Email:  laurencedmass@att.net

/s/ Evita Tolu
Evita Tolu              #49878
Immigration Law Group, LLC
9378 Olive Blvd., Suite 307
St. Louis, MO 63132
Phn: 314-323-6022
Fax: 314-207-0086
Email: evitatolu@yahoo.com

Attorneys for Plaintiff

---

[1] Plaintiff did not seek permission to file a Surreply to the Reply Memorandum filed by Defendant Bernice Haynes in support of her Motion to Dismiss.  Plaintiff believes that the issues relating to causation and whether Defendant Bernice Haynes' acts were too remote in relationship to the death of M.H. were sufficiently briefed.

**Williams Acted Outside the Scope of Her Duties by Threatening M.H.
and Plaintiff That Should They or M.S.H. Testify Against Charles Haynes
that M.H. and S.H. Would Suffer Adversely**

In Defendant Jennifer Williams' (hereinafter "Williams") Reply Memorandum, she principally focuses on whether she acted "within the scope of her duties" as a GAL thereby entitling her to "quasi-judicial immunity." The key question for determining this issue is whether violating the criminal statutes prohibiting tampering with witnesses places Williams outside the scope of her duties as a GAL.

Defendant Spain-Miller (hereinafter "Spain-Miller") complains (its Reply Memorandum at 3) that Plaintiff did not articulate that Williams violated criminal statutes prohibiting tampering with a witness in her Amended Complaint. Even though the complaint may not have used the term tampering with a witness, there were numerous allegations that Williams threatened M.H., and also Plaintiff, that if M.H., Plaintiff or M.S.H. testified against Charles Haynes at his criminal trial and later at his sentencing, that M.H. and S.H. would be placed in foster care.[2] Plaintiff, as the party against whom the Motions to Dismiss are brought, is entitled to all reasonable inferences that emanate from her factual allegations. Having alleged that Williams acted in ways which violate the criminal statutes of tampering with a witness, R.S. Mo. §§575.270.1 & 575.270.2, Plaintiff is entitled to the reasonable inference that she properly alleged Williams violated those criminal statutes.

Tampering with a witness in the non-custody, criminal trial of Charles Haynes is beyond the scope of Williams duties as a GAL. Doing that goes well beyond "assisting in the criminal defense" of an adult party (stepfather) involved in the custody litigation for which the court in State ex rel Bird v. Weinstock, 864 S.W.2d 376 (Mo. App. E.D. 1993) granted GAL Bird quasi-

---

[2] For example see ¶¶154, 159, 178, 182, 195(a,b,c,d), 204,(a,b,c,d), 215(e), and 227(c,d,e,f) in the Amended Complaint.

judicial immunity.  What constituted assisting in the criminal defense of the stepfather was never delineated in Bird.  Nor can Plaintiff in this case delineate whether Williams acted in conjunction with the criminal defense of Charles Haynes.  Plaintiff does not know facts which might show that.

What Plaintiff alleged, and which she supported through allegations and documentation, was Williams frequent threats to M.H., and also to Plaintiff, that if M.H., Plaintiff, or M.S.H. testified against Charles Haynes at his criminal trial and later at his sentencing that she would punish M.H. and S.H. by placing them in foster care.  It is axiomatic that defense in a criminal prosecution cannot legally include tampering with a witness to prevent that witness from testifying against the criminal defendant.  State v. Anding, 689 S.W.2d 745 (Mo. App. W.D. 1985)[3]  Williams never explains how tampering with a witness is within the scope of her duties, much less appropriate to assist in Charles Haynes' criminal defense.

Williams argues that she must have quasi-judicial immunity so that she can investigate all of the facts helpful to formulating her recommendations to the custody court while remaining impartial.. (Williams' Reply Memorandum at 6.)  However, she never explains how tempering with a witness in defense of Charles Haynes' criminal prosecution is an acceptable part of her "investigation."  Threatening a child whose interests Williams is supposed to represent with dire consequences if M.H. and others whom M.H. cannot control testify against Charles Haynes is not performing an investigation, finding out the facts, or learning about the case, as opposed to trying to shape a criminal case against a parent through illegal, criminal actions.  By those threats,

---

[3] Anding was attorney for criminal defendant Watters.  As a result of Anding's tampering with witness Hall, Hall failed to appear for a hearing in Watters case.  The charges against Watters were nolle prossed for this and another reason.  However, after Anding was charged with tampering with witness Hall, the charges against Watters were reinstated (see footnote2 in Anding).  Anding was found guilty of tampering with a witness for paying Hall not to appear at Watters' preliminary hearing.

Williams was not trying to provide advice to M.H. or to Plaintiff about what might happen during the course of the custody litigation as a result of the actions of the parties or of the minor children or the evaluations of professionals.  She was trying to shape the outcome of Charles Haynes' criminal charges through illegal means.  These were not threats that if M.H. or her mother or M.S.H. testified untruthfully they could face consequences, but threats that if they testified under oath, presumably truthfully, against Charles Haynes, they would suffer adverse consequences.

Williams argued (Williams' Reply Memorandum at 6) that Plaintiff did not address Tolu v. Reid, 2021 WL6122562 (Mo. App. E.D. 2021) in her response.  That is not true.  (Plaintiff's Memorandum at 11.)  As Plaintiff stated previously, in Tolu the court did not address whether a GAL's violation of criminal statutes is within the scope of the GAL's duties, especially tapering with a witness in non-custody, criminal litigation.  The "illegal" acts which the plaintiff complained of in Tolu were violations of statutes which require that medical records be kept confidential, violations of court orders, and violations of GAL standards which address the duty of the GAL to maintain the confidentiality of protected healthcare information.  Knowing and understanding protected healthcare information of parties to custody litigation (even if improperly obtained) can more easily be understood to be within the scope of a GAL's duties.  Acting independently to tamper with a witness in a separate criminal proceeding cannot.  Williams could have legally assisted in Charles Haynes' defense without tampering with the testimony of M.H., Plaintiff, and/or M.S.H. and be immune from suit.  That is not what she did.

Nor does Williams explain how tampering with a witness is in any way a "judicial" function.  Williams cites Malina v. Gonzales, 994 F.2d 1121, 1124 (5th Cir. 1993) to distinguish acts which are outside judicial immunity as opposed to those within the scope of judicial immunity.  In that case, the Fifth Circuit found that the judge who was sued was not entitled to

immunity for actions stemming from his road rage, but was entitled to immunity for acts he took as a judge, *i.e.*, finding the motorist against whom he raged in criminal contempt during judicial proceedings against that motorist.  Since a judge addresses criminal contempt as a judicial function, he was entitled to immunity, even if his acts were not legal given the context of the case.  It is not a judicial function to threaten a person with significant adverse consequences should that person testify in a criminal proceeding or should that person fail to persuade others not to testify.  Tampering with a witness is a criminal act done outside the courtroom and outside judicial proceedings, just as is acting tortiously while driving a vehicle.

Even though Williams might be subject to criminal prosecution should a prosecutor exercise his/her discretion to prosecute her for tampering with a witness, that does not substitute for Williams not qualifying for quasi-judicial immunity for her acts of tampering done outside the scope of Williams' duties; they were acts outside her quasi-judicial function.  In spite of Williams' criticism (Williams Reply Memorandum at 4) State v. McLaughlin, 988 S.W.2d 542 (Mo. App. E.D. 1999) explains, by analogy, that what Williams did was conduct which violated criminal statutes (R.S. Mo. §575.270.1) addressing tampering with a witness.  McLaughlin supports that Williams threatening M.H. with severe, negative consequences if she does not influence her mother and/or stepsister not to testify against Charles Haynes is tampering with a witness.  Anding supports that threatening M.H. with those severe consequences should she testify is tampering with a witness.  Tampering does not fit within the scope of a GAL's duties.

Williams had immunity for her discretionary acts as opposed to her ministerial acts.  Bird v. Weinstock, 864 S.W.2d at 376.  As the Missouri Supreme Court stated in State *ex rel* Helms v. Rathert, 624 S.W.3d 159 (Mo. 2021) (which Williams cited in her Reply, pg. 5) a ministerial act is one that is to be done upon a certain set of facts and without regard to the public official's judgment or opinion.  If there is no room in variation on how the act is to be performed, then it is

not discretionary.  Williams never explains how the criminal statute prohibiting tampering with a witness allows her the leeway to decide how, when, or any other factor in how she might tamper with a witness.  This case is different from the facts in Helms in which statutes governing police pursuits leave significant leeway in determining when and how a pursuit should occur or what policies of vehicle pursuits should be adopted.  There are no variations of tampering that are within the law.

Edwards v. Gerstein, 237 S.W.3d 580 (Mo. 2007) also supports Plaintiff's arguments for denial of these Defendants' Motions to Dismiss.  It holds that there is no significant distinction between official immunity and quasi-judicial immunity even though both types of immunity can be modified by statute.  Plaintiff's argument was supported (as stated in her Response Memorandum, pg. 9) by Judge Stith's analysis of the difference between those two doctrines of immunity and explanation why the other judges were wrong in determining there was no such distinction.  (Plaintiff's reliance upon Falk v. Sadler, 533S.E.2d 350 (S.C. App. 2000) remains valid for the reasons stated in her Response Memorandum at pg. 13.)  Because Williams acted outside the scope of her duties by tampering with M.H. and Plaintiff as witnesses, Tolu v. Reid, *supra*, Moses v. Parwatiker, 813 F.2d 891 (8th Cir. 1987) (cited in Spain-Miller's Reply at pg. 4), and other cased cited by these Defendants, do not protect these Defendants from Plaintiff's suit.  Their Motions to Dismiss should be denied.

### **Williams Had a Duty of Care to M.H.**

Williams distinguishes between a "duty of care" and "causation," two elements necessary in a wrongful death case.  She cites Scales v. Whitaker, 615 S.W.3d 425, 429 (Mo. App. E.D. 2020).  Williams does not appropriately address Kivland v. Columbia Orthopedic Group, LLP, 331 S.W.3d 299 (Mo. 2011).  There is no merit to Williams' argument that she did not owe a duty of care to M.H.  Scales delineates four factors in determining whether one party has a duty

of care to another: (1) foreseeability of injury; (2) likelihood of injury; (3) magnitude of the burden of guarding against injury; and (4) consequences of placing the burden on defendant. Scales, 615 S.W.3d at 436.  Williams argues that Plaintiff is placing a burden on her to have foreseen M.H.'s suicide. (Williams' Memorandum at 9-10.)  That is not true.  As explained in Kivland, Plaintiff does not have to demonstrate that Williams should have foreseen M.H.'s suicide, but that Williams should have foreseen that her actions would likely cause harm to M.H. Kivland, 331 S.W.3d at 309-311.

Under Kivland it was sufficient for the defendant doctor to have foreseen that his negligence would have caused harm to Mr. Kivland, not that it would have caused his suicide.  If a jury finds that the suicide is the natural and probable consequence of the injuries suffered as a result of that negligence, then Plaintiff has proven causation.  Kivland supports Plaintiff's argument that Williams should have foreseen that her actions may reasonably have been expected to have caused M.H. to suffer and that that suffering naturally and probably led to M.H.'s suicide. 331 S.W.3d at 309-311.  Just as in Kivland, in which a psychologist opined that the injuries suffered by Mr. Kivland led to his suicide, Plaintiff has presented a doctor of social work, Jerry Marks who was a treating therapist for M.H., opining that Williams' threats to M.H. contributed to cause M.H.'s suicide. (Exhibit 45 to Amended Complaint.)

When addressing foreseeability, Williams conveniently ignores Plaintiff's recitation of the many factors and occurrences alleged that show that Williams was on notice and should have foreseen that her tampering with M.H. as a witness was causing or was likely to cause harm to M.H. (Plaintiff's Response Memorandum at 14-18.)  For example, Plaintiff alleged that M.H. wanted Charles Haynes to go to jail (Amended Complaint (AC) ¶104), that she wanted to be protected from him, ran to her mother's house to escape Charles coming into her bedroom and that she was terrified of Charles (AC ¶¶86-87).  Plaintiff laid out a "plethora of evidence"

demonstrating that Williams knew or should have known that her threats to M.H. and to Plaintiff were causing M.H. significant emotional distress including M.H.'s two mental health hospitalizations. (Plaintiff's Response at pg. 17.)

M.H. feared returning to foster care and desperately did not want that to occur. That is the very reason that Williams threatened to return M.H. to foster care. She knew, or should have known, that her threats were likely to have a significant adverse impact on M.H. Plaintiff's evidence supports the fact that M.H. would likely suffer emotionally (suffer an injury) from Williams' threats. Placing the burden on Williams to have guarded against tampering with M.H. was insignificant. The burden was for Williams not to have violated the criminal statutes governing tampering.

Williams' arguments as to duty of care and causation are of no weight. Her efforts to attempt to show that Plaintiff placed a burden on her to foresee suicide is not a valid argument under Kivland. The "burden" was for Williams to have foreseen that her threats would likely have caused M.H. emotional distress. Williams has no valid arguments on duty of care or causation.

**Williams was appointed as M.H.'s personal attorney.**

Language in the January 30, 2017 Order (Exhibit 3 to the Amended Complaint) goes beyond that Williams, as GAL, be the "legal representative" for M.H. and S.H. It explicitly states that Williams should have a "attorney-client relationship with the minor children" and that communications between her and the minor children are privileged. It refers to Williams as their "duly appointed counsel." If, as Williams has argued, this entire Court Order is merely a reiteration of Williams original appointment as GAL in May 2016, there was no need for this explicit language creating an attorney-client relationship between Williams and M.H. and S.H. (¶5 of the Order.)

As the GAL, Williams allegiances were to the court.  However, as the attorney for M.H. and S.H., her allegiances were to them.  These two roles were conflicting or, at the very least, had the potential to be conflicting.  Although relating to statutory interpretation, Edwards v. Gerstein, *supra*, supports Plaintiff's argument.  In Edwards, the court explicitly stated that it presumes that the legislature does not add meaningless language to a statute.  A court interpreting a statute should give meaning to all terms used.  If the terms used in ¶5 of the January 30, 2017 court Order are simply interpreted to be the same as other paragraphs of that Order, then they have no meaning.  Doing that would be inconsistent with Edwards.  Williams was appointed attorney for M.H. and S.H.

### Williams' duty to Plaintiff.

Plaintiff does not assert that Williams owed her a duty because Williams undertook to perform legal services for Plaintiff.  Plaintiff argues that Williams owed her a duty based on Williams threatening her.  Williams had a duty not to threaten Plaintiff, or anyone else, as a witness.  This is no different than one motorist owing a duty to another motorist not to act negligently.  In this case, Williams comes into contact with Plaintiff as a result of Williams' role as a GAL.  Williams threatens Plaintiff with significantly adverse consequences if Plaintiff testifies against Charles Haynes in criminal and sentencing proceedings.  Williams owed Plaintiff, and everyone else, the duty to threat them within the law.  When Williams breaches that duty and personally causes Plaintiff harm, Williams should be liable for the harm caused.

### CONCLUSION

For all of the above stated reasons Williams' and Spain-Miller's Motions to Dismiss should be denied.

                    Respectfully submitted,

| /s/  Laurence D. Mass | /s/  Evita Tolu |
|---|---|
| Laurence D. Mass    #30977 | Evita Tolu                #49878 |
| 230 South Bemiston, Suite 1200 | Immigration Law Group, LLC |
| St. Louis, Missouri  63105 | 9378 Olive Blvd., Suite 307 |
| Phn:   (314) 862-3333, Ext. 20 | St. Louis, MO 63132 |
| Fax:   (314) 862-0605 | Phn:  314-323-6022 |
| Email:  laurencedmass@att.net | Fax: 314-207-0086 |
| | Email:  evitatolu@yahoo.com |

                Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

It is hereby certified that on this  15th  day of March 2022, a copy of the foregoing was filed electronically with the Clerk of the Court to be served to all counsel by operation of the Court's electronic filing system.

                    /s/  Laurence D. Mass