UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DISTRICT

| | |
|---|---|
| CYNTHIA K. HAYNES<br>(a/k/a Cynthia K. Randolph),<br>individually and under the Missouri Wrongful<br>Death Statute,<br><br>        Plaintiffs,<br><br>v.<br><br>JENNIFER WILLIAMS, individually<br><br>JENNIFER WILLIAMS,<br>d/b/a WILLIAMS LAW<br><br>SPAIN, MILLER, GALLOWAY & LEE, LLC<br>A Missouri limited liability company,<br><br>BERNICE HAYNES, individually, and<br><br>CHARLES HAYNES, individually,<br><br>        Defendants. | Cause No. 1:21-CV-00160-ACL<br><br>JURY TRIAL DEMANDED |

**DEFENDANT CHARLES HAYNES'S MEMORANDUM IN SUPPORT
OF HIS MOTION TO DISMISS COUNT VII OF THE AMENDED COMPLAINT**

COMES NOW Defendant Charles Haynes, by and through undersigned counsel, and for his Memorandum in Support of Motion to Dismiss Count VII of the Amended Complaint, states as follows:

**Introduction**

This case arises from a tragic family situation. Plaintiff Cynthia Haynes and Defendant Charles Haynes (hereinafter "Charles") are husband and wife, whose extremely contentious divorce case began in 2013 and is still ongoing today. *See Haynes v. Haynes,* 13RI-CV00554 (the "Divorce Case") (The case was tried by the court on February 17, 2022, and is currently awaiting

1

judgment). On November 24, 2018, while the Divorce Case was pending, Plaintiff and Charles's daughter, M.H., committed suicide. That suicide gives rise to this wrongful death case, wherein a horrible tragedy is now being used by Plaintiff as a crusade against those involved in the Divorce Case, including the guardian ad litem, Bernice Haynes (M.H.'s grandmother), and Charles (M.H.'s father), among others.

## Standard of Review

Federal Rules of Civil Procedure 12(b)(6) allows a court to dismiss the allegations in a complaint for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must allege facts sufficient to state a claim for relief that is plausible on its face." *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than just labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Benton v. Merrill Lynch & Co, Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under 12(b)(6) is appropriate. *Id.*

In addition, the Court may consider matters of public record that are outside the Complaint in a Rule 12(b)(6) motion, specifically including Missouri state court filings. *See e.g. Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007); *Dixon v. Davis*, 2020 WL 6544250, *2 (E.D. Mo. 2020) ("Initially, it should be observed that the Court can take judicial notice of state court filings. In Missouri, as in other states, court records are public records.").

## Facts for Charles's Motion to Dismiss

All the following facts are taken either directly from Plaintiff's Amended Complaint [Doc. 6], from the filings in the Divorce Case, or both. Charles does not admit that any of Plaintiff's allegations are true, but for purposes of this Motion, those allegations should be considered as true.

- M.H. was born on August 30, 2004. [Am. Compl., Doc. 6, ¶ 3].

- M.H. was the daughter of Plaintiff and Charles. [Am. Compl., Doc. 6 ¶¶ 4, 18].

- Plaintiff and Charles were married on May 23, 2008. [Am. Compl., Doc. 6, ¶ 20].

- During the marriage, Charles physically and emotionally abused Plaintiff and M.H. [Am. Compl., Doc. 6 ¶¶ 23-24].

- Plaintiff filed for divorce against Charles in Randolph County, Missouri on May 11, 2011. That case was dismissed. [Am. Compl., Doc. 6 ¶ 34]; *Haynes v. Haynes*, Case No. 11RA-CV00606.

- Plaintiff was previously married to another man and had a daughter, M.S.H., who was Charles's step-daughter. [Am. Compl., Doc. 6 ¶ 22].

- Charles was charged with sexually abusing his step-daughter, M.S.H., on December 2, 2013. [Am. Compl., Doc. 6 ¶¶ 35-37]; *State v. Haynes*, 13RI-CR00907.

- Plaintiff and Charles both filed for divorce against one another in December 2013, and those cases were consolidated into one divorce proceeding, *Haynes v. Haynes,* 13RI-CV00554. [Am. Compl., Doc. 6 ¶¶ 36].

- M.H. was placed in foster care in 2014 and spent the next 18 months in foster care, during which time she was placed with three different foster families and moved three times to different schools. M.H. was "very traumatized" by this experience. [Am. Compl., Doc. 6 ¶¶ 104, n. 5].

- Jennifer Williams was appointed as *guardian ad litem* (GAL) for M.H. in the Divorce Case on May 6, 2016, approximately two and one-half years after the divorce was filed. [Am. Compl., Doc. 6 ¶ 46].

- Defendant Bernice Haynes (hereinafter "Bernice") is Charles's mother and M.H.'s grandmother. [Am. Compl., Doc. 6 ¶ 16].

- On November 9, 2016, Bernice filed a motion to intervene in the Divorce Case and asked to be "a possible placement provider for said minor children." [Am. Compl., Doc. 6 ¶ 53]; *Haynes v. Haynes,* 13RI-CV00554, Motion to Intervene dated November 9, 2016.

3

- On December 8, 2016, M.H. learned from Bernice that Bernice tried to poison Plaintiff by sending her a key lime pie with rat poison. M.H. was "very traumatized" and concerned for Plaintiff's health learning this [Am. Compl., Doc. 6, ¶ 66].

- On December 22, 2016, the Divorce Court ordered that, "on a temporary basis," Bernice would have physical custody of the children, that Plaintiff was to have "liberal visitation" with M.H., that Charles was to have "liberal supervised visitation" with M.H., and that M.H. would be enrolled in the Doniphan Public School District. *Haynes v. Haynes,* 13RI-CV00554, Order Regarding Emergency Motion for Child Custody Pendente Lite dated December 22, 2016.

- M.H., who had previously been home schooled by Plaintiff, was severely bullied while enrolled in the Doniphan School District and this "traumatized" M.H. [Am. Compl., Doc. 6 ¶ 76-78].

- On December 30, 2016, only eight days after the Divorce Court granted temporary physical custody of M.H. to Bernice, Plaintiff filed a motion alleging that Charles was "exercising unsupervised visitation" of M.H. and Bernice was not capable of supervising visitation. *Haynes v. Haynes,* 13RI-CV00554, Motion to Present Additional Evidence dated December 30, 2016.

- Plaintiff alleges that Charles sexually abused M.H. while she was in the custody of Bernice. [Am. Compl., Doc. 6, ¶ 18, 85].

- On January 25, 2017, GAL Jennifer Williams filed a Motion to Amend Temporary Custody Order in which she recounted various breaches of the order by Plaintiff and Charles, and that the children (including M.H.) had been "unable to adjust to residing in the home of [Bernice] and attending public schools." *Haynes v. Haynes,* 13RI-CV00554, Motion to Amend Temporary Custody Order dated January 25, 2017.

- On January 29, 2017, M.H. was admitted to SSM Health DePaul St. Louis for cutting herself. [Am. Compl., Doc. 6 ¶ 94-98, 104].

- On February 3, 2017, the Divorce Court entered an Order Amending Temporary Custody Order stating "That since the order of this Court on December 22, 2016, there has been a deterioration of the conditions with the minor children to the extent that [Charles], [Plaintiff], [Bernice] and Guardian ad litem now agree that it is in the best interest of the minor children that they be taken into custody by the Ripley County Juvenile Office and placed into the legal custody of Children's Division." *Haynes v. Haynes,* 13RI-CV00554, Order Amending Temporary Custody Order dated February 3, 2017.

- In February 2017, M.H. was again placed in foster care. *In re M.H.,* 17RI-JU00012.

- On March 20, 2017, M.H. was again admitted to a medical facility for cutting, this time while in foster care. The nurse notes show that M.H. reported "thoughts of self-harm … due to dad's trial set back," that "dad's trial" caused her depression, and that "the trial has

- been ongoing for the past three years and has been present[ly] set back again." [Am. Compl., Doc. 6 ¶ 116].

- On July 27, 2017, M.H. was placed in the physical custody of Petitioner, after having been in foster care since February 2017. The Juvenile Court case remained open and Children's Division (i.e., DFS) remained the legal custodian of M.H. until July 2018, when the Juvenile Court terminated jurisdiction and paced M.H. in the legal and physical custody of Plaintiff. [Am. Compl., Doc. 6 ¶ 148, 166]; *In re M.H.,* 17RI-JU00012.

- On September 4, 2018, Charles pleaded guilty to sexually abusing his step-daughter, M.S.H. [Am. Compl., Doc. 6 ¶ 167].

- From May 6, 2016, until the date of M.H.'s death, GAL Williams "repeatedly threatened M.H. with her and her sister's placement in foster care if M.H., Plaintiff or M.S.H. testified against [Charles] at his criminal trial or at his sentencing." [Am. Compl., Doc. 6 ¶ 182].

- On November 23, 2018, M.H. told Plaintiff that GAL Williams threatened to return M.H. to foster care and M.H. stated, "I am scared of going back to foster care. I'm going to kill myself first before I go back to foster care." [Am. Compl., Doc. 6 ¶¶ 168-169].

- On November 24, 2018, M.H. committed suicide by hanging herself. [Am. Compl., Doc. 6 ¶ 170].

## **Legal Standard for Causation**

The Missouri Supreme Court set the parameters for causation in Missouri for a wrongful death case based upon suicide in *Kivland v. Columbia Orthopaedic Group, LLP*, 331 S.W.3d 299 (Mo. banc. 2011). Missouri's causation standard in a wrongful death case is that the decedent's death was "a direct result" of a defendant's negligence. *Kivland*, 331 S.W.3d at 309 (citing MAI 20.01 and 20.02). The Court went on to say:

> Before a jury can decide causation, however, a plaintiff must offer evidence that the court determines would establish that the defendant's negligence was the proximate cause of the decedent's death. If this evidence is not offered or is insufficient, the plaintiff has not made a submissible case. Proximate cause—which is a question for the court—is established by evidence that the injury or death suffered was "the natural and probable consequence of defendant's conduct." A plaintiff can show that the defendant's negligence was the proximate cause of the decedent's suicide by presenting evidence that the decedent's suicide was the "natural and probable consequence" of the injury he suffered at the hands of the defendant. Unless this evidence—which may require expert witness testimony if no direct evidence is available—is presented, the suicide would be an intervening

5

cause and the claim could not be submitted to the jury. If, however, the plaintiff presents evidence that the suicide resulted from the injury, the claim then can be submitted to the jury to decide as a question of fact whether the suicide is a direct result of the defendant's negligence.

*Id.* at 309 – 10.

The traditional proximate cause rules apply in suicide situations as in any other case. To establish causation, a plaintiff must first establish causation in fact, i.e. that "but for" the defendant's actions or inactions, the person would not have died. *Kivland*, 331 S.W.3d at 305. "Proximate cause requires something in addition to a 'but for' causation test because the 'but for' causation test serves only to exclude items that are not causal in fact; it will include items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage." *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 865 (Mo. banc 1993). "A few jurisdictions limit 'but for' causation with a pure foreseeability test." *Id.* However, Missouri has not applied a pure foreseeability test, instead saying that "the injury must be a reasonable and probable consequence of the act or omission of the defendant." *Id.* The Court in *Callahan* (which *Kivland* cited), went on to state:

> This is generally a "look back" test but, to the extent it requires that the injury be natural and probable," it probably includes a sprinkling of foreseeability. To the extent the damages are surprising, unexpected, or freakish, they may not be the natural and probable consequences of a defendant's actions. **If the facts involved an extended scenario involving multiple persons and events with potential intervening causes, then the requirement that the damages that result be the natural and probable consequence of defendant's conduct comes into play and may cut off liability**.

863 S.W.2d 852, 865 (Mo. banc 1993) (emphasis added).

## Argument

Plaintiff has failed to allege facts in her Amended Complaint that would establish that Charles's alleged actions, if true, were the proximate cause of M.H.'s suicide.

6

This civil suit is merely an extension of an extremely contentious divorce proceeding that is dragging into its ninth (9th) year, with at least eleven (11) different attorneys having represented the parties in the divorce and at least nine (9) different judges having been assigned. Plaintiff alleges that Charles sexually assaulted M.H., which caused her to commit suicide. It is worth noting that in the Amended Complaint that is 68 pages long and contains 266 paragraphs of allegations, there are only a handful of paragraphs that include even a reference to such allegations against Charles. The rest of the Amended Complaint contains numerous allegations against other persons (all of whom were involved in the divorce case and allegedly "against" Plaintiff) that Plaintiff also claims caused M.H.'s suicide. The Amended Complaint contains, *inter alia*, the following possible "causes" of M.H.'s suicide:

- Plaintiff and Charles filed for divorce in 2011, which was dismissed, then filed again in 2013. The divorce has been very contentious and drug on for nearly a decade.

- While the divorce was pending, M.H. was removed from the custody of Plaintiff and Charles on multiple occasions and spent a total of 23 months in foster care in at least four different foster homes over a four-year period.

- M.H. was "very traumatized" by the experience of being in foster care for 18 consecutive months beginning in 2014, during which time she was placed with three different foster families and moved three times to different schools.

- After being home schooled by Plaintiff, the divorce court ordered M.H. to attend public school where she was "traumatized" by being "severely bullied" by other students.

- M.H. was "very traumatized" by learning from Bernice that Bernice tried to poison Plaintiff by sending her a key lime pie with rat poison.

- On December 22, 2016, after the divorce had been pending for three years and M.H. had spent 18 months in foster care, M.H. was again removed from the custody of Plaintiff and Charles and placed with her grandmother, Bernice, who had intervened in the divorce case to seek custody of the children.

- Charles had a pending criminal case for abusing his step-daughter M.S.H. (not M.H.), and that pending criminal case caused M.H.'s depression and self-harm.

- For more than two years, M.H.'s guardian ad litem in the divorce case threatened to put M.H. back in foster care if she (or Petitioner or M.S.H.) testified against Charles (for abusing his M.S.H.) at his trial or sentencing.

- The day before she committed suicide, M.H. stated, in reaction to the threats from her guardian ad litem, "I am scared of going back to foster care. I'm going to kill myself first before I go back to foster care."

Plaintiff named three individuals and two entities that allegedly "caused" M.H.'s suicide. The number of persons and events that allegedly caused M.H.'s suicide will not get smaller, as they are all contained in the Amended Petition. Even if all the allegations in the Amended Petition are taken as true, the facts involve an extended scenario (stretching nearly a decade), with multiple people and countless events with potential intervening causes.

This is exactly the type of case the court in *Kivland* could only hypothesize about when it stated, "**If the facts involved an extended scenario involving multiple persons and events with potential intervening causes, then the requirement that the damages that result be the natural and probable consequence of defendant's conduct comes into play and may cut off liability.**" This is a limitation to proximate cause that must be imposed by the Court, and it should be imposed by the Court in this case.

Defendant Charles Haynes respectfully requests that the Court grand his Motion to Dismiss as to Count VII of the Amended Complaint.

8

Respectfully submitted,

HARTMANN, DUFFE & PEGRAM LAW, LLC

/s/ Cira R. Duffe
Cira R. Duffe, #49506
101 E Columbia St
Farmington, MO  63640
Telephone:  573-756-8082
Facsimile:  573-755-0585
Email:  duffe@hdp-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on  March 23rd , 2022, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

9