UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA K. HAYNES, ) <br> (a/k/a Cynthia K. Randolph), ) <br> individually and under the Missouri ) <br> Wrongful Death Statute ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JENNIFER WILLIAMS, et al. ) <br> ) <br> Defendants. ) | Cause No. 1:21-CV-00160-SNL <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANT
CHARLES HAYNES' MOTION TO DISMISS**

**Additional Factual Allegations**

In his Memorandum in Support of his Motion to Dismiss, Defendant Charles Haynes (hereinafter "Charles") left out numerous facts alleged in the Amended Petition that are particularly pertinent to his conduct and interactions with M.H.   Some are:

- M.H. testified in December 2016 that she did not want to see Charles; that he made her "not like 'mom' and 'M.S.H.'"; that she never considered that he did not do to M.S.H. what she was claiming; that she had seen Charles hurting her mom (Plaintiff in this case).  ¶57.  (All paragraph references are to the Amended Complaint.)

- Child pornographic material was found on Defendant Bernice Haynes' (hereinafter "Bernice") computer that Charles used and which was delivered to the Prosecuting Attorney of Butler county.  ¶72.

- When M.H. and S.H. were living at Bernice's house, Charles was unsupervised most of the time even though the Court had ordered that all of his visits with his two daughters be supervised.  Charles came into M.H.'s room when she was staying at Bernice's home in the middle of the night without Bernice being present and sexually abused M.H.   M.H. was frightened and ran to her mother's house very agitated.  ¶85.

Page 1 of  8

- M.H. first self-harmed herself by cutting herself at the end of January 2017 while principally living at Bernice's home.  This resulted in M.H. being hospitalized in the pediatric psychiatric ward at DePaul Hospital.  ¶¶94-99.

- M.H. had written a "disturbing" note before April 27, 2017 as noted by DFS Officer Teresa Whaley wanting Charles to "fuck her pussy."  ¶121.

- All personnel at a family support team meeting on April 27, 2017 agreed that Charles had sexually molested M.H.   ¶124

- M.H. also wrote that she needed "HELP" as was discovered by her foster parents.  ¶125.

- In June 2017, M.H.'s foster parents reported that M.H. was "scared of Charles."  ¶134.

- A therapist who worked with M.H. and S.H. concluded it was not in their best interest to have any contact with Charles or with Bernice.  ¶135 and Exhibit 24.

- The records of Dr. Bost, M.H.'s pediatrician, dated July 27, 2017, stated that Charles was sexually molesting M.H.   ¶143.  The doctor tested M.H. for HIV, gonorrhea, chlamydia, and HPV virus. ¶144 and Exhibit 27.

- On December 15, 2017 Dr. Jerry Marks, M.H.'s therapist, stated that she had experienced trauma from moving to different foster homes and attending different schools.  ¶157 and Exhibit 34.

- Dr. Marks concluded in his report of March 17, 2020 that M.H. had been sexually abused by Charles.  ¶180 and Exhibit 43.

- Dr. Marks was of the opinion that M.H. should have no contact with her father Charles.  ¶181.

- Charles and Bernice threatened Plaintiff that if she or M.H. testified against him at his criminal trial that Defendant Williams (hereinafter "Williams") would return M.H. and S.H. to foster care and then Charles would get custody of M.H. and S.H. once he was on probation.  ¶158.

- On November 23, 2018, Williams threatened M.H. that if she or Plaintiff or M.S.H. testified against Charles at his upcoming sentencing that she would return M.H. and S.H. to foster care and that she would be asking the court to put Charles on probation at his sentencing hearing.  ¶168.

- On that same day, M.H. told Plaintiff that she could not deal with her father any more if he was free on probation. ¶169.

- On November 24, 2018 M.H. committed suicide fearing that Charles would be placed on probation. ¶168 & ¶170.

- On December 12, 2018, Williams testified at Charles sentencing seeking that he be placed on probation. ¶172.

- Throughout her tenure as a GAL, Williams consistently and persistently attempted to keep Charles out of jail and/or on probation and to reunite him, her abuser, with M.H. ¶186.

- Williams placed M.H. in a double bind by threatening that if she or her mother or stepsister testified against Charles that M.H. would be placed in foster care. On the other hand, if she did not testify against her father and he was released on probation as Williams advocated, M.H. would be placed in her father's custody or required to spend time with him even though he had sexually abused her. ¶195(d).

## ARGUMENT

Charles argues that whatever harm he caused M.H. was too remote in time or among events to impose liability upon him for M.H.'s suicide. Toward the end of his Memorandum he argues that this is a type of case that Kivland v. Columbia Orthopedic Group, LLP, 331 S.W.3d 299, 309-310 (Mo. 2011) stated should be dismissed because Charles' actions complained of were too removed in time to her suicide for him to be accountable. Charles attributes a quote from Kivland, *supra*, that:

> "If the facts involved and extended scenario involving multiple persons and events with potential intervening causes, then the requirement that the damages that result be the natural and probable consequence of the defendant's conduct comes into play and may cut off liability." (pg. 8 of his Memorandum)

as support for this Court granting his Motion to Dismiss based upon the remoteness of his actions from M.H.'s suicide and/or based upon the fact that there are other intervening causes of M.H.'s

Page 3 of 8

suicide. This quote is actually taken from Callahan v. Cardinal Glennon Hospital, 863 S.W.2d 852, 865 (Mo. 1993). Charles does not articulate why his contention applies in the light of the facts of this case. He does not explain why his alleged acts were too remote in time or why they are unconnected to M.H.'s suicide because of "intervening causes." M.H. committed suicide shortly after Charles, Bernice and Williams told her that Charles was likely to be placed on probation. M.H. feared what Charles would do to her and feared being placed in his care. These fears brought to the present what Charles had done to M.H. causally connecting Charles' acts with M.H.'s suicide.

Kivland addresses the issues of remoteness or intervening causes based upon the holding in Callahan, 863 S.W.2d at 865. See Kivland, 331 S.W.3d at 309. Plaintiff cited both Callahan and Kivland to support her argument that Bernice' failure to supervise Charles was not too remote of a "cause" to justify dismissal of Plaintiff's claim against Bernice. (See Plaintiff's Response to Bernice' Motion to Dismiss.) The same arguments articulated in Plaintiff's Response Memorandum to Bernice's Motion apply equally herein, especially since the alleged actions or inactions of Bernice are one step removed from M.H.'s suicide than is Charles' abuse of M.H.

As the Missouri Supreme Court stated in Callahan, *supra*, Missouri does not require that the exact injury Plaintiff suffered be foreseeable by the Defendant or determined foreseeable by the finder of fact evaluating the acts of defendant. It is sufficient that it was reasonably foreseeable that the acts complained of would cause harm to the decedent and that the decedent's suicide was an actual and probable consequence flowing from that harm. Kivland, 331 S.W.3d at 309-310. As the Supreme Court noted in Callahan, the "but for" causation test serves not to determine cause in fact, but only to eliminate certain claimed causes for which it would not be reasonable on which to base liability because they may be too far removed from the ultimate

injury. Callahan, 863 S.W.2d at 865. The instant case presents a stronger causal connection than either Kivland or Callahan. The statements that Charles was likely to receive probation brought his past abuse of M.H. and its effect on M.H. to within days of her suicide.

In this case, Plaintiff's allegations support that Charles sexually abused M.H. That is supported by Dr. Bost's medical records, by Charles going into M.H.'s bedroom during the night when M.H. was at Bernice' house, and by the opinions of Dr. Marks and the professionals at DFS who worked with M.H. and her family in conjunction with juvenile proceedings. From the facts stated in the Amended Complaint and the inferences emanating from them, it is also reasonable for a trier of fact to conclude that M.H. only felt safe while living at her mother's house; that she did not feel safe if she might live at a foster home; that she had negative experiences at foster care homes for eighteen (18) months starting in 2014; that according to Williams that Charles was likely to get probation; and that M.H., her mother and her stepsister should not testify against Charles at his criminal trial or at the sentencing hearing, all of which left M.H. overwhelmed with the feeling of hopelessness leading to her suicide on November 24, 2018. Underlying that hopelessness was Charles' abuse of M.H. and of M.S.H. and M.H.'s fear that Charles would be placed on probation.

Pursuant to this factual scenario, this Court should deny Charles' Motion to Dismiss. A jury should determine whether Charles' actions contributed to cause M.H.'s suicide and to assess damages accordingly. Kivland, *supra*, and Callahan, *supra*. Analogously, as the Missouri Supreme Court explained in Kivland, *supra*, when analyzing the admissibility of expert testimony in that case, even if the trial court should not believe an expert for Mr. Kivland, it was for the jury to decide whether to believe the expert's testimony and what weight to give to the expert's opinion. 331 S.W.3d at 310-313. The same evaluation applies to this Court deciding causation

on Charles' Motion to Dismiss.  It is for the trial court to determine only whether Plaintiff has pled sufficient facts that if believed by a jury would establish causation, not whether the trial court, itself, believes those facts.  In this case Plaintiff's Amended Complaint pleads facts sufficient for a jury to find causation against Charles.

In an extensive opinion analyzing cases in which there may be multiple defendants and multiple issues of causation, the Court of Appeals in Wagner v. Bondex Int'l., Inc., 368 S.W.3d 340 (Mo. App. W.D. 2012) provides additional guidance for evaluating causation issues as they apply to this case.  Wagner first explains that "but for" causation applies in every tort case in Missouri except those in which there are two independent causes that are unrelated, which is not this case.  368 S.W.3d at 349.  It notes that the Missouri Supreme Court in Callahan, *supra*, did not rule out two or more defendants contributing to cause harm to a plaintiff when evaluating the applicability of causation in fact, "but for" causation.  Even if the harm done by one defendant would not have alone produced the injury to plaintiff, but only causes the complained of injury to the plaintiff in combination with the harm done by another defendant, the harm done by the first defendant can be a contributing cause to plaintiff's injuries.  368 S.W.3d 349-350.  Plaintiff only needs to show that the conduct of one defendant "more probably than not" was a contributing cause of the plaintiff's injury.  Plaintiff has pled facts which establish that Charles' molestation of M.H. was a contributing cause of her suicide, which is causation in fact ("but for" causation).

After having established causation in fact, plaintiff must also allege facts showing that the actual harm caused to the plaintiff is a "reasonable and probable consequence" of the harm resulting from a defendant's actions; that is, that a defendant's actions are not too remote in time or circumstance from the ultimate harm suffered by the plaintiff or, in this case, by the decedent. That proximity of cause can be shown by whether that particular defendant's actions set in motion

a chain of circumstances leading to the plaintiff's injuries or whether that defendant's actions are part of a collection of actions and harms caused by more than one defendant that results in the ultimate and compensable harm to plaintiff.  368 S.W.3d at 353-355.  As the court in Wagner, *supra*, reiterated, in Missouri, a plaintiff can sue any or all joint or concurrent tortfeasors and later obtain a judgment against any one of them or several or all of them.  Apportionment of fault to any one of them does not effect the plaintiff's right to collect against whichever defendant that plaintiff chooses is liable.  368 S.W.3d at 359-360.

      As the facts cited by Charles and the additional facts stated above taken from the Amended Complaint show, Charles' actions caused M.H. to fear him tremendously.  She feared that he would be placed on probation on November 26, 2018.  She feared that Charles would be granted custody of herself and her younger sister.  Combined with the threats from Williams (and Charles and Bernice) that M.H. would be placed in foster care should she, her mother, or M.S.H. testify against Charles in his criminal proceedings and combined with Bernice' failure to supervise Charles, Charles' actions are one component cause of M.H.'s state of mind that led her to commit suicide on November 24, 2018.  M.H. expressed fear of Charles being placed on probation.  M.H. suffering emotional distress and fear resulting from Charles' actions were foreseeable from his having abused her.  It is for the trier of fact to determine whether Charles' actions, at the very least, contributed to cause M.H.'s suicide.

      Under the circumstances of the instant case, Plaintiff has sufficiently pled that Charles by his actions caused or contributed to cause the wrongful death of M.H.  For that purpose, it was reasonably foreseeable that by abusing M.H. and threatening her that Charles would cause her harm.  It would also be reasonable for a jury to have assessed that the harm Charles caused led naturally and probably to her suicide even if his actions were not the only cause of M.H.'s suicide.

Under the <u>Kivland</u>, <u>Callahan</u>, and <u>Wagner</u> cases, Charles' Motion to Dismiss should be denied.

## CONCLUSION

For these reasons and the others cited above as well as for the reasons stated in Plaintiff's Response to Bernice' Motion to Dismiss, this Court should deny Charles' Motion to Dismiss.

Respectfully submitted,

| | |
|---|---|
| <u>/s/  Laurence D. Mass</u><br>Laurence D. Mass, Bar # 30977 Mo.<br>230 S. Bemiston Avenue, Suite 1200<br>Saint Louis, Missouri 63105<br>Phone: (314) 862-3333 ext. 20<br>Fax: (314) 862-0605<br>e-mail: laurencedmass@att.net | <u>/s/  Evita Tolu</u><br>Evita Tolu, Bar # 49878 Mo.<br>1 Crabapple Court<br>Saint Louis, Missouri 63132<br>Cell: (314) 323-6033<br>Fax:    (314) 207-0086<br>e-mail: evitatolu@outlook.com |

Attorneys for Cynthia K. Haynes

## CERTIFICATE OF SERVICE

It is hereby certified that on this   31st   day of March 2022, a copy of the foregoing was filed electronically with the Clerk of the Court to be served to all counsel by operation of the Court's electronic filing system.

　　　　　　　　　　　　　　　　　　　 /s/  Laurence D. Mass