**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| CYNTHIA K. HAYNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:21-CV-00160-ACL |
| | ) |
| JENNIFER WILLIAMS, et al. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR
RECONSIDERATION TO THE GRANT OF DEFENDANT BERNICE HAYNES'
MOTION TO DISMISS**

**<u>Plaintiff Has Appropriately Sought Reconsideration Pursuant to Rule 54(b)</u>**

Defendant Bernice Haynes argues that Plaintiff's Motion for Reconsideration of

this court's interlocutory order dismissing Plaintiff's claims against her is governed by

Rules 59(e) or Rule 60(b).  Under these Rules motions for reconsideration are only to

correct manifest errors of law or fact or to present newly discovered evidence.  She faults

Plaintiff for re-arguing the legal theories previously briefed in opposition to Defendant

Bernice Haynes Motion to Dismiss.

A motion to reconsider an interlocutory order should be decided pursuant to Rule

54(b) which permits a court to reconsider any interlocutory order in order to correct what

might be a "clearly or manifestly erroneous findings of fact or conclusions of law" but

which also permit the court to grant reconsideration if equity so demands.  <u>Westinghouse</u>

<u>Elec. Co. v. United States</u>, 2009 U.S. Dist. LEXIS 27369 (E.D. Mo. 2009) (Judge Perry).

In that case, the District Court determined that even though the party seeking reconsideration, Westinghouse, may not have satisfied the articulated, demanding standard for reconsideration, it was still entitled to a reversal of an interlocutory order dismissing certain claims.  Under Rule 54(b) an order or judgment that does not dispense with all of the legal issues or all of the parties may be revised at any time by a court until there is a final judgment disposing all of the legal issues being litigated as well as all of the parties.  In that decision, the District Court determined that reconsideration should be granted under equitable principles and would prevent a judgment from becoming a vehicle for injustice.

In the Westinghouse case, the District Court held that a previously assigned judge had made an incorrect decision of law that resulted in a judgment against Westinghouse on its claim to collect reimbursement for its payment of environmental damages.  A correct reading of the environmental law did not foreclose Westinghouse from having an opportunity to litigate that issue.  Under that ruling, the District Court avoided reaching final judgment only to have it reversed by the Court of Appeals necessitating a retrial of the very issue that could then be tried.

In a later opinion, the same District Court judge reiterated her analysis of Rule 54(b) and concluded that she had wrongly granted summary judgment to one party.  She, therefore, reversed that decision and permitted the issue presented by the motion to be litigated in the first instance in her court.  CitiMortage, Inc. v. Chi. Bancorp., Inc., 2014 U.S. Dist. LEXIS 124863 (E.D. Mo. 2014) (Judge Perry).  The District Court was

convinced by Chicago Bancorp's motion for reconsideration that it had made an incorrect decision on the meaning of a contract as it applied to the facts of that case and, therefore, had wrongly granted summary judgment.  She emphasized that reconsideration should be granted as justice required citing Singh v. George Washington Univ., 383 F.Supp.2d 99, 101 (D.D.C. 2005) and Harley v. Zoesch, 413 F.3d 866, 870 (8th Cir. 2005) (a case reconsidering a final judgment as opposed to an interlocutory order).

In the CitiMortgage, *supra*, decision, the District Court noted that motions for reconsideration should not become a vehicle for new legal theories to be presented to the court for the first time for its consideration.  That observation is particularly poignant in light of Defendant Bernice Haynes faulting Plaintiff for making the same arguments in Plaintiff's Motion for Reconsideration as originally made in opposition to Defendant Bernice Haynes' motion to dismiss.  In essence, Defendant Bernice Haynes wishes to place Plaintiff in a no win situation when asking for reconsideration.  If Plaintiff presents a new legal theory, reconsideration is inappropriate.  When Plaintiff presents the same legal theory as the basis for reconsideration as was originally argued, then according to Defendant Bernice Haynes there is no basis for reconsideration.  That is not what case law establishes.

## Under Kivland the Dismissal of Plaintiff's Claim Against
## Defendant Bernice Haynes Should Be Reversed.

Although Plaintiff did not cite new law for reconsideration, she did bring to this Court's attention that its decision granting Defendant Bernice Haynes' Motion to Dismiss did not correctly apply Kivland v. Columbia Orthpaedic Group, LLP, 331 S.W.3d 299,

306 (Mo. 2011) to the instant case. Plaintiff argues that this Court did not sufficiently appreciate that the damages caused by Defendant Bernice Haynes are the very damages caused by Defendant Charles Haynes. Under Kivland, *supra*, whether a tortfeasor causes a tort victim's suicide depends upon the severity of the damages caused by the tortfeasor, especially the emotional damages, which "naturally and probably" caused the tort victim to take her own life.

As the court in A.R.H.v. W.H.S., 876 S.W.2d 687 (Mo. App. E.D. 1994) recognized, the plaintiff's petition in that case alleged that the grandmother's failure to supervise a granddaughter when in the presence of the step-grandfather led to his continuing abuse and threats of the granddaughter. Alternatively, the grandmother's failure to warn others also resulted in the failure to prevent the step-grandfather from continuing his abuse and threats. The Missouri Supreme Court in A.R.H. held that under the circumstances of that case the plaintiff could pursue, and jury could find, that the grandmother's failure to supervise resulted in the granddaughter suffering abuse by the step-grandfather. A.R.H., 876 S.W.2d at 689-691.

Similarly, failure of the grandparents in Rogger v. Voyles, 797 S.W.2d 844 (Mo. App. S.D. 1990) to supervise their thirteen year old grandchild was a basis for liability even if the defective brakes on the vehicle driven by the thirteen year old grandchild contributed to cause the accident. 797 S.W.2d at 847. Again, the damages for which the supervising grandparent was responsible were the damages more directly caused by the tortious conduct of another party. That is the implication of the decision in O.L. v. R.L.,

62 S.W.3d 469 (Mo. App. W.D. 2001) as well.

Although both the Kivland, *supra*, and Callahan vs. Cardinal Glennon Hospital, 863 S.W.2d 852, 863 (Mo. 1993) contained more extensive discussions of proximate cause, that does not mean that the cases of A.R.H., *supra* and O.L. v. R.L., *supra*, focused on the duty to supervise do not have significant implication with regard to causation that have to be taken into account.  As Plaintiff pointed out in her Motion for Reconsideration, when a person violates their duty to supervise a minor, the damages for which that person is accountable are the damages caused by the tortfeasor who was able to hurt the minor to cause damage as a result of the failure of the supervisor.  As the court in Kivland, *supra*, held (331 S.W.3d at 310), the MAI instructions for wrongful death cases are applicable in wrongful death cases in which death results from the suicide of a tort victim.  In the case in which there is more than one cause of damage, then the appropriate instruction is that the acts complained of "directly caused or directly contributed to cause damage to the plaintiff."  MAI 19.01.  The harm caused to M.H. by Defendant Bernice Haynes' failure to supervise, at the very least, contributed to cause damage to M.H. and thus, to Plaintiff.

### The Harm Defendant Bernice Haynes Caused to M.H. is Sufficiently Proximate to M.H.'s Suicide.

Defendant Bernice Haynes then argues that there were so many causes alleged for M.H. being emotionally distraught, that causation cannot be attributed to her.  To the extent there are multiple causes, then as stated above, the appropriate jury instruction and the guidance for this Court would be whether the acts of Defendant Bernice Haynes "contributed" to cause the death of M.H.   What Defendant Bernice Haynes ignores is that

M.H. principally complained about the fear of returning to foster care and of her father being placed on probation where she would have contact with him and possibly being placed in his custody and/or compelled to visit with him.  Many of the "other" causes that Defendant Bernice Haynes cites (her Memorandum at pp. 3-4) are conditions that resulted from Defendant Charles Haynes' abuse of M.H., the very damages for which Defendant Bernice Haynes is also liable for under the claim that she negligently failed to supervise Defendant Charles Haynes and to protect M.H. when M.H. was in her custody.

For example, M.H. was placed in a hospital for psychiatric care twice after cutting herself.  The first instance occurred while M.H. was in Defendant Bernice Haynes' custody and the second within a few months thereafter when M.H. was just beginning her possible recovery from the abuse by her father.  Another was the fact that M.H. went into foster care again for five (5) months (not seventeen months as Defendant Bernice Haynes again states incorrectly) immediately upon being in Defendant Bernice Haynes' custody and being abused by her father.  Another cause was that the GAL had repeatedly threatened M.H. that if she, her mother or her sister testified against Defendant Charles Haynes that M.H. would be returned to foster care.  This fear arises significantly because of the abuse M.H. suffered by Defendant Charles Haynes.

These damages or fears would not have occurred had Defendant Bernice Haynes properly supervised Defendant Charles Haynes' visits with M.H.   As this Court noted in its Memorandum and Order (pg. 13) the Amended Complaint in this case stated sufficient facts from which a jury may infer that "Charles' actions proximately caused M.H.'s

death."  This Court noted that Plaintiff alleged that Defendant Charles Haynes abused

M.H., that M.H. feared him greatly, that his actions caused M.H. significant emotional

distress, that as a result M.H. cut herself and was hospitalized in psychiatric wards twice

and that M.H. was threatened that upon her, her mother's or her stepsister's testimony to

be place back again in foster care which she dreaded also related to Defendant Charles

Haynes' abuse of M.H.  This Court also noted that the proximity in time of Defendant

Charles Haynes' sentencing to M.H.'s suicide lends credence to Defendant Charles

Haynes abuse of M.H. being a cause of her death by suicide.  It is the damages resulting

from his actions for which Defendant Bernice Haynes is responsible for her failure to

supervise Defendant Charles Haynes.

### The Divorce Decree Did Not Dispose of Any Issue Being Litigated in this Case.

Defendant Bernice Haynes implies, if she does not state as such, that because the

divorce court in Plaintiff's divorce found against Plaintiff on her counterclaim against

Defendant Bernice Haynes in that litigation, that Plaintiff cannot relitigate her claims

against Defendant Bernice Haynes in this lawsuit.  This contention is wrong.  The claims

Plaintiff has brought against Defendant Bernice Haynes in Count IV of her Amended

Complaint have not been tried and decided in any previous litigation.  No evidence of

Defendant Bernice Haynes' failure to supervise M.H. was presented in the Haynes v.

Haynes divorce, 13RI-CV00554.

In her counterclaim in her divorce, Plaintiff did allege some of the facts that were

also alleged in her Amended Complaint herein.  Defendant Bernice Haynes as intervenor

in the divorce sought to be awarded sole legal and physical custody of S.H.  In her counterclaim against Defendant Bernice Haynes, Plaintiff opposed that, but also requested the return of her separate non-marital property that was allegedly concealed on Defendant Bernice Haynes' property as well as any marital property that Defendant Bernice Haynes had in her possession.  See copy of Plaintiff's Counterclaim against the Intervenor filed July 26, 2001 in Case No. 13RI-CV00554 attached hereto as Exhibit 1.

Approximately one month later Defendant Bernice Haynes wrote to Judge Kamp, who presided over the Haynes v. Haynes divorce, requesting that she be dismissed as a party intervenor stating that she would not seek the custody of S.H., the sole surviving child of the Haynes marriage.  See copy of Defendant Bernice Haynes's letter to Judge Kamp received in Ripley County on August 27, 2021 attached hereto as Exhibit 2.  Judge Kamp then immediately dismissed Defendant Bernice Haynes from that litigation before there had been any adjudication of Plaintiff's counterclaim.  See Judge Kamp's Judgment and Order of dismissal dated August 27, 2021 and filed by the Court on September 1, 2021 attached hereto as Exhibit 3.

Plaintiff then filed a motion to ask that Judge Kamp rescind his order of dismissal of Defendant Bernice Haynes as Intervenor in the divorce solely so that issues relating to Defendant Bernice Haynes having possession of Plaintiff's separate and marital property could be litigated.  See copy of Plaintiff's filing seeking to retain Defendant Bernice Haynes as a party in the divorce for distribution of physical property filed September 7, 2021 attached hereto as Exhibit 4.

Defendant Bernice Haynes then again wrote to Judge Kamp asking him to deny Plaintiff's motion to retain her as a party in that divorce which was filed on September 13, 2021 attached hereto as Exhibit 5.  Judge Kamp then issued a new judgment dated September 15, 2021 in which he reversed the order dismissing Defendant Bernice Haynes from that case with regard to non-custodial matters relating to property, attached hereto as Exhibit 6.

In the final judgment entered in the Haynes v. Haynes divorce entered on May 23, 2022 (Exhibit 7 attached hereto), the court noted that Defendant Bernice Haynes withdrew her petition seeking custody of S.H. and that the court ordered the same.  (¶19.) The decree then finds for Defendant Bernice Haynes on all allegations relating to her concealing property.  (¶¶79-84.)  Then the judgment portion of the decree finds for Defendant Bernice Haynes on all issues presented by Plaintiff's counterclaim against her. No issue related to Defendant Bernice Haynes' failure to supervise Defendant Charles Haynes and to protect M.H. was litigated in the Haynes divorce or was the subject of a finding by the divorce court.

In CitiMortgage, Inc. v. Chi. Bancorp., Inc., 2015 U.S. Dist. LEXIS 39900 (E.D. Mo. 2015) (a later decision than the one previously cited) (Judge Fleissig), the court explained why res judicata or any other doctrine of preclusion does not apply in cases in which there was no previous presentation of evidence and factual findings that could be the basis of precluding the litigation of issues in a subsequent case.  When the facts and circumstances of the case at hand are different from what was decided in a previous

litigation, then preclusion is not appropriate.  In this second <u>CitiMortgage</u> decision, there were multiple loan agreements.  Defaults under each loan are reviewed separately.  Whether a loan should be repurchased pursuant to a master agreement between the parties depended upon the facts of each individual case.  Therefore, preclusion of later litigation on defaults on separate loan agreements did not apply when the facts of a particular loan were not previously determined.

In this case, although the court in the divorce litigation made a finding against Plaintiff with regard to her counterclaim, there was no actual litigation of the issues which Plaintiff alleges in her claim herein against Defendant Bernice Haynes (Count IV of the Amended Complaint).  The only issues for which evidence was presented in the divorce were issues concerning whether Defendant Bernice Haynes participated in concealing Plaintiff's property in conjunction with Defendant Charles Haynes.  On that basis, Defendant Bernice Haynes' reference to the Haynes divorce decree in her Response to Plaintiff's Motion to Reconsider herein to imply that Plaintiff's claims in the instant case had already been resolved in previous litigation is ill-taken and a misrepresentation to this Court.  That reference should be rejected.

## **CONCLUSION**

For all of the above stated reasons, this Court should grant Plaintiff's Motion for Reconsideration, reinstate Count IV of the Amended Complaint and grant such other and further relief as the Court deems just under the circumstances herein.

Respectfully submitted,

/s/  Laurence D. Mass                         /s/  Evita Tolu
Laurence D. Mass, Bar # 30977 Mo.            Evita Tolu, Bar # 49878 Mo.
230 S. Bemiston Avenue, Suite 1200           1 Crabapple Court
Saint Louis, Missouri 63105                  Saint Louis, Missouri 63132
Phone: (314) 862-3333 ext. 20                Cell: (314) 323-6033
Fax: (314) 862-0605                          Fax:   (314) 207-0086
e-mail: laurencedmass@att.net                e-mail: evitatolu@outlook.com

Attorneys for Cynthia K. Haynes

## CERTIFICATE OF SERVICE

It is hereby certified that on this  24th  day of June 2022, a copy of the foregoing
was filed electronically with the Clerk of the Court to be served to all counsel by
operation of the Court's electronic filing system.


/s/  Laurence D. Mass