**FILED**

## IN THE RIPLEY COUNTY CIRCUIT COURT
### STATE OF MISSOURI

2022 MAY 25  PM 12: 23

| | | |
|---|---|---|
| CHARLES MICHAEL HAYNES | ) | SHARON R. RICHMOND |
| Petitioner | ) | CIRCUIT CLERK |
| | ) | RIPLEY COUNTY, MO |
| Vs | ) | |
| | ) Case No. 13RI-CV00554 | |
| | ) | |
| CYNTHIA KAY HAYNES | ) | |
| Respondent | ) | |
| | ) | |
| Vs. | ) | |
| BERNICE HAYNES | ) | |
| Intervener | ) | |

### JUDGMENT AND DECREE OF DISSOLUTION OF MARRIAGE

This cause having heretofore been called for trial on February 14, 2022 and continuing

through February 17, 2022, Petitioner, CHARLES M. HAYNES (Husband/Father), appeared in

person and by his attorney, William J. Halaz, III; Respondent, CYNTHIA K. HAYNES, also

known as Cynthia Kay Randolph, (Wife/Mother), appeared in person and by her attorney, Evita

Tolu; Intervener BERNICE HAYNES (Intervener) appeared not in person but by her attorney

Shanna Surrat; and the Guardian ad Litem, Allyson E. Brown appeared on behalf of the minor

child, Sara Haynes who appeared not.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.  The parties to this action were both residents of Ripley County, Missouri, at the

    time of the filing of this action and had been so for more than 90 days prior to the

    filing of this action.

2.  Both parties are over the age of 18.

3.  The parties married on May 23, 2008, in Ripley Count, Missouri, where said

    marriage was registered.

4.  The parties separated on December 1, 2013.

1

PLAINTIFF'S
EXHIBIT
7

5.      The Petitioner's social security number ended in the numbers of 8343 and the Respondent's social security number ended in the numbers 1203..

6.      The parties had two biological children, Mikaela Haynes and Sara Haynes, now age 13, her date of birth is February 24, 2009. born of the marriage. Mikaela Haynes died on November 24, 2018,

7.      The Respondent is not pregnant at this time.

8.      In 2006 Husband and Wife started living together with Melissa Hogg, Mindy Hogg, and Mikaela Haynes at Husband's house (which he owned before his marriage to Wife) located at what is now known as 239 Tadpole Lane, Doniphan, MO 63935 (Chuck's House).

9.      Neither party is a member of the Armed Forces of the United States of America serving on active duty.

10.     There is no reasonable likelihood that the marriage between the Petitioner and the Respondent can be preserved.

11.     The marriage of the parties is irretrievably broken.

12.     On May 6, 2016, the Court appointed Jennifer Williams as a GAL to protect the best interests of Mikaela and Sara Haynes.

13.     On December 1, 2013, Husband was criminally charged with sexual abuse of Melissa Hogg in State v. Haynes with the following offenses:

    Count I – Felony of Statutory Sodomy in the First Degree
    Count II – Class B felony of Child Molestation in the First Degree
    Count III – Class C Felony of Statutory Sodomy in the Second Degree
    Count IV – Class C Felony of Statutory Sodomy in the Second Degree.

14.     On September 4, 2018, Father pled guilty to a Class C Felony, Statutory Deviant Sodomy of a Minor in the Second Degree under R.S. Mo. §566.064 for sexually abusing Melissa Hogg.

15.     As a result of his guilty plea, Father is a lifetime registered sex offender.

16.     The Criminal Court sentenced Father to seven years of incarceration with the sentence ordered executed.

17.     On January 2, 2019, the Court entered an Order ordering the Petitioner and Respondent not "to sell, dispose of in any manner, hide, secret, or remove any marital property from its present location." **Exhibit W-16.**

18.     GAL Jennifer Williams withdrew from the case on May 5, 2021.

19.     On August 27, 2021, Intervener withdrew her petition requesting Sara's custody due to the Intervener's age and health and the Court subsequently accepted and ordered the same.

20.     On September 15, 2021, the Court denied Wife's Motion for Partial Summary Judgment on all points except for one, the Wife being awarded a 1996 Utility Trailer as non marital property.

21.     The Court does not find that Petitioner committed a pattern of domestic violence against Respondent nor against the minor children born of the parties during the course of this marriage.

22.     The Court does find that the Petitioner committed other acts of marital misconduct that should be factored in the division of the marital assets.

23.     The Court finds that, pursuant to Missouri law, Petitioner did not abandon nor neglect the minor children born of the Parties.

24.     The Court has considered all relevant factors including but not limited to the factors set forth in RSMo §452.375 in determining whether supervised visitation is in the best interest of the minor child. Specifically:

       a.     The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties

3

b.      The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

c.      The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

d.      Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

e.      The child's adjustment to the child's home, school, and community;

f.      The mental and physical health of all individuals involved, including any history of abuse of any individuals involved.

g.      The intention of either parent to relocate the principal residence of the child;

h.      and the wishes of a child as to the child's custodian.

25.      On December 10, 2021, this Court awarded Wife sole legal and physical custody of Sara Haynes pursuant to RSMo. 450.375. Pursuant to RSMo. 452.375.3 Husband is forever barred from being a custodian parent of a minor child, due to Husband's felonious conviction of deviant child sodomy under RSM0 566.064.

26.      The Court rejects the Husband's original parenting plan.

27.      On December 10, 2021 the Court on its own motion, due to the allegations made by the Respondent, appointed Allyson Brown (herein referred to as GAL), as GAL to represent Sara's best interests I and to assist the Court in determining whether Sara should have supervised phone visits with her Father while he was in jail.

4

28.     As testified to by various expert and lay witnesses, any in person or phone visitation could endanger the child's physical health or potentially impair her emotional development.

29.     The Court finds that Allyson Brown did a superb job of representing the best interests of Sara Haynes.

30.     GAL Brown recommended to this Court not to award any supervised phone contact to Father with Sara. GAL Brown determined that the lack of communication with her father has not seemed to negatively impact Sara. GAL Brown explained that "[b]ecause of Sara's age, the dangers of being "groomed," and the additional emotional turmoil phone contact would cause," that no phone contact with the Father should be ordered at this time.

31.     The Court finds that phone contact between Sara and Charles Haynes is not in the best interest of minor, Sara Haynes.

32.     The GAL incurred $1,409.40 in fees and costs that were unnecessarily incurred when the Respondent Wife deposed Theresa Whaley. Said deposition was not used or placed of evidence at trial and served no useful trial purpose. Wife should be ordered to pay these depositional expenses and the husband should not be ordered to pay any of these depositional costs.

33.     The Court finds that the balance of the GAL fees in the amount of $8,071.08, should be divided equally between the Petitioner and the Respondent.

34.     Father is set to be released on December 12, 2025, a period of more than 6 months after the date of this trial.

35.     The evidence supported a finding that the Husband was entitled to a pension of approximately $305 per month but there was no evidence to show that the Husband was of the age to be receiving the benefit or was actually receiving the benefit.

5

36.     There was no evidence that the Husband was receiving any social security benefits at the time of trial.

37.     Respondent presented no evidence of therapy expenses for Sara and therefore, the Court finds that Petitioner is not responsible for any therapy expenses incurred during the course of this litigation.

38.     Mother testified that she did not currently have health insurance coverage for her daughter.

39.     There was no evidence that the Husband was receiving any rental income or any other income from any other source at this time. There was no evidence that the Husband was receiving any rental income or any other income from any other source at this time.

40.     Pursuant to the Form 14 the Husband has no present income and cannot be presumed any income to determine his child support obligation. Husband has no obligation for child support until after his release from incarceration from the Missouri Department of Corrections.

41.     The Court finds Petitioner's proposed Form 14, which is attached hereto as **Judgment Exhibit 2,** and incorporated by reference as if set forth herein, to be just and appropriate in light of Father's incarceration and the evidence presented at trial.

42.     On January 25, 2022, the Court heard Husband's Order to Show Cause request. The Wife did not appear and was found to be in contempt of Court. The fines ordered to be paid by the Respondent remain outstanding as of the date of the order and the Respondent has not appealed that order finding the Respondent to be in contempt of this Court's orders.

43.     The Respondent and her attorney Evita Tolu, subpoenaed Keri Smith, Ted Liszewski, and Christopher Yarbro to testify at trial. All three of the above referenced attorneys were former attorneys who had represented the Petitioner in various proceedings involving the

6

parties of this action and as such developed an attorney/client relationship. Both the Respondent and her attorney, Evita Tolu, knew that the Respondent had been represented by the three attorneys at various times and an attorney/client relationship existed between the Petitioner and these three attorneys.

44.     The decision to subpoena Keri Smith, Ted Liszewski and Christopher Yarbro was an intentional act and was made in bad faith by the Respondent and her attorney, Evita Tolu.

45.     Despite timey requests and motions to quash the subpoenas on the basis of the attorney/client privilege made by Keri Smith, Ted Liszewski and Christopher Yarbro to be excused from the subpoena, the Respondent and her attorney, Evita Tolu, refused to release the three attorneys, which said refusal was made without any legal basis and was made in bad faith.

46.     The petitioner, Charles Haynes, never waived any of his rights under the attorney/client privilege doctrine.

47.     As a result of the bad faith actions of the Respondent and her attorney, Evita Tolu, Keri Smith, Ted Liszewski and Christopher Yarbro were unnecessarily required to attend these Court procedings to argue the motions to quash the friviously filed subpoenas and to expend several hours of legal time and travel time.

48.     The fair and reasonable value of the lost time of Keri Smith was $1,500.00.

49.     The fair and reasonable value of the lost time of Ted Liszewski was $1,200.00.

50.     The fair and reasonable value of the lost time of Christopher Yarbro was $750.00.

51.     Husband and Wife agreed that the Gertrude House with the current address of 243 Tadpole Lane, Doniphan, MO 63935, and the Parcel ID. No. 18-7.0-25-000-000-013.000 being 2.30 acres is marital property.    The legal description of the Gertrude Property is described on **Husband's Exhibit 26** and is attached to this Judgment as **Judgement Exhibit 1** and is incorporated by reference as if fully and completely set forth herein.

7

52. Husband asked the Court to award Husband the Gertrude House at Husband's value of $70,000. Wife testified that the parties purchased the Gertrude House for $175,000. Husband's valuation is significantly understated. Wife further stated that the Gertrude House has not sustained any damage to reduce its value to $70,000.00 as Husband claimed. Wife's value of the Gertrude House at $275,000.00 is significantly overstated. The Court finds that the Gertrude House should be valued at the purchase price of $175,000.00 as no outside appraisals were furnished by either party.

53. The Court finds that Husband acquired "Chuck's House" located at 239 Tadpole Lane, Doniphan, MO. prior to his marriage to Wife. The Court finds that Wife contributed her separate non-marital assets to enhance the value of the Chuck's House. Husband promised to repay Wife the money Husband borrowed to improve his premarital home.

54. The Court finds that the written agreements (W-34, W-35, W-36) that the Wife founds her claims on, are barred by the Ten Year Statute of Limitations. Wife presented no evidence that the Husband ever made any payments on any of the three documents since the signing of the documents.

55. Wife acquired the Log, Green, Blue and Davis Houses in 2003 as part of her Hogg divorce from Paul Hogg..

56. The Log House currently has the address of 251 Walleye Lane, but in the past had address of RR 3 Box 7833, Doniphan, Missouri. The Ripley County Assessor's Office shows the Log House Parcel ID Number as 18-6.0-24-000-000-0008.000.

57. The Green House currently has the address of 180 Walleye Lane and in the past had the address of RR 3 Box 7833 and Box 7834, Doniphan, Missouri. The Ripley County Assessor's Office shows the Green House Parcel ID Number as 18-6.0-24-000-000-0008.000.01.

8

58.     The Blue House currently has the address of 737 Ripley U-5 and in the past had the address of RR 3 Box 7877, Doniphan, MO. The Ripley County Assessor's Office shows the Blue House Parcel ID Number as 18-6.0-24-000-000-0004.000.

59.     The Davis House currently has the address of 227 Walleye Lane, Doniphan, MO. but in the past had the address of RR3, Box 7830, Doniphan, MO. The Ripley County Assessor's Office shows the Davis House as Parcel Number as 18-6.0-24-000-000-0012-000.

60.     Wife created a real estate holding trust, Pipestone Bluff Foundation, on June 19, 2003 (Exhibit W-23). Wife is the Trustee and her and her two daughters, Malinda and Melissa Hogg are designated as equal beneficiaries.

61.     The Pipestone Trust Foundation was funded with on June 19, 2003 with the Blue House and on June 20, 2003, with the Log, Green and Davis Houses.

62.     Wife never revoked or amended the Pipestone Trust Foundation. As of the date of the trial, the Pipestone Trust Foundation owned the Blue, Log/Green and Davis properties.

63.     Wife paid the real estate taxes on the Pipestone properties since June 20, 2003 until 2018. Wife is currently behind in the real estate tax payments for the years 2019, 2020 and 2021.

64.     Relying on the Maness lawyers' advice Pinehurst quit claim deeded the Blue House and Doral Property and quit claim deeded the Davis House into the name of "*Cynthia Kay Haynes, married to Charles Michael Haynes, of the County of Ripley, Missouri party of the second part.*"

65.     The Blue House Quit Claim Deed was recorded in the Ripley County Recorder of Deeds in Book 498, Pg. 192.

9

66. The Davis House Quit Claim Deed was recorded by the Ripley County Recorder in Book 498, Pg. 191. Pinehurst and Doral did not own these properties at the time of these transfers.

67. On advice of the Maness lawyers, Pinehurst executed a Quit Claim Deed from Pinehurst to Charles Haynes a married individual transferring the Log/Green Houses, recorded in Bk. 519, Pg. 71 on 12.30.2011 in the Ripley County Recorder of Deeds. At the time of the transfer, Pinehurst did not own these properties.

68. On December 29, 2011, Pinehurst and Husband signed and notarized an Agreement (**Exhibit W-26**) which stated, "Charles Haynes agrees to transfer the three properties log house, 2) green house and 3) PP Lot back to Cindy Haynes or Pinehurst names once the 2002-2002 IRS tax issue with Paul (Danny) Hogg is resolved."

69. Husband testified that Wife transferred the properties to him to avoid the Hogg IRS collection on advice of Siegrid Maness. Husband never paid any consideration for these properties.

70. Husband testified that he provided various services to the Log/Green, Blue and Davis houses during his marriage to Wife. Among other things, the Husband mowed, cut brush, graded driveways and provided other minor services at the properties occasionally from 2008 until the parties separated in December 2013. Husband did not pay any real estate taxes on the Pipestone properties at any time during the marriage or after December 1, 2013.

71. The various services that the Husband provided were minor and not sufficient to transform the legal nature of the properties from non-marital to marital.

72. The quit claim deeds from Pinehurst to Husband made after 2010 transferred no interest in the properties as Pinehurst had no interest in any of the properties after 2003.

10

73.     The quit claim deeds by not transferring any interest in said real estate properties were therefore insufficient to transform the properties from non-marital to marital properties.

74.     During the Court ordered inspection on February 10, 2022, Wife found empty gun cases from the guns owned by Wife inside Intervener's gated and fenced Doniphan farm. The gun cases were from Wife's premarital gun collection described in the Business Records Affidavit. **Exhibit W-45.**   Included was the Firearm Transaction Record OMB No. 1140-0020 Forms which Wife had completed from 2001 through 2011 to purchase the guns. **Exhibit W-45.**

75.     Wife was not allowed to inspect all Intervener's land and was not allowed to enter the boarded log cabin. Wife offered no evidence that would indicate that any marital or non marital property would be found in the boarded cabin and only presented her unsubstantiated beliefs.

76.     Creelman, who has been residing in Husband's house since January 2019, testified that currently there were two green and one brown safes in the basement of Husband's house. Wife testified that she stored her guns in those safes from 2006 through 2013. Creelman never had access to those safes.

77.     There was no testimony of what the contents of the two green safes and the one brown safe were and thus it is unknown what if anything exists in those safes.

78.     Should any of the firearms listed on Exhibit W-45 be found or otherwise located, the Court finds that those firearms would be non-marital in nature and would be the separate property of the Wife.

79.     Intervener due to her health and age was not capable of secreting any assets.  The Court finds that some of Wife's separate and marital assets were found inside the Intervener's gated farms.

11

80. Wife offered no evidence that the Intervener Bernice Haynes ever hid, squandered, or stole any items of marital or non-marital property.

81. Wife offered no evidence that the Intervener ever authorized anyone to knowingly hide, squander or steal any items of marital or non-marital property.

82. Wife offered no evidence of any damages caused by the Intervener as a result of hiding, concealing, squandering, or stealing any items of property, marital or non-marital claimed by the Wife.

83. During the inspection of the Gatewood property, no items or marital or non-marital property were discovered.

84. Wife is entitled to no damages from the Intervener, Bernice Haynes.

85. Husband testified that he had delivered and stored separate and marital assets at Intervener's farm before Husband was incarcerated in December 2018. Wife's separate property including the Wife's business server (**Exhibit W-40**), Sears tools, Wife's premarital construction ladders, a Polaris six-wheeler (**Exhibit W-42**), a Kubota Tractor, empty gun cases from Wife's gun collection (**Exhibit W-45**) were found inside Intervener's properties during the Court ordered inspection on February 10, 2022.

86. Husband testified that Bruce Ware moved the 2955 John Deere tractor and the 15 foot Batwing bush hog from Intervener's property last year at his direction to protect the property. Husband's conduct did not violate the January 2, 2020, Court Order prohibiting Husband and Wife from moving and secreting marital property as this property was non marital and the ordered pertained to marital property only.

87. Husband testified that he had moved the 2014 Blazer Boat (**Exhibit W-41**) from Intervener's farm last year to an undisclosed location with the help of Bruce Ware.

88. Intervener did not violate the January 2, 2019 Restraining Order as that order was

only specific to the Petitioner and the Respondent and did not apply to the Intervener.

89.     Intervener is still in possession of certain items listed in Exhibits 1-3 of the January 25, 2022 Court Inspection Order.

90.     No credible testimony was presented about any marital interest in any cattle by either party and the only testimony about cattle concerned cattle found on one of the Intervener's farms that belonged to the renter.

91.     Wife testified that she traded in a Scorpion boat Wife received in the Hogg divorce valued at the time of the trade at $8,500.00 towards the purchase of the 2014 Blazer Boat and that Intervener contributed $19,000.00 towards the purchase. **Exhibit W-41.** Wife testified that Wife and Intervener gave the boat to Sara, Mikaela and Melissa as a gift. Wife and Husband all signed a card confirming the gift. **Exhibit W-41.** No credible evidence was presented that the Intervener was making a gift of the money advanced.

92.     The Court finds that the Kubota Ultra Grand Cab Tractor with attachments, bucket, bale spike, forks and box blade has a value of $38,500.00.

93.     Wife testified that the Ford Explorer and the 2016 Dodge Dart were destroyed in a collision seven years ago. The parties testified that they had not possessed personal property listed on Husband's Exhibit 13 pg. 5 for several years because it was used, destroyed, and lost. The Court cannot award the property that was consumed by the parties during the marriage.

94.     There was no credible evidence as to the existence of any gold coins or of gold articles being purchased during the marriage.

95.     The Wife at trial never made any request for attorney fees. The Wife never presented any evidence to support any claim to show amounts expended, hours that her various attorneys worked. At the motion for contempt hearing heard on January 25, 2022, Counsel for the Wife, Evita Tolu advised through the evidence presented that she was representing the Wife

13

Pro Bono requesting no attorney fees. As there was no evidence presented at trial concerning any of the information necessary to support and award of attorney fees to the Wife, the Court denies the request for attorney fees.

96.     Furthermore the Court finds that the Wife has been awarded enough sufficient assets and properties to adequately pay for any and all attorney fees incurred by her during these proceedings and the Husband should not be obligated to pay any of the Wife's attorney fees incurred.

97.     The Court specifically finds that the Wife was not a credible witness.

98.     The Court specifically finds that the Husband was not a credible witness.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREES THAT:**

The marriage between Charles M. Haynes and Cynthia K. Haynes is dissolved.

1.     Wife is restored to her maiden name of Cynthia Kay Randolph

2.     Wife if awarded sole legal and physical custody of Sara Mae Haynes consistent with RSMo 452.375 per the previous orders of this Court.

3.     The Court orders Wife to facilitate weekly counseling or therapy for Sara Haynes until her provider discharges her from treatment or otherwise modifies the frequency of the therapy sessions based upon the Counseling and mental health treatment.

4.     The Court orders Wife to obtain health insurance for Sara either through private insurance or by applying for health insurance through her state of residence

5.     Father's request for supervised visitation is denied by State Statute and supervised phone visitation is expressly denied.

6.     Father is ordered to pay no child support during the time that he is incarcerated.

7.     The Father is ordered to pay 50% of Sara's college tuition, which said amount shall not annually exceed the annual cost for tuition, fees, books, and dormitory cost for room

and board at the University of Missouri at Columbia, Missouri. He shall have no obligation to pay any of these expenses during any period of time that he is incarcerated.

8.    Judgment is entered in favor of Intervener, Bernice Haynes and against Respondent Cynthia Haynes Randolph on all claims made by the Respondent against the Intervener in Respondent's counterclaim against the Intervener.

9.    The Court orders that neither party shall be entitled any spousal maintenance from the other. This order is not modifiable.

10.    Judgment is entered in favor of **Allyson E. Brown**, the GAL for the minor child and against the Wife, **Cynthia Haynes now known as Cynthia Randolph** in the amount of $1,409.40 for the amount of fees incurred in the taking of the deposition of Theresa Whaley. This judgment shall serve as a judgment lien against any real estate owned by the Respondent **Cynthia Haynes now known as Cynthia Randolph** in all counties where the Respondent owns real estate and where this judgment has been properly recorded.

11.    Judgment is entered in favor of **Allyson E. Brown**, the GAL for the minor child in the amount of $8,071.08 and against the Petitioner **Charles Haynes** and the Respondent **Cynthia Haynes now known as Cynthia Randolph**. The balance of $8,071.08 shall be the responsibility of both parties equally with the each of the parties being jointly and severablely liable for the full amount due the GAL. In the event that either party pays more than their one half of this amount, the other party shall be subject to being held contempt of Court or other appropriate remedies to equalize the excess payments due from each party.

12.    The Clerk of the Circuit Court of Ripley County is ordered to forward to Allyson Brown all sums currently being held in escrow and those amounts shall be credited against the $8,071.08 referenced in this paragraph.

15

13.     The Court orders that this judgment obligations shall serve as a judgment lien against any real estate owned by the Petitioner **Charles Haynes and Respondent Cynthia Haynes now known as Cynthia Randolph** in all counties where both the **Petitioner Charles Haynes** and **Respondent Cynthia Haynes now known as Cynthia Randolph** own real estate and where this judgment has been properly recorded in the relative amounts as set forth in this Judgment.

14.     The Court orders that judgment is entered in favor of **Keri Smith** and against the Respondent **Cynthia Haynes now known as Cynthia Randolph and Evita Tolu,** in the amount of $1,500.00 (One Thousand Five Hundred Dollars) for the lost attorney fees incurred by Keri Smith. Said judgment shall be the joint and severable obligation of both the Respondent Cynthia Haynes now known as Cynthia Randolph and her attorney Evita Tolu. Execution may issue.

15.     The Court orders that judgment is entered in favor of **Ted Liszewski** and against the Respondent **Cynthia Haynes now known as Cynthia Randolph and Evita Tolu,** in the amount of $1,200.00 (One Thousand Two Hundred Dollars) for the lost attorney fees incurred by Ted Liszewski. Said judgment shall be the joint and severable obligation of both the Respondent Cynthia Haynes now known as Cynthia Randolph and her attorney Evita Tolu. Execution may issue.

16.     The Court orders that judgment is entered in favor of **Christopher Yarbro** and against the Respondent **Cynthia Haynes now known as Cynthia Randolph and Evita Tolu,** in the amount of $750.00 (Seven Hundred Fifty Dollars) for the lost attorney fees incurred by Christopher Yarbro. Said judgment shall be the joint and severable obligation of both the Respondent Cynthia Haynes now known as Cynthia Randolph and her attorney Evita Tolu. Execution may issue.

16

17.    The Circuit Clerk is ordered to immediately record this judgment in Ripley County Recorder's Office and assess the same as the costs of this action.

18.    Wife's separate properties transferred into the Pipestone Trust by the Wife in 2003 are her separate non-marital property and not subject to the division by this Court.

19.    The Court finds that the Gertrude property, more particularly described on **Judgment Exhibit 1,** should be sold and the proceeds distributed to the parties as set forth herein. The proceeds from the sale of the Gertrude House minus the real estate agent fees and related sale expenses shall be distributed as follows: Divide the sale proceeds between Wife and Husband allocating Wife 60% of the sale proceeds and Husband 40% of the sale proceeds taking into consideration Husband's misconduct during the marriage and during this litigation. In the event that the parties fail to sell said property within 9 months of the date of this order, either party may file the necessary paperwork to partition the said property and have the same sold on the Courthouse steps of Doniphan, MO at public auction.

20.    The Court awards Husband his premarital home located at 239 Tadpole Lane, Doniphan, Missouri 63935.

21.    The Court sets aside to Husband, the following separate property of Husband which is already in Husband's possession: 2000 Ford F350 VIN 1FTWX33F2YEB42307, 1981 Mercury Motor, 1987 Ford Pick Up, 2 Flatbed trailers, Gooseneck trailer, Green Horse trailer, and 5' Bush Hog.

22.    The Court sets aside to Wife, the following separate property currently at Intervener or the Husband possession: John Deere Tractor, Model 2995, valued at $23,500.00, the 15' Batwing Bush Hog valued at $5,000.00, 2009 ATV-09, Polaris Red Razor, VIN 4XAVA17A39T003503 **(Exhibit W-42)**; 2003 Honda ATV Green, VIN 478TL28083H000236

17

(**Exhibit W-43**),  963 Cat Track Loader Caterpillar (**Exhibit W-20**, 3 long extension ladders (**Exhibit W-20**), 2000 POLARIS RANGER (**Exhibit W-20**) .

23.     The Court orders the Husband to deliver the 2955 John Deere Tractor and the 15 foot batwing Bush Hog to the Wife in a reasonable time realizing the difficulties in doing so while the Husband is incarcerated.

24.     The Court awards to Wife the following marital property: 2014 Blazer Boat with 2014 Rivercraft trailer, 2014 Mercury, and 2014 Min Kota Trolling Motor (**Exhibit W-41**) , to be held by her for the benefit of the minor child, Sara Haynes, pursuant to the agreement previously noted.

25.     The Court awards the Kubota Ultra Grand Cab Tractor with attachments, bucket, bale spike, forks and a box blade to the Wife subject to the Husband being paid the sum of $15,400.00 representing a 40% marital interest in the said tractor.  Prior to the Wife taking possession of said tractor (located on the Intervener's property), the Wife shall pay to the Husband the sum of $15,400.00.  If said payment is not made within 6 months of the date of this decree, the aforementioned tractor and attachments shall be sold and after the costs of the sale, the Wife shall receive 60% of the net proceeds and the Husbands shall receive the remaining 40% of the proceeds.

26.     The Court awards to the wife as marital property, 2013 Ford F150 GEM truck VIN 1FTFW1ET9DKD31879 valued at $4,000.00, 2008 Yamaha Grizzly ATV Vin JY4AM15Y98C005350, no value, and all personal property in Wife's possession.

27.     The Court awards to Husband the following marital property in Husband's possession: Children's toys at Intervener's and Husband's houses. Three John Deer Safes and One Brown Safe all at Husband's house (In the event that the safes contain and of the firearms which have been awarded to the Wife aforementioned, those listed firearms shall immediately be

18

turned over to the Wife), Blue Westinghouse blue portable generator at Husband's house, 4 - 7' tall toolboxes stackable, Sears Tool Set, Sears Tool Chest, 2 -Sears tool mechanic tool sets, Nikon 18-200 mm Lens, PTO Post Hold Digger Tractor, 2 100-gallon gas tanks with pump/tanks, 6' Green Bush Hog, 15' 3 pt hitch cultivator, Maytag Washer & Dryer, 56-gun cases (6 hard and 50 soft if they exist); John Deere 60" deck mower (Wife's premarital but testified that she did not want), Toyota RAV 4 Vehicle, Prudential Computershare Account C0001879511, Husband's US Bank account, Husband's Southern Bank account, Online bank account, Union Engineers Pension Fund, all personal property in Husband's house on otherwise in his possession.

28. The Court sets aside to Wife the following debts and orders her to pay the same and hold the Husband free and harmless from any liability on these debts: Real estate taxes for Log House in the amount of $7,962.00, Real estate taxes for Green House in the amount of $1,201.00, Real estate taxes for Blue House in the amount of $1,251.00, Real estate taxes for Davis House in the amount of $1496.00, Credit card debt in the amount of $32,000.00.

29. The Court sets aside to Husband the following debts: Credit Bureau Services, Cape Radiology Group PC Collection $291.00, CAC Financial Corp. Emergency Staffing Solutions $1,130.00, Portfolio Recovery Associates $9,640.00.

30. All of the financial obligations placed on the Wife as set forth in the Judgment and Order dated February 9, 2022, and filed of record in February 10, 2022, remain in full force and effect until the same are paid and that order in incorporated by reference in this Judgment and Decree as if fully and completely set forth herein. Those obligations shall be subject to this Judgment lien until satisfied in full.

31. All other motions or requests for relief not expressly ruled on in this Judgment are hereby expressly overruled.

19

32.    All costs of this action shall be divided equally between the parties.

**Dated this** 23ʳᵈ **day of May, 2022**



Judge Gary A. Kamp

20

Judgment Exhibit 1



**FILED FOR RECORD**
**BOOK # 492 PAGE # 194**
**6/24/2009 11:36 AM**

**JUNE WATSON**
**RECORDER OF DEEDS**
**RIPLEY COUNTY, MO**

BY: _Carla A. Gunter_

## GENERAL WARRANTY DEED
### (WITH STATUTORY ACKNOWLEDGMENTS)

THIS INDENTURE, Made on the 24th day of June    A.D. Two
Thousand Nine by and between

GERTRUDE ROWE, SINGLE, SURVIVING SPOUSE OF WILLIAM CLAYTON ROWE,
DECEASED, GRANTOR

of Ripley County, MO., party of the first part, and

CHUCK HAYNES AND CINDY HAYNES, HIS WIFE, GRANTEES

parties of the second part.   (Mailing Address of said first named
grantee is:   RR-1 BOX 2312
                DONIPHAN, MO 63935

    WITNESSETH, That said party of the first part, for and in
consideration of the sum of

Ten and other valuable considerations...................Dollars.

to her paid by the said parties of the second part, the receipt
of which is hereby acknowledged, does by these presents, GRANT,
BARGAIN AND SELL, CONVEY AND CONFIRM, unto the said parties of
the second part their heirs and assigns, the following described
Lots, Tracts or Parcels of Land, lying being and situate in the
County of Ripley and State of Missouri, to-wit:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF AS IF
REPEATED IN FULL.
(Description Supplied)

GRANTOR FURTHER STATES THAT SHE IS THE SURVIVING SPOUSE OF
WILLIAM CLAYTON ROWE AND THAT WILLIAM CLAYTON ROWE DIED JULY 22,
1998 WHILE STILL MARRIED TO THE SAID GRANTOR, NEVER HAVING BEEN
DIVORCED

Exhibit

TO HAVE AND HOLD the premises aforesaid, with all and singular the rights, privileges, appurtenances, and immunities thereto belonging or in anywise appertaining unto the said parties of the second part, and unto their heirs and assigns forever, the said Party of the First Part hereby covenanting that she is lawfully seized of an indefeasible estate in fee in the premises herein conveyed; that she has good right to convey the same; that the premises are free and clear of any incumbrances done or suffered by her or those under whom she claims; and that she will WARRANT AND DEFEND the title to the said premises unto the said parties of the second part, and unto their heirs and assigns forever, against the lawful claims and demands of all persons whomsoever.

IN WITNESS WHEREOF, The said party of the first part has hereunto set her hand and seal, this day and year first above written.

_Gertrude Rowe_ (SEAL) _____ (SEAL)

GERTRUDE ROWE

STATE OF _Missouri_ )
                          ) SS
COUNTY OF _Ripley_ )

On this _24th_ day of _June_, 2009, before me personally appeared GERTRUDE ROWE, SINGLE, SURVIVING SPOUSE OF WILLIAM CLAYTON ROWE, DECEASED, to me known to be the person described in and who executed the foregoing instrument and acknowledged that she executed the same as her free act and deed. And the said Gertrude Rowe further declared herself to be single and unmarried.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in said County and State the day and year last above written.

_Kimberly D. Sisco_

Notary Public,

My Commission Expires:

KIMBERLY D. SISCO
Notary Public - Notary Seal
STATE OF MISSOURI
Ripley County
Commission # 06431582
My Commission Expires: July 04, 2010

CONTINUATION

File No.: cra3286

### EXHIBIT "A"

All that part of the South half of the Northeast quarter of Section 25, Township 22 North, Range 2 East of the Fifth Principal Meridian, Ripley County, Missouri, being described as follows:

Commencing at the Southeast corner of the Northeast quarter of Section 25; thence N 87 degrees 28 minutes 10 seconds West along and with the South line of said Northeast quarter a distance of 1665.5 feet to a point; thence N 02 degrees 31 minutes 50 seconds East a distance of 486.8 feet to an iron pin; thence N 06 degrees 03 minutes 40 seconds East a distance of 208.71 feet to an iron pin; thence N 65 degrees 52 minutes 20 seconds West a distance of 51.18 feet to an iron pin; said iron pin being the Point of Beginning for the tract of land herein described; thence N 24 degrees 50 minutes 20 seconds West a distance of 400.17 feet to an iron pin on the South bank of the Current River; thence along and with said South bank of the Current River a chord bearing N 63 degrees 56 minutes 48 seconds East a distance of 207.76 feet to an iron pin; thence S 24 degrees 50 minutes 20 seconds East a distance of 416 feet to an iron pin; thence S 68 degrees 09 minutes 40 seconds West a distance of 208.00 feet to the Point of beginning.

ALSO conveyed herewith is an easement for ingress and egress over the existing road running across Lots 14 and 15 to the County Road.

Form 2110

*Judgment Exhibit 2*

## In the Circuit Court of Ripley County, Missouri
. Cause No. 13RI-CV00554

In re the Marriage of: CHARLES M. HAYNES, Petitioner, and CYNTHIA K. HAYNES, Respondent

### FORM NO. 14 CHILD SUPPORT AMOUNT CALCULATION WORKSHEET

| CHILDREN | AGE | CHILDREN | | AGE |
|---|---|---|---|---|
| Sara Haynes | 12 | | | |
| | | | | |
| | | | | |

Petitioner is the "Parent Paying Support"
Total Number of Children: 1

| | Parent Receiving Support (Respondent) | Parent Paying Support (Petitioner) | Combined |
|---|---|---|---|
| 1. MONTHLY GROSS INCOME | $2,600 | $0 | |
| 1a. Monthly court-ordered maintenance being received | $0 | $0 | |
| 2. ADJUSTMENTS 2a. Other monthly child support pursuant to court or administrative order | ( $0 ) | ( $0 ) | |
| 2b. Monthly court-ordered maintenance being paid | ( $0 ) | ( $0 ) | |
| 2c. Monthly support obligation for other children (1) Number of other children primarily residing in each parent's custody | 0 children | 0 children | |
| (2) Each parent's support obligation from support schedule using the parent's Line 1 monthly gross income | $0 | $0 | |
| (3) Monthly child support received under court or administrative order for children included in Line 2c(1) | ( $0 ) | ( $0 ) | |
| 2c. TOTAL adjustment [Line 2c(2) minus Line 2c(3)] | $0 | $0 | |
| 3. ADJUSTED MONTHLY GROSS INCOME (Sum of lines 1 and 1a, minus lines 2a, 2b and 2c) | $2,600 | $0 | $2,600 |
| 4. PROPORTIONATE SHARE OF COMBINED ADJUSTED MONTHLY GROSS INCOME (Each parent's line 3 income divided by combined line 3 income) | 100% | 0% | |
| 5. BASIC CHILD SUPPORT AMOUNT (from support chart using combined line 3 income) | | | $498 |
| 6. ADDITIONAL CHILD-REARING COSTS OF PARENTS 6a.(1) Reasonable work-related child care costs of parent receiving support: $0 6a.(2) Child Care Tax Credit (See Directions): $0 | $0 | | |
| 6b. Reasonable work-related child care costs of the parent paying support | | $0 | |
| 6c. Health insurance costs for children who are the subjects of this proceeding | $0 | $0 | |
| 6d. Uninsured agreed-upon or court-ordered extraordinary medical costs | $0 | $0 | |
| 6e. Other agreed-upon or court-ordered extraordinary child rearing costs | $0 | $0 | |
| 7. TOTAL ADDITIONAL CHILD-REARING COSTS (Sum of lines 6a, 6b, 6c, 6d, and 6e) | $0 | $0 | $0 |
| 8. TOTAL COMBINED CHILD SUPPORT COSTS (Sum of line 5 and line 7) | | | $498 |
| 9. EACH PARENT'S SUPPORT OBLIGATION (Multiply line 8 by each parent's line 4) | $498 | $0 | |
| 10. CREDIT FOR ADDITIONAL CHILD-REARING COSTS (Line 7 of parent paying support) | | ( $0 ) | |
| 11. ADJUSTMENT for a portion of amounts expended by the parent obligated to pay support during periods of overnight visitation or custody (Multiply line 5 by 0%) | | ( $0 ) | |
| 12. PRESUMED CHILD SUPPORT AMOUNT (Line 9 minus lines 10 and 11) | | $0 | |

PREPARED BY: William J. Hafaz, III #62127
Attorney for Petitioner

Cordell Law, LLP