IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI - SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA HAYNES (a/k/a Cynthia Randolph)   ) | |
| ) | |
| Plaintiff,   ) | |
| vs.   ) | Case No: 1:21-CV-00160-ACL |
| ) | |
| JENNIFER WILLIAMS, individually, et al.   ) | |
| ) | |
| Defendants.   ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT WILLIAMS**

**BACKGROUND**

Plaintiff seeks to hold Williams and her co-defendants jointly and severally liable for the wrongful death of Plaintiff's minor daughter M.H. The core allegations against Williams are that she as M.H.'s Guardian ad Litem (GAL) knowingly and willfully acted in a manner that created a substantial risk to the body, physical health, and mental health of M.H. In December 2016 Williams sought placement of M.H. and S.H. in the custody of Bernice Haynes, the girls' 90-year-old grandmother (visually and hearing-impaired and suffering from the severe congestive heart failure who took significant medications) after Williams testified that Cynthia committed educational neglect of M.H. and S.H. There was no evidence of educational neglect. Williams had M.H.'s Missouri Standardized Wechsler Test, which showed that M.H. was performing on all the subjects, on each scale, at "average to above average" or "above average to far above average," of her peers.

Grandmother previously failed to supervise M.H. and S.H. while they were with her and allowed Defendant Charles Haynes (Charles) to have unsupervised access to M.H. and S.H. Williams knew that M.S.H. disclosed to the police Charles' sexual abuse of her. Williams knew that Charles threatened kill Cynthia and M.S.H. because M.S.H. disclosed to the police Charles'

1

sexual abuse of her. Cynthia gave Williams a recording of Charles's threats against Cynthia and M.S.H. However, based on Williams' testimony, M.H. and S.H. were placed in Grandmother's custody where Charles repeatedly sexually abused, sexually assaulted and/or sexually battered M.H. After M.H. was hospitalized for self-mutilation while in Grandmother's custody, Williams asked the Juvenile Court to take custody of M.H. and S.H.

Instead of protecting S.H. and M.H., Williams threatened M.H. and Cynthia that M.H. would be returned to foster care if they or M.S.H. testified against Charles in his criminal trial and then later at his sentencing. M.H. told Williams that Charles came to her bedroom in the middle of the night while M.H. was at her Grandmother's house. M.H. disclosed to her foster parents and her pediatrician sexual abuse by Charles. Once M.H. and S.H. returned to their mother, Williams repeatedly threatened M.H. and Cynthia that if either of them testified at Charles' criminal trial, Williams would have M.H. and S.H. placed in foster care again, or worse, have them placed in Charles' custody, once he was placed on probation. Williams' threats constituted witness tampering in violation of RSMo. 575.270. Williams repeatedly advocated for M.H.'s reunification with Charles.

Williams' false accusation of Cynthia and M.S.H. manipulating M.H. to accuse Charles falsely were never confirmed by any therapist and/or DFS professionals working with the family. All the therapists, professionals and foster parents concluded that Charles sexually abused M.H. They all advocated against Williams' efforts to reunify M.H. with Charles. Williams threatened M.H. with foster care or placement with Charles through the day of M.H.'s suicide on November 24, 2018. Williams' threats caused M.H. to suffer severe and excruciating emotional pain, loss of dignity, and deterioration of her mental health which resulted in her suicide.

In her answers to Plaintiff's Complaint Williams denied that she owed any duty of care to M.H. Williams asserted that M.H.'s death was (1) her own fault; (2) was a direct cause of

Plaintiff's, other entities', individuals', and corporations' conduct and that Plaintiff had unclean hands, and was barred from recovery based on res judicata, estoppel, and waiver among many other defenses.

Plaintiff propounded Requests for Production (RFP) and Interrogatories (Interrogatories) on Williams attached to Plaintiff's Motion to Compel as **Exhibits A** and **B** respectively with Williams' responses. Williams replied with boiler plate objections along with a few answers to all RFPs and Interrogatories. Williams asserted that she could not produce her GAL files because the files are confidential. Plaintiff seeks disclosure of the Williams' GAL files, which Williams created while acting as M.H.'s and S.H.'s GAL. Plaintiff also seeks Williams' communications with other attorneys and healthcare and Division of Family Services (DFS) workers who were involved in the Haynes divorce and the juvenile cases. Plaintiff now moves the Court to compel Defendant Williams to produce her "GAL" file responsive to Plaintiff's RFP 2 through 30 and other materials objected to.

Plaintiff has made good faith attempts to resolve the dispute over Plaintiff's discovery. On September 22, 2022, Plaintiff's and Williams' counsel had a meet and confer discussion which was not successful. Williams' counsel refused to produce Williams' GAL files. On October 3, 2022, Plaintiff's counsel sent Williams' counsel a letter outlining Plaintiff's position and relevant caselaw as evidenced by **Exhibit C**, attached to Plaintiff's Motion to Compel. Afterward Plaintiff's counsel followed up with Williams' counsel by email and phone. Williams' counsel has not provided any further response. Williams' counsel has refused to comply with Plaintiff's discovery and refused to produce Williams' GAL file.

In addition to Williams' GAL files, Plaintiff requested Williams to produce documents pertaining to the health of Bernice and Charles Haynes including but not limited to their mental health assessments and evaluations, Williams' correspondence with DFS professionals, mental

3

health professionals and the attorneys for other parties involved in the Haynes divorce, Charles Haynes' criminal case and the children's juvenile cases. *See* **Exhibit A**, RFP Nos. 2, 5-8.

Plaintiff seeks the discovery requests so that her counsel can thoroughly depose defendants to determine their involvement, circumstances, and contribution to M.H.'s death and the leading causes of M.H.'s tragic suicide. Williams' basis for refusing to produce her GAL file is an assertion that she does not have control over her file pursuant to Missouri Supreme Court GAL Standard 7, which states:

> A GAL shall comply with all statutes, rules, and regulations relating to the receipt of confidential or privileged information received as GAL. A GAL shall not redisclose any confidential or privileged information without valid court order or as required by law.

Williams also asserts that a divorce court order prohibits such disclosure. *See* the Protective Order[1] issued in the Haynes divorce attached to Plaintiff's Motion to Compel as **Exhibit D**. Pursuant to paragraph 9 of that order, a court of competent jurisdiction (this Court ) may order production of Williams' GAL file. Its production would be confidential under the Protective Order to be entered in this case.[2] Williams also objected that Plaintiff's discovery requests are vague, ambiguous, overly broad, burdensome, harassing, and irrelevant. None of these objections are valid. While Williams' GAL file might be confidential, it is discoverable pursuant to RSMo. 490.130, decisions of the Missouri and federal courts. The disputed discovery requests are proper and Plaintiff moves the Court to compel Williams' answers and production.

---

[1] Nothing in this Protective Order shall prevent any party from applying to a court of competent jurisdiction for relief from or modification of the provision of this Protective Order, or from applying to such court for further or additional Protective Orders, or from reaching agreement with the other party to amend this Protective Order in writing, subject to the approval of the Court.

[2] Williams' counsel has been orchestrating a preparation of a Protective Order to this Court, but has not yet completed that task even though a proposed protective order was supposed to be submitted to this Court a month ago. Plaintiff's counsel replied to the then latest version of the proposed protective order requesting that one word be stricken from it. He has received no response to that request.

4

## **ARGUMENT**

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). This phrase "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Armstrong v. Hussmann Corp., 163 F.R.D. 299, 302 (E.D. Mo. 1995). Given that the Federal Rules of Civil Procedure allow for broad discovery, the burden is on the party resisting discovery to explain why discovery should be limited. That is, after the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993). Where a party fails to cooperate in discovery, the propounding party may move the Court "for an order compelling an answer, designation, production or inspection." Fed.R.Civ.P. 37(a)(3)(B).

### I.  WILLIAMS MUST PRODUCE HER GAL FILE TO PLAINTIFF

There are significant factual issues in this case concerning the substance of Williams' GAL file, which she withheld relying on GAL Standard 7 and pursuant to a protective order in the Haynes divorce. Paragraph 9 of the Haynes divorce January 25, 2022 Order related to the GAL file which in Paragraph 9 stated that the GAL file could be disclosed pursuant to an agreement between Williams and other parties or pursuant to an order from a court of competent jurisdiction (this Court). Williams has asserted that she had no control over her GAL file and that her GAL file was the property of the juvenile and family courts.

Plaintiff requested Williams' GAL file which is limited to the time period of Williams' involvement in the Haynes divorce and juvenile cases. The records and information requested

5

were specific and limited in nature, as well as limited to the underlying cases and Williams' conduct in those cases. The records and information requested were adequately described and were related to the specific issues raised in the parties' pleadings. The evidence sought is highly relevant and is not cumulative as these records are specific to Williams' GAL file pertaining to M.H. and S.H., Plaintiff's claims and Williams' defenses in this litigation. Williams' GAL file is not available elsewhere. Williams compiled the file during her tenure in the juvenile, divorce and DFS cases and has been in Williams' and her malpractice attorneys' possession and control. Williams communications with attorneys or other parties involved in the underlying cases may lead to discovery from these persons. Williams' GAL file likely contains documents and other information bearing on Williams acting outside the scope of her GAL duties.

This Court has the power to order Williams to produce her GAL file pursuant to a Protective Order. Further, Williams' interests in complying with Standard 7 must yield to the interest of the parties to this litigation and to allow discovery into whether Williams violated the very same GAL Standards, Missouri statutes and case precedent. Williams' actions as a GAL relate to her motive and intent in tampering with M.H., her mother and stepsister as witnesses in Charles' criminal proceedings and to Williams' liability for punitive damages.

In Smith v. Harold's Supermarket, Inc. 685 S.W.2d, 859, 863 (Mo. App. W.D. 1984) the Court of Appeals held that juvenile records normally protected by Missouri statutes and protective orders were discoverable, not subject to confidentiality and were admissible into evidence in the wrongful death suit brought by the juvenile's mother. In J.P. v. Belton Sch. Dist. 124, 2020 U.S. Dist. Lexis 260614, *9 (W.D. Mo. Nov. 11, 2020), the U.S. District Court ordered DFS, a non-party, to produce records to a party, who claimed that DFS "baselessly and maliciously accused the party of abusing a child in retaliation for the party's pursuit of his right to public education" even though those records were protected by RSMo. 210.150 (prohibiting DFS from disclosing

6

the identities of mandated reporters). The District Court held that the truth of the party's claims, "cannot be assessed without a full understanding of the content of those accusations" and ordered DFS to produce the identities of the mandated reporters. 2020 U.S. Dist. Lexis 260614 at *10. There is no basis to allow Williams to withhold her file when Plaintiff has a legitimate interest in obtaining Williams' records and the records can be held confidential in this matter pursuant to a protective order.

Numerous other Missouri state and federal courts have ordered the records that are otherwise confidential by statute, court order, or a rule to be produced in a civil action for damages. *See* Juvenile Officer v. A.G., 499 S.W.3d 340, 345 (Mo. App. W.D. 2016) (held that the juvenile records, protected from disclosure by RSMo. 211.321, could be disclosed to a party having a legitimate interest in the disclosure); Schweppe v. City of Pine Lawn, 2018 U.S. Dist. Lexis 14575, *5 (Mo. E.D. Jan. 30, 2018) (holding that the confidential personnel records protected from disclosure by several Missouri statutes were discoverable and finding that Missouri confidentiality statutes only extended to the general public's access to such files and not to a court litigant with the legitimate claims to these records); Jiang v. Poter, 2016 WL 3015163, at *4 (E.D. Mo. May 26, 2016) (holding that evidence subject to confidentiality privilege is discoverable to ascertain the truth of the pending matter); State ex rel. DSS v. Tucker, 413 S.W.3d 643, 648 (Mo. *banc* 2013) (holding that in a divorce action, a husband was entitled to discover the names of mandated reporters despite the statutory confidentiality mandate); and State ex rel. DSS v. Dougherty, 563 S.W.3d 153, 154-55 (Mo. App. E.D. 2018) (holding that a father was entitled to obtain the names of the mandated reporters to defend himself from their child abuse accusations);

The courts in other jurisdictions have arrived at the same decisions regarding the discoverability of the state protected records. For example, *see* Sharonda B. by Murhpy v. Herrick, 1998 U.S. Dist. Lexis 13463 *17 (N.D. Il. Aug. 1998) (holding that a GAL's file was discoverable

in a subsequent personal injury case because the records were made in the course of GAL's duties and were material to the issues raised in the personal injury case); Farley v. Farley, 952 F. Supp. 1232, 1242 (M.D. Tenn. 1997) (holding that "the statutory and administrative scheme ensuring only limited disclosure of child abuse files must yield to a supervening interest in their production and use in federal civil rights actions").

In a federal civil rights action state statutory privileges are not binding." Ginest v. Bd. of County Comm'rs of Carbon Cnty., 306 F. Supp. 2d 1158, 1159-60 (D. Wyo. 2004). *See also* Sprint Comm'ns Co., L.P. v. Native American Telecom, LLC,, 2011 WL 1883193 (D.S.D. 2011) (ordering expedited discovery of confidential records under a protective order); Doe v. Meachum, *126 F.R.D. 444, 450* (D. Conn. 1989) (compelling the production of inmate medical records in class action litigation involving HIV health care); N.O. v. Callahan, 110 F.R.D. 637, 646-47 (D. Mass. 1986) (allowing access to medical records of students in school for the mentally handicapped); Lora v. Board of Ed. of City of New York, 74 F.R.D. 565, 584 (E.D. N.Y. 1977) (finding "the individual privacy interest and state policies, though cognizable, cannot prevail, either as a constitutional or federal evidentiary matter" where the only way for plaintiff to establish a pattern of racial discrimination was to review the diagnostic and referral files of other children with handicaps). Based on this law and the certainty that Williams' GAL file, at the very least, is likely lead to the discovery of admissible evidence, this Court should order Williams to produce her GAL file to Plaintiff.

## II.   WILLIAMS' BOILER PLATE OBJECTIONS ARE INSUFFICIENT

*A.   Plaintiff's discovery requests are not vague, ambiguous, burdensome, or inadmissible.*

Williams served boiler plate objections to Plaintiff's RFP Nos. 2 through 24 and 26-30 and Interrogatories Nos. 5-20 and No. 23 as being vague, ambiguous, unduly burdensome, and not

calculated to lead to admissible evidence or proportional to the issues at stake in the litigation. Defendant fails to explain or give any basis as to how Plaintiff's requests are so offensive. None of these general objections are meritorious. In RFP No. 1 Plaintiff asked Williams to produce documents and communications Williams had with Plaintiff, Charles, Bernice, and their attorneys in the underlying juvenile and divorce cases, as well as with DFS employees, M.H., S.H., school personnel, juvenile officers, healthcare professionals, therapists, and law enforcement officers.

RFP Nos. 2-3 ask for M.H.'s and S.H.'s school and other academic related records that show their educational progress and academic deficiencies which Williams had obtained during her work in the above-referenced matters. RFP. No. 4 asks for Cynthia's and Charles' psychological testing that Williams requested the parties to obtain in the underlying matters. These requests are specific. They are not overly broad or burdensome. After consulting with Williams' counsel, Plaintiff's counsel further narrowed the scope of discovery, but Williams refused to withdraw any of her objections. Plaintiff's discovery requests are limited to the information and records pertaining to M.H. from the juvenile and the Haynes' divorce cases in which Williams acted as a GAL and made decisions pertaining to M.H.'s safety and wellbeing while threatening M.H. with foster care or placement of M.H. in Charles' custody.

For example, in Interrogatories Nos. 5-7, Plaintiff asks for Williams' education and training as a GAL. Interrogatory No. 8 inquires about complaints about her professional license and court related grievances she has experienced by the time she acted as GAL. If Williams had such grievances and complaints, Plaintiff askes for additional identifiers such as time, place, the names, addresses, phone numbers and the results of such complaint investigations. None of these requests are objectionable under any of the laundry list of general objections made by Williams. Plaintiff therefore asks the Court to overrule Defendant's objections to RFP Nos. Nos. 2 through 24 and 26-30 and Interrogatories Nos. 5-20 and No. 23 under the blanket responses of "vague and

9

ambiguous, overly broad, burdensome, and irrelevant."

Boilerplate objections that discovery requests are overboard and unduly burdensome, and not reasonably calculated to lead to the discovery of material admissible in evidence, are — and have been for decades — improper and a violation of the letter and spirit of the Federal Rules. A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("general or boilerplate objections such as 'overly burdensome and harassing' are improper — especially when a party fails to submit any evidentiary declarations supporting such objections"); Redland Soccer Club, Inc. v. Dep't of the Army, 55 F.3d 827, 856 (3d Cir. 1995) (holding that the mere statement by a party that the interrogatory was overly broad, burdensome, harassing and irrelevant is not adequate to voice a successful objection); McLeod, Alexander Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990) (holding that "the party resisting discovery must show specifically … how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive"); *see also* St. Paul Reinsurance Co. Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 514 (N.D. Iowa 2000) (holding that "the litany of the party's boilerplate objections are unsubstantiated because they fail to show specifically how each discovery request is burdensome, oppressive or any of the other grounds upon which they base their objections by submitting affidavits or offering evidence revealing the nature of the objection").

### *Plaintiff's Requests are Relevant*

Williams stated that her GAL file is irrelevant to Plaintiff's claims. "Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for variety of fact-oriented issues may arise during litigation that are not related to the merits." Oppenheimer Fund v. Sanders, 340 U.S. 340, 351 (1978). The scope of discovery under Rule 26 is determined according to the reasonable

needs of each particular case. Fed.R.Civ.P. 26. "Relevance" for the purposes of discovery remains broader than relevance for admissibility – the discovery standard is liberal. Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992); Wrangen v. PA Lumbermans Mut. Ins. Co., 593 F.Supp.2d 1273, 1278 (S.D. Fla. 2008); Thompson v. Dept. of Housing & Urban Dev., 199 F.R.D. 168, 172 (D. Md. 2001); and U.S. E.E.O.C. v. Caesars Ent., Inc., 273 F.R.D. 428 (D. Nev. 2006).

Williams fails to provide any basis for why any of Plaintiff's RFP and Interrogatories are irrelevant. "Relevance has been defined as any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer, 437 U.S. at 351. Williams must produce her GAL file which likely contains records and information bearing on Williams' intent, motivation and conduct that allegedly led to M.H.'s suicide. Williams' GAL file is relevant as it contains records documenting Williams' efforts and motivation in diminishing Plaintiff's role with M.H.

The GAL file also likely contains records of Williams' efforts to repeatedly force M.H. to be with Charles which M.H. resisted. These records likely have information that helped form M.H.'s state of mind that led to her suicide. Williams' conduct of placing M.H. in danger is relevant to the determination that Williams acted outside the scope of her duties as M.H.'s GAL. The records also will likely show that instead of protecting M.H., Williams inappropriately threatened M.H. with the foster care placement. The records likely show or bear on Williams' intent and motivation to act outside the scope of her duties and to her protecting a convicted child molester and not his victim. These records relate to whether Williams is liable for punitive damages. The bear on Williams' defenses.

Williams did not explain why Plaintiff's request for her file is irrelevant. Every request is limited to Williams' involvement in M.H.'s care and Williams' purported representation of M.H.'s best interests. It belies logic that the requested documents from when Williams was supposed to

11

act in M.H.'s best interests are irrelevant.  Williams was M.H.'s GAL from 2016 until the day M.H. took her life.  Williams was in charge of M.H.'s healthcare, schooling, nutrition, safety, daily life, and M.H.'s legal matters.  All the records of her involvement are part of her GAL file.  The documents Williams received, created, reviewed, and her communications with legal and healthcare professionals during Williams' tenure as M.H.'s GAL (contained in the GAL file) and through the day M.H. took her life are directly relevant to Plaintiff's claims and Williams' defenses and are discoverable.

### *Plaintiff's discovery requests are not harassing or oppressive*

Williams objected to RFP No. 18, which sought information related to Williams being a party to a lawsuit and No. 19, which sought information related to any ethics complaints against Williams are harassing.  In St. Paul Reinsurance Co. Ltd. *supra* the district court addressed the exact same objection and stated that such objection "was not only obstructionist and frivolous, but was contrary to the rules"(Id. at 512), and sanctioning the party's counsel for his "Rambo style discovery tactics in litigation."  Id. at 510.

### *Williams' attorney-client, work product and insurer-insured privileges also fail*

Williams lumped together her theories why she should not comply with discovery in each of her responses.  She generically asserted that the documents Plaintiff seeks are protected by attorney-client, insurer-insured, and work product privileges.  *See* Williams' responses to RFP No. 26 and Interrogatories Nos. 21-22.  Williams objected to RFP No. 26 which seeks the documents Williams created and received as M.H.'s and S.H.'s GAL from various sources are undiscoverable work product.  They are not work product in this case.  Plaintiff specifically excluded Williams' communications with her current counsel from her requests.

12

Williams objected to Interrogatory Nos. 21-22 on the grounds that they seek documents protected by attorney-client and work product privileges.  "Where the party opposing a discovery is in control of facts peculiarly within the party's knowledge … and it is asserting a privilege or immunity from discovery request, the burden of proof must necessarily shift from the proponent of discovery to the opponent of discovery.  State ex rel. Dixon v. Darnold, 939 S.W.2d 66, 68 (Mo. App. S.D. 1997).  To meet this burden, Williams "must supply the court with sufficient information to enable the court to determine each element of the privilege is satisfied."  Id. If a party objects to **production of documents** based on privilege or the **work product** doctrine, "then without revealing the protected information, the **objecting** party *shall* state information that will permit others to assess the applicability of the privilege or **work product** doctrine."  State ex rel. Collom v. Fulton, 528 S.W.3d 42, 47 (Mo. App. S.D. 2017).

The party opposing discovery must establish such protection "through competent evidence" 528 S.W.3d at 47.  "'Competent evidence' may include a privilege log and affidavits from counsel." State ex rel. Ford Motor Co. v. Westbrooke, 151 S.W.3d 364, 367 (Mo. *banc* 2004). "Blanket assertions of work product are insufficient to invoke protection." Id.  Furthermore, "[b]are assertions by counsel do not prove themselves and are not evidence of the facts presented." 151 S.W.3d at 367.  Williams did not provide a privileged log or justification for her objections. Therefore, these objections fail.

*Williams' work product privilege objections fail*

Williams' assertion of privilege for the documents she obtained and generated in the underlying cases, but provided to her malpractice attorneys in this litigation are not work-product privileged documents.  They are not shielded by insurer-insured privilege.  Plaintiff is not seeking Williams' or her malpractice attorneys' mental impressions, conclusions, opinions, and theories

13

developed in this case.  Plaintiff asked for the records Williams created or gathered as a GAL in juvenile, DFS and the Haynes divorce cases.  Williams' delivery of her GAL file to her malpractice attorneys does not transform her GAL file into the work product or insurer-insured privileged material.

E.D. Mo. L. R. 3.04(C) states that, "[u]pon the filing of a motion to compel, the Court may summarily overrule an objection to any discovery request if the objection is not stated in detail." Williams not only failed to meet the required burden by providing a detailed privileged log and explanations, but she also refused to do so after Plaintiff's counsel limited the scope of discovery to Williams' GAL file.  Williams withheld basic information such as identifying the documents being withheld, who drafted the documents, to whom they were sent, or from whom they were received.  Williams generically raised various legal theories without providing any required information that would allow Plaintiff and the Court to determine the scope and validity of her generic objections.  Williams created her file long before this litigation started.  Having failed to comply with E.D.Mo. L. R. 3.04(C), Williams waived her objections to the claimed privileges. Williams must produce her GAL file and comply with discovery requests.

### *Williams' attorney-client confidentiality objections fail*

Williams generically asserted that the documents Plaintiff seeks are protected by attorney-client privilege.  *See* RFP No. 26 and Interrogatories Nos. 21-22.  Again, Williams did not provide a privileged log of these confidential documents.  Westbrook *supra* and Rabushka *supra*. Williams' responses are so vague that it is impossible to determine whether Williams claims attorney-client privilege pertaining to her representation of M.H. or her attorney-client privilege with her malpractice attorneys.  Regardless, Williams' general blanket objections to either of these privileges fail because Williams did not produce to Plaintiff a detailed privileged log to determine

14

the validity of her objections.  Westbrook *supra* and Rabushka *supra*.  Plaintiff specifically excluded communications between Williams and her counsel in this case from discovery.

For the attorney-client privilege to protect documents, the party seeking the protection must prove "(1) the existence of the attorney-client relationship at the time the communication was made or advice was given; and (2) the attorney-client relationship existed with respect to the subject matter of the communication or advice.  State ex rel. Koster v. Cain, 383 S.W.3d 105, 115 (Mo. App. W.D. 2012).  Williams failed to meet her burden on either element.

*Williams' attorney-client confidentiality privilege with M.H. fails*

In response to RFP No. 26 asking Williams to produce M.H.'s DFS and juvenile court records, Williams objected raising attorney-client confidentiality privilege.  In her Motion to Dismiss Williams argued that she was not liable for M.H.'s death based on the doctrine of quasi-judicial immunity because she acted as the court's agent in the underlying cases and not as M.H.'s attorney. State ex rel. Bird v. Weinstock, 864 S.W.2d 376, 384 (Mo. App. E.D. 1993).  Williams cannot have it both ways, seek immunity as a GAL and then assert that she was also M.H.'s attorney to avoid compliance with discovery.  In her answers to Plaintiff's Complaint Williams asserted she did not have an attorney client relationship with M.H. and that "she owed no duty to M.H." Therefore, Williams objections to RFP No. 26 based on the confidentiality of her GAL file and Williams' purported attorney-client relationship with M.H. fail.

**CONCLUSION**

For the reasons stated above, Plaintiff moves the Court to overrule Defendant Williams' objections to Plaintiff's Interrogatories and Requests for Production and order Williams to produce the requested records, including her GAL file in its entirety.

15

| | |
|---|---|
| */s/ Laurence D. Mass* | /s/ *Evita Tolu* |
| Laurence D. Mass    #30977 | Evita Tolu, #49878 |
| 230 South Bemiston, Suite 1200 | 1 Crabapple Court |
| St. Louis, Missouri  63105 | St. Louis, Missouri 63132 |
| Phn:    (314) 862-3333, Ext. 20 | Phn:    (314) 323-6022 |
| Fax:    (314) 862-0605 | Fax:    (314) 207-0086 |
| laurencedmass@att.net | evitatolu@outlook.com |
| Attorney for Plaintiff | Attorney for Plaintiff |

## **LOCAL RULE 3.04 CERTIFICATE OF GOOD FAITH CONFERENCE**

I, Laurence D. Mass, Plaintiff's attorney, conferred with Susan Diamond, attorney for Williams on September 22, 2022 by phone and through correspondence on October 3, 2022.  At this conference, despite our best efforts, we were unable to resolve the matters presented.

Certified this 7 th day of November, 2022            */s/ Laurence D. Mass*
                                                                                                    Laurence D. Mass

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was filed electronically with the Clerk of the Court to be served to all counsel by operation of the Court's electronic filing system on the 7th day of November 2022.

                                                                                */s/ Laurence D. Mass*
                                                                                Laurence D. Mass

16