IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CYNTHIA K. HAYNES (a/k/a Cynthia K. Randolph), individually and under the Missouri Wrongful Death Statute | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:21-CV-00160-ACL |
| | ) | |
| JENNIFER WILLIAMS, individually, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## WILLIAMS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Come Now, Defendants Jennifer Williams and Jennifer Williams, d/b/a Williams Law ("Williams") and respectfully submits her Response in Opposition to Plaintiff's Motion to Compel Discovery from Williams, and state as follows:

### INTRODUCTION

This case arises out of the tragic suicide of Plaintiff's minor daughter, M.H.  The suicide occurred while Plaintiff and Defendant Charles Haynes were in the midst of a contentious divorce in state court.   Williams was a court-appointed guardian ad litem ("GAL") during those proceedings.   Williams was also the court appointed GAL for M.H. in proceedings that were initiated in juvenile court while the divorce was pending.

In Missouri, a court-appointed GAL is obligated to comply with the Missouri Supreme Court's GAL Standards, the Missouri Rules of Professional Responsibility, and any Order entered by the court that appoint the GAL. (Exhibit 1, p. 3)(noting that a GAL'S obligations "include those required under these standards and those required under the ethical professional standards of a lawyer.")  The Missouri Supreme Court GAL Standards include the following mandate:

1

> A guardian ad litem shall comply with all statutes, rules, and regulations relating to the receipt of confidential or privileged information received as guardian ad litem. A guardian ad litem **shall not** redisclose any confidential or privileged information without valid court order or as required by law except as permitted by Rule 4-1.6.
> ….
>
> The guardian ad litem should maintain a file consistent with the provisions of Rule 4-1.15. The child is not the owner of that file. **Only the court has the authority to rule on any request concerning the handling or disposition of the file and order its release or early destruction or to rule on any request concerning the handling or disposition of the file.  The guardian ad litem should not provide the file to anyone, including the child, without the consent of the court.**

(Exhibit 1, pp. 6-8)(emphasis added).  In accordance with the Missouri Supreme Court GAL Standards, Williams maintained a GAL file for Plaintiff's minor children serving as GAL in the underlying divorce and juvenile court proceeding ("GAL Files").

In the instant case, Plaintiff served discovery requests on Williams that seek her GAL Files. Williams served timely objections as Williams cannot disclose the GAL Files to "anyone…without the consent" of the juvenile and family courts.  (Exhibit 1, p 8).  Plaintiff's Motion to Compel omits the fact that the Divorce Court has repeatedly denied its consent for Plaintiff to access the GAL Files.  (Exhibit 17 and Exhibit 19).  In fact, the Divorce Court recently characterized Plaintiff's attempt to access that material as "entirely inappropriate." (Exhibit 17).

Although the Divorce Court has unequivocally determined that Plaintiff cannot access Williams' GAL Files, Plaintiff has filed a motion to compel in this Court seeking that material. However, under Missouri law, this Court cannot order Williams to produce the GAL Files unless and until the Divorce Court consents to the production.

The Motion to Compel also argues that a number of Williams' objections to Plaintiff's discovery requests are improper because the requests "are limited to the information pertaining to M.H. from juvenile and the Haynes' divorce cases in which Williams acted as a GAL[.]" (Doc.

100, p. 9).  But this Court found that Williams is entitled to "quasi-judicial immunity" for all conduct that occurred fell within the scope of her duties as a GAL. (Doc. 61, pp. 16 – 17). Therefore, most of Plaintiff's discovery requests are not sufficiently tailored to address the conduct that this court found to be outside of Plaintiff's GAL duties i.e., Williams' alleged "witness tampering." (Doc. 61 pp. 17-18).

Accordingly, set forth in detail below, this Court should deny Plaintiff's Motion to Compel.

## STANDARD OF LAW

"A party may obtain discovery regarding any non-privileged matter, relevant to the party's claim or defense". Fed Civ. R. P. 26(b)(1)). "Discoverability will not turn on whether the subject evidence may be admissible at trial, so longs as 'the discovery appears reasonably calculated to lead to the discovery of admissible evidence'." *Huggins v. Federal Express*, 250 F.R.D. 404,  407 (E.D. Mo. 2008)(*quoting* Rule 26(b)1)).  Notwithstanding the liberal scope of discovery, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information **which does not reasonably bear upon the issues in the case.**" *Huggins*, 250 F.R.D. at 407(citing *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380, 382 (8th Cir.1992)) (emphasis added).

## BACKGROUND OF THE CUSTODY PROCEEDINGS

On April 23, 2014, the Circuit Court of Ripley County, Missouri, Juvenile Division ordered that M.S.H., and M.H. and S.H. (Plaintiff's minor children) be placed into the protective custody and the temporary legal custody of the Missouri Department of Social Services Children's Division. ("2014 Juvenile Cases").  No GAL was appointed by the Divorce Court at that time.  On April 7, 2015, Plaintiff's minor children were returned to her physical custody as part of a trial home placement.  Later that year, the 2014 Juvenile Cases were closed, and Plaintiff's minor

children were returned to her legal custody.  Plaintiff's custody dispute with Charles continued, and on October 2, 2015, Plaintiff consented to allowing Charles to have visitation with the minor children as supervised by Charles' mother, Bernice Haynes ("Bernice"). (Exhibit 2).

On May 6, 2016, the Circuit Court of Ripley County, Case No. 13RI-CV00554 (hereinafter "Divorce Court") appointed Williams as GAL for M.H. and S.H., via docket text order.  (Exhibit 3).  On November 9, 2016, Charles filed a Temporary Motion Pendente Lite seeking to have the children placed with his mother, Bernice.  (Exhibit 4). [1]

On December 7, 2016, the Divorce Court held a hearing on Charles' Temporary Motion Pendente Lite.  Plaintiff was represented by counsel at the hearing.  M.H. testified at that hearing. Consistent with the GAL standards keeping the minor children's communications privileged, the sound recording log from that hearing indicates, "COURT ORDERS COUNSEL THEY ARE NOT TO DIVULGE ANY OF MIKAEL'S [sic] TESTIMONY TO ANYONE, INCLUDING THEIR CLIENTS."  (Exhibit 5). On December 22, 2016, the Divorce Court sustained Charles' Motion for Pendente Lite in part and ordered Plaintiff, Charles, and Bernice to share joint legal custody of the minor children with Bernice having physical custody, with visitation to Plaintiff and Charles. (Exhibit 6).

In January 2017, Bernice, Plaintiff and Williams each filed Motions with the Divorce Court because temporary custody with Bernice was not working out and it was suspected that M.H. was harming herself.  On January 30, 2017, the Divorce Court entered a formal Order for Appointment of Guardian Ad Litem.  (Exhibit 7).  Consistent with the Missouri Supreme Court's GAL Standards, the Appointment Order set forth Williams' duties as GAL in the Divorce Case and

---

[1] Charles Haynes alleged at that time that Plaintiff had bruised one of the minor children and had been allowing Charles to routinely see the children despite his pending criminal charges. Charles alleged that he and Plaintiff had "continued to have contact...and the two vacationed together in Branson, MO and traveled to other locations." (Exhibit 3, p. ¶3).

included the following provision:

> The Guardian Ad Litem shall have an attorney-client relationship with the minor children, and all communications between the Guardian ad Litem and the minor children shall be privileged, and shall not be disclosed by the minor children or the Guardian ad Litem except as she shall deem appropriate in the effective representation of the minor children, and then only generally and not specifically. **Neither of the parties nor their counsel shall seek to invade this privilege either directly or indirectly, or to make any attempt to seek the disclosure or confidential communications from either the minor children or the Guardian Ad Litem**.

(Exhibit 7, p. ¶5)(emphasis added).  On January 31, 2017, Williams filed a Motion for GAL access to the 2014 Juvenile Cases. (Exhibit 8).

On February 03, 2017, a motion hearing was held where the parties, including Plaintiff, **agreed** to have the children taken into custody of the Ripley County Juvenile Office. The docket text message held:

> Petitioner appears with Counsel Liszewski. Respondent appears with Counsel J. Edmundson. Intervenor appears with Counsel Maness. GAL Williams appears. **By agreement of the parties**, the Court orders the minor children [M.H.] and [S.H.] to be taken into custody by the Ripley County Juvenile Office. **The Court and the parties agree that this order is in the minor children's best interest.**

(Exhibit 9)(emphasis added).  On or about February 3, 2017, Williams was appointed GAL for M.H. and S.H. during the in the Orders for Protective Custody of M.H. and S.H.  ("2017 Juvenile Cases").

On July 24, 2017, M.H. and S.H. were returned to Plaintiff's physical custody as part of a trial placement.  On June 27, 2018, the 2014 Juvenile Court cases were closed and M.H. and S.H. were returned to Plaintiff's legal custody.

On August 21, 2018, Charles filed a Second Emergency Motion for Child Custody Pendente Lite because he had viewed "images of sexting and child pornography found on the phone of Melissa Hogg" and one of the minor children.  (Exhibit 10).

On November 24, 2018, M.H. died by suicide.

5

On December 06, 2018, Charles' attorney issued a subpoena directed to Williams. (Exhibit 11). The subpoena compelled Williams' testimony at the sentencing hearing proceedings that were set in the matter of the *State of Missouri v. Charles Hayes*, Cause No. 13RI-CR00907-01. On December 12, 2018, Williams testified at the sentencing hearing proceedings pursuant to the subpoena. (Exhibit 12). At no point during the sentencing hearing proceedings did Williams advocate for Charles to be placed on probation. (Exhibit 12).

On May 05, 2021, Williams was granted leave to withdraw as GAL from the Divorce Case. At no time prior to M.H.'s death did Plaintiff, or her multiple attorneys, file any document with the Divorce Court or the Juvenile Courts claiming that Charles molested M.H.[2] Upon information and belief, at no time prior to Williams' withdrawal in May of 2021 did Plaintiff file any document with any Court alleging that Williams had threatened M.H. or Plaintiff. According to the Divorce Court docket, Plaintiff was present in court on December 21, 2018, January 30, 2019, May 1, 2019, May 29, 2019, November 1, 2019, November 13, 2019, and January 3, 2020. (Exhibit 13). Plaintiff's attorneys also appeared on February 6, 2020, July 17, 2020 and April 20, 2021. Upon information and belief, no issues or complaints were raised regarding Williams conduct as GAL or the alleged threats. No motions were filed with the Divorce Court seeking to disqualify Williams or raising any concerns.[3]

## PLAINTIFF'S REQUESTS FOR THE GAL FILE HAVE BEEN REPEATEDLY REJECTED BY THE DIVORCE COURT

On May 31, 2021, Plaintiff's current counsel requested that Williams disclose her GAL Files to Plaintiff. Williams responded to Plaintiff's counsel that "GAL Standard 7.0 indicates that a GAL's Files  belongs to the court. If the court directs me to turn my file over, I will comply with

---

[2] On December 21, 2018, less than a month after M.H. died, Plaintiff filed an "Affidavit of Truth" which accuses *Charles* of witness tampering but is silent as to Williams.
[3] Plaintiff did request that Williams recuse during the time Plaintiff was unrepresented.

any order if I am so directed." (Exhibit 14).

On August 19, 2021, Plaintiff, through her current counsel, filed a Motion for Production of Jennifer Williams' Legal File and Memorandum of Law in Support in the Divorce Case (Exhibit 15).  Thereafter, on September 10, 2021, Plaintiff supplemented her Motion for Production of Williams' GAL File Case to include additional exhibits.  (Exhibit 16).  In Plaintiff's Motions for Production of the GAL File, Plaintiff made the same arguments as in this case and requested that the Divorce Court order Williams to produce file the GAL file to Plaintiff because (among other reasons), Williams threatened M.H. S.H. and Plaintiff with the M.H.'s and S.H.'s placement in foster care if any of them testified against Charles in his pending criminal case. (Exhibit 16, ¶¶ 47, 48, 51, 52, 53, 54, 65).

On September 17, 2021, the Divorce Court entered its Judgment and Order denying Plaintiff' request for Williams' GAL file.  (Exhibit 17).  Notably, the Court specifically found Plaintiff's attempt to get the GAL file to be "**entirely inappropriate**." (*Id.*) (emphasis added).

On October 08, 2021, Plaintiff served a subpoena duces tecum on the law firm that employed Williams' during the Divorce Case, Defendant Spain, Miller, Galloway Lee LLC ("Spain Miller").  (*See* Exhibit 18).  In Exhibit A to the Subpoena Duces Tecum, Plaintiff commanded Spain, Miller to produce Williams' GAL file.  *(Id.)*.  In response, Spain Miller filed a Motion to Quash the Subpoena Duces Tecum. (Exhibit 18).

On December 10, 2021, the Divorce Court entered an Order appointing Allyson Brown ("Brown") as the new GAL.  On December 17, 2021, **after this case was filed**, the Divorce Court granted Spain, Miller's Motion to Quash Plaintiff's Subpoena Duces Tecum seeking production of Williams' GAL file.  (Exhibit 19).

On January 24, 2022, GAL Brown filed a motion to compel in the Divorce Court seeking

production of all material maintained in Williams' GAL file. (Exhibit 20).  In support of Brown's Motion to Compel, GAL Brown averred that Williams' GAL file contained information necessary for Brown to carry out her duties and responsibilities in the Divorce Case.  (Exhibit 20, ¶6).

On January 25, 2022, the Divorce Court entered its Order to Produce and Protective Order compelling Williams to disclose her GAL file to Brown.  (Exhibit 21).  In its Order to Produce, the Court found that Williams' GAL file must be produced because to Brown so that "Brown has the information necessary to carry out her duties and responsibilities in the Divorce Case." (Exhibit 21, p. 2).  The Order to Produce also stated that any Protected Information under the Order to Produce "shall be used **solely for the purpose of this action and shall not be disclosed to any other persons for any other purposes**." (*Id.* at 3)(emphasis added). The Order to Produce also stated that it would remain binding after the conclusion of the divorce and any action to enforce may be brought in the Circuit Court of Ripley County, Missouri, and that a party may apply to a court of competent jurisdiction for relief from or modification of the Protective Order all subject to the approval of the Divorce Court.  (Exhibit 21, p. 2).  Finally, the Order to Produce stated all prior Orders and Protective Order previously entered in the case remained in full force and effect. (*Id.*)

## **ARGUMENT**

### I.    **Williams cannot produce the GAL Files to Plaintiff unless and until the Divorce Court directs her to do so.**

The Motion to Compel requests that the Court enter an Order compelling Williams to produce Williams GAL Files.  (Doc. 100, p. 6).  Plaintiff argues that Williams "must" produce the GAL Files because she believes the material is "highly relevant" to these proceedings. (*Id.*).  But Williams does not suggest that she will not produce her GAL Files because they are irrelevant to this case. Rather,Williams <u>cannot</u> produce her GAL Files to Plaintiff because the Missouri

Supreme Court prohibits a GAL from disclosing a GAL file to "anyone" without the Divorce Court's consent. (*See* Exhibit 1, p. 8)("Only the court has the authority to rule on any request concerning the handling or disposition of the file and order its release or early destruction or to rule on any request concerning the handling or disposition of the file. **The guardian ad litem should not provide the file to anyone, including the child, without the consent of the court.**")(emphasis added).  And the Divorce Court has repeatedly denied Plaintiff access to Williams' GAL Files.  (See Exhibits 17 and Exhibit 19).  In fact, the Divorce Court called Plaintiff's first attempt to access Williams' GAL Files "entirely inappropriate." (Exhibit 17).

Nevertheless, Plaintiff implies that Paragraph No. 9 of the Divorce Court's Order to Produce gives this Court the power to modify the terms and conditions of the Order so that Williams can be compelled to produce her GAL Files. (Doc. 100, p. 6)(citing (Exhibit 21, p. 3). Plaintiff suggests the Court's authority to modify the Order in this way is established by Paragraph No. 9 of the Order to Produce because it states that application to modify the Order can be made to a "court of competent jurisdiction. "  (Exhibit 21, p. 3).  But that contentious is specious, for multiple reasons.

First, the Divorce Court's Order to Produce states (in pertinent part) as follows:

IT IS HEREBY ORDERED that the following terms and conditions shall govern the disclosure, duplication, and dissemination of any material that Williams produces to Brown that relates to the Parties' minor children, the Divorce Case, and Juvenile Cases: ….

 No Protected Information may be communicated, copies, provided, published, divulged, distributed, or disseminated to any person other than those identified above without a Court Order.

(Exhibit 21, p. 2).  By its plain language, the Divorce Court's Order to Produce's "terms and conditions shall govern" Williams' production of the GAL Files to Brown.   There is no indication that the Divorce Court contemplated that the Order to Produce could be modified in

such a way so that it could govern the production of the GAL Files to Plaintiff (or anyone else).

Second, the Divorce Court's Order to Produce fails to define a "court of competent jurisdiction."  And Plaintiff does not point to any legal authority that establishes this Court is a "court of competent jurisdiction" with the power to modify the Divorce Court's Order.  Section 452.523 R.S.Mo. governs the appointments of Williams and Brown as M.H.'s GAL.  And this statute limits the appointment of Missouri GAL's to "proceeding[s] for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue…." and "proceeding[s] in which child abuse or neglect is alleged." R.S.Mo. § 452.523 RS.Mo. This Court does not have subject matter jurisdiction over such proceedings. Therefore, there is no legal basis to argue that this Court has jurisdiction to overturn the Divorce Court's judgment that Plaintiff cannot have access to the GAL Files. [4]  *See United States v. Morton*, 467 U.S. 822 (1984)(noting that where the term "a court of competent jurisdiction" is undefined, that term "*usually* refers to subject-matter jurisdiction.")(emphasis added).

Moreover, even *if* this Court has jurisdiction to modify the Divorce Court's Order to Produce in the manner that Plaintiff suggests (and there is no legal basis to suggest that it does), Paragraph No. 9 of that Order indicates that any such modification would be "subject to the approval of the [Divorce Court]."  (*See generally*, Exhibit 21, p. 4).  In *Nat'l Ben. Programs, Inc. v. Express Scripts, Inc.*, this Court expressly refused to compel the production of documents that a divorce court held confidential under a protective order.  2011 WL 6009655, at *1 (E.D.

---

[4] The lack of legal authority on this specific issue may be because federal courts routinely dismiss cases that arise from divorce and child custody proceedings based on the "domestic relations exception" to federal jurisdiction.  *Khan v. Khan*, 21 F.3d 859, 861 (8th Cir. 1994)(internal citation amended).  Under the "domestic relations exception" to subject matter jurisdiction, a federal court is divested of jurisdiction "over any action for which the subject is a divorce, allowance of alimony, or child custody."  Additionally, "[w]hen a cause of action closely relates to but does not precisely fit into contours of action for divorce, alimony, or child custody, federal courts generally will abstain from exercising jurisdiction." *Khan* 21 F.3d at 861.

Mo. Dec. 1, 2011). The approach the Court took in *Nat'l Ben. Programs, Inc.* is consistent with the approach this and other district courts have taken where another court's protective order has been in effect. *See e.g., Rogers v. Proctor & Gamble Co.*, 107 F.R.D. 351, 352 (E.D. Mo. 1985)(concluding that every court has supervisory power over its own record and files, and the decision to lift a protective order is a discretionary function for the court that issued it); *Peoples Nat'l Bank, N.A. v. Mehlman*, 2015 WL 6434367, at *2 (E.D. Mo. Oct. 21, 2015)(quoting *Field Turf USA, Inc. v. Sports Const. Grp.*, LLC, 2007 WL 4412855, *4 n. 7 (N.D. Ohio Dec. 12, 2007)("This Court has no authority to enforce the state court's protective order and, so, it will leave the resolution of this question to the state court.").

Still, Plaintiff argues that the GAL Files can be produced without the Divorce Court's consent because "other Missouri state and federal courts have ordered records that are otherwise confidential by statute, court order or a rule to be produced in a civil action for damages." (Doc. 100, p. 7). But that contention confuses the issues. The GAL Files are not merely "confidential by statute, court order, or a rule." Rather, the GAL Files are "confidential and **privileged**" by orders of the Missouri Supreme Court and the Divorce Court. (Exhibit 1, pp. 7-9; *See also* Exhibit 17). Moreover, the Missouri Supreme Court specifically prohibits the GAL Files from being produced to anyone without the consent of the Divorce Court. (Exhibit 1, p. 9). Accordingly, the Missouri state court cases Plaintiff cites are inapposite because those cases turn on specific confidentiality protections afforded to the specific records that were at issue in these cases and do not deal with materials that are also protected by privilege. *E.g., Smith v. Harold's Supermarket, Inc.* 685 S.W.2d 859, 863 (Mo. Ct. App. 1984)(finding that the trial court did not err in admitting a minor decedent's juvenile court records in a wrongful death case based on the specific Missouri statute that governed the confidentiality of juvenile court records); *In Interest of A.C.G.*, 499

11

S.W.3d 340, 346 (Mo. Ct. App. 2016)(finding that trial court did not err in refusing to take judicial notice of juvenile court records in a termination of parental right's case based on the specific Missouri statute that governed the confidentiality of juvenile court records).

Confusingly, Plaintiff also cites *Dept. Soc. Services, Div. of Children Services v. Tucker*, 413 S.W.3d 646, 659 (Mo. 2013) and *State ex rel. Dep't of Soc. Services v. Dougherty*, 563 S.W.3d 153, 157 (Mo. Ct. App. 2018) to argue that GAL files can be produced to Plaintiff.  But in both cases, the appellate court found that the trial court erred by ordering confidential records be produced.  See *Tucker*, 413 S.W.3d at 659 (Mo. 2013); *Dougherty*, 563 S.W.3d at 157.  Thus, these cases are anathema to Plaintiff's argument that courts "have ordered" confidential records to be produced.

Plaintiff notes that in "a federal civil rights action state statutory privileges are not binding." (Doc. 100, p. 8).  This statement is true, but it is also irrelevant, as Plaintiff is not pursuing federal civil rights claims.  (*See generally*, Doc. 6).  As such, the federal court cases Plaintiff cites are of no moment because they turn on a standard of law that has no application to this action. *C.f., J.P. by next friend Ogden v. Belton Sch. Dist.*, 2020 WL 12688359, at \*4 (W.D. Mo. Nov. 11, 2020)(holding that a federal civil rights litigant could obtain child abuse records that were confidential under state statute because "in the context of federal civil rights actions, federal courts have repeatedly held that state law must give way to their interest in obtaining every fact necessary to protect federal guaranteed rights."); *Schweppe v. City of Pine Lawn*, 2018 WL 623595, at \*2 (E.D. Mo. Jan. 30, 2018)(finding that a federal civil rights litigant was entitled to obtain employee personnel records that were "closed" to the public by state statute); *Farley v. Farley*, 952 F. Supp. 1232, 1242 (M.D. Tenn. 1997)(holding that a federal civil rights litigant was entitled to obtain child abuse report records because state statute that categorized those records as confidential "must

yield to a supervening interest in their production and use in federal civil rights actions.)); *Ginest v. Bd. of Cnty. Com'rs of Carbon Cnty.*, 306 F. Supp. 2d 1158, 1159-60 (D. Wyo. 2004)(holding that federal civil rights litigants could obtain inmate medical records that were confidential under state law case because "the individual privacy interest and state policies, through cognizable (sic), cannot prevail either as a constitutional or federal evidentiary matter)); *Doe v. Meachum* 126 F.R.D. 444, 448-50 (D. Conn. 1989)(same); *N.O. v. Callahan,* 110 F.R.D. 637, 646–47 (D. Mass. 1986)(finding that federal civil rights litigants could obtain state mental  health hospital records that were confidential under state law where "the limited privacy interests of the employees are outweighed by the plaintiff's need for such information" to pursue their claims.); *Lora v. Bd. of Ed. of City of New York*, 74 F.R.D. 565, 569 (E.D.N.Y. 1977)(finding that federal civil rights litigants were not barred by state statute from seeking the production of confidential education records because "New York law of privileges is not decisive because the claim arises under federal law."); *see also Jiang v. Porter*, 2016 WL 3015163, at *3 (E.D. Mo. May 26, 2016)(holding that federal civil rights litigant was not prevented from obtaining documents from a defendant who failed to provide "an adequate factual basis" for withholding the documents).[5]

Plaintiff also cites federal cases that analyze the application of common law privileges to various documents. (Doc. 100, p.p. 7-8).  But Williams does not claim that the GAL file cannot be disclosed based on solely on a common law privilege.  Instead, the privilege afforded to Williams' GAL Files comes by order of the Missouri Supreme Court and Divorce Court Order (Exhibit 1, pp. 7-9; Exhibit 17). Thus, it is unclear what application Plaintiff believes these cases have to the GAL Files.  *See Sharonda B. v. Herrick*, 1998 WL 547306, at *7(N.D. Ill. Aug. 27, 1998)(finding

---

[5] Although it is not expressly stated in this opinion, *Jiang v. Porter, et al*. was a civil rights action brought by a plaintiff who alleged (among other things) that multiple defendants violated his constitutional rights during a criminal investigation. *See Jiang v. Porter*, 156 F. Supp. 3d 996, 1002 (E.D. Mo. 2015)(noting that the Plaintiff's complaint included claims under 42 U.S.C. §§ 1985 and 1986).

that most, but not all, of the documents that were requested from a court-appointed Illinois "Public

Guardian" and Illinois GAL were subject to the attorney-client privilege and work product

doctrine); *Sprint Communications Co., L.P. v. Native Am. Telecom, LLC*, 2011 WL 1883193, at

*1 (D.S.D. May 17, 2011)(holding that a company's confidential financial information was

discoverable pursuant to a protective order).

Accordingly, there is no legal authority that allows Plaintiff to circumvent the mandates of

the Missouri Supreme Court and the Divorce Court, and Williams cannot produce her GAL file

unless and until the Divorce Court directs her to do so.  (Exhibit: 1, pp. 7-9; *see generally* Exhibit:

7 ¶5 and Exhibit 17). Plaintiff's Motion to Compel should therefore be denied.

**II.  Williams' objections to Plaintiff's discovery are well-founded because the requests seek material that is related to Williams' work as a GAL in other cases and the information being sought is privileged.**

Fed R. Civ. P. 26(b)(1) requires Plaintiff's discovery requests be limited to matters

"relevant to any party's claim or defense." Rule 26(b)(1).  But  Request for Production No. 17 and

Interrogatories Nos. 10, 11, 15 are not so limited.   These requests seek information about

Williams' work as a court-appointed GAL in cases that have no the Divorce Case or the Juvenile

Cases.  These requests are improper because they do not "reasonably bear upon the issues in the

case." *Huggins v. Federal Express*, 250 F.R.D. 404, 407 (E.D. Mo. 2008)(*citing Hofer v. Mack

Trucks, Inc.,* 981 F.2d 377, 380, 382 (8th Cir.1992)).  Moreover, as discussed in Section I, *infra*,

Request for Production No. 17 and Interrogatories Nos. 10, 11, 15 invade the privilege afforded to

the information that Williams obtained while serving as the GAL in other cases.  (*See* Exhibit 1,

pp. 7-8).

Accordingly, because Plaintiff's Request for Production No 17 and Interrogatories Nos.

10, 11, 15 are not sufficiently tailored to address the claims or defenses in this case, they are

improper discovery requests under Federal Rules of Civil Procedure 26(b)(1).

## CERTIFICATE OF UNDERSTANDING

The Parties have met and conferred on this dispute and Williams' objections and responses to Plaintiff's discovery. The Parties agree that the Motion to Compel is ripe as to two primary issues: (1) the production of Williams' GAL file in the Haynes' cases (RFPS 2-16, 20, 21-23, 26-29; Rogs 11- 17, 19 (both), 21 and 22); and (2) whether Williams must produce a list of cases where she acted as counsel or as a GAL (RFPS 17; Rogs 10, 11, 15).   The Parties have resolved the remaining disputes and will revisit the scope of Williams' responses to the disputed Interrogatories and Request for Production after the Court rules on the legal issues set forth above and briefed herein.

## CONCLUSION

As a court-appointed GAL for Plaintiffs' children in the Divorce and Juvenile Cases, Williams  is obligated to ensure that her GAL Files are not disclosed to anyone without consent of the courts that appointed her.  The Divorce Court made repeatedly clear that it does  not consent to Plaintiff having Williams' GAL files.  Plaintiff cannot overcome the confidentiality and privilege protections afforded to the GAL Files by insisting that the material is "highly relevant" to this case.  Accordingly, Williams cannot produce her GAL file to Plaintiff unless and until the Divorce Court directs her to do so, and this Court should enter an Order denying Plaintiff's Motion to Compel Defendant Williams to Produce her GAL file.

Respectfully submitted,

ROBERTS PERRYMAN, P.C.

By:      _/s/  Susan M Dimond_____
Richard C. Wuestling, #30773MO
Susan M. Dimond, #57434MO
Dustin L. Goldberger, #70080MO
1034 S. Brentwood, Suite 2100
St. Louis, Missouri 63117
Phone: (314) 421-1850
Fax: (314) 421-4346
rwuestling@robertsperryman.com
sdimond@robertsperryman.com
dgoldberger@robertsperryman.com

***Attorneys for Defendants Jennifer Williams and
Jennifer Williams d/b/a Williams Law***

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2022, the foregoing was emailed only to all counsel of record.

Laurence D. Mass laurencedmass@att.net
Evita Tolu evitatolu@outlook.com
***Attorneys for Plaintiff***

John C. Steffens jsteffens@lumbaughlaw.com
***Attorneys for Defendant Bernice Haynes***

Thomas W. Collins, III tcollins@blantonlaw.com
***Attorneys for Spain, Miller, Galloway & Lee, LLC***

Cira R. Duffe duffe@hdp-law.com
***Attorney for Defendant Charles Haynes***

_/s/Susan M. Dimond___

16