IN THE CIRCUIT COURT WITHIN AND FOR
THE COUNTY OF RIPLEY,
STATE OF MISSOURI,

| | |
|---|---|
| STATE OF MISSOURI, PLAINTIFF, VS. CHARLES M. HAYNES, DEFENDANT. | CASE NO. 13RI-CR00907-01 |

BE IT REMEMBERED THAT ON THE 12TH DAY OF DECEMBER, 2018, THE ABOVE ENTITLED CAUSE CAME ON FOR HEARING BEFORE THE HONORABLE KELLY W. PARKER, JUDGE OF THE 42ND JUDICIAL CIRCUIT, DIVISION II, AT RIPLEY COUNTY, MISSOURI, AND THE FOLLOWING PROCEEDINGS WERE HAD:

APPEARANCES:

FOR THE PLAINTIFF:  CHRISTINE KRUG, ESQ.
ASSISTANT ATTORNEY GENERAL
815 OLIVE STREET
SUITE 200
ST. LOUIS, MISSOURI 63101

FOR THE DEFENDANT:  THEODORE LISZEWSKI, ESQ.
ATTORNEY AT LAW
220 NORTH MAIN STREET
SIKESTON, MISSOURI 63801
DAVID MILLS, ESQ.
ATTORNEY AT LAW
1100 N. ELM STREET
P.O. BOX 248
ROLLA, MISSOURI 65402

16

---

SENTENCING HEARING - DECEMBER 12, 2018:

THE COURT: WE ARE ON THE RECORD IN STATE OF MISSOURI V. CHARLES M. HAYNES. THIS MATTER IS ON FOR SENTENCING TODAY. THE COURT HAS READ THE SENTENCING ASSESSMENT REPORT. I HAVE RECEIVED A COUPLE OF E-MAILS ONE FROM MS. KRUG WHICH INCLUDED A LETTER FROM MS., IS IT NEVAR, NEVAR, AND THE COURT HAS READ THAT LETTER. I DID RECEIVE AN E-MAIL FROM MR. MILLS THAT INCLUDED A POLICE REPORT RELATED TO THE ALLEGATION OF BURGLARY BY THE DEFENDANT INVOLVING M.S.H. I READ THAT FOR WHATEVER THAT'S WORTH. ANY PRELIMINARY MATTERS BY THE STATE BEFORE WE MOVE INTO THE SENTENCING?

MS. KRUG: YES YOUR HONOR, THE DEFENSE HAS FILED A FOURTH AMENDED WITNESS ENDORSEMENT OF SENTENCING WITNESSES AND THE STATE IS GOING TO MOVE TO EXCLUDE A FEW OF THOSE BASED ON THE INFORMATION, SOME OF WHICH IS ON THIS ENDORSEMENT AND SOME OF WHICH IS NOT. WITH REGARD TO A DR. DUNCAN WHO IS THE SECOND LISTED WITNESS ON THERE, YOUR HONOR THEY'VE STATED THAT HE'S GOING TO TESTIFY REGARDING DEFENDANT AND HIS HISTORY WITH THE ALLEGED VICTIM AND THE MOTHER OF THE ALLEGED VICTIM. THE DEFENDANT HAS PLED GUILTY. THIS MATTER OF ALLEGED IS OVER. HE'S PLED GUILTY TO VICTIMIZING HER, SO ANYTHING ABOUT THAT RELATIONSHIP THAT MAY COME INTO PLAY WITH REGARDS TO YOU KNOW IF WE

17

---

HER TO GIVE THAT AT ANY TIME AND THEN I'LL GIVE YOU ANOTHER OPPORTUNITY TO PRESENT ANYTHING YOU WANT TO PRESENT.

MR. LISZEWSKI: APPRECIATE THAT.

THE COURT: OKAY. OTHER THAN THE VICTIM DOES THE STATE HAVE ANY EVIDENCE TO PRESENT?

MS. KRUG: NO YOUR HONOR.

THE COURT: OKAY EVIDENCE ON BEHALF OF THE DEFENDANT?

DEFENDANT'S EVIDENCE:

MR. LISZEWSKI: YES JUDGE WE'LL BEGIN BY CALLING JENNIFER WILLIAMS.

THE COURT: JENNIFER WILLIAMS. PLEASE COME FORWARD AND RAISE YOUR RIGHT HAND TO BE PLACED UNDER OATH.

(AT THIS TIME JENNIFER WILLIAMS WAS SWORN TO TELL THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, AFTER WHICH THE FOLLOWING PROCEEDINGS WERE HAD:)

THE COURT: YOU MAY HAVE A SEAT. YOU MAY INQUIRE.

DIRECT EXAMINATION BY MR. LISZEWSKI:

Q. THANK YOU YOUR HONOR. MA'AM WOULD YOU STATE YOUR NAME FOR THE RECORD.

A. JENNIFER WILLIAMS.

Q. AND JENNIFER YOU ARE A LICENSED ATTORNEY

24

---

IN THE STATE OF MISSOURI?

A. YES.

Q. YOU ALSO HAVE A ROLE AS IT RELATES INTO THE DISSOLUTION CHARLES HAYNES VERSUS CYNTHIA HAYNES, IS THAT CORRECT?

A. YES.

Q. WHAT IS YOUR ROLE IN THAT CASE?

A. I AM THE COURT APPOINTED GUARDIAN AD LITEM FOR M.H. AND S.H.

Q. OKAY INITIALLY WHENEVER THE DIVORCE WAS FILED IT WAS TWO CHILDREN AND NOW YOU ARE THE GAL FOR JUST S.H. IS THAT CORRECT?

A. YES IT IS.

Q. IF YOU WOULD BRIEFLY DESCRIBE TO THE COURT WHAT YOUR COURSE OF DUTIES ARE AS GAL AND OBLIGATIONS?

A. MY OVER-ARCHING OBLIGATION IS TO MAKE A RECOMMENDATION TO THE COURT THAT I BELIEVE TO BE IN THE CHILDREN'S BEST INTEREST WITH REGARD TO CUSTODY AND VISITATION BETWEEN THE PARENTS. IN CONNECTION WITH MAKING THAT RECOMMENDATION I INTERVIEW PARTIES, INTERVIEW COLLATERAL WITNESSES, REVIEW ANY DOCUMENTATION THAT'S PROVIDED BY PARTIES. IN THIS PARTICULAR CASE THERE'S A LENGTHY HISTORY WITH THIS FAMILY AND SO SOME OF MY DUTIES INCLUDED DISCUSSING

25

Exhibit 12

```
 1   THIS MATTER OR PREVIOUS MATTERS WITH PRIOR GUARDIAN AD
 2   LITEMS AS WELL.
 3        Q.   OKAY.  THROUGHOUT THE COURSE OF YOUR
 4   REPRESENTATION OF THE CHILDREN IN THE CASE DID YOU HAVE
 5   AN OPPORTUNITY TO INTERVIEW CHUCK HAYNES, CINDY HAYNES,
 6   M.H.    AND  S.H.  ?
 7        A.   YES I HAVE.
 8        Q.   AND HAVE YOU HAD AN OPPORTUNITY TO SPEAK
 9   WITH THE VICTIM IN THIS CASE M.S.H.?
10        A.   I WAS REQUESTED TO DO SO AND I DECLINED
11   TO DO SO FOR FEAR THAT IT WOULD POTENTIALLY CAUSE ME TO
12   BE A WITNESS IN THE CRIMINAL CASE AND IMPACT MY ABILITY
13   TO ADVOCATE FOR S.H. AND M.H.
14        Q.   OKAY SO YOU'VE NEVER PERSONALLY SPOKEN
15   TO M.S.H. AT ALL?
16        A.   NOTHING MORE THAN SHE WAS PRESENT WITH
17   CINDY HAYNES WHEN SHE CAME TO MY OFFICE ONE TIME AND
18   SHE REMAINED IN THE LOBBY WHILE I INTERVIEWED CINDY
19   HAYNES.
20        Q.   OKAY.  FROM YOUR INVESTIGATION IN THE
21   CASE HOW WOULD YOU DESCRIBE THE RELATIONSHIP THAT CHUCK
22   HAYNES HAD WITH HIS CHILDREN M.H. AND S.H.?
23        A.   AT TIMES GOOD AND AT TIMES BAD.  THE
24   VERY FIRST TIME THAT I INTERVIEWED THE MINOR CHILDREN
25   THEY, THEY CAME TO THE OFFICE WITH THEIR FATHER, THEY
                            26
```

```
 1   SPOKE POSITIVELY ABOUT THEIR FATHER, INDICATED THAT
 2   THEY HAD A GOOD RELATIONSHIP WITH HIM, SUBSEQUENTLY AND
 3   CONSISTENTLY SINCE THAT TIME THE CHILDREN HAVE REPORTED
 4   TO ME THAT THEY DIDN'T WANT TO SEE FATHER, IT'S BEEN A
 5   TUMULTUOUS RELATIONSHIP SINCE THEN.
 6        Q.   WOULD IT BE FAIR TO SAY THAT THIS CASE
 7   HAS TAKEN A TOLL ON THEM?
 8        A.   I BELIEVE...
 9        MS. KRUG:  JUDGE THAT CALLS FOR SPECULATION.
10        THE COURT:  OVERRULED.
11        Q.   LET ME REPEAT THE QUESTION, MY
12   APOLOGIES.  WOULD IT BE FAIR TO SAY IN YOUR EXPERIENCE
13   THAT THIS HAS TAKEN A TOLL ON WELL I GUESS S.H. MORE
14   SPECIFICALLY TODAY?
15        A.   I BELIEVE SO, I BELIEVE SHE'S A VERY
16   CONFLICTED LITTLE GIRL.
17        Q.   AND IN YOUR INVESTIGATIONS WAS CHUCK A
18   DECENT FATHER TO S.H.?
19        MS. KRUG:  OBJECTION.
20        THE COURT:  I'M SORRY WOULD YOU REPEAT THE
21   QUESTION.
22        Q.   IN THE COURSE OF YOUR INVESTIGATION IN
23   YOUR DUTIES WAS CHUCK A DECENT FATHER TO SARAH?
24        THE COURT:  WHAT WAS THE...
25        MS. KRUG:  RELEVANCE.
                            27
```

```
 1        THE COURT:  THE OBJECTION IS SUSTAINED.
 2        Q.   LET ME ASK YOU GOING FORWARD IF THE
 3   COURT WERE TO SEND CHUCK TO THE DEPARTMENT OF
 4   CORRECTIONS WOULD YOU HAVE, I UNDERSTAND YOU HAVE NOT
 5   MADE A RECOMMENDATION AS TO CUSTODY AND PLACEMENT IS
 6   THAT RIGHT?
 7        A.   THAT'S CORRECT.
 8        Q.   DO YOU HAVE ANY CONCERNS AS IT WOULD
 9   RELATE TO S.H.   NOT BEING AROUND HER FATHER AND
10   EXCLUSIVELY AROUND CINDY HAYNES AND M.S.H.?
11        MS. KRUG:  OBJECTION.
12        THE COURT:  OVERRULED.
13        Q.   LET ME, DO YOU UNDERSTAND MY QUESTION?
14        A.   NO.
15        Q.   OKAY.  IF THE JUDGE WERE TO SAY CHUCK
16   GOES TO PRISON AND I ASKED A POOR QUESTION, MY
17   APOLOGIES, IF THE JUDGE SAID CHUCK IS GOING TO PRISON
18   TODAY OR WHATEVER THE SENTENCE IS, WOULD YOU HAVE
19   CONCERNS AS THE GUARDIAN AD LITEM ABOUT S.H. BEING IN
20   THE EXCLUSIVE CONTACT OF CINDY AND M.H.S., THE VICTIM
21   IN THIS CASE?
22        A.   PARTIALLY CONCERNS ABOUT THAT BUT
23   PARTIALLY JUST CONCERNS THAT I ALWAYS HAVE WHEN A CHILD
24   IS LIMITED IN CONTACT WITH A PARENT.  NOW WHAT THE
25   EXTENT OF THAT CONTACT WOULD NEED TO LOOK LIKE IN THE
                            28
```

```
 1   CIVIL CONTEXT COULD BE A VARIETY OF THINGS BUT I'M
 2   ALWAYS CONCERNED WHEN A CHILD IS COMPLETELY SEPARATED
 3   FROM ANY OF THEIR PARENTS.  I DO HOWEVER HAVE CONCERNS
 4   THAT FATHER AND HIS FAMILY HAVE NOT SEEMED TO BE ABLE
 5   TO HAVE ANY ACCESS TO THE CHILDREN FOR QUITE SOME TIME.
 6        Q.   AND THAT IS PARTLY BECAUSE OF THIS
 7   CRIMINAL CASE IS THAT TRUE?
 8        A.   IT'S MY UNDERSTANDING THAT'S A LARGE
 9   PART OF IT YES.
10        Q.   DO YOU HAVE ANY SPECIFIC CONCERNS WITH
11   SOME THINGS THAT WERE FOUND ON THE VICTIM'S PHONE,
12   THINGS OF THAT NATURE?
13        A.   YES.
14        MS. KRUG:  OBJECTION RELEVANCE.
15        THE COURT:  HOW WOULD SHE KNOW ABOUT THAT?
16        MR. LISZEWSKI:  AS THE GUARDIAN AD LITEM SHE
17   WAS INFORMED ABOUT THAT DURING THE COURSE OF
18   REPRESENTING THE CHILDREN.
19        MS. KRUG:  BY DEFENSE COUNSEL, SO IN ADDITION
20   TO NOT BEING RELEVANT OBJECTION TO HEARSAY.
21        THE COURT:  SUSTAINED.  THE OBJECTION IS
22   SUSTAINED.
23        Q.   DO YOU HAVE ANY CONCERNS ABOUT S.H.
24   BEING LEFT EXCLUSIVELY TO CINDY?
25        A.   IN MY OBSERVATION THROUGHOUT THE HISTORY
                            29
```

Exhibit 12

```
 1  OF THIS CASE MY BELIEF IS THAT MOTHER HAS GREATLY
 2  MANIPULATED THESE CHILDREN.  IF THEY DID NOT SAY WHAT
 3  SHE WANTED THEM TO SAY I BELIEVE THAT THERE WERE
 4  ATTEMPTS TO MANIPULATE THEM UNTIL THEY DID AND I
 5  BELIEVE AS I'VE LOOKED BACK AT OTHER RECORDS WITH THE
 6  PRIOR JUVENILE CASE I BELIEVE THAT'S BORN OUT WITH THE
 7  VICTIM IN THE PRESENT CASE AS WELL AS M.S.H.  SO THOSE
 8  ARE MY CONCERNS.
 9           MR. LISZEWSKI:  THAT'S ALL THE QUESTIONS I
10  HAVE.
11           THE COURT:  MS. KRUG.
12  CROSS EXAMINATION BY MS. KRUG:
13      Q.   THANK YOU YOUR HONOR.  MS. WILLIAMS THE
14  CHILDREN TOLD YOU THAT THEY DIDN'T WANT TO BE AROUND
15  MR. HAYNES OR HIS MOTHER BERNICE HAYNES CORRECT?
16      A.   YES THAT'S CORRECT.
17      Q.   DUE TO VERBAL ABUSE, EMOTIONAL ABUSE?
18      A.   YES.
19      Q.   SO WHETHER OR NOT WE'RE EVEN TALKING
20  ABOUT CINDY HAYNES IN THIS CONTEXT THEY DIDN'T WANT TO
21  BE WITH THE DEFENDANT?
22      A.   THAT IS CORRECT.  MY CONCERN WITH THAT
23  WAS THE LEVEL OF INFLUENCE EXERTED BY MOTHER AND M.S.H.
24      Q.   ALRIGHT.  AND YOUR ROLE AS THE GUARDIAN
25  AD LITEM IS TO ADVOCATE ON BEHALF OF THE CHILDREN IS
                              30
```

```
 1  THAT RIGHT?
 2      A.   THAT'S CORRECT.
 3      Q.   AND SOMETIMES WHEN YOU'RE IN THAT ROLE
 4  THAT MEANS THAT NO MATTER THE OUTCOME OF A RELATED
 5  CRIMINAL CASE YOU MIGHT NOT RECOMMEND THAT THE CHILD BE
 6  LEFT WITH THE OTHER PARENT, ISN'T THAT TRUE?
 7      A.   I'M SORRY COULD YOU REPEAT?
 8      Q.   THE HYPOTHETICAL THAT MR. LISZEWSKI
 9  PRESENTED EARLIER, IF THE DEFENDANT GOES TO PRISON
10  TODAY HE ASKED YOU ABOUT ANY CONCERNS YOU MIGHT HAVE
11  WITH S.H. THEN BEING IN THE SOLE CUSTODY OF CINDY
12  HAYNES AND ANY MEMBERS THAT MAY LIVE WITH HER IS THAT
13  RIGHT?
14      A.   YES.
15      Q.   BUT THAT CASE IS NOT CONCLUDED IS IT?
16      A.   THAT'S CORRECT IT'S NOT.
17      Q.   AND YOU'VE NOT MADE A RECOMMENDATION YET
18  CORRECT?
19      A.   THAT'S ALSO CORRECT.
20      Q.   AND THERE ARE ANY NUMBER OF
21  RECOMMENDATIONS YOU COULD MAKE CORRECT?
22      A.   THAT'S CORRECT.
23      Q.   AND NONE OF THOSE WOULD HAVE ANYTHING TO
24  DO WITH THE FACT THAT THE DEFENDANT CHUCK HAYNES HAS
25  PLED GUILTY TO SEXUALLY ASSAULTING HIS STEP-DAUGHTER
                              31
```

```
 1  M.S.H.?
 2      A.   NOT WITH REGARDS TO RECOMMENDATIONS I
 3  MIGHT MAKE WITH REGARD TO CINDY AND WHAT CONTACT SHE
 4  WOULD HAVE WITH THE CHILDREN.
 5      Q.   RIGHT AND YOU'VE RECOGNIZED THAT THERE
 6  SHOULD BE A DISTINCTION BETWEEN THE TWO CASES BECAUSE
 7  YOU'VE ALREADY TOLD US AS PART OF YOUR ROLE AS THE
 8  GUARDIAN AD LITEM YOU DECLINED TO INTERVIEW YOUR
 9  CLIENT'S STEP-SISTER CORRECT?
10      A.   THAT'S CORRECT.
11      Q.   ALRIGHT AND MS. WILLIAMS YOU HAVE I
12  ASSUME YOU'VE HAD SUPERVISED OR YOU'VE HAD CLIENTS,
13  CHILD CLIENTS WHO HAVE BEEN VICTIMS OF SEXUAL ABUSE?
14      A.   YES.
15      Q.   IS THAT FAIR TO SAY?
16      A.   YES IT IS.
17      Q.   AND I WOULD ASSUME YOU'VE HAD SOME
18  TRAINING IN THAT AREA?
19      A.   WE HAVE INITIAL 8 HOURS OF TRAINING THAT
20  WE HAVE TO COMPLETE IN ORDER TO BE CERTIFIED AS A
21  GUARDIAN AD LITEM AND WE HAVE TO CONTINUALLY MAINTAIN
22  ADDITIONAL TRAINING THROUGHOUT EACH YEAR AND SOME OF
23  THAT TRAINING IS IN CONNECTION WITH DEALING WITH
24  VICTIMS OF SEXUAL ABUSE YES.
25      Q.   SO YOU RECOGNIZE SOME OF THE FACTORS
                              32
```

```
 1  THAT COME INTO PLAY BOTH WITH VICTIMS AND ABUSERS
 2  CORRECT?
 3      A.   CORRECT.
 4      Q.   AND YOU AS THE GUARDIAN AD LITEM YOU'RE
 5  IN CONTACT WITH ANYONE WHO IS SET OUT DO DEAL WITH THE
 6  BEST INTERESTS OF THE CHILD CORRECT?
 7      A.   AND OTHERS AS WELL I MEAN THERE MAY BE
 8  COLLATERAL WITNESSES WHO DON'T HAVE THE CHILD'S BEST
 9  INTEREST AT HEART WHO I MAY BE REQUIRED OR NECESSARY
10  FOR ME TO INTERVIEW, BUT YES I BELIEVE THAT THE COURT'S
11  ROLE AND MY ROLE CERTAINLY IS MOSTLY CONCERNING THE
12  BEST INTERESTS OF THE CHILD.
13      Q.   AND SO THAT MIGHT INCLUDE THE THERAPIST
14  CORRECT?
15      A.   CORRECT.
16      Q.   MEDICAL DOCTORS?
17      A.   YES.
18      Q.   TEACHERS?
19      A.   YES.
20      Q.   NEIGHBORS?
21      A.   YES.
22      Q.   FOSTER PARENTS?
23      A.   YES.
24      Q.   ALRIGHT AND SO IN YOUR EXPERIENCE WITH
25  CHILDREN WHO'VE BEEN SEXUALLY ABUSED AND THE OFFENDERS
                              33
```

Exhibit 12

**Page 34**

1  I'M SURE YOU'RE AWARE OF THE FACT THAT MANY SEX
2  OFFENDERS HAVE A PREFERRED TYPE OF VICTIM OR AGE OF
3  VICTIM?
4      A.  I'M AWARE THAT THAT'S SOMETIMES TRUE
5  YES.
6      Q.  AND WHILE SOME MAY PREFER YOUNGER
7  CHILDREN AND SOME MIGHT PREFER YOUNGER TEENAGERS IS
8  THAT CORRECT?
9      A.  YES THAT CAN BE CORRECT.
10     Q.  ALRIGHT AND I WOULD ASSUME BASED ON YOUR
11 INVESTIGATION AND KNOWLEDGE OF THE HAYNES FAMILY YOU'RE
12 AWARE THAT THE DEFENDANT HAD ALSO BEEN ALLEGED TO MAKE
13 ADVANCES TOWARDS OUR VICTIM M.S.H.'S SISTER MINDY AS
14 SHE WAS A YOUNG TEENAGER CORRECT?
15     A.  THERE WERE SOME REFERENCES TO THAT IN
16 DOCUMENTS THAT I REVIEWED.
17     Q.  AND AT THIS MOMENT S.H. IS NOT YET A
18 YOUNG TEENAGER CORRECT?
19     A.  CORRECT.
20     Q.  BUT M.H. WAS?
21     A.  THAT'S CORRECT.
22     MS. KRUG:  NOTHING FURTHER YOUR HONOR.
23     MR. LISZEWSKI:  JUST A FEW MORE QUESTIONS
24 JUDGE.
25

**Page 35**

1  RE-DIRECT EXAMINATION BY MR. LISZEWSKI:
2      Q.  THERE WERE NO CRIMINAL CHARGES FOR
3  MELINDA HOGG EVER FILED IS THAT FAIR TO SAY?
4      A.  NONE THAT I'M AWARE OF.
5      Q.  OKAY.  DO YOU HAVE ANY CONCERNS AS IT
6  RELATES TO, WELL LET ME BACK UP.  MS. KRUG HAD ASKED
7  ABOUT THE TYPE OF VICTIM THAT CERTAIN SEX OFFENDERS
8  PREFER AND THINGS OF THAT NATURE RIGHT?
9      A.  YES.
10     Q.  DO YOU HAVE ANY CONCERNS BASED ON YOUR
11 INVESTIGATION IN THIS CASE AS IT RELATES TO S.H. AND
12 CHUCK GOING FORWARD OF THE SAME TYPE OF THING REPEATING
13 ITSELF?
14     A.  I HONESTLY CAN'T RULE ANYTHING OUT AT
15 THIS POINT.  WHILE I DON'T, I DON'T KNOW THAT I THINK
16 ANYTHING WOULD HAPPEN I CAN'T SAY ANYTHING WOULDN'T AND
17 THAT'S UNFORTUNATELY MY ROLE AS A GUARDIAN AD LITEM IS
18 I HAVE TO PROTECT THAT CHILD.
19     Q.  SURE.  HAVE YOU SEEN ANYTHING IN TERMS
20 OF ANY BEHAVIOR WITH S.H. THAT WOULD LEAD YOU TO
21 BELIEVE THAT THINGS WERE GOING IN THAT DIRECTION?
22     A.  IT HAS BEEN MY OPINION SINCE I ENTERED
23 THIS CASE THAT BOTH OF THESE CHILDREN WERE HIGHLY
24 SEXUALIZED FOR THEIR AGE.  I HAVE NO IDEA, WE HAVE NOT
25 BEEN ABLE TO DETERMINE INCONCLUSIVELY WHETHER THAT'S

**Page 36**

1  DUE TO ONE FACTOR OR ANOTHER.  IN THE COURSE OF MY
2  INVESTIGATION THERE'S A LONG HISTORY OF SEXUAL ABUSE IN
3  MOTHER'S FAMILY.  THERE ARE A MILLION FACTORS AND IT'S
4  IMPOSSIBLE FOR ME TO SAY WHY THESE TWO CHILDREN WERE
5  MORE HIGHLY SEXUALIZED THAN OTHER CHILDREN THEIR AGE.
6  I'VE NEVER SEEN MR. HAYNES INTERACT WITH SARAH IN AN
7  INAPPROPRIATE WAY WITH MY OWN EYES, BUT I DON'T, I
8  DON'T KNOW.
9      Q.  HAVE YOU EVER SEEN 13 YEAR OLDS
10 REPORTING THINGS ON THEIR OWN THINGS LIKE THAT OR LIKE
11 IS PRESENTED IN THIS CASE?
12     MS. KRUG:  OBJECTION RELEVANCE.
13     THE COURT:  WHERE ARE YOU GOING WITH THAT?
14     MR. LISZEWSKI:  WELL I WAS JUST ASKING IF
15 THIS IS A FOLLOW-UP OF A SEXUALIZED NATURE OF WHAT WAS
16 HAPPENING PER THE TESTIMONY AND IT'S UNCONTROVERTED
17 THAT THERE WERE IMAGES FOUND ON M.S.H.'S PHONE THAT
18 WERE OF A HIGHLY SEXUAL NATURE.
19     MS. KRUG:  YOUR HONOR THAT MAY OR MAY NOT
20 HAVE BEEN ADMISSIBLE HAVE WE HAD A CRIMINAL TRIAL.  HE
21 HAS PLED GUILTY.
22     THE COURT:  THE OBJECTION IS SUSTAINED.
23     MR. LISZEWSKI:  THAT'S ALL I HAVE JUDGE.
24     THE COURT:  ANYTHING ELSE?
25     MS. KRUG:  JUST ONE QUESTION YOUR HONOR.

**Page 37**

1  ADDITIONAL CROSS EXAMINATION BY MS. KRUG:
2      Q.  IN YOUR PRESENCE THE DEFENDANT HAS NOT
3  ACTED INAPPROPRIATELY WITH S.H.?
4      A.  NOT THAT I'M AWARE OF, I'VE NEVER SEEN
5  ANYTHING INAPPROPRIATE.
6      Q.  BUT YOU WERE THERE?
7      A.  I HAVE HAD ONE MEETING WHERE FATHER
8  BROUGHT THEM TO MY OFFICE AND I WAS ABLE TO SEE HIM
9  INTERACT WITH BOTH OF THE MINOR CHILDREN AT THAT TIME
10 AND I DIDN'T SEE ANYTHING INAPPROPRIATE DURING THAT.
11     Q.  BUT THE POINT OF MY QUESTION WAS YOU
12 WERE THERE WITH THEM?
13     A.  DURING THAT YES.
14     MS. KRUG:  NOTHING FURTHER.
15     MR. LISZEWSKI:  NO FURTHER.
16     THE COURT:  MAY SHE BE EXCUSED?
17     MR. LISZEWSKI:  YES SIR.
18     MS. KRUG:  YES.
19     THE COURT:  THANK YOU MA'AM YOU ARE EXCUSED.
20 NEXT WITNESS FOR THE DEFENDANT.
21     MR. MILLS:  MRS. BERNICE HAYNES.
22     THE COURT:  ARE YOU ABLE TO CLIMB STEPS
23 MA'AM?
24     BERNICE HAYNES:  SURE.  THANK YOU THAT'S
25 FINE.

Exhibit 12