Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

**IN THE RIPLEY COUNTY CIRCUIT COURT**
**STATE OF MISSOURI**

| | |
|---|---|
| In the marriage of                                  ) | |
| CHARLES MICHAEL HAYNES              ) | |
|                                        Petitioner     ) | |
|                                                              ) | |
|             vs.                                            ) | Case No. 13RI-CV00554 |
|                                                              ) | |
| CYNTHIA KAY HAYNES                        ) | |
|                                       Respondent     ) | |
| BERNICE HAYNES                               ) | |
|                                       Intervenor      ) | |

**CYNTHIA HAYNES' MOTION FOR PRODUCTION OF JENNIFER WILLIAMS' FILE**
**AND MEMORANDUM OF LAW IN SUPPORT**

Comes now, Respondent, Cynthia Kay Haynes (MOTHER and/or WIFE) and pursuant to Rule 55.26 of the Missouri Rules of Civil Procedure and Mo.Sup.Ct. R. 4-1.16(d), moves this Court to order Jennifer Williams to produce to MOTHER her original, complete, unaltered and unredacted file from May 6, 2016 through April 29, 2021 for her efforts taken in the above-captioned case and in all juvenile matters regarding the parties' daughters.  In support of her Motion, MOTHER states the following:

**FACTS**

1.        This is a divorce case involving WIFE and Charles Haynes, (HUSBAND), who had two daughters born of their union: Mikaela Haynes born on August 30, 2004 (deceased on November 24, 2018) and Sara Haynes born on February 24, 2009.

2.        On December 1, 2013, MOTHER'S daughter from the previous marriage, Melissa Hogg, told her MOTHER and Ripley County law enforcement that her STEPFATHER, HUSBAND, forced Melissa to give him blowjobs and fondled her sexually many times.

3.        Since December 1, 2013, WIFE and HUSBAND have not lived together as a married couple and have been involved in this divorce action.

4.        On December 2, 2013, HUSBAND was served with a charging document in *State of*

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

*Missouri v. Haynes*, 13RI-CR00907.

5.     On December 3, 2013, HUSBAND posted Five Thousand Dollar bond, and he was released.

6.     On April 3, 2014, Melissa testified at HUSBAND'S preliminary hearing about FATHER'S sexual abuse of her and domestic violence against her MOTHER.  While married to WIFE, HUSBAND beat MOTHER in front of the children.  MOTHER was hospitalized with the broken nose.  This testimony and medical records were offered at HUSBAND'S preliminary hearing. After the hearing the State filed an Amended Criminal Complaint in *State of Missouri v. Haynes*, 13RI-CR00907-01 charging HUSBAND with the following for his actions against Melissa:

> Count I – Felony of Statutory Sodomy in the First Degree
> Count II – Class B felony of Child Molestation in the First Degree
> Count III – Class C Felony of Statutory Sodomy in the Second Degree
> Count IV – Class C Felony of Statutory Sodomy in the Second Degree[1]

7.     On April 28, 2016, FATHER petitioned the Court presiding over the above captioned divorce (Divorce Court) to appoint a guardian ad litem (GAL) because of the alleged educational neglect of the children committed by MOTHER in homeschooling Mikaela and Sara.

8.     Based on FATHER'S allegations of educational neglect GAL, Jennifer Williams (GAL Williams), was appointed to assist the Divorce Court and to represent the best interests of Mikaela and Sara Haynes on May 6, 2016.  A copy of the GAL Appointment Order is attached as **Exhibit 1**.  As a court appointed GAL, Williams was required to abide by the Missouri Supreme Court GAL Standards and Missouri Rules of Professional Responsibility (MRPR).  A copy of the Missouri Supreme Court GAL standards is attached as **Exhibit 2**.

9.     The Missouri Supreme Court GAL Standard 3 states that "a guardian ad litem is not

---

[1] MOTHER is asking the Divorce Court to take a judicial notice of all proceedings in FATHER'S criminal case *State v. Charles Haynes*, Cause No. 13RI-CR00907 and 13RI-CR00907-01.

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

the lawyer for the child and, therefore, advocates the best interests of the child rather than merely representing the child's preferences."  GAL Standard 4 states that "the guardian ad litem shall be prepared to participate fully in any proceedings and not merely defer to the other parties."

10.     The GAL Appointment Order ordered HUSBAND and MOTHER to pay Williams $750.00 each to compensate her for her services pursuant to RSMo 452.423.

11.     On December 7, 2016, GAL Williams alleged to the Divorce Court that MOTHER committed educational neglect without conducting any investigation into FATHER'S allegations of educational neglect.  According to the Supreme Court GAL Standard 4 it was Williams' duty to investigate the allegations of educational neglect and not to defer to FATHER'S opinion before making any recommendations to the Divorce Court.  Failing to comply with this GAL Standard, Williams asked the Divorce Court to grant sole legal and physical custody of Sara and Mikaela to their paternal grandmother, 89-year-old Intervenor with congestive heart failure disease.

12.     At the time GAL Williams reported to the Divorce Court that Sara and Mikaela were neglected educationally, Sara and Mikaela excelled academically and were ahead of their peers based on the standard testing established in the State of Missouri.

13.     At the same hearing Bernice Haynes, (the children's GRANDMOTHER) and INTERVENOR admitted in Court that she did not protect Sara and Mikaela in the past and was careless.   GRANDMOTHER also misrepresented to the Divorce Court that she was in very good health and was able to provide adequate care of Sara and Mikaela.

14.     At the time of these statements to the Divorce Court, GRANDMOTHER had been suffering from congestive heart failure for many years.  GRANDMOTHER had been taking prescription medications, numerous painkillers and sleeping pills.

15.     Despite GRANDMOTHER'S Court admission of being careless in protecting Sara and Mikaela while in her custody, the Court issued an Order pursuant to the Emergency Motion for

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

Child Custody Pendente Lite filed by HUSBAND, awarding Bernice Haynes, INTERVENOR sole physical and legal custody of Mikaela and Sara Haynes on December 22, 2016.

16.     Despite, INTERVENOR'S advance age, her admission of carelessness in taking care of the girls in the past and INTERVENOR'S poor health, INTERVENOR was awarded sole legal and physical custody of Sara and Mikaela Haynes.

17.     Williams concealed from the Divorce Court, INTERVENOR'S conditions which adversely affected INTERVENOR'S ability to care for Sara and Mikaela.

18.     Relying on Williams' misrepresentation of educational neglect and INTERVENOR'S misrepresentation of her good health, the Divorce Court granted INTERVENOR sole legal and physical custody of Sara and Mikaela on December 22, 2016.

19.     The Divorce Court Order directed GRANDMOTHER, Bernice Haynes, to enroll Mikaela and Sara Haynes into Doniphan Public School.  "FATHER was awarded supervised visitation and **liberal supervised visitation was encouraged**." [emphasis added].  MOTHER was awarded unsupervised visitation from Friday at 6:00 pm until Sunday noon every weekend and other times as agreed.

20.     To address Williams' allegations of educational neglect, MOTHER tested Mikaela's academic progress on January 6, 2017 through the Missouri standardized Wechsler Test which confirmed that Mikaela was performing "average to above average" and "above average to far above average" of her peers.  A copy of the Wechsler Individual Assessment Test is attached as **Exhibit 3**.

21.     MOTHER provided the Wechsler's Individual Assessment Test results to Williams to show that her daughter's educational needs were not neglected.  Williams concealed these test results from the Divorce Court.

22.     MOTHER scheduled Sara to take the same academic test as Mikaela in January 2017 as well.  As soon as Williams received Mikaela's testing, Williams blocked MOTHER'S efforts to

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

test Sara.  Williams told MOTHER that if MOTHER challenged Williams' decisions in this case, MOTHER would lose custody of Sara and Mikaela.

23.     At the same time, GRANDMOTHER told MOTHER that if MOTHER pursued any testing of Sara, Williams would make sure that MOTHER loses custody of Sara and Mikaela.

24.     While in GRANDMOTHER'S custody, Sara was bitten several times by GRANDMOTHER'S dog.  Sara required medical care.

25.     While in GRANDMOTHER'S custody, Mikaela started cutting herself which resulted in Mikaela's hospitalization at DePaul Hospital in St. Louis, Missouri from January 29, 2017 until February 6, 2017 in a psychiatric ward to treat and cease self-mutilation behavior.  MOTHER has incurred significant medical expenses for Mikaela's hospitalization.[2]

26.     On January 11, 2017, GAL Williams asked the Court to award her additional GAL fees for her services in the case.  The Court granted GAL William's request on January 17, 2017 requiring MOTHER and HUSBAND pay Williams total of $2,250, namely $750.00 each from MOTHER, HUSBAND and GRANDMOTHER.  A copy of the Court Order is attached as **Exhibit 4.**

27.      On January 29, 2017, GAL Williams authorized DePaul Hospital personnel to provide treatment and prescription medication for Mikaela, although GAL Williams did not have such authority from the Divorce Court or GRANDMOTHER.  Williams does not have a medical degree.  Williams instructed DePaul Hospital personnel to stop all communications with Mikaela's MOTHER although Williams did not have such authority from the Divorce Court.

28.     On January 30, 2017 Williams filed a memorandum requesting an Order seeking to be appointed as the personal attorney for Sara and Mikaela.  A copy of the Order is attached as **Exhibit**

---

[2] On August 27, 2021, the Divorce Court ordered FATHER and MOTHER to execute a Confidentiality and Protective Order securing Sara and Mikaela's medical records from disclosure. As of the date of this pleading, FATHER has not executed the Order.  FATHER received a copy of this Order on June 2, 2021.  Once FATHER executes the Confidentiality and Protective Order, MOTHER will produce these medical records to the Divorce Court and FATHER.

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

**5.**  The Court granted Williams' request.  The Court Order related to Williams stated:

> (1) The Guardian ad Litem shall be the legal representative of the minor children throughout the proceedings.

> (2) The Guardian ad Litem shall be a party to this cause.

> (4) Upon presentation of an attested copy of this order to any agency, hospital, organization, school, person, or office, including the clerk of this court, pediatrician, psychologists, psychiatrists, or police department, the aforementioned shall permit the Guardian ad Litem to inspect and copy any records relating to the minor children and her parents.  The Guardian ad Litem shall maintain any information received from any such  source as confidential, and shall not be disclosed except in reports to the Court, to the parties to this case and their counsel, or as directed by the Court.

> (5) The Guardian Ad Litem shall have an attorney-client relationship with the minor children, and all communications between the Guardian Ad Litem and the minor children shall be privileged, and shall not be disclosed by the minor children or the Guardian Ad Litem except as she shall deem appropriate in the effective representation of the minor children, and then only generally and not specifically. Neither of the parties nor their counsel shall seek to invade this privilege either directly or indirectly, or to make any attempt to seek the disclosure or confidential communications from either the minor children or the Guardian Ad Litem.

29.     After January 30, 2017 Williams instructed DePaul Hospital personnel not to allow MOTHER in the hospital to see Mikaela because MOTHER no longer had physical and legal custody of Sara and Mikaela due to MOTHER'S educational neglect.  Williams' instruction to prohibit MOTHER to visit Mikaela in the hospital hurt Mikaela and interfered with her recovery.  Williams provided De Paul Hospital with the copy of January 30, 2017 Court Order making her Sara and Mikaela's personal attorney.

30.     FATHER'S and INTERVENOR'S attorney, Siegrid Maness also informed DePaul Hospital that INTERVENOR, Bernice Haynes had sole legal and physical custody of Mikaela and that DePaul Hospital personnel could only communicate with Bernice Haynes and Williams about Mikaela's wellbeing.  Based on these instructions, DePaul Hospital stopped communicating with MOTHER about Mikaela's health.

6

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

31.     After January 30, 2017 Williams openly acted as HUSBAND'S legal representative until she withdrew from this case on April 29, 2021 stating that her services were completed because of HUSBAND'S incarceration.

32.     After January 30, 2017 Williams never asked the Court to award her compensation as a GAL.  After January 30, 2017 Williams billed and received payment for her services from HUSBAND and GRANDMOTHER.  MOTHER never received a bill from Williams for her services as the personal attorney for Sara and Mikaela.

33.     The Department of Family Services (DFS) took Mikaela and Sara into its custody and away from Bernice Haynes after DePaul Hospital refused to release Mikaela to INTERVENOR. Mikaela disclosed to DePaul Hospital personnel that FATHER abused her while Mikaela was in the custody of INTERVENOR, Bernice Haynes. DePaul Hospital records reflect that Mikaela's wish was for her FATHER to be in jail for what he had done to her.

34.     The DFS did not return Sara and Mikaela to their MOTHER because of Williams' continued allegations of educational neglect against MOTHER.  Williams repeatedly told the DFS that Sara and Mikaela could not be returned to MOTHER due to the MOTHER'S educational neglect of children.

35.     Based on Williams' misrepresentations of educational neglect to the DFS, the DFS placed Sara with a foster family on February 3, 2017 and Mikaela with the same family as Sara on February 6, 2017.

36.     The DFS opened two juvenile cases to investigate MOTHER'S educational neglect. Case No. 17RI-JU00011 was opened for Mikaela and Case No. 17RI-JU00012 was opened for Sara.

37.     Williams concealed from the Custody and Juvenile Court the fact that Mikaela was sexually abused, and that GRANDMOTHER failed to protect the girls while in GRANDMOTHER'S custody which was in violation of the MRPR, Supreme Court GAL Standards and RSMo 210.115

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

mandating Williams to report Sara and Mikaela's physical and sexual abuse.

38.     In February 2017, Mikaela disclosed to DePaul Hospital doctors, the DFS, foster care parents and Williams that FATHER abused her sexually.  Both Mikaela and Sara told the DFS and their lawyer Williams, and their foster parents that their grandmother, Bernice Haynes, allowed their FATHER to have unsupervised time with Mikaela and Sara.  Copies of these records will be produced to the Custody Court as soon as HUSBAND signs the Protective Order.

39.     Foster parents who cared for Mikaela found a letter in Mikaela's backpack.  The letter stated:

"FUCK, FUCK MY PUSSY, DADDY"

40.     Foster parents provided this note to the DFS.  Mikaela also reported to the DFS that she could not sleep at night at Bernice Haynes' house because she "never knew when dad would come in."  Copies of these records will be produced to the Custody Court as soon as HUSBAND signs the Protective Order.

41.     On June 27, 2017, Mikaela and Sara were returned to MOTHER'S physical custody after the DFS and Juvenile Court determined that there was no educational neglect on MOTHER'S part.[3]

42.     On or about July 24, 2017, Angela Champion, a worker with CASA for the 36th Judicial Circuit wrote a letter to the Divorce Court reporting that "on February 3, 2017 Mikaela and Sara Haynes were placed in legal custody of the DFS, due to allegations of educational neglect."  The CASA worker further wrote: "on January 6, 2017 Mikaela was given the Wechsler Individual Achievement Test and was within, or above the appropriate grade levels as her peers.  Clearly, Mikaela is not being neglected educationally."  The report further stated:

In talking with the girls, Mikaela let it be known that she has felt "left out" of the

---

[3] MOTHER is asking this Custody Court to take a judicial notice of all filings in the juvenile cases 17RI-JU00011 and 17RI-JU00012.

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

case by her guardian ad litem, Jennifer Williams.  Mikaela said that Jennifer told her "It was not her job to talk to her."  She stated that she felt as if ***"Jennifer is really my dad's lawyer."*** …. Because Mikaela and Sara aren't communicating with their GAL and have confused feelings about the GAL, this raises a concern for me.  I understand that the GAL represents the best interests of the children, while a CASA volunteer represents the voice of the children, which might not be the same thing at times in a particular case.  Because the girls have expressed a concern about the relationship they have with their GAL, I felt it needed to be brought to the attention of the Court.

A copy of the letter is attached as **<u>Exhibit 6</u>**.

43.     In September 2017, while in the DFS custody, the Juvenile Court appointed Jerry Marks, LCW and Ph.D. to conduct therapy with Mikaela and Sara.

44.     At all relevant times and at the time Sara and Mikaela were placed in the custody of Bernice Haynes, who was 89-years old, Sara and Mikaela Haynes excelled academically.  They were a grade ahead of their peers academically.  See **<u>Exhibit 3</u>**.

45.     On November 1, 2017, the DFS concluded that there was no educational neglect.  The DFS report stated in pertinent parts:

…. Mikaela is excelling at WestPoint Christian Academy.  She makes A's and B's on all assignments.

…. Sara is enjoying school at WestPoint Christian Academy.  Sara is not struggling academically.  Sara has a sharp mind and is phenomenal at memorizing required texts to recite in class.

…. It is in the best interests of Sara and Mikaela to remain in the physical custody of their natural mother, Cynthia Haynes.  Children's Division recommends the goal remain reunification with mother.

A copy of the DFS report is attached as **<u>Exhibit 7</u>**.

46.     The DFS case, however, remained opened until June 27, 2018 because of Williams' ongoing complaints of MOTHER'S educational neglect of Sara and Mikaela to the DFS, Juvenile and Divorce Courts.  Williams represented Sara and Mikaela during all DFS, Juvenile and Divorce Court proceedings as their personal attorney.  HUSBAND and GRANDMOTHER paid Williams for

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

her services.

47.     At all relevant times HUSBAND told WIFE that if WIFE, Melissa, or Mikaela testify against HUSBAND in his pending criminal case, Williams will remove Sara and Mikaela from MOTHER'S custody according to WILLIAMS.  At the same time, Williams threatened WIFE that if WIFE, Melissa, or Mikaela testify against HUSBAND in his pending criminal case, Williams "would make sure Sara and Mikaela are placed in foster care."  Williams also threatened Mikaela with placement into juvenile care if she testified against her FATHER in his pending criminal proceedings.

48.     Each time MOTHER tried to refute Williams' allegations of MOTHER'S educational neglect, Williams threatened MOTHER that Williams would place her children in foster care and would keep the DFS and Juvenile cases open.  Each time Williams warned MOTHER with loss of MOTHER'S custodial rights.

49.     On June 27, 2018, the Juvenile Court in cases 17RI-JU00011 (Sara) and 17-JU00012[4] (Mikaela) terminated its jurisdiction and awarded physical and legal custody of Sara and Mikaela to their mother Cynthia Haynes.  The DFS concluded "***Children's Division believes it is in the best interests of Mikaela and Sara Haynes to remain in the physical custody of Cindy Haynes and return to the legal custody of Cindy Haynes on June 27, 2018***."  [emphasis added].  In support of its decision, the relevant sections of the DFS are provided below:

**The family is thriving in all areas of the Five Domains of Wellbeing.**

**Social Connectedness**
- ***The family has built a strong support group and surrounded themselves with positive, encouraging people.*** They regularly see Dr. Jerry Marks in Washington, MO for counseling, Mikaela and Sara love going to school and have a good relationship with their teacher and principal, former foster parents –John and Cassie Rideout – still have

---

[4] Respondent asks the Court to take a judicial notice of the complete record of the juvenile proceedings 17RI-JU00011 and 17RI-JU00012.

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

contact with the family and spend time with Mikaela and Sara and *the family has extended family support.*

**Safety**
- CD and JO have been in the home with the family every month since July 2017 and have had no reported concerns regarding safety. *Cindy has followed through in keeping Charles Haynes away from the home and the children, multiple counselors –Cindy Moses, Scott Foster, and Jerry Marks- have reported they have no safety concerns with the emotional, physical, or mental stability of Cindy having custody of Mikaela and Sara. [emphasis added]*
*- Mikaela has not had episodes of self-harm: cutting or hospitalization for mental instability since March 2017.*

**Meaningful access to relevant resources**
*- Cindy is able to meet the needs of the family.* They travel to Washington, MO monthly for counseling with Dr. Jerry Marks, the family sees Dr. Bost, PCP, as needed, Mikaela had a psychological evaluation completed, there is a surplus of food in the home and the family owns their home with no intentions of moving. When Mikaela needed an attorney for the Juvenile Summons mother hired one.

**Stability**
- The family is not nomadic; they own their home – utilities are on, and bills are paid, Mikaela and Sara have regular attendance at school, they attend monthly counseling session, extended friends and family are available for support (when the family is not home there are people who watch the home for safety), Mikaela was on medication for depression and sleep and no longer requires them because she uses coping mechanisms learned through counseling. The relationship between mother and children is consistent and there were no concerns report during visits or THP.

**Mastery**
*- Cindy has shown self-efficacy in her ability to success in accomplishing specific tasks even when she does not see the relevance to the case (i.e., parenting classes).* Mikaela has been using coping skills of talking to supports, walking and reading to prevent further time in psychiatric hospitals or having the urge to cut/smoke marijuana. Sara and Mikaela are academically ahead of peers their age.

**Children's Division Assessment / Recommendation:**
Children's Division believes it is in the best interest of Mikaela and Sara Haynes to remain in the physical custody of Cindy Haynes and return to the legal custody of Cindy Haynes on June 27, 2018.

[emphasis added].  A copy of the excerpt from the DFS decision is attached as **Exhibit 8**.


50.    On September 4, 2018, FATHER pleaded guilty to a Class C Felony, Statutory

Sodomy Of a Minor in the Second Degree under RSMo 566.064.

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

51.     From the time of his appointment until Mikaela's death psychologist Marks was of the opinion that Mikaela should have no contact with FATHER.  From the time of his appointment until Sara turns 18, psychologist Marks has expressed his opinion that Sara should have no contact of any kind with FATHER. Williams concealed the opinion of Dr. Marks from the Divorce Court.

52.     From the date of her first involvement in the case on May 6, 2016 until Mikaela's death on November 18, 2018, Williams threatened Mikaela with her and her sister's placement in foster care if Mikaela testified against her father at his criminal trial.  Mikaela reported these threats to her doctors, her mother and her stepsisters, Melissa, and Mindy.  One of these many messages is attached as **Exhibit 9** to this motion.

53.     From the date of her first involvement in the case on May 6, 2016 until Mikaela's death on November 18, 2018, Williams threatened Mikaela and Sara that if either of them would say anything bad about their FATHER to anyone, Williams would place them in foster care.

54.     Williams instructed Sara and Mikaela not to discuss Williams' conversations with the girls with anyone.  Williams threatened Sara and Mikaela that bad things would happen to them and their MOTHER if they share with anyone and especially their MOTHER their conversations with Williams.

55.     On November 23, 2018, Mikaela told her MOTHER and her sister, Melissa, that Williams threatened her again and that Williams would be asking the Court not to put her FATHER in jail, but instead place him on probation at his upcoming sentencing hearing set for November 26, 2018.  Mikaela told her MOTHER and her sister, Melissa, that if Mikaela and her sister Melissa testified against their FATHER, Williams would place Mikaela and Sara in foster care again.

56.     On November 23, 2018, Mikaela told her mother and her sister Melissa, "I am scared of going back to foster care."  "I'm going to kill myself first before I go back to foster care."  "I can't deal with dad anymore, if he is free on probation."

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

57.     On November 24, 2018, Mikaela hung herself.

58.     Because of Mikaela's death, her FATHER'S sentencing hearing set for November 26, 2018, was rescheduled to December 12, 2018.

59.     On December 12, 2018, Williams testified at FATHER'S sentencing proceeding seeking his probation instead of incarceration.  When testifying about FATHER, Mikaela and Sara, Williams implied that HUSBAND/FATHER was convicted because of Mikaela and Sara's fault as according to Williams "both of these children (Mikaela and Sara) were highly sexualized for their age."

60.     At the same hearing, Williams testified that she was requested to speak with Sara and Mikaela's sister, Melissa (who FATHER sodomized) during her involvement in this case, but Williams declined to speak with Melissa because she did not want to jeopardize her ability to testify for HUSBAND/FATHER during his criminal proceedings.

61.     Williams was not concerned that FATHER threatened to kill his minor child victim Melissa and burry her and her MOTHER.  FATHER admitted that he sodomized his minor stepdaughter, Melissa and that he threatened to kill Melissa and his WIFE for protecting Melissa. The video recording is in the custody of the Doniphan Police Department and Criminal Court in Cases *State v. Charles Haynes*, Cause No. 13RI-CR00907 and 13RI-CR00907-01.  Williams concealed FATHER'S statements and admissions from the Divorce and Juvenile Courts[5] and the DFS.

62.     On December 18, 2018 Melissa did not testify at her STEPFATHER'S sentencing hearing because Melissa was scared that Williams would place Sara in foster care if Melissa testified against her STEPFATHER.

---

[5] In response to WIFE'S Partial Motion for Summary Judgment currently pending with the Divorce Court, FATHER admitted that he made these statements.

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

63.     Despite Williams' testimony seeking FATHER'S probation, FATHER was sentenced to serve a seven (7) year term of imprisonment for sodomizing his minor stepdaughter, Melissa on December 12, 2018.

64.     On April 29, 2021, Williams withdrew from this case.  In her Motion to Withdraw, Williams stated that "**she believed that all of the underlying custody matters were resolved due to Petitioner's incarceration**." [emphasis added].

65.     From May 6, 2016 until April 29, 2021, Williams advocated for Sara and Mikaela to be reunited with their father through custody, visitation, and joint therapy instead of protecting them from an accused and then convicted child sodomizer who sexually abused Mindy, Melissa, and Mikaela.  During this time, Williams threatened to place the girls in foster care if they refuse to spend time with their FATHER.

66.     Because of Williams' failure to protect Mikaela, Mikaela took her life according to Mikaela's doctor, Jerry Marks who will testify about it at trial.  Mikaela was afraid that Williams would place Mikaela in foster care again if she testified about her FATHER'S sexual abuse or that her FATHER because of Williams' testimony at his criminal trial would be placed on probation which would give him access to Mikaela.  Mikaela begged Williams not to defend her FATHER. Mikaela told Williams that FATHER abused Mikaela.  Williams as the so-called "GAL" and "personal attorney" for Sara and Mikaela did not care about her clients' safety and best interests.

67.     On July 27, 2021 Dr. Jerry Marks wrote a letter addressed to the Divorce Court in Doniphan, Missouri. The letter stated:

> the best interests of the children [in this case] were not protected, but plainly thwarted.  These children were exposed to danger which led to tragedy. I am disturbed that the officers of the Court, including attorneys and several agencies of the Court were used to further their agenda in protecting a child molester; and disregarded the felonious nature of childhood sexual abuse which took place in this family and in this case.
>
> **the Court and the GAL [in this case] had demonstrated that any of their**

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

**actions are not in the best interests of the children.  [emphasis in the original].**[6]

68.     In April, May, and June 2021, MOTHER and MOTHER'S attorney requested Williams produce to MOTHER, as the custodial parent of Mikaela before her death and Sara's custodial parent, Sara, and Mikaela's original, complete, unaltered and unredacted file involving Williams' legal representation of Sara and Mikaela and their interests from May 6, 2016 until April 29, 2021 in all cases.  MOTHER sought her daughters' file including but not limited to all communications, emails, texts, billing file, juvenile files, DFS and CASA files and communications between all social workers, court personnel, DFS personnel, CASA personnel, children's doctors, MOTHER, GRANDMOTHER, and FATHER as well as their attorneys.

69.     On June 1, 2021, Williams replied to MOTHER'S attorney, stating:

**If the court directs me to turn my file over, I will comply with any order if I am so directed.  Sincerely, Jennifer.**

A copy of this email is attached as **Exhibit 10.**

70.     On August 19, 2021, MOTHER'S attorney filed MOTHER'S Motion for Production of Jennifer Williams' File to Mother and Memorandum of law in support.  MOTHER also filed a Notice of Hearing on that Motion.  MOTHER'S attorney served Jennifer Williams with the Notice of Hearing and the Motion for Production of Williams' file.

71.     On August 27, 2021, Williams did not appear at the hearing relating to the production of her file to MOTHER.

72.     At that hearing, HUSBAND'S attorney argued that MOTHER is not a personal representative of Sara Haynes, and that MOTHER is not a personal representative of the Estate of Mikaela Haynes because MOTHER never opened an estate with the Court.

---

[6] Dr. Marks, Sara and Mikaela's therapists, and their CASA representatives involved in the children's care wrote numerous letters to the Divorce Court.  For the unknown reasons, the Divorce Court never efiled or docketed these letters in the above-captioned case.

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

73.     The Court took the parties' arguments under submission and required the parties to file supplemental pleadings concerning the release of Williams' files to MOTHER related to Williams' involvement in representing Sara and Mikaela.

74.     In response to WIFE's currently pending Motion for Partial Summary Judgment, HUSBAND admitted that currently, Sara is doing well.  She attends WestPoint Christian Academy where she is an A student.  HUSBAND admitted that Sara is physically healthy and is involved in numerous academic and after school activities where she is excelling.  HUSBAND admitted that Sara has a lot of friends, and that Sara enjoys spending time with her MOTHER, sister Melissa and her maternal grandmother.

75.     This Motion is filed to supplement the arguments previously made by MOTHER to demonstrate that under Missouri law, MOTHER is the personal and legal representative of Mikaela's Estate, and that MOTHER is entitled to the attorney's file of her daughters, Sara (living) and Mikaela (deceased) in her capacity as a natural parent of both children, as sole legal and physical custodial parent for both children and as an heir of Mikaela Haynes.

**LEGAL ANALYSIS**

**I.     WILLIAMS WAS MIKAELA AND SARA'S PERSONAL ATTORNEY.  WILLIAMS NEVER ACTED AS AN AGENT OF THIS COURT.**

In Missouri, the GAL's duty is to act within the course of judicial proceedings in furtherance of the best interests of the children for whom the GAL is appointed.  *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376 (Mo. App. E.D. 1993).  Missouri courts have consistently adhered to the view that that the GAL's principal allegiance is to the court and not the children.  *Bird*, 864 S.W. 2d at 383-384.  Although the children's best interests are paramount, the GALs relationship to the child is not that of an attorney and a client.  *Bird*, 864 S.W. 2d at 383-384.  The court is not bound by the opinion or recommendation of a GAL.  *Bird*, 864 S.W. 2d at 384.  The trial judge is required to monitor the GAL's performance of her duties and discharge a GAL if she fails to perform them diligently.  In

16

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

Missouri attorney GALs remain subject to the Rules of Professional Conduct.  *Bird*, 864 S.W. 2d at 385.  ***Once a GAL is no longer involved in the divorce or custody case, parental rights are restored to the natural parent of a child***.  [emphasis added] *Bird*, 864 S.W. 2d at 380.

Because a GAL is an agent of the court, RSMo **452.423** provides for the mechanism to compensate GALs for their services.  RSMo 452.423(5) provides in relevant part:

> The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court.  The court, in its discretion, may:
>     (1)  Issue a direct payment order to the parties.  If a party fails to comply with the court's direct payment order, the court may find such party to be in contempt of court; or
>     (2)  Award such fees as a judgment to be paid by any party to the proceedings or from public funds.  Such an award of guardian fees shall constitute a final judgment in favor of the guardian ad litem.  Such final judgment shall be enforceable against the parties in accordance with Chapter 513.

Although Williams was appointed to be the children's GAL initially, she never acted as the children's GAL in these proceedings.[7]  She was brought into the case by FATHER, and she consistently advocated for FATHER'S interests.  Williams' failure to investigate FATHER'S unsubstantiated allegations of educational neglect as the GAL Standards required her – show that Williams was not the children's GAL.  Williams' testimony on December 7, 2017 that MOTHER had neglected Sara and Mikaela's educational needs (when in fact MOTHER did not) demonstrate that Williams deferred to FATHER'S position and not to the best interests of the children.  Williams' failure to investigate FATHER'S unsubstantiated claims of educational neglect and Williams' recommendation to the Divorce Court to place Sara and Mikaela in custody of 89-year-old INTERVENOR who was on painkillers and sleeping pills put wellbeing of Sara and Mikaela in danger and allowed FATHER to have unlimited access to Mikaela while Mikaela was in INTERVENOR'S custody.  Williams concealment from the Divorce Court Mikaela's Wechsler's

---

[7] Williams sought GAL compensation for performance of her GAL duties.  <u>Exhibit 1</u> and <u>Exhibit 3</u> (seeking GAL compensation of $1500 on May 6, 2016 and $2250 on January 11, 2017).

Exhibit 16

Testing demonstrate that Williams represented FATHER's wishes and not the best interests of Sara and Mikaela who were thriving in their MOTHER'S care. **Exhibit 3**. Williams sided with the accused child sodomizer instead of protecting welfare of the children she was entrusted by the Divorce Court to protect.

Williams' request to become a personal attorney for Sara and Mikaela on January 30, 2017 further show that Williams was not an agent of this Court. **Exhibit 5**. Williams' financial arrangement with INTERVENOR and FATHER outside the Divorce Court scrutiny also show that Williams was not acting as the children's GAL or their personal attorney. FATHER and INTERVENOR paid Williams to advocate for their interests in this case. WILLIAMS accepted these payments from FATHER and INTERVENOR from January 2017 until April 29, 2021 until Williams withdrew from the case. Williams' conduct shows that she did not represent the best of Sara and Mikaela as their GAL or their personal attorney.

During the time in question, being paid by HUSBAND and GRANDMOTHER, Williams acted as FATHER and INTERVENOR'S attorney in violation of the GAL Standards and the MRPR which prohibited Williams to engage in representation poisoned by a conflict of interest. In Missouri, the MRPR have the force and effect of judicial decisions. *McVeigh v. Flemming*, 401 S.W.3d 287 (Mo. App. E.D. 2013). MRPR Rule 4-1.8 (f) states:

> A lawyer shall not accept compensation for representing a client from one other than the client unless:
> (1) the client gives informed consent;
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and (3) information relating to representation of a client is protected as required by Rule 4-1.6.

In the present case, neither Mikaela, nor Sara, nor the DFS, nor subsequently MOTHER, who was granted sole legal and physical custody of the girls, gave Williams informed consent to obtain compensation from HUSBAND and GRANDMOTHER. Williams never asked the Divorce Court to

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

approve her compensation from HUSBAND and GRANDMOTHER as the MRPR and RSMo. 452.423 required.  Williams defied Rule 4-1.5 which prohibited her to enter into a fee arrangement with HUSBAND and GRANDMOTHER because the terms of that arrangement induced Williams to perform her services contrary to Sara and Mikaela's interests and their stated desires.

Both HUSBAND and GRANDMOTHER interfered with Williams' independence of her professional judgment and with Williams' relationship with Sara and Mikaela.  Both girls reported to DFS, DePaul Hospital, their sisters, and their MOTHER that Williams repeatedly threatened to place them in foster care if either Mikaela or Melissa testified at her FATHER'S trial and disclosed that they were sexually abused by FATHER.  Williams was Mikaela's attorney when she threatened Mikaela with Mikaela's return to foster care.  Williams also used her power to threaten Mikaela when Williams demanded that Mikaela prevent Melissa from testifying against her STEPFATHER.

Williams' threats to put Sara and Mikaela in foster care if Mikaela or Melissa testified against their FATHER is evidence that Williams acted contrary to the interests of her clients and in violation of MRPR Rule 4-1.8 and the GAL Standards.  Williams' testimony during HUSBAND'S sentencing proceedings seeking his probation instead of incarceration further demonstrates that Williams' representation was poisoned by the conflict-of-interest Williams had as a result of her receiving compensation for her services from HUSBAND/FATHER and GRANDMOTHER.  Williams' testimony that it was Sara and Mikaela's fault that HUSBAND was convicted because Sara and Mikaela "were highly sexualized" (at the time of Williams' testimony Sara was 9 and Mikaela was 14) show that Williams' did not represent her clients, Sara, and Mikaela, as Missouri law required.

Williams did not protect the confidential information relating to her representation of Sara and Mikaela and failed to protect Sara and Mikaela as she was required by Rule 4-1.14 which states:

> (a) When a client's capacity to make adequately considered decisions in connection with a representation is diminished, *whether because of minority,* mental impairment, or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

(b) ***When the lawyer reasonably believes that the client has diminished capacity; is at risk of substantial physical, financial or other harm unless action is taken; and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a next friend, guardian ad litem, conservator or guardian.***

(c) Information relating to the representation of a client with diminished capacity is protected by Rule 4-1.6. When taking protective action pursuant to Rule 4-14(b), the lawyer is impliedly authorized under Rule 4-1.6(a) to reveal information about the client, but only to the extent reasonably necessary to protect the client's interests.

Williams violated Rule 4-1.14 because she never acted as a GAL, as the children's attorney but acted as HUSBAND'S and GRANDMOTHER'S lawyer when she engaged in the representation poisoned by the conflict of interest in violation of Rule 4-1.8.  Williams shared with FATHER and GRANDMOTHER and their lawyers Sara and Mikaela's fears of being abused if they are returned to FATHER'S custody and their fears of being placed in foster care if Mikaela and Melissa testified during their FATHER'S sentencing proceedings about FATHER'S sexual abuse.  Williams repeatedly demanded from Mikaela to influence her sister Melissa not to testify in FATHER'S criminal proceedings.  Williams threatened Mikaela that if Melissa testified against her abuser, Williams would put Sara and Mikaela in foster care.  Williams hurt Sara and Mikaela.

Williams defied MRPR Rule 4-3.4 which required Williams not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b) falsify evidence, counsel, or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law.

At every stage of the Divorce and Juvenile Court proceedings, Williams threatened Sara and Mikaela with placement into foster care.  Williams was not concerned that FATHER threatened to

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

kill his minor stepdaughter victim, Melissa, and burry her and her MOTHER further demonstrate that Williams was representing FATHER and not Sara and Mikaela.  The fact that Williams concealed FATHER'S threats from the Divorce Court demonstrate that she was not functioning as the children's GAL or their personal attorney.

Williams acted outside the scope of her GAL duties when she engaged in representation poisoned by the conflict of interest with the accused and then convicted child sodomizer and his mother.  Williams was not acting as an agent or an arm of this Court.  Because Williams acted outside the scope of her duties and represented HUSBAND/FATHER, and not as the agent of the Court (charged with duty to diligently advocate for a position in the best interests of the child, guided by the best interests of the child and charged with the duty to exercise independent judgment on behalf of the child in all matters), the Divorce Court has authority under *Bird* to award MOTHER, who is the sole legal and physical custodian of her children, the children's files.

After extensive investigation both the Juvenile Court and the DFS found that MOTHER did not commit educational neglect as Williams misrepresented to the Divorce Court on December 7, 2016.  This misrepresentation further demonstrates that Williams acted outside the scope of her GAL duties.  **Exhibits 7-8**.  The Juvenile Court in Cases 17RI-JU00011 and 17RI-JU00012 awarded MOTHER full legal and physical custody of her daughters.[8]  MOTHER is the personal and legal representative of her children who is entitled to receive her daughters' files from Williams.  This Court must protect the best interests of the children, and not the interests of a GAL or attorney for the children or a convicted child sodomizer.  *Bird* supra.  MOTHER must have her children's files to advocate for the safety and wellbeing of her alive daughter, Sara and to protect the memory of her deceased daughter, Mikaela.

---

[8] A trial court must take judicial notice of its own records in prior proceedings that are between the same parties and are concerned with the same basic facts involving the same general claims for relief. *Harris v. Edgar*, 583 S.W.3d 497 (Mo. App. S.D. 2019).

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

II.     **MOTHER IS THE PERSONAL REPRESENTATIVE OF MIKAELA HAYNES. MOTHER HAS SOLE LEGAL AND PHYSICAL CUSTODY OF SARA HAYNES AND IS ENTITLED TO THE FILES OF MIKAELA AND SARA'S ATTORNEY**.

HUSBAND'S arguments that MOTHER is not a personal representative of Mikaela Haynes' estate because MOTHER did not open an estate for Mikaela with Probate Court are wrong and not supported by Missouri law.  In *Sterns v. M.F.A. Mut. Ins. Co*., 401 S.W.2d 510 (Mo. App. K.C. 1966), plaintiff's minor daughter was killed in a car accident.  Parents sued the insurance company which raised a defense that parents were not their daughter's personal representatives, and that no estate was opened for their minor daughter.  The Court of Appeals found that the child's father was the personal and legal representative even though a father did not open a probate estate for the child.  *Sterns*, 401 S.W.2d at 519.  The Court reviewed numerous decisions from other jurisdictions and found that where the death of a minor child is caused by wrongful act of a corporation, the father as the legal representative of such minor child has rights to pursue a legal cause of action against the defendant.  *Sterns*, 401 S.W.2d at 519.  Sterns has been applied in other cases dealing with the same issue.  *Cobb v. State Security Ins. Co.,* 576 S.W.2d 726 *(*Mo. *banc* 1979*)* (stating that a father is a legal and personal representative of a deceased child for purposes of liability); *Arnold v. American Family Mut. Ins. Co.*, 987 S.W.2d 537 (Mo. App. W.D. 1999) (stating that a parent is personal and legal representative for all purposes including recovery of damages for a deceased child).

In *State ex rel. Mo. Dep't of Soc. Servs., Children's Div. v. Dougherty*, 563 S.W.3d 153 (Mo. App. E.D. 2018) a parent sued Missouri DFS seeking production of the children's files. The DFS argued that those records were protected.  The Eastern District Court of Appeals ordered the DFS to produce the records to the parents of the children.  *Dougherty*, 563 S.W.3d

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

at 155.

As in *Sterns*, MOTHER in this case, has a legal right as a legal and physical custodian of her daughters to obtain her daughters' legal files from Williams.  MOTHER is the personal representative of her children pursuant to *Sterns* <u>supra</u>.  MOTHER, as the children's personal representative steps into the shoes of the decedent such that the personal representative becomes the decedent for purposes of the duty owed by the decedent's counsel.  In *State ex rel. White v. Terte,* 293 S.W.2d 6, 10 (Mo. App. E.D. 1956*)* the Court of Appeals held that "attorneys have no authority to take any further steps whatsoever on behalf of the deceased party unless and until authorized by the personal representatives of the deceased, duly qualified."  <u>See</u> *State ex rel. Upjohn Co. v. Belt*, 844 S.W.2d 467 (Mo. App. W.D. 1992) for the same analysis and law.

MOTHER asked that Williams produce her daughters' legal files to MOTHER many times.  Williams agreed to produce her files once this Court issued an order authorizing Williams to comply.  **Exhibit 10**.  In *In the Interest of A.S.W.*, 226 S.W.3d 151, 154 (Mo. 2007) the Missouri Supreme Court stated that ***the overriding consideration in family court proceedings is the welfare of the children***.  [emphasis added].  MOTHER respectfully asks this Divorce Court to show that the overriding consideration in these proceedings is the welfare of Sara and Mikaela.  MOTHER needs her children's legal files to protect the welfare and the interests of her alive and deceased children.  *Dougherty* <u>supra</u>.

## III.    WILLIAMS MUST PRODUCE HER COMPLETE ORIGINAL UNALTERED AND UNREDACTED FILE PERTAINING TO WILLIAMS' REPRESENTATION OF SARA AND MIKAELA HAYNES

The obligation of an attorney to give a client his or her legal file was recognized by the Missouri Supreme Court in *Grewell v. State Farm Mutual Auto. Ins.' Co.,* 102 S.W.3d 33, 37 *(*Mo. *banc* 2003) when finding that insurance claims file "is analogous to the file of a client held by an

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

attorney" and belongs to the insured, and that the insured "should be provided free and open access to that file."  The Rules of Professional Conduct have force and effect of judicial decision.  In *McVeigh v. Flemming*, 401 S.W.3d 287 (Mo.App.E.D. 2013), the Eastern District Court of Appeals stated that:

> Under *Mo. Sup. Ct. R. 4-1.16(d)*, upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as surrendering papers and property to which the client is entitled.  *Rule 4-1.16(d)* requires lawyers whose representation of a client has terminated to protect that client's interest by returning any papers to which the client is entitled. ***A client is entitled to his or her files because the client's files belong to the client, not to the attorney representing the client.***  *McVeigh*, 401 S.W.3d at 289.  [emphasis added].

The court further explained that "[a] client is entitled to his or her files because the client's files belong to the client, not to the attorney representing the client." (quoting *In re Cupples*, 952 S.W.2d 226, 234 (Mo. banc 1997).  The trial court can order an attorney to return ***the original file*** to the client.  *McVeigh,* 401 S.W.3d at 289. [emphasis added]. Williams' failure to return to MOTHER her daughters' files violates her duty as their attorney.

Williams' failure to return the file to MOTHER also constitutes a breach of fiduciary duty.  Rule 4-1.16(d) requires a lawyer upon termination of representation to take steps to the extent ***reasonably practical to protect a client's interests, such as surrendering the client's files***. *McVeigh*, 401 S.W.3d at 289. [emphasis added].  "The relation between attorney and client is fiduciary and binds the attorney to a scrupulous fidelity to the cause of the client which precludes the attorney from any personal advantage from the abuse of that reposed confidence."  *Shaffer v. Terrydale Management Corp.,* 648 S.W.2d 595, 605 (Mo.App.E.D. 1983).

Williams owed a fiduciary duty to Mikaela Haynes before and after her death.  The fiduciary duty to a client survives the termination of the attorney-client relationship, by death or otherwise.  The parent of Mikaela Haynes is entitled to receive Mikaela's original, complete, unaltered and unredacted legal file.

24

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

In *Gardine v. Cottey,* 230 S.W.2d 731, 739 (Mo. *banc* 1950) the Missouri Supreme Court held that "[t]he relation between attorney and client is highly fiduciary … requiring very high degree of fidelity and good faith on attorney's part."  In this case, Williams refused to surrender her original file thus betraying her clients' trust and their interests.  She acted in bad faith and in violation of the Missouri law.  Williams forced MOTHER as the custodial parent and thus personal and legal representative of Sara and her deceased daughter, Mikaela, to litigate the release of her daughters' legal files to her, so her daughters' interests are adequately protected in these proceedings.

Since the overriding consideration of the Divorce Court is to protect the wellbeing of the children, the Divorce Court should order Williams to produce her files.  Accordingly, Williams must produce her ***complete original unaltered files***, including but not limited to all billing files, correspondence, emails, texts, and pleadings pertaining to the representation of Sara and Mikaela Haynes in divorce and juvenile matters from May 6, 2016 until April 29, 2021 to MOTHER and/or MOTHER'S attorney.

## IV.    WILLIAMS CANNOT CHARGE HER CLIENTS FOR DUPLICATION OF THEIR FILE

The *McVeigh* Court also held that "if a lawyer wishes to keep a copy of the file for his own use or protection, then the lawyer must bear the costs of copying the file."  *McVeigh,* 401 S.W.3d at 290.  Williams must produce her complete original file to MOTHER at no cost to MOTHER.

**WHEREFORE**, for the reasons stated above, MOTHER respectfully asks that this Court grant her Motion for Production of her daughters' ***original, complete, unaltered, unredacted files*** from May 6, 2016 until April 29, 2021 including but not limited to complete juvenile court files, communications

Exhibit 16

Electronically Filed - Ripley - September 10, 2021 - 03:30 PM

with all parties, individuals, healthcare providers, representatives of the state involved in Sara and Mikaela Haynes' juvenile matters, messages, billing file, emails, notes, memos, pleadings in their original format such as paper and/or electronically stored information (ESI), i.e. everything, at no cost to MOTHER within 10 calendar days of the Court's Order in this case and award MOTHER any other relief this Court deems right and proper.

/s/ Evita Tolu
Evita Tolu, MO Bar #49878
1 Crabapple Court
Saint Louis, MO 63132
(314) 323-6022 telephone
(314) 207-0086 fax
evitatolu@outlook.com
Attorney for Cynthia K. Haynes

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of September 2021, a copy of the forgoing pleading was served upon William Halaz III, the attorney of record for Charles Haynes to the above cause by operation of the Courts electronic filing system.

/s/ Evita Tolu
Evita Tolu

Exhibit 16