IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA K. HAYNES (a/k/a Cynthia K. Randolph), individually and under the Missouri Wrongful Death Statute )<br><br>Plaintiff, )<br><br>vs. )<br><br>JENNIFER WILLIAMS, individually, et al. )<br><br>Defendants. ) | Case No: 1:21-CV-00160-ACL |

**WILLIAMS DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT I OF PLAINTIFF'S AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(c) and Local Rule 4.01, Defendants Jennifer Williams and Jennifer Williams, d/b/a Williams Law, (individually and collectively, "Williams") herby submits her Memorandum of Law in Support of her Motion for Judgment on the Pleadings as to Count I of Plaintiff's Amended Complaint.

**INTRODUCTION**

This action arises out of the tragic suicide of Plaintiff's minor daughter, M.H. At the time of M.H.'s death, Plaintiff and Defendant Charles Haynes ("Charles"), M.H.'s father, were involved in a contentious divorce. Additionally, Charles was awaiting sentencing in a criminal prosecution following his plea of guilty for sexually abusing M.H.'s stepsister. At all times relevant herein, Defendants Jennifer Williams, individually, and Jennifer Williams d/b/a Williams Law (collectively hereinafter, "Williams") served as the court-appointed Guardian ad Litem ("GAL") in the Haynes' divorce. Defendant Spain Miller Galloway & Lee, LLC ("Spain, Miller") is Williams' former employer.

Count I of the Amended Complaint is the sole count of the complaint directed at Williams and is titled "Wrongful Death – Acting Outside the Scope of GAL Duties." As set forth in detail below, Williams is entitled to judgment as a matter of law as to Count I of the Amended Complaint because Plaintiff fails to state a plausible claim for relief against Williams under the Missouri Wrongful Death Act.

## PROCEDURAL HISTORY[1]

On November 12, 2021, Plaintiff filed her Amended Complaint for Damages against Williams, Spain, Miller, Bernice, and Charles. The Amended Complaint originally included (4) counts directed against Williams:[2] Count I – Wrongful Death – Acting Outside the Scope of GAL Duties; Count II – Wrongful Death – Legal Malpractice; Count III – Wrongful Death – Breach of Fiduciary Duties; Count IV - Personal Claim of Plaintiff – Acting Outside the Scope of GAL Duties. (*See generally*, Doc. 6).

Count I of the Amended Complaint alleges that Williams is liable for M.H.'s death under the Missouri Wrongful Death Act because Williams engaged in conduct that violated her GAL duties and caused or contributed to cause M.H.'s suicide. (*Id*. at ¶197). Counts II and III alleged that Williams was liable for M.H.'s death under the Missouri Wrongful Death Act because Williams served as M.H.'s "personal attorney" during the Divorce Case, and her conduct violated the duty of care she owed to M.H. as her attorney and caused or contributed to cause M.H.'s suicide. (*Id*. at ¶¶ 206, 217). Count IV, brought on behalf of Plaintiff "personally," alleged that Williams' conduct as GAL made her liable for Plaintiff's emotional injuries. (*Id*. at ¶¶ 228).

---

[1] Given that Plaintiff has set forth the factual background of this case in prior briefing, Williams has omitted a "factual background" from the instant memorandum.

[2] Counts I – IV of the Amended Complaint were also directed at Spain, Miller. Additionally, the Amended Complaint also included (3) additional counts directed at Williams' co-defendants: Count V Wrongful Death – Negligent Supervision (Spain, Miller); Count VI Wrongful Death – Negligence (Bernice); and, Count VII Wrongful Death – Sexual Assault and Battery (Charles).

2

On January 18, 2022, Williams filed a motion to dismiss Counts I – IV of the Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (*See generally*, Doc. 32). In support of her motion to dismiss, Williams argued that she was entitled to "quasi-judicial" immunity from liability with respect to Count IV because all of the allegations in the Amended Complaint related to conduct that fell within the scope of Williams' duty as GAL to assist the court in making determinations that were in M.H.'s "best interests." (*Id*. at p. 6). Williams further argued that Counts II, III and IV of the Amended Complaint should be dismissed because Williams was not appointed as M.H.'s "personal attorney" and she therefore did not owe a duty of care to M.H. or to Plaintiff under the theories of tort in those counts. (*Id*. at  pp. 2-14.).

On February 15, 2022, Plaintiff filed a Memorandum in Response to Williams' and Spain Miller's Motions to Dismiss. ("Response Memorandum")(Doc. 44). The Response Memorandum argued (among other things) that when Williams threatened M.H. against testifying against Charles in his criminal case, Williams committed the criminal offense of "tampering with a witness." (*Id*. at pp. 8-14). According to Plaintiff, Williams' criminal actions were not within the scope of her GAL duties because they were not intended to serve the best interests of M.H., but were done to benefit Charles in his criminal case and for Williams "to preserve her own status [.]" (*Id*. at p. 10). Plaintiff argued that Williams' criminal actions subordinated the authority of the custody court, and that Williams was not entitled to quasi-judicial immunity for her conduct. (*Id*.). Thereafter, Plaintiff and Williams submitted additional memoranda briefing the issues raised in the Motion to Dismiss and the Response Memorandum. (*See* Doc. 50 and Doc. 56).

On June 08, 2022, the Court issued its Memorandum and Order of Dismissal. (Doc. 61). With respect to Counts II – IV, the Court granted Williams' motion to dismiss on the grounds that these counts failed to state claims for relief against Williams. (*Id.* at p. 26). However, the Court

denied Williams' Motion to Dismiss Count I in part on the basis of quasi-judicial immunity. (*Id.*). In reaching its judgment on Count I, the Court found that the following conduct alleged in the Amended Complaint fell outside the scope of Williams' GAL duties:

- Each time M.H. was forced to see Williams (after July 2017 Williams came to M.H.'s school weekly), Williams threatened M.H. that if Plaintiff, M.S.H., or M.H. testified in Charles' criminal case, Williams would return M.H. and S.H. to foster care. On several occasions, Williams also threatened to place M.H. into 'juvie' if M.H. testified against her father. Williams told M.H. that her dad 'wouldn't go to jail.' Williams consistently ordered M.H. to keep Williams' conversations confidential from her mother and sister M.S.H. in order to avoid foster care.

- From May 6, 2016 until M.H.'s death on November 24, 2018, Williams repeatedly threatened M.H. with her and her sister's placement in foster care if M.H., Plaintiff or M.S.H. testified against her father at his criminal trial or at his sentencing. M.H. reported these threats to her doctors, Plaintiff and her stepsisters, M.S.H. and Mindy.

- At all times pertinent hereto, Williams violated her duties and acted outside the scope of her duties as a GAL in the Haynes divorce in one or more of the following respects: (a) Threatening M.H. that if her mother, her stepsister, and/or M.H. testified against Charles in his pending sexual abuse criminal case, M.H. and S.H. would be returned to foster care; (b) Threatening to cut M.H. and S.H.'s visitation time with Plaintiff, if M.H., Mellissa, or Plaintiff testified against Charles in his criminal case; (c) Threatening M.H. that if her mother, stepsister, and/or M.H. testified against Charles at his sentencing, M.H. and S.H. would be returned to foster care; and (d) Placing M.H. in a double bind by threatening that if she, her stepsister and/or her mother testified against Charles at his criminal trial, M.H. would be placed in foster care, but if she did not testify against her father, and her father was released or placed on probation as Williams advocated, that M.H. would be placed in her father's custody or req be placed in her father's custody or required to spend time with her father, who had sexually abused M.H.

(*Id.*, pp. 17-18)(citing Doc. 6 at pp. 40 -41, 50, 53 - 54).  The Court stated that it was not "prepared to find as a matter of law that threatening a child victim of sexual abuse not to testify against her abuser in a separate criminal proceeding is within the realm of GAL duties." (*Id*. at p. 21).

4

Accordingly, Plaintiffs allegations survived Williams' Motion to Dismiss in limited part. (*Id*.at p. 21).[3]

On June 15, 2022, Plaintiff filed a Motion to Reconsider its Order of Dismissal and requested that Count IV of the Amended Complaint be reinstated against Williams.[4] (Doc. 62). Plaintiff argued (among other things) that the Court erred in dismissing Count IV of the Amended Complaint because Williams owed Plaintiff a duty of care as the GAL in the Divorce Case. (*Id*. at p. 17). Plaintiff further argued that she was entitled to recover because Williams threats amounted to a criminal offense and therefore formed the basis of a civil cause of action. (*Id*. at pp. 18-24).

On November 09, 2022, the Court denied Plaintiff's Motion to Reconsider. (Doc. 101, p. 9). In reviewing the Moton to Reconsider, the Court noted that Count IV was titled as "Personal Claim of Plaintiff-Acting Outside the Scope of GAL Duties" and that "that no other cause of action was alleged in Count IV." (*Id.* at p. 7). The Court observed that "Plaintiff cites no authority for the proposition that a GAL acting outside the scope of her duties gives rise to an independent civil cause of action for damages." (*Id.* at p. 7). Moreover, the court rejected Plaintiff's argument that the violation of Missouri criminal statutes prohibiting witness tampering can form the basis of a civil liability. (*Id*. at pp. 7-8).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that, after the pleadings are closed, a party may move for judgment on the pleadings. Fed. Civ. P. R. 12(c). "A grant of judgment on the

---

[3] In its Memorandum and Order of Dismissal, the Court also found that Bernice's alleged misconduct was too far removed to be the cause of M.H.'s death, and therefore the claim against her was dismissed. However, the Court found that the Amended Complaint included allegations "from which a jury may infer that Charles' actions proximately caused M.H.'s death." (Doc. 61, 13). Therefore, the Court denied Charles' Motion to Dismiss.
[4] The Motion to Reconsider also sought reinstatement of Count VII directed against Bernice.

5

pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" *Poehl v. Countrywide Home Loans, Inc.,* 528 F.3d 1093, 1096 (8th Cir. 2008) (citation omitted).

"Generally, a Rule 12(c) motion for judgement on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss: the Court must view the allegations in the Complaint liberally and in the light most favorable to Plaintiff." *Eckert v. Titan Tire Corp.,* 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto. Servs,,* 432 F.3d 866, 867 (8th Cir. 2005)). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta,* 410 F.3d 1036, 1039 (8th Cir. 2005). When evaluating a Rule 12(c) motion for judgment on the pleadings, courts may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *von Kaenel v. Armstrong Teasdale, LLP*, 943 F.3d 1139 (8th Cir. 2019) (emphasis added).

## ARGUMENT

**I.     Williams is entitled to judgment on the pleadings as to Count I the Amended Complaint because Plaintiff fails to state a plausible claim for relief against Williams under the Missouri Wrongful Death Act.**

The Missouri Wrongful Death Act, Section §537.080.1(1) R.S.Mo., is "the sole source of a cause of action in Missouri where the injuries sustained by the decedent caused the decedent's death." *Andrews v. Neer*, 253 F.3d at 1052, 1056 (8th Cir. 2001) (citing *Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681, 685 (Mo. 1992)). The Missouri Wrongful Death Act states (in relevant part):

> Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have

6

been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured….

§537.080.1(1) R.S.Mo.  Accordingly, for Plaintiff to state a plausible claim for relief against Williams under the Missouri Wrongful Death Act based upon Williams' threats to M.H., Plaintiff must plead facts that establish M.H. could have brought a cause of action for damages against Williams for her threats had M.H. survived.  *Id.*

      **A.**      **Count I of the Amended Complaint fails to state a plausible claim for relief against Williams because "acting out the scope of GAL duties" does not exist as an independent cause of action for damages in Missouri.**

Count I of the Amended Complaint is now the sole count of the Amended Complaint remaining against Williams.  It is pled as a claim for "Wrongful Death – Acting Outside the Scope of GAL Duties." (Doc. 61, p. 26).  The Amended Complaint alleges that as court-appointed GAL in the Divorce Case, Williams had a duty to comply with various Missouri statutes, codes of ethics, and standards that govern a GAL's conduct.  (Doc. 6, ¶¶190 – 194).  According to Plaintiff, Williams is liable for threatening M.H. because her threats violated her GAL duties and caused or contributed to cause M.H.'s death.  (Doc. 61, pp. 17-18)(citing Doc. 6 pp. 40-41, 50, 53-54).  But as this Court previously recognized, Plaintiff has not and cannot offer any authority to support the proposition that "acting outside the scope of GAL Duties gives rise to an independent civil cause of action for damages" in Missouri. (Doc. 101, p. 7).  The Court's recognition of this fact is in line with other Missouri cases which expressed skepticism that a GAL's violation of statutes and codes of ethics could support a cause of action against the GAL <u>under any theory of tort</u>. *See Tolu v. Reid*, 639 S.W.3d 504, 520 n.13 (Mo Ct. App. 2021) ("We question whether an alleged violation of the Missouri Rules of Professional Conduct…. or Guardian ad Litem Regulations would support a private right of action for damages against a guardian ad litem, even in the absence of quasi-judicial immunity.")).

7

The Eighth Circuit has repeatedly found that "federal courts should not expand liability in diversity cases if the legal theory is 'not well established.'" *Ratliff v. Mentor Corp.*, 569 F. Supp. 2d 926, 929 (W.D. Mo. 2008) (quoting *Tucker v. Paxson Machine Co.* 645 F.2d 620, 625 (8th Cir. 1981)); *Trimble v. Asarco, Inc.,* 232 F.3d 946, 963 (8th Cir. 2000).  Thus, to the extent Plaintiff invites the Court to recognize a new Missouri tort claim for "acting out the scope of GAL duties," this Court should reject that invitation and grant Williams' Motion for Judgment on the Pleadings.

> **B.    Count I of the Amended Complaint also fails to state a plausible claim for relief for negligence under the Missouri Wrongful Death Act.**

Notwithstanding the fact that "acting outside the scope of GAL's duties" does not exist as an independent tort claim in Missouri, Count I fails to state a plausible negligence claim under the Missouri Wrongful Death Act.  To wit, Count I of the Amended Complaint alleges that Williams is liable for M.H.'s death because Williams "violated her duties and acted outside the scope of her duties as a GAL" and "repeatedly threatened M.H. with her and her sister's placement in foster care if M.H., Plaintiff or M.S.H. testified against her father at his criminal trial or at his sentencing." (Doc. 6. ¶182).  These allegations attempt to mirror the elements of a wrongful death claim predicated on a common law negligence claim.  *Scales v. Whitaker*, 615 S.W.3d 425, 429 (Mo. Ct. App. 2020)("In a negligence action based upon a theory of wrongful death, the plaintiff must adequately plead and establish, (1) the defendant owed the decedent a duty of care; (2) the defendant breached that duty; (3) the breach was the cause in fact and proximate cause of the decedent's death; and (4) as a result of the breach, the plaintiff suffered damages.")). But for multiple reasons, M.H. could not have brought a negligence claim against Williams to recover damages for Williams' threats.

First, threats cannot form the basis of negligence claim because for purposes of tort liability, threats are <u>not</u> acts of "negligence."  Threats are "intentional" acts.  *See, Armoneit v.*

8

*Ezell*, 59 S.W.3d 628, 632 (Mo. Ct. App. 2001)("Liability for an intentional tort occurs when a person intentionally commits an act and the resulting harm."); BLACK'S LAW DICTIONARY, 1519 (8th ed. 2004) (defining "threat" as "[a] communicated intent to inflict harm or loss on another or on another's property, especially one that might diminish a person's freedom to act voluntarily or with lawful consent")); *see also*, RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 1 (2010)) ("A person acts with the intent to produce a consequence if: (a) the person acts with the purpose of producing that consequence; or (b) the person acts knowing that the consequence is substantially certain to result)). And it is settled law that a plaintiff cannot bring a negligence claim against a tortfeasor to recover for intentional acts. *Jones v. Marshall*, 750 S.W.2d 727, 728 (Mo. Ct. App. 1988); *see also Wenzel v. Storm*, 4:16 CV 27 DDN, 2019 WL 555144, at *3 (E.D. Mo. Feb. 12, 2019)(applying Missouri law and finding that defendant was entitled to summary judgment on wrongful death claim predicated on negligence where there was no dispute that the death was caused by an "intentional act")).

Further, Missouri law is clear that "…. theories based upon alleged 'negligent' and 'intentional' conduct are contradictory and mutually exclusive and a pleading that contains inconsistent theories within the same count is subject to dismissal." *Linnenbringer v. Casino One Corp.*, 4:10CV1774 JCH, 2010 WL 4484009, at *3 (E.D. Mo. Nov. 1, 2010) (cleaned up) (quoting *Gallatin v. W.E.B. Rest. Corp.,* 764 S.W.2d 104, 105 (Mo. Ct. App. 1988)). In fact, this Court[5] previously found that a plaintiff could not support a wrongful death claim with allegations that combined theories of negligence and an intentional tort into a single count. *Harvey v. Great Circle*, 4:19-CV-00902 NAB, 2021 WL 4552135, at *3 (E.D. Mo. Oct. 5, 2021). In *Harvey,* the plaintiff was the father of a minor decedent who sought leave to bring a wrongful death claim titled

---

[5] The Honorable Nannette A. Baker, Chief Magistrate Judge.

9

"Wrongful Death Premised on Intentional Tort" *Id*.  This proposed wrongful claim was premised on allegations that the defendants "intentionally breached their duties" to the plaintiff's minor decedent and caused his death.  *Id*.  The Court noted that "theories of negligence and intentional tort are contradictory and mutual exclusive." *Id*.  Further, the Court found that "Missouri law does not recognize a general cause of action for intentional tort, nor does it recognize a wrongful death cause of action for intentional tort." *Id.*  Accordingly, for those reasons (among others), the Court held that the plaintiff's proposed claim for "Wrongful Death Premised on Intentional Tort" failed to state a claim for relief.  *Id.*

Here, Count I of the Amended Complaint fails as a wrongful death claim for the same reasons that this Court found in *Harvey*.  Just like the *Harvey* plaintiff, the Plaintiff brings a wrongful death claim in Count I that is premised on allegations that a defendant intentionally breached her duties and caused a minor decedent's death *i.e.*, that Williams breached and violated her GAL duties by threatening M.H. with her and her sister's placement in foster care or juvie to prevent M.H. from testifying against Charles in his criminal case.  (Doc. 6, ¶195 (a),(b),(c),(d), and (m)).  Following *Harvey*, this Court should find that these allegations fail to state a plausible claim against Williams because they combine two "contradictory and mutually exclusive" theories of tort liability (negligent conduct and intentional conduct) into a single count.  *Harvey*, 2021 WL 4552135, at *3.  Further, like the *Harvey* plaintiff's proposed claim for "Wrongful Death Premised on Intentional Tort," this Court should also consider that Missouri law does not recognize a *general cause of action* for "acting outside the scope of GAL duties, nor does it recognize a *wrongful death cause of action* for "acting outside the scope of GAL duties." *Id.*

Additionally, even assuming that Williams' threats were unintentional, Count I fails to establish that Williams owed M.H. a duty of care as the court-appointed GAL to protect M.H. from

10

committing suicide. *Jarrett v. Jones,* 258 S.W.3d 442, 448 (Mo. banc 2008) (citing *Krause v. U.S. Truck Co., Inc.,* 787 S.W.2d 708, 710 (Mo. banc 1990)("Any action for negligence requires the plaintiff to establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the plaintiff's injury was proximately caused by the defendant's failure."). It is undisputed that Williams functioned "an agent of the court" when she served as the court-appointed GAL in the Haynes' custody cases. *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 385-86 (Mo. Ct. App. 1993). And unlike court-appointed GAL's in other jurisdictions, a Missouri GAL's "principal allegiance" remains with the court. *Id*. While it is true that Count I alleges that Williams "violated" the Missouri Rules of Professional Responsibility, the Missouri GAL Standards, and various Missouri statutes by making threats, these "duties" have never been recognized to be the equivalent of a common law duty of care for purposes of tort liability.[6]

Accordingly, Count I fails to state a claim under the Missouri Wrongful Death Act because Plaintiff fails to plausibly allege that M.H. could have maintained a cause of action for negligence against Williams for her threats if M.H. had survived her suicide. William is therefore entitled to judgment on the pleadings.

## CONCLUSION

Under the Missouri Wrongful Death Act, for Plaintiff to state a plausible claim for relief against Williams, Plaintiff needed to plead facts that establish M.H. would have been entitled to recover damages from Williams for her threats if M.H. had survived her suicide. § 537.080.1(1) R.S.Mo. However, Count I of the Amended Complaint fails to state a plausible claim for relief

---

[6] In fact, at least one Missouri court explicitly addressed the distinction between "duties" owed by a judicial actor for purposes of analyzing quasi-judicial immunity and the "duty of care" owed by a plaintiff for purposes of tort liability. *See Tolu*, 639 S.W.3d at 527-28 (noting that the question of whether a court-appointed doctor owed the plaintiff a "limited duty of care" for purposes of tort liability was distinct from the question of whether the doctor's conduct fell within the scope of his "duties" for purposes of quasi-judicial immunity).

11

under the Missouri Wrongful Death Act because "acting out the scope of GAL duties" does not exist as an independent cause of action in Missouri. Further, Count I of the Amended Complaint fails to state a plausible claim for relief for negligence under the Missouri Wrongful Death Act because threats are intentional conduct and cannot form the basis of a negligence claim. Moreover, Count I cannot stand as a negligence claim because Williams' threats constitute "intentional" conduct, and negligence and intentional tort are "contradictory and mutually exclusive theories" of liability that cannot be brought in a single claim. Accordingly, Plaintiff has failed to identify a cause of action that M.H. could have brought against Williams for her threats if M.H. had survived her suicide, and Williams is therefore entitled to judgment on the pleadings as to Count I the Amended Complaint.

Respectfully submitted,

ROBERTS PERRYMAN, P.C.

By:    _/s/  Susan M. Dimond_
Richard C. Wuestling, #30773MO
Susan M. Dimond, #57434MO
Dustin L. Goldberger, #70080MO
1034 S. Brentwood, Suite 2100
St. Louis, Missouri 63117
Phone: (314) 421-1850
Fax: (314) 421-4346
rwuestling@robertsperryman.com
sdimond@robertsperryman.com
dgoldberger@robertsperryman.com

**Attorneys for Defendants Jennifer Williams and Jennifer Williams d/b/a Williams Law**

**CERTIFICATE OF SERVICE**

       I hereby certify that on February 27, 2023, the foregoing was electronically filed with the Clerk of the Court using CM/ECF electronic filing system which will send notification of such filing to the following and email to all counsel of record.

Laurence D. Mass laurencedmass@att.net
Evita Tolu evitatolu@outlook.com
*Attorneys for Plaintiff*

Thomas W. Collins, III tcollins@blantonlaw.com mailto:tcollins@blantonlaw.com
*Attorneys for Spain, Miller, Galloway & Lee, LLC*

Cira R. Duffe duffe@hdp-law.com
*Attorney for Defendant Charles Haynes*

       */s/ Susan M. Dimond*