**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI - SOUTHERN DIVISION**

| | |
|---|---|
| CYNTHIA HAYNES (a/k/a Cynthia Randolph) ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No: 1:21-CV-00160-ACL |
| ) | |
| JENNIFER WILLIAMS, individually, et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO WILLIAMS' MOTION FOR JUDGMENT ON THE PLEADINGS[1]**

**I.  Introduction**

In her Motion for Judgment on the Pleadings (Motion, pg. 7), Williams asserts that Plaintiff has not pled any "plausible" claim for recovery under the wrongful death statute or any recognized legal theory of recovery. According to Williams, Missouri law does not allow recovery for damages for Williams' conduct outside the scope of her guardian ad litem's (GAL) duties. Williams contends (pg. 8) that she owed no duty of care to M.H. and argues that her threats directed to M.H. "are not acts of negligence" but are "intentional acts." Williams insists (pg. 9) that Plaintiff cannot bring a negligence claim against tortfeasor Williams to recover for Williams threatening and tampering with M.H., the victim of Williams' acts.

Williams' arguments fail. Plaintiff pled facts which constitute the tort of negligent infliction of emotional distress. These facts are the basis of a tort action encompassing Williams acting negligently as a GAL. Williams exceeded the scope of her duties when acting negligently by engaging in conduct designed to assure that Charles escaped criminal liability for sexually abusing M.H.'s sister, M.S.H. Williams' conduct went well beyond assisting Charles' criminal defense. Therefore, Plaintiff can proceed with her cause of action against Williams and Spain

---

[1] Plaintiff adopts the facts previously set forth in Plaintiff's responses to the various motions to dismiss previously ruled on by this Court and supplements with specific references to the facts in this Response.

1

Miller.

Plaintiff adopts the standard of review for a Rule 12(c) motion outlined in Williams' Memorandum.

## II. Pleadings' Titles, Headings, and Subheadings Do Not Determine Whether Plaintiff Pled a "Plausible" Claim for Damages

Plaintiff has not relied on a nonexistent Missouri cause of action against Williams for acting outside the scope of her duties. Plaintiff's sub-title of Count I of her Amended Complaint (Doc. #6) does not determine whether Plaintiff pled a valid cause of action against Williams. In evaluating pleadings "courts do not concern themselves with the title of the pleading, … but look instead to the substance of the pleading." Cone v. Kolesiak, 571 S.W.3d 644, 648 (Mo. App. W.D. 2019). Titles or organization of a pleading cannot be used to alter or limit the factual allegations of the pleading and to determine whether those allegations constitute the basis for a valid cause of action. Schmedding v. Tnemec Co., 187 F.3d 862 (8th Cir. 1999). Plaintiff's factual allegations and exhibits in the Amended Complaint provide ample evidence to support Plaintiff's wrongful death cause of action against Williams, as this Court found on June 8, 2022 (Memorandum and Court Order, Doc. #61).

"A plausible claim must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017). "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Engel v. Modoc, 2021 WL 1721169 at *4 (E.D. Mo. Apr. 2021) (*citing* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "If the essence of an allegation is discernible, … then the district court should construe the complaint in a way … that permits the claim to be considered within the proper legal framework." Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). Plaintiff has satisfied these standards.

2

### III. Plaintiff Pled Claims under the Wrongful Death Statute & Missouri Approved Jury Instructions Constituting the Negligent Infliction of Emotional Distress

"In a negligence action based upon a theory of wrongful death, the plaintiff must adequately plead and establish that (1) the defendant owed the decedent a duty of care; (2) the defendant breached that duty; (3) the breach was the cause in fact and proximate cause of the decedent's death; and (4) as a result of the breach, the plaintiff suffered damages." Scales v. Whitaker, 615 S.W.3d 425, 429 (Mo. App. E.D. 2020). Plaintiff has pled facts to support a wrongful death action against Williams based on a valid cause of action for negligent infliction of emotional distress.

For a claim of negligent infliction of emotional distress, Plaintiff must plead sufficient facts that, if true, show that (1) Williams' conduct was negligent, (2) the defendant realized or should have realized that her conduct created an unreasonable risk of causing emotional distress, and (3) the victim suffered emotional distress or mental injury that is medically diagnosable and sufficiently severe to be medically significant. Gillis v. Principia Corp., 832 F.3d 865, 875 (8th Cir. 2016). See also MAI Verdict Director 31.23. Plaintiff plausibly pled a claim for negligent infliction of emotional distress which caused M.H.'s death.

#### A. Williams owed a duty to the deceased to protect M.H. from harm.

Williams' assertions that she owed no duty to M.H. is the antithesis of the extensive body of Missouri law imposing specific duties on GALs. In Missouri, "a guardian ad litem **is the legal representative of the children**" who "has **specific statutory duties to fulfill.**" Baumgart v. Baumgart, 944 S.W.2d 572, 578 (Mo. App. W.D. 1997). [Emphasis added]. These statutory duties are to protect a child from abuse and neglect. RSMo. 452.423.2. "The duty of a guardian ad litem is to protect the best interests of the children." 944 S.W.2d at 578. See also Keling v. Keling, 155 S.W.3d 830, 834 (Mo. App. E.D. 2005) (holding that a GAL violated RSMo. 452.423.2 duties

3

when she failed to investigate a history of domestic violence and children's trauma reported by the children's therapist). "The philosophy underlying the statute [RSMo. 452.423.2] is that where abuse or neglect is alleged, the child has rights independent of either of the parents, and these rights are entitled to representation." Taylor v. Taylor, 60 S.W.3d 652, 655 (Mo. App. E.D. 2001). The court explained that

> [T]he statute recognizes a child's interest, not only in being protected from abuse and neglect but also in not having custody withheld from a parent because of false or unsupported allegations of abuse or neglect. The guardian ad litem ensures that the child's best interests are represented and protected because the parents' attorneys are protecting their respective clients' interests, and not the child's.

60 S.W.3d at 655.

Protection of the best interests of the child means safeguarding "the child, or other children … or another family or household member who is the victim of domestic violence from any further harm." RSMo. 452.375.2.[2] See also RSMo. 210-211, 452.455.2, RSMo. 454, RSMo. 455 and Missouri Supreme Court GAL Standards (GAL Standards). "If the guardian ad litem believes the child is being abused, she has **an additional duty** to request that the juvenile officer file a petition" to protect the child. 944 S.W.2d at 578. Williams did not do that.

"**[T]he statutes and cases [establish] that it is imperative that the guardian ad litem investigate and have input on the perspective of the child's best interest** and this be presented to the trial judge." 944 S.W.2d at 578. [Emphasis added]. The GAL "must be active in determining the best interests of the children." Id. Williams owed "**vigilant loyalty for what [was] best for**

---

[2] "In any court proceedings relating to custody of a child, the court shall not award custody … of a child to a parent if such parent … has been found guilty of, or pled guilty to, any of the following offenses when a child was the victim: (a) a felony violation of RSMo. 566.064" (deviant child sodomy). Williams threatened M.H. with foster care and placement in Charles' custody even after he pled guilty to the deviant child sodomy of M.H.'s sister, M.S.H., on September 4, 2018. (Doc. #6, ¶¶168-169). Williams threatened M.H. many times before Charles pled guilty when Williams had available to her a recording of Charles stating that 12-year-old, M.S.H. "instigated it [putting Charles' penis in her mouth] and I [Charles] didn't say no" and "all of this is her [M.S.H.'s] fault." (Doc. #6, Exhibit 7).

4

**the child [M.H.].**" State ex rel. Bird v. Weinstock, 864 S.W.2d 376, 385-86 (Mo. App. E.D. 1993). [Emphasis added]. (*See also* Doc. #61, pg. 15). Plaintiff pled ample facts that Williams owed a duty of care to protect M.H.

Williams' duties included "to maintain an objectivity that preserves a clear focus on M.H.'s best interests," to file motions, parenting plans, responses, and objections, conduct investigations, interview parties (Doc. #6, Exhibit 3), to determine whether M.H. and S.H. suffered educational neglect, objectively to consider whether a 90-year-old ailing, visually and hearing impaired, Bernice Haynes, was the suitable custodial parent, to consider the audio recording of Charles admitting to sexually abusing M.S.H., and to present educational test results to the divorce court. (Doc. #6, ¶13, ¶¶16-17, ¶¶19-24, ¶46, ¶191-192, and ¶194) and Baumgart *supra*.

This Court relied on Bird *supra* in its opinion denying Williams' Motion to Dismiss, acknowledging that the "role envisioned for the guardian ad item in Missouri is a hybrid of the traditional and attorney-client roles, although closer to the traditional role than the strict attorney-client or advocate role" with the child's best interests being always paramount. (Doc. #61, pg. 22). This role encompasses compliance with the duties prescribed by the Missouri statutes, case law, rules, GAL Standards, and regulations and the standards of care GALs are expected to follow. To the extent that the GAL's role encompasses the attorney's role toward a client, this principle reinforces Williams' duty owed M.H.

Williams also owed a duty to M.H. because her threats of returning M.H. and S.H. to foster care were made directly to M.H. (Doc. #6, ¶¶182-184). These threats were made outside the scope of Williams' duties. When a person acts directly against another, even if they had no previous relationship, i.e. causing an automobile accident, a duty is imposed on that person not to act negligently. Zuber v. Clarkson Constr. Co., 251 S.W.2d 52, 55 (Mo. 1952). This basic principle reinforces Williams' duty towards M.H.

5

### B.    Williams Was Negligent

Missouri courts hold that a professional, such as an attorney, acts negligently when she violates the standard of care established for her profession. MAI 11.06 applicable to professionals states that "the term negligent or negligence as used in these instructions means the failure to use the degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant's profession." Negligence is actionable when there is a "causal connection between the act or omission and the claimed injury sustained by Plaintiff." That negligence is a violation of the standard of care. Wickham v. Hummel, 659 S.W.3d 345, 365 (Mo. App. W.D. 2022). Williams's negligent actions are violations of the standard of care for a GAL.

Just a few examples of Williams' violations of the standard of care include Williams' failure to (a) hotline M.H.'s sexual abuse while M.H. was in Bernice's custody (Doc. #6, ¶29); (b) investigate why M.H. mutilated herself (Id.); (c) stop Charles from visiting M.H. in the middle of the night (Id. at ¶86); (d) report child pornography found on Bernice's computer (Id. at ¶73) and (e) threatening M.H., and using M.H. to threaten M.S.H. and Plaintiff not to testify against Charles. (Id. at ¶159, ¶164, ¶178). The last-mentioned violation of the standard of care took Williams' negligent conduct outside the scope of Williams' duties.

Williams' demands for M.H. to be reunified with her sexual abuser despite M.H.'s healthcare professionals' recommendations against it violated the standard of care applicable to Missouri GALs.[3] (Id. at ¶35). Williams' actions fell below the standard of care because they were not in M.H.'s best interests and did not protect M.H., the victim of sexual abuse, from further harm. They also violated RSMo. 452.375, RSMo. 210-211, 452.455.2, RSMo. 454, RSMo. 455, GAL

---

[3] Plaintiff's expert on the standard of care for Missouri GALs will provide testimony affirming that Williams alleged conduct violated the standard of care for GALs and caused or contributed to causing emotional harm to M.H., which makes Williams' Motion for Judgment on the Pleadings a disputed issue precluding judgment on the pleadings. Kivland v. Columbia Orthopedic Grp., LLP, 331 S.W.3d 299 (Mo. *banc* 2011).

6

Standards, Bird *supra*, Baumgart *supra*, Taylor *supra*, and Keling *supra*. Williams' breach of the standard of care was an act of negligence. Blake v. Irwin, 913 S.W.2d 923, 928 (Mo. App. W.D. 1996).

This Court held that a GAL performing the duties within the scope of her office, even if done negligently, was absolved from liability based on the defense of quasi-judicial immunity. (Doc. #61, pg. 16-17). The Court found that Williams' false statements at the family support meetings, to the DFS, at the family and juvenile court hearings, and her failure to investigate the sexual abuse of M.H. and report it to the court were protected by the defense of quasi-judicial immunity articulated in Bird *supra* as long as the conduct remained within the scope of her duties.

However, this Court observed that "the immunity available to GALs is not a blanket immunity for any and all actions taken by the guardian." (Doc. #61, pg. 20). "If true, the allegations of the complaint show that the GAL acted outside the scope of her duties as guardian ad litem and is thus not entitled to immunity..." (Doc. #61, id.). Williams, in her role as M.H.'s court-appointed legal representative, owed a "vigilant duty of loyalty" to protect M.H. from harm. Bird *supra*, Baumgart *supra,* RSMo. 452.423, *supra*, and 452.375 *supra*. This Court found that Williams' alleged actions exceeded "assisting" in Charles' criminal defense.

Williams engaged in the activities and conduct in a proceeding separate from and not related to representing the best interests of M.H. in her parents' divorce. (Doc. #61, id.). That conduct was outside the scope of Williams' GAL duties. That conduct occurred when Williams violated the standard of care for a GAL responsible for safeguarding M.H. and acting in M.H.'s best interest. Through that conduct, Williams negligently inflicted emotional distress on M.H. *See* Albanna v. State Bd. of Registration for the Healing Arts, 293 S.W.3d 423, 432 (Mo. 2009) (repeated violations of the standard of care constitute repeated negligence) and Williston v. State Bd. of Nursing, 610 S.W.3d 705, 717-718 (Mo. App. W.D. 2020).

As a matter of law, this Court held that it was not "within the realm of [Williams'] GAL duties" to "threaten[] a child victim of sexual abuse not to testify against her abuser in a separate criminal proceeding." (Doc. #61, pg. 20-21). Williams' conduct, outside the scope of her duties, occurred when Williams' actions fell below the standard of care for a GAL in representing M.H. (Doc. #6, ¶¶153-154 and ¶¶190-195).

By attempting to reconcile M.H. with her sexually abusive father, Williams acted negligently and violated the standard of care for GALs. It may not be unusual for a GAL to "threaten" a child whose interests she represents and to whom she owes duties and responsibilities. No one will question a GAL "threatening" a juvenile offender with placement in the juvie if the juvenile offender continues delinquent conduct. No one will reproach a GAL "threatening" a parent with the termination of parental rights unless the parent gets treatment for his/her chronic drug addiction. As misguided and extreme as Williams' "threats" in this case were, they were done in the context of Williams acting as the GAL negligently (below the standard of care) trying to reconcile M.H. with her sexual abuser. Her threats were an integral part of Williams' negligently performing her GAL duties in this case.

### C. Williams' Conduct Involved an Unreasonable Risk of Causing M.H. Emotional Distress. Williams Knew or Should Have Known of That Risk

Williams' conduct below the standard of care set for professionals (Wickham *supra*) and outside the scope of her GAL duties (Bird *supra*, Baumgart *supra*, RSMo. 452.375 *supra* and Doc. #6, ¶¶153-154, ¶¶190-195) caused M.H. excruciating emotional pain, loss of dignity, and deterioration of M.H.'s mental health which resulted in M.H.'s wrongful death. (Doc. #6, ¶196 and Gillis *supra*). As alleged, Williams' negligence created an unreasonable risk of causing M.H., "the minor with whom she was entrusted to protect," severe emotional distress. Gillis, 832 F.3d at

875. As alleged, Williams knew or should have known that M.H.'s mental health was fragile (832 F.3d at 875) and would likely be damaged by Williams' conduct as shown by:

a. M.H. reported to Williams that her father was in M.H.'s bedroom in the middle of the night. (Doc. #6, ¶86 and ¶113).

b. M.H. was hospitalized twice in a psychiatric ward to treat self-mutilation after her father sexually abused M.H. M.H. was diagnosed with depression and put on medication. (Doc. #6, ¶¶94-96, ¶104, ¶104, ¶¶116-118).

c. M.H.'s foster parents reported to DFS that Charles sexually abused M.H. after the foster parents found a "Fuck my pussy Daddy," note and M.H.'s diary, both of which the foster parents presented at an FST meeting. (Doc. #6, ¶¶121-126).

d. The foster parents reported to the DFS that "M.H. is scared of Charles" and "she can't see him [Charles]." (Doc. #6, ¶134).

e. On June 7, 2017, M.H.'s court-appointed therapist, Scott Foster, informed Williams that it was not in M.H.'s best interest to have contact with her father and "seeing Charles was not an option for M.H. and that neither M.H. nor S.H. should be reunified with Charles. (Doc. #6, ¶¶135-136).

f. On July 24, 2017, Angelina Champion, M.H.'s CASA representative reported that M.H. told CASA that "Williams is really my dad's lawyer." (Doc. #6, ¶142).

g. On July 27, 2017, M.H.'s pediatrician diagnosed M.H. with depression because "her dad was sexually molesting her and she [M.H.] stayed in her room to avoid her dad." (Doc. #6, ¶143-144 and Exhibit 27).

h. In October 2017, M.H. told her sister M.S.H. that M.H. "was scared because Williams told M.H. that "your dad won't go to jail" and "if we [M.S.H., M.H., and Plaintiff] testify against him, Williams will put me and S.H. back in foster care." (Doc. #6, ¶¶153-154).

i. On December 15, 2017, Dr. Marks stated that M.H. experienced "trauma in the moves to foster homes and the various schools" and "she admits that she had a very hard time trying to adjust to the different homes and to comfort her sister." (Doc. #6, ¶157).

j. On February 6, 2018, M.H.'s pediatrician Dr. Bost noted that M.H. "has been really stressed since last Tuesday one week ago when the GAL has been questioning her and wanting her [M.H.] to testify in state custody case " against her mom "causing M.H. educational neglect." Dr. Bost further states "the GAL put her [M.H.] in harm's way having her M.H. in dad's care." (Doc. #6, ¶163).

k. On March 30, 2018, Dr. Marks reported that Williams came to M.H.'s school several times "to put pressure on M.H. that she could be going back into foster care if she testifies against her father." (Doc. #6, ¶164 and Exhibit 37).

9

Plaintiff provided a plethora of evidence showing that Williams knew or should have known that her conduct was causing M.H. significant emotional distress, that M.H. wanted her father imprisoned, that M.H. feared her father being on probation, that M.H. only felt safe at her mother's home, that M.H. feared being returned to foster care and desperately did not want that to occur, and that M.H. dreaded the idea of even seeing her father or his mother. (Doc. #6, ¶¶158-159).

Williams had at her disposal an abundance of evidence that her conduct, including acting outside the scope of her duties, caused M.H. significant and discernable emotional distress. M.H.'s efforts at self-harm, records of M.H.'s two psychiatric hospitalizations, records from therapists, notes of FST meetings, and Williams' conversations with M.H. and Plaintiff all put Williams on notice that her conduct was harming M.H.  Williams' conduct created an unreasonable risk of emotional distress even though Williams was charged with advocating for the safety and wellbeing of M.H. By exercising ordinary care, Williams knew or should have known of that risk.

### D. Williams' Conduct Caused M.H. To Suffer Medically Diagnosable & Significantly Severe Emotional Distress

Williams was negligent when she ignored M.H.'s fragile mental state and M.H.'s mental health diagnoses of major depression, PTSD, and generalized anxiety. Williams exacerbated M.H.'s sexual abuse trauma and inflicted tremendous emotional distress on M.H. (Gillis, 832 F.3d at 875), to wit:

a. Williams' negligence (Doc. #6, ¶¶153-154, ¶159) caused M.H. excruciating pain and the deterioration of M.H.'s mental state. Dr. Bost, M.H.'s pediatrician, and Dr. Marks, M.H.'s therapist, diagnosed M.H. with severe depression, Post Traumatic Stress Disorder, and Anxiety. (Doc. #6, ¶143-144, Exhibit 27, ¶151 and Exhibit 31).

b. On September 8, 2017, Dr. Marks stated that "M.H. has been sexually abused by her biological father." Dr. Marks diagnosed M.H. with Post-Traumatic Stress Disorder, Major Depressive Disorder, and Generalized Anxiety Disorder. (Doc. #6, ¶151 and Exhibit 31). Dr. Marks stated that "**the pressure placed on M.H. by the GAL was the major factor leading to her death by suicide. M.H. could have been protected and her life could have been saved but for the actions of the GAL**." (Doc. #6, Exhibit 45).

10

Williams' negligence (Doc. #6, ¶¶153-154, ¶159) caused M.H. excruciating pain and the deterioration of M.H.'s mental state. Recently, the Eastern District Court of Appeals examined Kivland *supra* in Clark v. SSM Healthcare, 2023 Mo.App. Lexis 139, ED110638 (Mo. App. E.D. Mar. 7, 2023) in which a 14-year-old child hung herself after she was discharged from the hospital shortly after being admitted.

The hospital argued that the doctors were entitled to judgment on the pleadings because the doctors did not cause the teen's death. The Court of Appeals disagreed holding that the hospital's psychiatric evaluation and the decision to discharge the teen from the hospital fell below the standard of care for healthcare providers under the same or similar circumstances and it was for the jury to decide whether the hospital caused or contributed to cause the child's death. 2023 Mo.App. Lexis at *9, 17-18. Consistent with Kivland *supra* and Clark *supra*, Plaintiff has sufficiently alleged that Williams caused M.H. medically diagnosable and significantly severe emotional distress which resulted in her death.

### IV.    Williams' Arguments of No Liability Fail Under Missouri Law

Williams contends (pg. 11) that she owed no duties to M.H., but that Williams' "principal allegiance remained with the court" and that Williams is not liable (pg. 7) "under any theory of tort." That argument fails for the reasons stated above. Williams' argument cannot be reconciled with the large body of Missouri statutory and case law, and the GAL Standards. See RSMo. 452.375, RSMo. 452.455.2, RSMo. 452.423.2, Baumgart *supra*, and Bird *supra*.

This Court found as a matter of law that Williams became involved in the non-custody criminal proceeding in which M.H. and M.S.H. were asked to testify as victims of Charles' sexual abuse. Williams' conduct intended to prevent M.H.'s, M.S.H.'s, and Plaintiff's testimony went beyond the scope of Williams' duties in Plaintiff's divorce case. At the very least, in directing her conduct toward M.H., Williams had a duty not to act negligently toward M.H. Stanturf v. Sipes,

11

447 S.W.2d 558 (Mo. 1969). Williams' negligent conduct which encompasses threats, however, was outside the scope of her duties. For that reason, Williams is liable to M.H.

In advancing her "no liability" argument, Williams misquotes (pg. 7) Tolu v. Reid, 639 S.W.3d 504, 520, fn. 13 (Mo. App. E.D. 2022) when stating "we question whether an alleged violation of the Missouri Rules of Professional Conduct … or GAL Regulations would support a private right of action for damages against a GAL, even in the absence of quasi-judicial immunity."[4]  Williams raised the same argument in her Motion to Dismiss. This Court reviewed that argument and ruled against Williams.  Threatening M.H., a child victim of sexual abuse, with placing the child victim in foster care or worse in the custody of her sexual abuser, if the child or her mother or stepsister testified about sexual abuse at the abuser's criminal trial, is different from the GAL's conduct described in Tolu. (Doc. #61, pg. 16).

Williams argues (pg. 10) that Plaintiff's wrongful death claim fails because it is based "on allegations that a defendant **[Williams] intentionally** breached her duties and **caused a minor decedent's [M.H.] death, i.e.**, that Williams breached and violated her GAL duties by threatening M.H. with her and her sister's placement in foster care or juvie to prevent M.H. from testifying against Charles in his criminal case. (Doc. #6, ¶195(a),(b),(c),(d) and (m))." [Emphasis added]. As shown above, Williams' threats were a part of Williams' misguided violations of the standard of care for a GAL of trying to reconcile M.H. with her sexual abuser.  If highly skilled and licensed professionals such as lawyers, doctors, engineers, and architects, who provide services for compensation fail to provide their services according to the skill, ability, and professional competence ordinarily established for their professions, these professionals may be found liable

---

[4] The actual footnote quote from Tolu v. Reid is:
> Moreover, **we question whether** [**GAL's release of the party's medical record to a court-appointed therapist**] an alleged violation of the Missouri Rules of Professional Conduct, HIPPA, or GAL Regulations would support a private right of action for damages against a guardian ad litem, even in the absence of quasi-judicial immunity. **We need not resolve that issue, however.** 639 S.W.3d at 520 n.13.

for negligent performance of their services. Aetna Ins. Co. v. Hellmuth, Obata & Kassabaum, Inc., 392 F.2d 472, 477 (8th Cir. 1968).[5] Plaintiff alleged that Williams violated the standard of care for a GAL by her actions.

To bolster her "intentional tort" argument, Williams cites Harvey v. Great Circle, 2021 WL 4552135, at *3 (E.D. Mo. Oct. 5, 2021) (pg. 10). In Harvey, the plaintiff's count I, wrongful death based on general negligence, and count II, wrongful death based on general intentional tort were based on the same factual allegations. The court dismissed count II finding that the plaintiff only pled facts to support recovery for wrongful death based on negligence. 2021 WL 4552135, at *3. Williams also cites Jones v. Marshall, 750 S.W.2d 727 (Mo. App. E.D. 1988) (victim compensated as a result of intentional tort and alternative negligence count dismissed) and Wenzel v. Storm, 2019 WL 555144 *3 (E.D. Mo. Feb. 12, 2019) (held that a policeman acted within the scope of his duties) both similar to Harvey *supra*. Williams misstates (pg. 10) that Plaintiff "combined two contradictory and mutually exclusive theories of tort liability (negligent and intentional conduct) into a single count." That is not the case. Plaintiff's allegations support a claim for negligent infliction of emotional distress. Plaintiff has not pled both negligence and intentional tort.

Williams also cites Black's Law Dictionary that the word "threat" is defined as "[a] communicated intent to inflict harm or loss on another or another's property." The word "threat" has 20 connotations, and the verb "to threaten" has 32 connotations, many of which do not contain an intent to inflict harm, but encompass negligent and hasty conduct. [6] Per Burton's Legal Thesaurus, 1232 (2nd ed. 1992) the verb "to threaten" means:

---

[5] "In professional negligence cases, . . . the specific duty is defined by the profession, itself." Rosemann v. Sigillito, 956 F.Supp.2d 1082, 1110 (Mo. E.D. 2013).

[6] Per www.thesaurus.com/browse/threat the synonyms for "threat" are warning, danger, blackmail, hazard, intimidation, menace, peril, risk, bluff, commination, fix, foreboding, foreshadowing, fulmination, impendence, omen, portent, presage, thunder, writing on the wall.
Per www.thesaurus.com/browse/threaten the synonyms for "threaten" include to intimidate, menace, scare, abuse, admonish, augur, blackmail, bluster, browbeat, bully, caution, comminate,

(1)     menace, endanger, imperil, frighten, scare, terrify, alarm, fill with unease, warn, put on one's guard, caution, give fair warning; Informal. Tip-off, comminate; intimidate, daunt, terrorize, cow; brow-beat, bully, thunder at, yell at, fulminate, read the riot act, snarl, growl, rattle one's sabers, bark; lower, glower scowl.

(2)     tower over, hangover, beetle; impend, loom be imminent; portend, bode, forebode, presage, forewarn, augur, foreshadow, be in the air, be in the offing.

Williams cited no statutory or case law on what constitutes a threat in Missouri. Many threats do not rise to the level of intentional threats as Williams argues. For this reason, Williams' arguments that Plaintiff cannot recover from Williams under Count I fail.

### V.    Conclusion

Plaintiff pled sufficient facts to support Plaintiff's plausible claims under Missouri wrongful death statute. Williams owed a duty of care to protect M.H. from harm under Missouri statutes, rules, regulations, the standard of care for a GAL, and case law. In the course of violating the standard of care for Missouri GALs, Williams acted outside the scope of her duties knowing of and/or presented with evidence of M.H. being sexually abused, her prior suicidal attempts, her fragile mental health, and her diagnoses of major depression, PTSD, and general anxiety. Williams thereby caused M.H. severe emotional distress which led to M.H.'s suicide. Plaintiff alleged sufficient competent evidence to defeat Williams' motion for judgment on the pleadings. This Court should deny Williams' motion. Plaintiff's claims should proceed to a jury trial.

| | |
|---|---|
| */s/ Laurence D. Mass* | */s/ Evita Tolu* |
| Laurence D. Mass  #30977 | Evita Tolu, #49878 |
| 230 South Bemiston, Suite 1200 | 1 Crabapple Court |
| St. Louis, Missouri  63105 | St. Louis, Missouri 63132 |
| Phn:   (314) 862-3333, Ext. 20 | Phn:   (314) 323-6022 |
| Fax:   (314) 862-0605 | Fax:   (314) 207-0086 |
| laurencedmass@att.net | evitatolu@outlook.com |
| Attorney for Plaintiff | Attorney for Plaintiff |

---

cow, enforce, forebode, forewarn, fulminate, growl, portend, presage, pressurize, scowl, snarl, spook, terrorize, torment, flex muscles, look daggers, make a threat, push around, shake a fist at, and walk heavy.

14

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that a copy of the foregoing document was filed electronically with the Clerk of the Court to be served to all counsel by operation of the Court's electronic filing system on the 16th day of March 2023.

/s/ Evita Tolu  
Evita Tolu
