IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

CYNTHIA K. HAYNES (a/k/a Cynthia K. Randolph), individually and under the Missouri Wrongful Death Statute

Plaintiff,

vs.

JENNIFER WILLIAMS, individually, et al.

Defendants.

Case No: 1:21-CV-00160-ACL

**WILLIAMS DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF HER MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT I OF PLAINTIFF'S AMENDED COMPLAINT**

Defendants Jennifer Williams and Jennifer Williams, d/b/a Williams Law, (individually and collectively, "Williams") herby submits their Reply to Plaintiff's Response to Williams' Motion for Judgment on the Pleadings and states as follows:

## INTRODUCTION

Count I of the Amended Complaint is the sole remaining count of the complaint directed at Williams, and is titled "Wrongful Death – Acting Outside the Scope of GAL Duties." Williams' served as the court-appointed guardian ad litem ("GAL") in Plaintiff's divorce and M.H.'s subsequent juvenile case.

On March 16, 2023, Plaintiff filed her Response to Williams' Motion for Judgment on the Pleadings ("Response Memorandum") (Doc. 118). The Response Memorandum fails to point this Court to any Missouri case that has found that a GAL can be held liable for "acting outside the scope of GAL duties." Instead, Plaintiff argues, for the very first time in these proceedings, that Count I of the Amended Complaint is a wrongful death claim premised on Negligent Infliction of

Emotional Distress ("NIED"). Williams has been unable to locate any Missouri case holding that an NIED claim can form the basis of a wrongful death action. Nevertheless, the Amended Complaint does not state a plausible claim for NIED against Williams. Plaintiff has failed to sufficiently allege that Williams owed M.H. a duty of care by serving as a court-appointed GAL. No Missouri court has permitted a negligence-based claim to proceed against a GAL. For this Court to recognize such a claim in this case would change the landscape of well-established Missouri law.

Additionally, Williams' "witness tampering" and threats cannot form the basis of NIED claim. This conduct amounted to "intentional" acts, not "negligence." Accordingly, Plaintiff has failed to sufficiently plead a plausible claim against Williams under the Missouri Wrongful Death Act, Williams is entitled to judgment in her favor as a matter of law.

## ARGUMENT

### I. Count I does not allege a NIED claim.

The Response Memorandum concedes that Missouri does not recognize a cause of action for "acting outside the scope of GAL duties." Plaintiff now argues that the Court should ignore the "sub-title" of Count I of the Amended Complaint and focus solely on the "substance" of the complaint for purposes of Williams' motion for judgment on the pleadings. But Plaintiff does not cite a single case where a court found its proper to disregard the "sub-title" of a plaintiff's claim in response to a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

Instead, Plaintiff cites *Cone v. Kolesiak*, citing 571 S.W.3d 64 (Mo. Ct. App. 2019), a Missouri appellate case that arose from a dissolution of marriage proceeding in which the court assessed post-trial motions filed by the parties. (Doc. 118, at 2). It is unclear why Plaintiff believes *Cone* case is instructive with respect to the sufficiency of her claim against Williams under federal pleading standards. Plaintiff cites multiple federal cases that have no factual or legal application

to this case and fail to support the contention that the "sub-title" of her claim is immaterial to the court's analysis of a Fed. R. Civ. P. 12(c) motion. (*See* Doc. 118, at 2) (citing *Engel v. Modoc*, 2021 WL 1721169 *4-5 (E.D. Mo. Apr. 2021)(holding that a "frivolous and malicious" lawsuit must be dismissed because the pro se plaintiff failed to state a claim for relief against under §1983); *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017)(affirming district court's order granting motion to dismiss plaintiff's contract and negligence claims under Fed. R. Civ. P. 12(b)(c) for failing to plead sufficient facts to state plausible claims for relief); *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015)(affirming the district court's denial of summary judgment of §1983 claim based on qualified immunity)). Notably, this Court has recognized that the "title" of a claim may be analyzed to determine whether a plaintiff's cause of action is viable in a Fed. R. Civ. P. 12(b)(6) motion. *See Harvey v. Great Circle*, 4:19-CV-00902 NAB, 2021 WL 4552135, at *3 (E.D. Mo. Oct. 5, 2021)(holding that a claim titled "Wrongful Death – Intentional Tort" failed to state a claim for relief and observing that "Missouri does not recognize a general cause of action for intentional tort, nor does it recognize a wrongful death cause of action for intentional tort."))

Plaintiff argues that Count I of the Amended Complaint states an actionable wrongful death claim against Williams because Plaintiff "plausibly plead a claim for negligent infliction of emotional distress which caused M.H.'s death." (Doc. 118, at 3). However, the Response Memorandum does not cite any specific allegations in the Amended Complaint that would support this contention. Moreover, Plaintiff offers no legal authority for her supposition that an NIED claim can form the basis of cause of action under the Missouri Wrongful Death Act.[1]

But assuming *arguendo* that an NIED claim can form the basis of a wrongful death claim under Missouri law, there is no question that "[t]he tort of negligent infliction of emotional distress

[1] Williams has been unable to find any Missouri state or federal case that has permitted a NIED claim under the Missouri Wrongful Death Act.

is a negligence action." *Franklin v. Pinnacle Entm't, Inc.*, 2012 WL 6870447, at *12 (E.D. Mo. 2012) (quoting *Thornburg v. Federal Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001)). Thus, as with any negligence claim, an NIED plaintiff must "establish that the defendant **had a duty to protect the plaintiff from injury**, the defendant failed to perform that duty, and the plaintiff's injury was proximately caused by the defendant's failure." *Franklin.*, 2012 WL 6870447, at * 12 (quoting *Jarrett v. Jones*, 258 S.W.3d 442, 448 (Mo. banc. 2008)(emphasis added). "A plaintiff claiming NIED cannot, therefore, lose sight of the most basic requirements of an allegation of negligence: that the defendant owed the plaintiff a duty of care and breached that duty." *Emerson v. Capital One, NA*, 2021 WL 1088115, at *5 (E.D. Mo. 2021) (citing *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 400 (Mo. Ct. App. 2015)); *Gillis v. Principia Corp.*, 111 F. Supp. 3d 978, 988 (E.D. Mo. 2015), *aff'd*, 832 F.3d 865 (8th Cir. 2016)(noting that a Missouri NIED claim includes all of the traditional elements of a negligence claim – *e.g.*, duty, breach, causation, damages - and must two additional elements that are specific to a NIED claim).

Further, in addition to having to prove the traditional elements of a negligence claim, an NIED plaintiff must prove ***two additional elements*** to recover against a defendant: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing distress and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Franklin.*, 2012 WL 6870447, at * 12. Plaintiff fails to plead both elements in Count I.

Count I of the Amended Petition does not allege a plausible claim for NIED nor does Plaintiff plausibly allege that M.H. could have maintained an NIED claim under Missouri law against Williams. Accordingly, Williams is entitled to judgement on the pleadings as a matter of law.

### A. Count I fails to state a claim for NIED because Plaintiff has not established that Williams owed a duty to protect M.H. from harm.

The Response Memorandum insists that the Amended Complaint has "pled ample facts that Williams owed a duty of care to protect M.H." (Doc. 118, at 5). Plaintiff argues that Williams' "duty of care to protect M.H from harm" is prescribed by various Missouri statutes, rules, regulations, and case law that set forth the duties that a GAL must perform in a child custody case. Plaintiff insists that theses GAL obligations form the basis of a duty of care to protect a child from harm. (Doc. 118, at 2-5).[2] However, while there is no question that a Missouri GAL's obligations are "duties" owed to the trial court, Plaintiff offers this Court no legal basis to conclude that a GAL simultaneously owes a duty of care to a child in a custody case.[3]

Plaintiff cites to a string of Missouri family law cases involving GALs and suggests that these cases hold that a GAL owes duty of care to a child. (*See* Doc. 118, at 3-5)(citing *Baumgart v. Baumgart*, 944 S.W.2d 572 (Mo. Ct. App. 1997), *as modified* (May 27, 1997); *Keling v. Keling*, 155 S.W.3d 830 (Mo. Ct. App. 2005); *Taylor v. Taylor*, 60 S.W.3d 652 (Mo. Ct. App. 2001)). But none of these cases hold that a GAL owes a duty of care to a child, *let alone* that a GAL can be liable to a child for NIED.

*Baumgart* involved a mother's appeal of a trial court order denying her motion to modify the custody provisions of her divorce judgment. *Baumgart*, 944 S.W.2d at 573. The court reversed and remanded the case because, among other things, it found that the record failed to establish the GAL adequately investigated or took steps to determine the best interests of the children. *Id*. at

---

[2] The Response Memorandum argues that Williams' threats were "done in the context of Williams acting as the GAL." (Doc. 118, at 8). But this Court previously determined that Williams' threats were not "within the realm of GAL duties." (Doc. 61, at 20-21). Accordingly, Plaintiff essentially asks this Court to reconsider its finding as to the scope of a GAL's duties, and accordingly, Williams' right to quasi-judicial immunity from civil liability in this case.

[3] The Response Memorandum's accusation that Williams' "misquotes" *Tolu v. Reid*, 639 S.W.3d 504, 520, fn. 13 (Mo. Ct. App. 2022) is not well taken. The *Tolu* court's discussion is accurately cited to reflect that the Court expressed skepticism as to whether a GAL's violation of standards and ethics that govern a GAL's conduct can give rise to tort liability.

574-580. As the *Baumgart* court noted, the "judge is required to ensure that the guardian ad litem discharges his duties." *Id.* at 579 (citing R.S.Mo. § 452.423.3). It held that the failure of the guardian to do so here deprived **the court** of independent evidence which would help it assess the validity of the charges of abuse and the appropriateness of returning custody. *Id.* The *Baumgart* court did not hold that the GAL's failure to discharge his duties breached a common law duty of care the GAL owed to the children in the case.

*Keling* also involved an appeal by a mother in a dissolution of marriage case where a judgment granted the father sole legal and physical custody of the couple's children. *Keling*, 155 S.W.3d at 832. The appellate court reversed the judgment because it found that the trial court committed plain error by ordering that the GAL be released from its duties prior to the hearing because the issues in the case "begged for careful consideration by the appointed [GAL.]" *Id*. at 835. The Court did not find that the GAL engaged in any tortious conduct that would form the basis of negligence claims if a GAL violated her duties to a child.

In *Taylor*, the appellate court held the trial court erred in a dissolution of marriage case because failed to appoint a GAL *sua sponte* when there were allegations by both parents that the children had been abused. *Taylor*, 60 S.W.3d at 655. *Taylor* does not hold that the child can maintain a private right of action against a GAL or that the GAL owes a duty to care to the child.

Plaintiff also cites *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 385 (Mo. Ct. App. 1993), as support for her theory that Williams' owed a duty of care to protect M.H. (Doc. 118, at 4-5). Plaintiff's reliance on *Bird* for that proposition is misplaced. The *Bird* court did <u>not</u> consider whether the plaintiff's allegations satisfied the element of "duty" for purposes of a tort claim. Rather, the *Bird* court considered only whether a Missouri GAL is entitled to quasi-judicial

immunity from civil liability for conduct that falls within the scope of her duties. *Bird*, 864 S.W.2d at 385 (Mo. Ct. App. 1993). *Bird* held:

> Missouri courts have consistently held that the duty of a guardian ad litem is to protect the best interests of the child. It is the guardian ad litem's duty to stand in the shoes of the child and to weigh the factors as the child would weigh them if his judgment were mature and he was not of tender years. The court is not bound by the opinion or recommendation of the guardian ad litem. Nevertheless, under our statutory scheme for adjudication of custody disputes, it is imperative that the guardian ad litem investigate and present its perspective to the trial judge, thereby enabling the court to render a decision in accordance with the statutory standard of "best interests of the child." Our review of these and other cases addressing the role of the guardian ad litem in custody disputes confirms that Missouri courts have consistently adhered to the traditional view that the guardian's principal allegiance is to the court.

*Id.* at 385 (citations omitted). The *Bird* court did not hold that a GAL's owes a duty of care the child, or that a GAL owes a duty of care to protect the child from her parents or herself.

Plaintiff contends that Williams' duty to M.H. should be analyzed by finding that a GAL's rule "encompasses" an attorney's role in representing a client. (Doc. 118, at 5). Plaintiff argues that a GAL owes a duty to a child because, "Missouri courts hold that a professional, such as an attorney, act negligently when they violate the standard of care for their profession." *(Id*., at 6). This Court has already determined that Williams did not have an attorney-relationship with M.H. because "[a] GAL is not a child's personal attorney; their principal allegiance is to the court." (Doc. 61, at 23) (citing *Bird*, 864 S.W.2d at 385). This Court should reject Plaintiffs attempt to recast her claim in Count I as analogous to a legal malpractice lawsuit.

The Response Memorandum also cites numerous cases involving allegations of negligence by medical professionals. (*See* Doc. 118, at 6 – 8)(citing *Albanna v. State Bd. of Registration for the Healing Arts*, 293 S.W.3d 423 (Mo. 2009) (disciplinary proceedings against physician for committing acts of negligence while treating patients); *Wickham v. Hummel*, 659 S.W.3d 345 (Mo. Ct. App. 2022)(malpractice action brought by patient against medical staff following injury he

sustained after knee replacement surgery); *Williston v. State Bd. of Nursing*, 610 S.W.3d 705 (Mo. Ct. App. 2020) (action by birthing center operator against Nursing Board seeking reversal of the revocation of her Certified Nurse Midwife license); *Blake v. Irwin*, 913 S.W.2d 923 (Mo. Ct. App. 1996)(malpractice action brought by patient against dentist who suffered complications following oral surgery). But Plaintiff these cases do not hold that the standard of care owed by a physician establishes the standard of care owed by a GAL.

Plaintiff also cites the claims brought in *Kivland v. Columbia Orthopedic Grp., LLP*, 331 S.W.3d 299 (Mo. 2011) and *Clark v. SSM Healthcare St. Louis*, 2023 WL 2375207 (Mo. Ct. App. Mar. 7, 2023)[4] to support Plaintiff's her theory of liability against Williams in this case. But while *Kivland* and *Clark* are both wrongful death cases that arise from a suicide, that is where the similarities between those cases and Count I of the Amended Complaint end. *Kivland* and *Clark* were decided on summary judgment and arose from medical negligence cases, not NIED claims. *Kivland*, 331 S.W.3d 299 at *306-309; *Clark*, 2023 WL 2375207, at *2-4. And while there is no question that a physician owes a duty of care to when treating or diagnosing patients, there is no common law, statute, or other source of legal authority holding that a GAL's owes a duty of care to a child in a custody case. *Richardson v. Rohrbaugh*, 857 S.W.2d 415, 418 (Mo. Ct. App. 1993) ("The physician/patient relationship gives rise to the duty of care.").

Accordingly, Count I fails to state a claim for NIED because Missouri law does not support a plausible claim that Williams' role as GAL gave rise to a duty of care to protect M.H. from harm. Plaintiff is therefore entitled to judgment as a matter of law.

---

[4] *Clark* is not a reported decision nor final. On March 22, 2023, the *Clark* respondents filed an application for transfer to the Missouri Supreme Court which remains pending.

**B. Plaintiff's NIED theory also fails because Missouri does not recognize Plaintiff's theory that Williams owed M.H. a general duty of care "not to act negligently."**

The Response Memorandum also suggests that Plaintiff can premise a wrongful death action against Williams on an NIED claim because Williams' threats violated a duty that Williams owed M.H. "not to act negligently." (Doc. 118, at 4). Plaintiff supports this contention with the following rationale:

> When a person acts directly against another, even if they had no previous relationship, i.e. causing an automobile accident, a duty is imposed on that person not to act negligently. *Zuber v. Clarkson Constr. Co*., 251 S.W.2d 52, 55 (Mo. 1952). This basic principle reinforces Williams' duty towards M.H. (*Id.* at p. 5).[5] According to Plaintiff, because Williams' directed her threats to M.H., Williams "had a duty not to act negligently."

(*Id.* at 5, 11).

Plaintiff's theory that the Missouri common law recognizes a general duty "not to act negligently" has no merit. In *Couzens v. Donohue*, the Eighth Circuit recognized that the plaintiff failed to sufficiently state a claim for NIED under Missouri law that was premised on the same theory of duty that is described in the Response Memorandum. *Couzens*, 854 F.3d at 508 (8th Cir. 2017). In *Couzens,* the plaintiff attempted to state an NIED claim by alleging that the "[d]efendants owed plaintiff a duty to not cause [him] damage by engaging in tortious and injurious actions." *Couzens,* 854 F.3d at 518. The Eighth Circuit found that this "general assertion does not describe a legally recognized duty of care" that exists in Missouri, and affirmed the trial court's dismissal of the NIED claim on those precise grounds. *Couzens*, 854 F.3d at 518 -519. Nevertheless, Plaintiff insists that Williams' common law duty to "not to act negligently" is recognized by *Zuber v. Clarkson Const. Co*. 251 S.W.2d 52 (Mo. 1952) and *Stanturf v. Sipes*, 447 S.W.2d 558 (Mo. 1969). These cases do not support that contention and are inapposite.

[5] There are no allegations in Count I of the Amended Complaint concerning Williams' alleged "duty not to act negligently."

*Zuber* was a wrongful death action brought against a construction company by the mother and children of a man killed by a large earth-moving tractor.[6] *Zuber v. Clarkson Const. Co*. 251 S.W.2d at 53-55. The tractor was left unattended on a worksite by the company. *Id*. A third-party meddled with the tractor without the company's permission and accidentally crushed the decedent. *Id*. The plaintiff alleged that the construction company had "actual knowledge" that people meddled with the machine prior to the decedent's death. *Id*. at 55-56. The *Zuber* court held that the construction company owed a duty of care to prevent the accident because it left the machine in a public place had "actual knowledge" that people tampered with the machine before the accident. *Id*. at 56.

In *Stanturf*, the plaintiff brought an action for damages against a private hospital who allegedly refused him medical treatment and subsequently lost his feet by amputation. *Stanturf v. Sipes*, 447 S.W.2d at 558-561. The *Stanturf* defendants argued that summary judgment was proper because (among other things) a private hospital owed no duty to admit anyone as a patient. *Id*. at 561. The court found that summary judgment was not proper because it was unclear from summary judgment whether the private hospital assumed a duty of care to plaintiff based on how it operated its emergency room. *Id*. at 561- 563.

Accordingly, Count I fails to sufficiently allege facts to support a wrongful death claim for NIED because Missouri does not recognize a general duty of a GAL or anyone "to not act negligently."

---

[6] The Response Memorandum implies that *Zuber* involves "an automobile accident." (Doc. 118, at 5). It does not. But if it did, there is no question that Missouri courts recognize that a motorist owes a duty of care to the public while operating an automobile on public roadways. *See Zempel v. Slater*, 182 S.W.3d 609, 619 (Mo. Ct. App. 2005)("Every motorist operating a vehicle must "exercise the highest duty of care to maintain a careful lookout ahead and laterally upon entering an intersection.")(internal quotation omitted) Conversely, there is no legal authority to support Plaintiff's belief that a Missouri GAL owes a duty of care to a child in a custody case.

**II. Plaintiff cannot rely on NIED claim to state a cause of action against Williams for wrongful death action because liability for NIED does not extend to threats.**

The Response Memorandum argues that Plaintiff has a viable wrongful death claim against Williams for threatening M.H. because these threats "caused M.H. excruciating emotional pain, loss of dignity, and [the] deterioration of M.H.'s mental health." (Doc. 118, at 8-11). Plaintiff claims the alleged threats were outside of the scope of GAL duties and give rise to the NIED claims.

This Court previously recognized that a plaintiff failed to state a claim for NIED under Missouri law because "[l]iability for infliction of emotional distress does not extend to mere insults, indignities, **threats**, annoyances, petty oppressions, or other trivialities." *Bender v. Boyreau*, 2021 WL 5451390, at *8 (E.D. Mo. 2021) (dismissing a negligent infliction of emotional distress claim under Missouri law)(emphasis added)(quotations and citations omitted). The Response Memorandum fails to offer this Court any legal reason why Count I should be an exception to the rule that there can be no liability for infliction of emotional distress caused by "threats."

The Response Memorandum repeatedly cites *Gillis v. Principia Corp.*, 832 F.3d 865 (8th Cir. 2016) as authority for the proposition that Plaintiff has stated a claim for relief for NIED against Williams. (Doc. 118, at 3, 8, and 10). It is unclear why; as the Eighth Circuit held that the *Gillis* plaintiff *failed* to state a claim for relief for NIED. *Gillis*, 832 F.3d 865 at 875-76 (holding that a student failed to sufficiently allege facts to support the elements of a claim for NIED and intentional infliction of emotional distress against her private college under the theory that it failed to address her possible terminal illness).

The Response Memorandum argues that Williams' threats "do not rise to the level of intentional threats." (Doc. 118, at 14). But this contention is not supported by the allegations in

the Amended Complaint. To support her claim against Williams in Count I, Plaintiff alleges that Williams repeatedly threatened M.H. with the purpose of producing specific consequences, *i.e.*, preventing M.H. from testifying against Charles in his criminal case. (Doc. 6. at ¶¶ 102, 103, 133,154, 158, 159, 168, 178, 182, 184, 186, 194 (a) – (d), (m)); *See* RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM§ 1 (2010)) ("A person acts with the intent to produce a consequence if: (a) the person acts with the purpose of producing that consequence; or (b) the person acts knowing that the consequence is substantially certain to result)). Accordingly, there is no dispute that Amended Complaint alleges Williams conduct was intentional because it was undertaken with a purpose—to assist Charles Haynes in his criminal case and thereby obtain custody or visitation with his daughters.[7]

The Response Memorandum insists that Williams' threats were not intentional but were simply the "negligent" and "misguided" acts of an incompetent GAL. (Doc. 118, at 8, 12). Plaintiff's representation to this Court that Williams' threats were "negligent" is confounding. Plaintiff has characterized Williams's threats as criminal conduct and a violation of the Missouri Witness Tampering Statute, §575.270.1, R.S.Mo.[8] (*See* Doc 44, at 8-12). For Plaintiff to suggest now that Williams' acts were "misguided", but unintentional, is specious. Plaintiff's entire theory of liability in this case is that Williams' threatened M.H. with a because she intended the

---

[7] Williams vehemently denies that she ever threatened M.H. or ever took any steps which were not in the best interests of M.H.

[8] Section §575.270.1 states its criminal:

> **(1) With the <u>purpose</u> to induce a witness or a prospective witness** to disobey a subpoena or other legal process, absent himself or herself, avoid subpoena or other legal process, withhold evidence, information, or documents, or testify falsely, he or she
> (a) Threatens or causes harm to any person or property; he or she:
> (b) Uses force, threats or deception [.].

(emphasis added).

consequences of an act. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998)("Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'")(citation omitted).[9] Nevertheless, Plaintiff insists that Williams threats were negligent because they "were an integral part of Williams' negligently performing her GAL duties in this case." (Doc. 118, at 8). Based on that rationale, if a GAL physically attacked a child in a custody case, and the GAL committed other acts of negligence during the case, the attack on the child would be transformed into an act of "negligence." This is impossible because an intentional act cannot be negligence. *See Martin v. Yeoham*, 419 S.W.2d 937, 945 (Mo. Ct. App. 1967)("Allegations of facts constituting a cause of action for personal injury willfully inflicted will not, therefore, be supported by proof of an injury negligently committed.")(quoting *McLaughlin v. Marlatt*, 246 S.W. 548, 630 (Mo. 1922)).

Accordingly, Williams is entitled for judgment on the pleadings because, among the other reasons set forth herein, liability for NIED does not extend to threats.

**CONCLUSION**

Count I of the Amended Complaint fails to state a claim for relief under the Missouri Wrongful Death Act. Plaintiff has failed to sufficiently allege facts that establish M.H. could have maintained a cause of action for damages against Williams' if M.H. had survived her suicide. Williams did not owe a duty of care to M.H. by serving as the GAL in the underlying divorce and juvenile case. Moreover, Williams' alleged threats were undeniably "intentional" conduct because they were undertaken to bring about specific consequence *i.e.*, to prevent M.H. from testifying

---

[9] This Court has already recognized that Missouri Witness Tampering Statute does not create an independent civil action for damages. (Doc. 101, p. 8).

against Charles. Accordingly, the Count I of the Amended Complaint cannot be construed as forming the basis of a claim for NIED.

Plaintiff has made clear during these proceedings that she is seeking to recover damages from Williams for "witness tampering." Missouri does not recognize civil liability for "witness tampering", and Plaintiff cannot will Williams' liability in tort into existence. While M.H.'s death is a tragedy, Plaintiff has failed to sufficiently establish a theory of liability that would result in Williams' liability for wrongful death. Williams is therefore entitled to judgment on the pleadings as a matter of law.

Respectfully submitted,

ROBERTS PERRYMAN, P.C.

By: *_/s/ Susan M. Dimond_*

Richard C. Wuestling, #30773MO
Susan M. Dimond, #57434MO
Dustin L. Goldberger, #70080MO
1034 S. Brentwood, Suite 2100
St. Louis, Missouri 63117
Phone: (314) 421-1850
Fax: (314) 421-4346
rwuestling@robertsperryman.com
sdimond@robertsperryman.com
dgoldberger@robertsperryman.com

**Attorneys for Defendants Jennifer Williams and Jennifer Williams d/b/a Williams Law**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2023, the foregoing was electronically filed with the Clerk of the Court using CM/ECF electronic filing system which will send notification of such filing to the following and email to all counsel of record.

Laurence D. Mass laurencedmass@att.net
Evita Tolu evitatolu@outlook.com
***Attorneys for Plaintiff***

Thomas W. Collins, III tcollins@blantonlaw.com mailto:tcollins@blantonlaw.com
***Attorneys for Spain, Miller, Galloway & Lee, LLC***

Cira R. Duffe duffe@hdp-law.com
***Attorney for Defendant Charles Haynes***

*/s/ Susan M. Dimond*