IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI - SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA HAYNES (a/k/a Cynthia Randolph) ) | |
| Plaintiff, ) | |
| v. ) | Case No: 1:21-CV-00160-ACL |
| ) | |
| JENNIFER WILLIAMS, individually, et al. ) | |
| Defendants. ) | |

**PLAINTIFF'S SURREPLY TO DEFENDANT WILLIAMS' MOTION FOR JUDGMENT ON THE PLEADINGS**

COMES NOW Plaintiff and in support of her Sur-reply states that Plaintiff has sufficiently pled that as a court-appointed Guardian ad Litem (GAL), Williams owed M.H. a duty of care to protect M.H. from harm. In Missouri, GALs are mandated to represent the best interests of a child when there are allegations of child abuse. Plaintiff did not ask to create a new cause of action "of acting outside the scope of GAL duties" as Williams misrepresents.[1] Bird v. Weinstock, 864 S.W.2d 376, 386 (Mo. App. E.D. 1993) explained that a GAL could be found negligent for the conduct outside the scope of the GAL's duties holding that immunity "attaches only to conduct within the scope of the GAL's duties." Recently, the Court of Appeals affirmed the same in Tolu v. Reid, 639 S.W.3d 504, 518 (Mo. App. E.D. 2021).

Plaintiff pled that Williams' reckless and negligent conduct of (1) intimidating and threatening M.H. while reunifying M.H. with her abusive father, (2) preventing M.H. from testifying in her father's criminal case about the sexual abuse M.H. had suffered; and (3) advocating and testifying for Charles Haynes (Haynes), M.H.'s father, a convicted sex offender in his criminal trial, were the acts outside the scope of Williams' GAL duties in the Haynes divorce and juvenile cases. Williams caused M.H. significant emotional distress and fear, leading to M.H.'s suicide. Plaintiff alleged numerous instances of Williams' negligence in inflicting emotional distress on M.H. of which Williams knew or should have known and which posed an unreasonable risk of distress to M.H. During Williams' tenure, M.H. was hospitalized twice for self-harm, suicide and diagnosed with major depression, PTSD, and anxiety. The

---

[1] Williams statement that Plaintiff "fails to point … any Missouri case" stating "a GAL can be held liable for acting outside the scope of GAL duties" is misleading.

1

negligent infliction of emotional distress (NIED) is a recognized cause for wrongful death claims in Missouri. Plaintiff cited the facts and law that Williams' negligence led to M.H.'s untimely tragic and senseless death. To find that Williams owed no duty of care to M.H. would make the Missouri Constitution, child protection laws, and established standards of care for GALs meaningless. It will protect Williams and other GALs who put Missouri children in peril and at risk of physical and sexual abuse, murder, and suicide[2] from being held accountable for their egregious acts. This Court would embrace lawlessness for GALs who hurt children and damage their parents. Enforcing the law and holding Williams accountable will 1)°ensure safety of Missouri children, 2) promote accountability among GALs, 3) uphold the integrity of our legal system, and 3) assure Missourians that our courts protect Missouri children from harm caused by negligent and reckless GALs like Williams.

## I.  Williams' Renewed "No Duty" Arguments Fail

"The ultimate object of every trial, which is to get at the truth," and failure to accurately report information to the parties and the court does not serve the interests of justice. State ex rel. McNutt v. Keet, 432 S.W.2d 597, 602 (Mo. *banc* 1968).  If this candor is absent, the legal system cannot properly function. Hale v. Cottrell, Inc., 456 S.W.3d 481, 489 (Mo. App. W.D. 2014). Williams' Response that "Plaintiff **did not allege** that Williams owed M.H. a duty of care while serving as a court-appointed GAL" and "Plaintiff offered **no legal basis** … that GAL owes a duty of care to a child in a custody case"[3] are inaccurate statements of fact and law that should be stricken. [Emphasis added].

---

[2] In Missouri, there is no entity or procedure to hold GALs like Williams accountable for their misconduct. The OCDC's position is that it does not have any jurisdiction over any GAL misconduct complaints. See attached **Exhibit A.**

[3] As the renowned journalist, Carl Sandburg once said, "if the facts are against you, argue the law. If the law is against you, argue the facts." Williams has neither the facts nor the law to support her position.  In her reply, Williams' factual attacks of the peripheral cases citing well-established legal principles, such as the substance over title argument in Cone v. Kolesiak, 571 S.W.3d 64 (Mo. App. 2019), GAL's duties owed to a child in Baumgart v. Baumgart, 944 S.W.2d 572 (Mo. App. 1997) and Taylor v. Taylor, 60 S.W.3d 652 (Mo. App. 2001) and the definition of a standard of care in Wickham v. Hummel, 659 S.W.3d 345 (Mo. App. 2022) are nothing more than a smokescreen to deflect attention from Williams' reckless conduct which caused M.H.'s death.

A. <u>Plaintiff Alleged Facts that Williams Owed M.H. a Duty of Care</u>

Plaintiff's Amended Complaint (Doc. #6) alleged and this Court had previously acknowledged (Doc. #61) that the divorce court appointed Williams to represent M.H.'s and S.H.'s best interests in the divorce as a result of Charles Haynes' (Haynes) allegations of educational neglect. Plaintiff provided facts concerning Williams' duty of care and Williams' direct involvement with M.H. in the following Amended Complaint paragraphs (Doc. #6): ¶6, ¶¶8-10, ¶13, ¶¶45-48, ¶¶51-52, ¶¶54-59, ¶¶61-64, ¶¶70-71, ¶¶73-74, ¶¶¶79-200 and the following Doc. #6 Exhibits: 1-3, Exhibits 7-8, and Exhibits 10-45.

B. <u>Plaintiff Provided Legal Basis that Williams Owed M.H. a Duty of Care</u>

Plaintiff provided ample legal authority that Williams owed M.H. a duty of care in the Amended Complaint *supra,* Plaintiff's Response to Williams' Motion to Dismiss*,* and Plaintiff's Response to Williams' Motion for Judgment on the Pleadings. Williams' assertion that "[t]he <u>Bird</u> court did not hold that a GAL owes a duty of care to the child, or that a GAL owes a duty of care to protect the child from her parents" does not help Williams. In <u>Bird</u>, (1) a GAL did not silence a sexually abused child begging the GAL to protect her from sexual abuse; (2) the GAL did not testify for a convicted child sex offender seeking his probation instead of incarceration; (3) the GAL did not threaten to place the child victim in the custody of the charged and then convicted sex offender if the child testified against him, and; (4) the GAL did not threaten to place the child victim in the "juvie" if the child's minor sister and the child herself testified about their sexual abuse.[4] In <u>Bird</u>, the sexual abuse allegations "conflict[ed] with or [were] refuted by the records filed … before this court." <u>Bird</u>, 864 S.W.2d at 386 n.9. Williams offered Plaintiff and the Court <u>no</u> information to refute Plaintiff's facts and Williams' conduct.

The <u>Bird</u> court noted that "**the role envisioned for the GAL in Missouri is a hybrid of the traditional [GAL] and attorney-client roles**." 864 S.W.2d at 385. [Emphasis added] The overriding consideration in family disputes is the welfare of a child. <u>In the Interest of A.S.W.</u>, 226 S.W.3d 151, 154. (Mo. 2007). The laws, regulations, and standards of GAL's profession are established to protect Missouri

---

[4] Williams never asked the divorce court to ratify Williams' conduct outside the scope of her GAL duties despite the court order requiring Williams to do that.

3

children and impose hybrid duties on GALs, which GALs owe to the court and the child. "The GAL has a duty to jealously guard the rights of children **which is the standard of duty in this state**." <u>Interest of J.L.H.</u>, 647 S.W.2d 852, 860 (Mo. App. W.D. 1983)(*citing* <u>Spotts v. Spotts,</u> 55 S.W.2d 977 (Mo. 1932)). [Emphasis added]. *See also* RSMo. 475.010(9), 475.375, 475.455, RSMo. 454, 455, and RSMo. 210-211.

Plaintiff's GAL standard of care expert, Ms. Shelly Reece, a Missouri licensed attorney, with twenty-two (22) years of experience as a Missouri GAL states "[t]he duty to serve as a GAL comes from the appointment from the court. The GAL appointment is mandatory in child custody cases where there are allegations of abuse and neglect. RSMo. 452.423 and 452.490)." **Exhibit B,** the Reece Report**,** pg. 2. Williams drafted the Court Appointment Order which stated:

> The GAL is vested by the Court with all **the powers**, privileges, and **responsibilities** necessary for **the full and effective performance of her duties and obligations to the minor children [M.H. and S.H.]**, and as such, shall <u>**faithfully**</u> discharge those duties**. If she is in doubt at any time as to the scope or limitation of this authority, she may apply to the Court on an emergency basis if necessary for clarification or **ratification of the authority and her acts as GAL.** [Emphasis added]. (Doc. #6 Exhibit 2.)

Plaintiff's GAL expert, Ms. Reece, states that:

> Defendant Williams asserts that she owed no duty or obligation to M.H., deceased and S.H., surviving sister, and that she only had a duty to the Court. This assertion violates her Order Appointing her to the role of GAL. Under a mandatory appointment due to abuse, it is clear in her Order that she is to represent the interests of the minor children and those interests are in part to protect these children from abuse. Abuse that was sexual in nature and actually happened to their older sister in the same home. **To assert that there is no duty to the girls, M.H. deceased and S.H. surviving sister is a gross misrepresentation of the first duty in which she [Williams] is appointed.** [Emphasis added]. **Exhibit B**, pg. 5.

The Reece Report analyzes the standard of care for Missouri GALs and examines in detail Williams' conduct as M.H.'s and S.H.'s GAL, concluding that Williams' conduct was outside the scope of her GAL duties because Williams

> [T]hreatened the minor child M.H. deceased, acted as a lawyer for Defendant Father, and testified for him to have probation in his criminal case-all actions that caused this child extreme emotional duress and was a proximate cause of death. Any standard of care for a reasonable person in this role is missing.
>
> A mother, father, a babysitter would have a gut feeling for a reasonable standard of care to offer protection, and here the GAL was appointed by the court to provide such care and more as a professional. This assignment is similar to a parent assigning a child's care to a bus driver, daycare personnel, teacher, coach, etc. there is an expectation of reasonable care for

4

the safety and welfare of the child, and when there are problems, the assigned adult is to take reasonable actions to protect the child. Here there is inaction, and actual words and deeds by the children's own GAL that fail a reasonable standard of care, fail to provide a professional level of care, and within and beyond her role as GAL harmed the children indicating a proximate cause to a child's death." **Exhibit B**, pg. 4.

Plaintiff's Amended Complaint, Exhibits, and the Reece Report offer plenty of reasons why Williams' request to dismiss Plaintiff's case is a disputed issue precluding Williams' judgment on the pleadings request. If there is disagreement over "material issues of fact the claimant is not entitled to judgment as a matter of law." Freeman v. Astrue, (4:09-CV-47), 2010 U.S. Dist. Lexis 570, *19 (Mo. E.D. Jan. 5, 2010) (citing Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002)). *See* Kivland v. Columbia Orthopedic Grp., LLP, 331 S.W.3d 299 (Mo. *banc* 2011) and Clark v. SSM Healthcare, 2023 Mo. App. Lexis 139 ED 110638 (Mo. App. E.D. March 7, 2023) (denying hospital's motion for judgment contesting duty and causation elements related to the hospital's discharge of a 14-year-old child who hung herself after the discharge).

**II.     Williams' New Arguments that Plaintiff Did Not Allege Facts To Support the NIED Fail**

Williams' statement that Plaintiff's "Response does not cite any specific allegations in the Amended Complaint that would support [NIED]" claim … and "Plaintiff fails to plead both elements [of NIED]" are deceiving. Plaintiff' Amended Complaint (Doc. #6) and Response (Doc. #118) allege that (1) Williams caused M.H. the NIED and (2) Williams should have realized that her conduct involved an unreasonable risk of causing distress to M.H., to wit:

- **Plaintiff's Amended Complaint (Doc. #6) NIED allegations are stated in**: ¶¶153-154, ¶190-196, ¶86 and ¶113, ¶¶94-96, ¶104, ¶104, ¶¶116-118, ¶¶121-126, ¶¶134-136, ¶¶142-144 and Exhibit 27, ¶¶153-154, ¶157, ¶163, ¶164 and Exhibit 37, ¶¶158-159, ¶151 and Exhibit 31, and Exhibit 45.

- **Plaintiff's Response (Doc. #118)**, pages 8 to 11 contain similar NIED facts and allegations.

Plaintiff's Amended Complaint's Exhibits with M.H.'s medical records show that M.H.'s NIED medical injuries were diagnosable, severe, and compounded by Williams' careless conduct:

1) Exhibit 4-DePaul Hospital diagnosis of depression, psychosocial stressors–father molested half-sister;

2) Exhibit 16, pg. 1-DePaul Hospital diagnosis of depression and self-cutting, M.H.'s wishes were for dad to be in jail;

5

3) Exhibit 18, pg. 2-Twin Rivers Regional Hospital's diagnoses Axis I–major depressive disorder with suicidal behavior, Axis IV–chronic mental health issues and coping skills;

4) Exhibit 24, pg. 1-Scott Foster, LPC, M.H.'s therapist diagnosed M.H. with major depressive disorder;

5) Exhibit 27-M.H.'s pediatrician, Dr. Bost, noted sexual abuse of a child, depression, and social discord, and conducted hcG, urine, STD, and HIV rapid screens;

6) Exhibit 28-Dr. Bost asked to stop the reunification of M.H. and S.H. with their father due to evidence of the father's sexual abuse of some of the daughters;

7) Exhibit 31-Dr. Marks, M.H.'s therapist diagnosed M.H. with PTSD, major depressive disorder, and generalized anxiety;

8) Exhibit 36–Dr. Bost stated that M.H. has been very stressed due to GAL demanding M.H. to testify against her mother and "GAL put her [M.H.] in harm's way having M.H. in dad's care in 2017 where there is suspicion of sexual abuse;

9) Exhibit 37-Dr. Marks notes that GAL comes to school to see M.H. to pressure her about an upcoming criminal trial related to sexual abuse and to pressure M.H. that she could go back into foster care if M.H. testifies against her father;

10) Exhibit 38, pg. 3-Dr. Marks states M.H. is a victim of her father and she is afraid to disclose sexual abuse; and

11) Exhibit 45 pg. 2–Dr. Marks concludes "**the pressure placed on M.H. by the GAL was the major factor leading to her death by suicide. M.H. could have been protected and her life could have been saved but for the actions of the GAL**." [Emphasis added].

Dr. Marks discusses M.H.'s mental health and diagnoses of PTSD, depression, anxiety, and sexual trauma and how Williams' conduct aggravated M.H.'s health leading to her suicide. **Exhibit C**, the Marks Report. He emphasizes M.H.'s extreme emotional pain and suffering caused by Williams' conduct of not protecting M.H. from harm while "[Williams] rallied for the sex offender ignoring the safety and wellbeing of Haynes' victims." (Id. at 5). He states that M.H. is "anxious, distressed, and in fear to return to foster care if MH or MSH are to testify against Haynes in his criminal case." (Id.) "GAL Williams' school visits [to threaten MH] caused MH more stress because school was no longer a safe place for MH" because of GAL's visits to school. (Id.) "[T]he GAL kept the juvenile cases open to have access to MH to prevent MH from testifying against her father at his trial." (Id.). "MH was very distressed that Williams told the courts and the Division that MSH, along with her mother, had fabricated sexual abuse perpetrated by Haynes." (Id.). "Rather than protecting MH from further harm, the GAL blamed MH and MSH,

6

invalidated MH's trauma, and silenced MH's concerns while advocating" for M.H.'s father. (Id. at 6). Dr.º Marks explains M.H.'s traumatic mindset on the day of her suicide:

> Learning that Williams would testify on Haynes' behalf at his sentencing hearing (on 11.26.18) asking for his probation instead of incarceration was the tipping point for MH's decision to take her life. … MH knew that if her father was on probation, her GAL would place MH and SH in the custody of MH's sexual abuser. If Haynes was given a jail sentence, then the GAL would put MH and SH in foster care as the GAL told MH repeatedly. MH had to protect herself and her sister from both outcomes. In her final act, MH took control of her life as her only way out (suicide 11.24.18). While alive MH knew she couldn't control her life. **MH exercised her final power to end her life to escape her sexual abuser, the GAL, and foster care**. [Emphasis added].

Dr. Marks concluded his report by stating:

> The GAL's conduct caused MH anxiety and fear. It compounded MH's trauma. The GAL's conduct added more trauma to the already existing trauma. Williams' actions …were outside the scope of her GAL duties. They were GAL's abuses of power and betrayal of MH's trust. Advocating for Haynes, before and after his conviction, intimidating and preventing MH from disclosing Haynes' sexual abuse to law enforcement and through MH's testimony in Haynes' criminal case was neglectful, careless, and reckless. Williams' conduct in this case from its inception until MH's death was the major factor that caused MH severe emotional distress that resulted in MH's suicide. Such a tragedy should have never happened and could have been avoided had Williams acted within the standard of care established for Missouri GALs. (Id.).

The NIED claim can form a basis of a wrongful death cause of action in Missouri. In Lewis v. Blue Springs Sch. Dist., (4:17-cv-538), 2017 U.S. Dist. Lexis 181671 (Mo. W.D. Nov. 2, 2017), a case directly on point, student's parents sued their son's school for wrongful death based on the NIED after their 15-year-old son, committed suicide as a result of the severe school bullying. Relying on federal and state precedents the court denied the school's motion to dismiss wrongful death suit based on the NIED holding that "absence of express reference to the elements does not mean that counts must be dismissed." (Id. at *16). "Courts must assess the plausibility of a given claim with reference to the allegations as a whole." Id. (*citing* Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The court held that the "inquiry is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" and "grant all reasonable references in favor of the nonmoving party." Id. (*citing* Lustgraaf v. Behrens, 619 F.3d 867, 872-73 (8th Cir. 2010)). Plaintiff requests this Court to do the same in denying Williams' Motion for Judgment on the Pleadings.

7

## CONCLUSION

For all of the above-stated reasons, Williams' Motion for Judgment on the Pleadings should be denied.

Respectfully submitted,

/s/ *Evita Tolu*
Evita Tolu, #49878
1 Crabapple Court
St. Louis, Missouri 63132
Tel.     (314) 323-6022
Fax     (314) 208-0086
evitatolu@outlook.com
Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was filed electronically with the Clerk of the Court to be served to all counsel by operation of the Court's electronic filing system on April 14, 2023.

/s/ Evita Tolu
Evita Tolu