IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CYNTHIA K. HAYNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:21-CV-160-ACL |
| | ) |
| JENNIFER WILLIAMS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the following related motions: the Motion to Quash Subpoena filed by non-party Matthew S. Edmundson (Doc. 136); the Motion to Compel of Defendants Jennifer Williams, individually, and Jennifer Williams d/b/a William Law (collectively "Williams") (Doc. 140); and Plaintiff's Motion to Quash Williams' Subpoena of Non-party Matthew Edmundson (Doc. 148). These motions are fully briefed and ripe for disposition.

**I.    Background**

This action stems from the tragic death of M.H., Plaintiff Cynthia K. Haynes' minor child, due to suicide. Defendant Williams, an attorney licensed in Missouri, was appointed guardian ad litem ("GAL") by the Circuit Court of Ripley County, Missouri, in the divorce case of M.H.'s parents, Cynthia and Charles Haynes. She served as GAL for M.H. from May 6, 2016, through November 24, 2018.

Relevant to the instant motions, Plaintiff asserts a wrongful death claim against Defendant Williams. Plaintiff alleges that Williams acted outside the scope of her GAL duties when she took the following actions: intimidated and threatened M.H. while reunifying M.H.

with her abusive father, prevented M.H. from testifying in her father's criminal case about the sexual abuse M.H. had suffered, and advocated and testified for M.H.'s abusive father in his criminal case. Plaintiff claims that in taking these actions in violation of her standard of care, Williams negligently inflicted emotional distress on M.H., which ultimately resulted in M.H.'s death.

At issue in the pending motions is the client file of Jasper Edmundson, Plaintiff Cynthia Haynes' legal counsel during the divorce case and the juvenile cases. On April 23, 2015, Mr. Edmundson, a licensed attorney and a member of The Edmundson Law Firm, entered his appearance as counsel for Plaintiff in the Haynes divorce case. On June 2, 2017, Mr. Edmundson filed a motion to withdraw as Plaintiff's counsel in the divorce case. On January 3, 2020, Mr. Edmundson passed away. On January 15, 2020, the Circuit Court of Butler County, Missouri, appointed Matthew S. Edmundson—Jasper Edmundson's son—as trustee for Jasper Edmundson. (Doc. 141-1.)

Plaintiff filed the instant Complaint on November 8, 2021. (Doc. 1.) Plaintiff attached to her Complaint two email communications from Jasper Edmundson to Plaintiff. First, Mr. Edmundson sent the following message on January 9, 2017:

> Cindy,
> I talked to Jennifer Williams. As we were discussing your girls cases, I mentioned to her about recusing off your cases. She retorted, "Judge Shock would never recuse me. Your client already lost her custody. If she decides to keep trying to disqualify me, she will lose all visits with her daughters."
> Please come to my office as soon as possible. We need to discuss this in person. I am very upset over the harmful and untrue recommendations she made to the Judge last month. That's why your kids were taken away. I hate what she's done to you and your girls. Come see me.
> Jasper

(Doc. 1-12.) Mr. Edmundson sent the following communication to Plaintiff on January 11, 2017:

> Cindy,
> I would like to see you in my office again about Jennifer Williams.  Jennifer told me she is not going to allow S.H. to be tested in the public school.  If you do test S.H. to see in what grade she is in then Jennifer Williams said you will lose your visitation times.  She does not want proof there is no educational neglect.  I've seen S.H.'s straight A grade reports!  M.H. tested out a year ahead of her peers in 7th grade, so she does not want that to happen with S.H.   I am distraught over what she's done to M.H. and S.H.!  Let's talk about this in person.
> Jasper

(Doc. 1-11.)

On December 2, 2022, Williams served interrogatories and requests for production on Plaintiff.  The requests for production sought, among other things, the following:

> 58. Any documents, notes, correspondence, memoranda, text messages, and/or e-mails that Plaintiff provided to or received from Jasper Edmundson and/or the Edmundson law firm at any time during Divorce proceedings and/or the Juvenile proceedings.
>
> 85. All documents and electronic information that Jasper Edmundson and/or the Edmundson law firm maintained in connection with their role as Plaintiff's legal counsel during the Divorce proceedings and/or the Juvenile proceedings.

(Doc. 141-6 at 11, 12.)  Plaintiff objected to these requests for production, arguing that they were cumulative and duplicative, and that Plaintiff's communications with Mr. Edmundson were privileged.  *Id.*

Subject to these objections, Plaintiff produced 152 pages of "non-confidential non-privileged documents" from Mr. Edmundson's file.  (Doc. 149 at 2.)  The evidence produced to Williams includes emails exchanged between Edmundson, Williams, and many other professionals involved in the divorce and juvenile cases.  (Doc. 149-1.)  Plaintiff further stated that she had provided privilege logs to Williams concerning Plaintiff's communications with Edmundson.  (Doc. 141-6 at 11, 12.)

On May 4, 2023, Williams served her Subpoena Duces Tecum and Notice to Take Deposition on Matthew Edmundson.  (Doc. 141-8.)  The subpoena requested that Matthew

Edmundson produce the client file maintained by Jasper Edmundson in connection with the representation of Plaintiff in the divorce and juvenile proceedings ("Edmundson File").  *Id.*  After the subpoena was served, Plaintiff sent email communication to Matthew Edmundson and the parties in this action advising that Plaintiff objected to Matthew Edmundson's production of the Edmundson File on the basis of attorney-client privilege.  (Doc. 141-9.)  On June 21, 2023, Matthew Edmundson filed his Objection to the subpoena, in which he states that the Edmundson File was returned to Plaintiff and that Plaintiff instructed him not to release the file to Defendant or any other person or she will sue him.  (Doc. 131.)

On June 28, 2023, Matthew Edmundson filed the instant Motion to Quash Subpoena in accordance with Rule 45(d)(3).  (Doc. 136.)  The Motion moves to quash the subpoena duces tecum that Williams served on Matthew Edmundson for the same reasons described in the Objections to the subpoena.

In response, Williams filed a Motion to Compel Plaintiff's and Matthew Edmundson's production of Jasper Edmundson's Legal File and her Opposition to Matthew Edmundson's Motion to Quash.  (Doc. 140.)  Williams states that, upon information and belief, the Edmundson file includes "email communications with Plaintiff, as well as other material about Plaintiff, M.H., and Williams' alleged conduct while serving as GAL during the custody cases."  (Doc. 154 at p. 2.)  Williams indicates that both Matthew Edmundson and Plaintiff have copies of the Edmundson File.

Plaintiff in turn filed a Motion to Quash Williams' subpoena of Matthew Edmundson's production of the Edmundson File.  (Doc. 148.)  These motions are pending before the Court.

## II. Standard

The Federal Rules provide for the service of subpoenas, and also provide for quashing or modifying a subpoena. Fed. R. Civ. P. 45. Specifically, Rule 45 states that "the issuing court must quash or modify a subpoena" if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies...." Fed. R. Civ. P. 45(c)(3)(A)(iii); *see also Pointer v. DART,* 417 F.3d 819, 821 (8th Cir. 2005).

Federal Rule of Civil Procedure 37 authorizes motions to compel discovery. *See* Fed. R. Civ. P. 37(a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."). Rule 26(b) governs the scope of discovery in federal matters, and states that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 "vests the district court with broad discretion in regulating discovery." *United States v. James B. Nutter & Co.*, 2021 WL 4227058, at *1 (W.D. Mo. Sept. 16, 2021) (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment).

## III. Discussion

Williams argues that the Court should overrule Plaintiff's and Matthew Edmundson's objections to Williams' requests for the Edmundson File and compel them to produce the file. Williams contends that Plaintiff has waived any right to withhold the Edmundson File on the basis of attorney-client privilege for two reasons. First, she claims that Plaintiff placed the

subject matter of her communications with Jasper Edmundson at issue in this case by identifying Mr. Edmundson as a fact witness. Second, she contends that Plaintiff waived her right to withhold the Edmundson File pursuant to the "fairness doctrine," when she voluntarily disclosed communications with Mr. Edmundson in the Complaint. Next, she argues that Plaintiff waived her right to claim "work product" protection over the Edmundson File because no alternative is available to Williams and Plaintiff has placed Mr. Edmundson's work in the underlying cases directly at issue in this case. Williams argues in the alternative, in the event the Court determines Plaintiff has not waived her attorney-client privilege, that Plaintiff's indexes and objections fail to comply with Rule 26(b)(5)(A).

Plaintiff responds that she did not waive her attorney-client privilege with Jasper Edmundson. She argues that the communications with Mr. Edmundson attached to the Complaint are *not* confidential attorney client communications. Plaintiff next contends that Williams' at-issue waiver argument fails. Finally, Plaintiff argues that she did not waive work product privilege.

### A.     Attorney-Client Privilege

In diversity cases in federal court, state law applies to the assertion of attorney-client privilege. *Baker v. GMC*, 209 F.3d 1051, 1053 (8th Cir. 2000). The elements of attorney-client privilege are: (1) the existence of an attorney-client relationship at the time the communication was made or advice was given; and (2) the attorney-client relationship existed with respect to the subject matter of the communication or advice. *Energy Creates Energy v. Lione*, No. 4:18-cv-00913-DGK, 2020 WL 3087019 at *3 (W.D. Mo. June 10, 2020) (citing *State ex rel. Koster v. Cain*, 383 S.W.3d 105, 116 (Mo. Ct. App. 2012)).

"[The Missouri Supreme Court] has spoken clearly of the sanctity of the attorney-client privilege," and the need to eliminate any interference with it:

> .... The relationship and the continued existence of the giving of legal advice by persons accurately and effectively trained in the law is of greater societal value ... than the admissibility of a given piece of evidence in a particular lawsuit. Contrary to the implied assertions of the evidence authorities, the heavens will not fall if all relevant and competent evidence cannot be admitted.

*State ex rel. Peabody Coal v. Clark*, 863 S.W.2d 604, 607 (Mo. banc 1993) (*citing State ex rel. Great American Ins. Co. v. Smith*, 574 S.W.2d 379, 383 (Mo. banc 1978)).

The party asserting attorney-client privilege bears the burden of proof to demonstrate that the privilege applies. *Id.* The party claiming attorney-client privilege must establish such protection through competent evidence rather than blanket assertions. *State ex rel. Collom v. Fulton*, 528 S.W.3d 42, 47 (Mo. Ct. App. 2017) (citations omitted). "Competent evidence may include a privilege log and affidavits from counsel." *Id.* (citations omitted). Moreover, a party cannot claim attorney-client privilege over communications when a third person representing an adverse party was present. *State Farm Mutual Auto. Insurance Co., v. Allen*, 744 S.W.2d 782, 787 (Mo. banc 1988).

The Court may order an in-camera review of the privileged documents to protect one who may be subjected to harm or humiliation upon unwarranted invasion by another who is seeking information. *State ex rel. Kilroy Was Here, LLC v. Moriarty*, 633 S.W.3d 406, 410 (Mo. Ct. App. 2021).

### 1.  Email Communications Attached to Complaint

As an initial matter, the Court must determine whether the email communications from Mr. Edmundson to Plaintiff attached to the Complaint are protected attorney-client communications.

Plaintiff argues that the communications at issue are not confidential attorney-client communications because the substance of the emails is factual. Plaintiff states that Mr. Edmundson did not offer any legal advice in the disclosed emails. Instead, Plaintiff argues that Mr. Edmundson, in conveying information obtained from Williams, was acting merely as a "scrivener of facts." (Doc. 149 at 9.) Plaintiff cites several federal cases applying federal common law in support of this proposition.

Williams responds that Plaintiff's argument fails, as Plaintiff did not hire Mr. Edmundson to be a scrivener. She further argues that the cases upon which Plaintiff relies are not controlling in that they do not apply Missouri law and they are factually distinguishable.

Not *all* communications between an attorney and client are privileged under Missouri law. For example, "it is generally accepted that where the attorney acts as a collection agent, the communications between him and his client are not protected by the privilege." *Cain*, 383 S.W.3d at 120; *see also State ex rel. Shelter Mut. Ins. Co. v. Wagner*, 575 S.W.3d 476, 483 (Mo. App. W.D. 2018) (recognizing when an "attorney acted as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege would not apply.").

Similarly, the Eighth Circuit, applying federal common law, has found that an attorney is not rendering legal services when he acts as a "courier," "conduit," or "scrivener" for the client. *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) (citing cases). In *Horvath*, for example, the attorney's services to his clients "took the form of transferring funds and facilitating transactions." 731 F.2d at 561. As a result, the Court found that communications related to these services were not privileged. *Id.*

Here, Mr. Edmundson sent the messages at issue during his representation of Plaintiff in the divorce and juvenile cases.  No other party received the communications.  The subject of the communications—Ms. Williams' communications with Mr. Edmundson regarding the custody cases—is directly related to his representation of Plaintiff.  In addition to relaying Ms. Williams' communications to Plaintiff, Mr. Edmundson provided his opinion regarding the communications and how Ms. Williams' actions would affect the custody cases. Contrary to the cases cited by Plaintiff, Mr. Edmundson was not acting as a scrivener, courier, or a conduit.  Rather, he was acting in his capacity as counsel to Plaintiff in the divorce and custody proceedings.  Because (1) an attorney-client relationship existed at the time of the communication; and (2) the attorney-client relationship at issue pertained to the subject matter of the communication, the email communications fall under the protection of the attorney-client privilege.

Plaintiff's disclosure of the privileged email communications does not necessarily mean the entire Edmundson File is discoverable.  The Court must next consider the extent to which Plaintiff has waived the attorney-client privilege.

**2. Waiver of Privilege**

Despite its importance, the attorney-client privilege is an exception to the otherwise liberal rules of discovery, *Hickman v. Taylor*, 329 U.S. 495, 507 (1947), and it can be waived.  Under the at-issue waiver, the privilege may be overcome "where the client places the subject matter of the privileged communication at issue."  *Baker*, 209 F.3d at 1055.

Closely related is the "fairness doctrine."

> The so-called 'fairness doctrine' is grounded in the notion that it is unfair to permit a party to make use of privileged information as a sword when it is advantageous for the privilege holder to do so, and then as a shield when the

>party's opponent seeks to use privileged information that might be harmful to the privilege holder.

*State ex rel. St. John's Reg'l Med. Ctr. v. Dally*, 90 S.W.3d 209, 215 (Mo. Ct. App. 2002). "The rationale is that a party should not be able to use a privilege to prejudice an opponent's case or to disclose some selected communications for self-serving purposes." *Id*. "Accordingly, a privilege may be waived when a party asserts a claim that in fairness requires examination of protected communications." *Id*. "Without calling it the 'fairness doctrine,' Missouri courts apply its rationale when analyzing privilege waiver issues." *Id.*

Williams argues that both of these doctrines apply to preclude Plaintiff from claiming the Edmundson File is privileged. With regard to the "at-issue" waiver, Williams notes that Plaintiff has repeatedly identified Jasper Edmundson as a fact witness in this action. For example, in responses to Williams' Interrogatories, Plaintiff identified Jasper Edmundson as a witness who had knowledge of Williams' alleged threats. (Doc. 141-7 at pp. 2-4; Doc. 141-5 at pp. 5, 12, 18) Plaintiff indicated that Mr. Edmundson heard Williams' threats, M.H. reported the threats to Mr. Edmundson, and M.H. asked Mr. Edmundson to help M.H. recuse Williams. *Id.*

Moreover, Williams argues that, because Plaintiff included the two email communications from Mr. Edmundson in the Complaint, she waived the right to withhold the Edmundson File on the basis of attorney-client privilege. She contends that the fairness doctrine prohibits Plaintiff from selectively disclosing private communications with her attorney to support her claims while claiming that other material about the same subject matter is privileged.

The Court has already rejected Plaintiff's argument that the email communications at issue are not confidential attorney-client communications. Plaintiff also contends that the "at-issue" waiver doctrine does not apply under the circumstances of this case pursuant to *Baker*. Plaintiff argues that *Baker* found that "at-issue" waiver is present in only two situations that are

not applicable here:  (1) when a client relies on legal advice, resulting in a legal malpractice action;  and (2) when a client's testimony refers to a specific privileged document.

It is true that the *Baker* Court cited the situations described by Plaintiff as examples "in which at-issue waiver *is commonly found*." 209 F.3d at 1055 (emphasis added).  The Court then declined to extend the doctrine to the facts of *Baker,* where a party had made factual representations that were allegedly contrary to what the privileged documents would reveal.  *Id.*  Contrary to Plaintiff's assertion, the Court did not indicate that the examples cited were exhaustive.  Further, the facts presented in *Baker* are different from the facts in this action, where Plaintiff attached the privileged communications to the Court in support of her claims, and then argued the remainder of the communications are privileged.  Plaintiff cannot now withhold the entire Edmundson File on the basis of privilege, especially in light of the fact that Mr. Edmundson cannot be deposed.

In sum, Plaintiff has disclosed confidential communications with Mr. Edmundson to support her claim against Williams.  At the same time, Plaintiff seeks to withhold all other communication with Mr. Edmundson on the basis of attorney-client privilege.  Plaintiff cannot use the privileged information as both a "sword" and a "shield." *St. John's Reg'l Med. Ctr*, 90 S.W.3d at 215.

Thus, the Court finds that Plaintiff has made a *limited* waiver of attorney-client privilege under the fairness doctrine by disclosing the email communications.  As such, Plaintiff must disclose any additional communications between Mr. Edmundson and Plaintiff that relate to Williams' alleged threats to M.H.  For example, at a minimum, Plaintiff should produce the complete email chain relating to these communications.  Williams is not, however, entitled to the entirety of the Edmundson File, as will be discussed further below.

**B.     Work Product Doctrine**

Plaintiff also argues in her Response to Williams' Motion to Compel that the Edmundson File is protected by the work product doctrine. Williams argues that Plaintiff cannot rely on a blanket claim of work product protection to withhold the Edmundson File, because that privilege has been waived.

The work product doctrine is not a substantive privilege, but rather a matter of procedural law, and thus, governed by federal law. *Pepsico v. Baird, Kurtz & Dobson, L.L.P.,* 305 F.3d. 813, 817 (8th Cir. 2002). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). The work product privilege is "distinct from and broader than the attorney-client privilege." *In re Murphy,* 560 F.2d at 337 (quotation omitted). While the purpose of the attorney-client privilege "is to encourage clients to make a full disclosure of all favorable and unfavorable facts to their legal counsel," *id.,* the work product privilege "functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny." *In re Special September 1978 Grand Jury (II),* 640 F.2d 49, 62 (7th Cir. 1980). "Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys to their own work product," both the attorney and the client hold the privilege. *United States v. Under Seal (In re Grand Jury Proceedings # 5),* 401 F.3d 247, 250 (4th Cir. 2005) (citation omitted).

There are two kinds of work product: ordinary work product, which includes "raw factual information," and opinion work product, which encompasses "counsel's mental impressions, conclusions, opinions or legal theories." *Baker*, 209 F.3d at 1054. "Ordinary work

product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means." *Id.* (citing Fed. R. Civ. P. 26(b)(3)). "A party ... does not demonstrate substantial need when it merely seeks corroborative evidence." *Id.* (citation omitted). Opinion work product, "enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." *Id.*

Plaintiff first argues that any ordinary work product material in the Edmundson File regarding Williams' threats is corroborative evidence already supported by the following documents available to Williams: Dr. Marks' records; Theresa Whaley's deposition transcript; M.H.'s messages to Plaintiff; M.H.'s journal found by her foster parents; M.H.'s statements to Dr. Bost; and M.H.'s statement to the CASA representative. As such, Plaintiff argues that Williams has not shown a substantial need for the materials. Defendant in turn argues that the items identified by Plaintiff do not provide any information regarding Jasper Edmundson's knowledge of Williams' misconduct as GAL or of M.H.'s mental health; or of any communications between Mr. Edmundson and Williams. Defendant further argues that there is no other way to obtain this information as Mr. Edmundson and M.H. are both deceased.

As an initial matter, the Court notes that it is unknown which documents in the Edmundson File Plaintiff alleges are protected by the work product doctrine. Neither party refers specifically to any notes or interviews of Mr. Edmundson, or to any tangible items in his file. The Court also recognizes the overlapping protections of attorney-client privilege and the work product doctrine are applicable to some items.

With these limitations in mind, the Court finds that Williams has failed to establish a substantial need for any ordinary work product materials in the Edmundson File. Williams' claim that she requires information as to "Jasper Edmundson's personal knowledge of Williams' misconduct as GAL or M.H.'s mental health" does not justify production of work product materials, as Mr. Edmundson's knowledge of these facts is not an element in this case. Moreover, as Plaintiff points out, Williams' GAL file should contain all communications between Williams and Mr. Edmundson.

Plaintiff next contends that Williams is not entitled to the Edmundson File because it holds Edmundson's mental impressions, conclusions, and legal theories, and such opinion work product enjoys near absolute immunity. Williams responds that the Edmundson File is discoverable opinion work product, because Mr. Edmundson's mental impressions and opinions have already been disclosed to Williams in the form of the emails attached to the Complaint.

The Court has already found that the emails attached to Complaint are privileged communications, and that Plaintiff has waived the attorney-client privilege *as to related communications* in the Edmundson File. The same doctrine of waiver applies to information protected by the work product doctrine under federal law. Specifically, Federal Rule of Evidence 502(a) provides that, when a disclosure is made in a federal proceeding and waives the attorney-client privilege or work product protection, the waiver extends to any undisclosed communication or information in the proceeding if the waiver is intentional, the "disclosed and undisclosed communications or information concern the same subject matter," and "they ought in fairness to be considered together." Fed. R. Evid. 502(a).

In order to determine which communications, if any, are discoverable under these principles, the Court next turns to Plaintiff's privilege logs.

### C. Plaintiff's Privilege Logs

Williams argues that it is impossible to assess whether Plaintiff's claims of privilege are valid based on the privilege log she provided. Specifically, Williams contends that the descriptions of the items lack detail and do not indicate the specific privilege Plaintiff is claiming.

Under Rule 26(b)(5), a party may withhold information on the ground that it is privileged. The party must expressly claim the privilege and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

Plaintiff has produced the following indexes as a privilege log: (1) "Emails to Cindy from Jasper," which provides descriptions of 88 pages of emails (Doc. 141-4 at 1-2); and (2) "Emails to Jasper from Cindy," which provides descriptions of 867 pages of emails (Doc. 141-4 at 3-17). Each description provides the date and time of the communication and a brief description of the subject. The subjects vary widely, including "thought for the day," "A must read," "Haynes v. Haynes," "Charles Haynes case," and religious quotations. *Id.* Williams notes that some of these descriptions, such as the religious quotations, reveal that the communication is *not* privileged in that it is unrelated to any legal matter.

The Court concludes that Plaintiff has not described the nature of the email communications in a manner that enables Williams or the Court to assess the claim of privilege. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii); *Taber v. Ford Motor Co.*, No. 16-00162-CV-W-SWH, 2017 WL 4391779, at *4 (W.D. Mo. Sept. 29, 2017) (observing "courts have generally held that the privilege log should set forth specific facts which if taken as true establish the elements of the

privilege for each document for which the privilege is claimed"). The Court is unable to discern from the privilege logs which of the email communications between Mr. Edmundson and Plaintiff are actually privileged, the nature of the privilege, and whether any privileged communications relate to the disclosed communications and are therefore discoverable.

Thus, Plaintiff is directed to provide Williams with a revised privilege log stating the basis of the claimed privilege for each item in question, together with an accompanying explanation. The revised privilege log will **replace** the original log. After the revised privilege log is provided to Williams, the parties are directed to meet and confer to determine which, if any, of the withheld communications are discoverable under this Memorandum and Order.

Finally, because Plaintiff does not dispute that she is in possession of the Edmundson File, the Court will grant the Motion to Quash Subpoena filed by non-party Matthew S. Edmundson and by Plaintiff. *See, e.g. Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996) ("[i]n describing the relationship between Rule 34 and other discovery rules, at least one commentator indicates that '[i]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45].'") (quoting 8A Wright, Miller & Marcus: Federal Practice and Procedure § 2204 (1994)).

Accordingly,

**IT IS HEREBY ORDERED** that the Motions to Quash Subpoena filed by non-party Matthew S. Edmundson (Doc. 136) and Plaintiff (Doc. 148) are **granted.**

**IT IS FURTHER ORDERED** that the Motion to Compel of Defendants Jennifer Williams, individually, and Jennifer Williams d/b/a William Law (Doc. 140) is **granted in part and denied in part** as set out in this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff must provide a **Revised Privilege Log** to Defendants **no later than November 17, 2023**.  The Revised Privilege Log must include any additional communications as set out in this Memorandum and Order.

**IT IS FURTHER ORDERED** that the parties must meet and confer **no later than December 5, 2023**.

/s/ Abbie Crites-Leoni
_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of October, 2023.