UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CYNTHIA K. HAYNES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:21-CV-160-ACL ) |
| JENNIFER WILLIAMS, et al., | ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

This matter is before the Court on the Defendants' collective Motion for Appointment of Special Master to Preside Over Plaintiff's Deposition and for Extension of Plaintiff's Deposition Time. (Doc. 193.) The Defendants request an additional five hours, for a total of ten hours, to depose Plaintiff.

Under Rule 1 of the Federal Rules of Civil Procedure, the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; *Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 636 (C.D. Cal. 2005).

"[A] court may appoint a master only to," among other things, "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. Proc. 53(a)(1)(C). "A pretrial master should be appointed only when the need is clear." Adv. Comm. Notes to 2003 Amendments to Fed. R. Civ. P. 53(a)(1).

While the request is for the appointment of a "special master," defense counsel are in essence requesting the appointment of a discovery referee. The Court finds this request is without merit and that it would be an unnecessary expense.

Defendants allege that "[t]hroughout the deposition, the court reporter repeatedly requested that the witness not talk over [defense counsel] as she was attempting to ask questions.  Nevertheless, Plaintiff was often argumentative and would not offer responses to the question posed and complained that she was 'victim of domestic violence.'"  (Doc. 193 at 3.)  Defense counsel further claims that Plaintiff's counsel was repeatedly asked "to not speak on the record and to make formal objections. . .to preserve the integrity of the record." *Id*. at 4.  Defendants then claim that the clip submitted to the Court shows that Plaintiff's counsel was "coaching" Plaintiff.  *Id.* at 5.

The Court has reviewed the less than eight-minute video excerpt from the five hours of deposition testimony that was taken.  That segment took place at the tail end of the deposition.  The video does not bear out the allegations of Defendants.  Careful review of the video reveals that defense counsel repeatedly asked a variation of the same question regarding why Plaintiff was dissatisfied with Defendant Williams' performance as guardian ad litem and wanted Williams disqualified.

During the eight-minute segment, Plaintiff's counsel interjected one time to assist defense counsel by suggesting a limitation on the timeframe.  Shortly thereafter, Plaintiff's counsel objected, "asked and answered," and commented that the defense attorney was "the one who's digging."  After approximately the seventh time defense counsel asked virtually the same question, Plaintiff's counsel whispered "no."  Plaintiff then answered "nope."  During a status conference on the day of the deposition, Plaintiff's counsel advised that she was frustrated by defense counsel's tactics.  The Court's review of the video supports this claim as the Court interpreted the whispered "no" as exasperation, not an effort to coach Plaintiff.  Even so, such commentary is not proper.

The video clip shows that, generally, Plaintiff answered the questions posed to her. Plaintiff explained that her dissatisfaction with Defendant Williams was based on Williams "stealing the girls away from their mother when there was no cause," for putting them with the rapist's mother, for advocating on behalf of the rapist rather than the girls, for threatening M.H., for taking carloads of gifts to the girls, for not investigating whether the rapist's mother was even capable of caring for the girls, for putting them in the custody of someone who couldn't care for them, and "for not protecting them from Chuck."

The Court's assessment is that Plaintiff's behavior was mostly cooperative. She asked for assistance with a timeframe when it was clear that defense counsel was not satisfied with her answer. For example, she asked "When did I file the paper to have her recused?" Plaintiff took offense to counsel's question—"what harm was [Williams] causing the girls as of January 20, 2017?" When Plaintiff responded, she cited incidents occurring after January 20, 2017, explaining, "I'm talking about hindsight, here, looking at the end of the case." That answer was not responsive to the question asked.

It is worth noting that the questioning on the video clip revolves around an email written by Plaintiff's divorce attorney, who is now deceased, that regales some of the things Plaintiff wanted her lawyer to pursue. This Court entered a detailed Order finding these emails were protected by the attorney-client privilege, but that Plaintiff had waived the privilege to some of the communications by attaching emails to her Complaint. That said, the Court has not been requested to determine whether any of the emails that have been disclosed are protected by the attorney client or attorney work product privilege.

Notwithstanding the above, the Court finds that a second deposition is warranted. Only one of the defense attorneys inquired of Plaintiff during the first five hours of her deposition

regarding Plaintiff's 70-page Amended Complaint with nearly 50 exhibits.  Today, the parties reported that they agreed the second deposition of Plaintiff will last not more than six hours.

In the second deposition, the defense attorneys are encouraged to focus their questioning on factual matters in this case, i.e., the dates and times that certain events occurred, rather than Plaintiff's inflammatory comments to her divorce attorney, or the strategy she and her attorney discussed in preparation for the divorce proceedings.  Those matters are not relevant to the wrongful death claim that will be the subject of the jury trial in this case.

For her part, Plaintiff must be prepared to answer detailed questions about what happened factually.  Plaintiff alleges various bad acts that occurred over a prolonged period of time.  Although it may be upsetting for Plaintiff to discuss these events, it is crucial to the development of Plaintiff's case and Defendants' defense that Plaintiff provide details about the allegations in her First Amended Complaint.

In consideration of the observed and reported missteps during the first deposition of Plaintiff, Rule 30 contemplates a limited role for attorneys defending a deposition.  They may make a "nonargumentative and nonsuggestive" objection to a question.  Fed. R. Civ. P. 30(c)(2).  They may "instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  *Id.*  They may "move to terminate or limit" the deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."  Fed. R. Civ. Proc. 30(d)(3)(A).  And in connection with so moving, the defending attorney may demand the suspension of the deposition.  *Id.*

By convention, there are a few more things defending attorneys may do that are not expressly mentioned in Rule 30.  They can conduct redirect following the completion of the

examining attorney's questioning. They can ask to take a break every hour or so, and provided that no question is pending, that request should be agreed to. They can suggest a lunch break around noon. They can ask the videographer how much time has gone by on the record, and then when the time is up, they can declare the deposition over, take their witness, and leave.

When a defending attorney misbehaves by interrupting, or arguing with the examining attorney, for example, such misconduct prejudices the other side's ability to depose the witness. It substantively interferes with the whole point of a deposition. It makes the discovery process valueless because it prevents the other side from building its case.

As for the examining attorney in Plaintiff's deposition, some of the questions asked: 1) required legal analysis (i.e. why Plaintiff thought criminal charges should be filed), 2) related to matters likely protected by the attorney client privilege and work product doctrine, although there has been a limited waiver, and 3) were unrelated to the elements of Plaintiff's claims. The examining attorneys should use their remaining deposition time wisely.

During the second deposition of Plaintiff, the Court expects that counsel will conduct themselves professionally. The Court directs the parties to Federal Rule of Civil Procedure 30(c), which in relevant sections provides as follows:

> (1) ***Examination and Cross–Examination.*** The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence ...
> (2) ***Objections.*** An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of the taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(1) and (2).

Although the Court ruled that Plaintiff had waived the attorney-client privilege "*as to related communications* in the Edmundson file," (Doc. 169 at 14, emphasis in original), the Court expects that defense counsel will be thoughtful when formulating questions and only ask questions that are relevant and necessary.  Similarly, Plaintiff's counsel is forewarned that Plaintiff must make a good faith effort toward answering questions and shall invoke privileges or other objections only when appropriate and in a professional manner.

Any non-compliance with completing the depositions in the case pursuant to these guidelines will be looked upon with great disfavor.

The Court denies the Defendants' request for a referee at the second deposition. The parties, however, are advised that failure to follow the guidelines above will result in the probability of sanctions against the offending attorney or party.

Finally, the Motion provides that the "Defendants reserve the right to seek sanctions against Plaintiff and her attorney as a result of her misconduct at Plaintiff's deposition."  (Doc. 193 at 7.)  Based on the record before the Court, neither party has clean hands, as both parties have engaged in improper conduct.  The dispute presented to the Court could have been resolved by the parties if counsel had cooperated with each other.  It is not this Court's practice to mediate the attorney's personal vendettas.  Counsel are cautioned that continuing any of the misconduct that occurred in the first five hours of Plaintiff's deposition is likely to result in the imposition of sanctions.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Appointment of Special Master to Preside Over Plaintiff's Deposition and for Extension of Plaintiff's Deposition Time (Doc. 193) is **granted in part and denied in part**.  The request for Appointment of Special

Master is **denied**.  Defendants' request for an extension of Plaintiff's Deposition time is **granted**, in that, upon agreement of the parties, Defendants are granted an additional six hours of time to complete the deposition of Plaintiff.

Dated this 12th day of January, 2024.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE